1　MORRIS POLICH & PURDY LLP
　　David J. Vendler, Esq. (SBN 146528)
2　Email:　dvendler@mpplaw.com
　　1055 West Seventh Street, Suite 2400
3　Los Angeles, CA 90017
　　Telephone: (213) 417-5100
4　Facsimile: (213) 488-1178

5　MICHAEL R. BROWN, APC
　　Michael R. Brown, Esq. (SBN 65324)
6　Email: mbrown@mrbapclaw.com
　　18101 Von Karman Avenue, Suite 1900
7　Irvine, California 92612
　　Telephone: (949) 435-3888
8　Facsimile: (949) 435 3801

9

　　Attorneys for Plaintiffs MICHAEL PEMBERTON,
10　SANDRA COLLINS-PEMBERTON,
　　and all others similarly situated

11

12　　　　　**UNITED STATES DISTRICT COURT**

13　　　　**SOUTHERN DISTRICT OF CALIFORNIA**

14

15　MICHAEL PEMBERTON AND
　　SANDRA COLLINS-PEMBERTON,
16

17　　　　　　　Plaintiffs,

18　vs.

19

20　NATIONSTAR MORTGAGE LLC, a
　　Federal Savings Bank,
21

22　　　　　　　Defendant.

23

24

25

26

27

28

| | |
|---|---|
| CASE NO.: 14CV1024 BAS WVG | |

**PLAINTIFF'S OPPOSITION TO NATIONSTAR MORTGAGE LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, STAY THE ACTION; REQUEST FOR LEAVE TO AMEND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF DAVID J. VENDLER**

Hon. CYNTHIA BASHANT

Date:　July 28, 2014
Time:　10:30 a.m.
Ctrm.:　4B

Now come plaintiffs, MICHAEL PEMBERTON and SANDRA COLLINS-PEMBERTON ("plaintiffs" or "the Pembertons"), who, for themselves and all others similarly situated, submit the following memorandum in opposition to defendant NATIONSTAR MORTGAGE, LLC's ("NML") Motion to Dismiss, or in the Alternative to Stay the Action.

Date: July 14, 2014                MORRIS POLICH & PURDY LLP


                                   By: _____s/ David J. Vendler_____
                                        David J. Vendler
                                        E-mail: dvendler@mpplaw.com

                                   MICHAEL R. BROWN, APC
                                   Michael R. Brown, Esq. (SBN 65324)
                                   Email:      mbrown@mrbapclaw.com
                                   18101 Von Karman Avenue, Suite 1900
                                   Irvine, California 92612
                                   Tel.: (949) 435-3888
                                   Fax:  (949) 435 3801

                                   Attorneys for Plaintiffs MICHAEL
                                   PEMBERTON and SANDRA COLLINS-
                                   PEMBERTON and all others similarly situated

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................... 1

II. SUMMARY OF ARGUMENT ........................................................... 2

III. ARGUMENT ................................................................................. 3

    A. The Sixth Circuits *En Banc* Decision in *Mikulski* Refutes All Of NML's Arguments ........................................................................... 3

        i. The Facts And Legal Theories Alleged In *Mikulski* ........................... 3

        ii. The District Court Initially Dismisses The Plaintiffs' Complaint ................... 4

        iii. The Sixth Circuit Reverses The District Court .................................. 5

        iv. The Sixth Circuit's *En Banc* Opinion ........................................ 5

    B. NML Improperly Calculates Mortgage Interest ....................................... 9

    C. Plaintiffs' State Law Claims Are Not Preempted ..................................... 12

    D. This Court Should Also Find There Exists An Implied Right Of Action Under § 6050H ............................................................................. 13

    E. NML'S Primary Jurisdiction Argument Fails ......................................... 17

    F. Plaintiffs' Negligence Claims Is Well Stated ......................................... 19

    G. Plaintiffs Have Stated A Breach of Contract Claim .................................. 19

    H. NML Breached The Covenant of Good Faith ........................................ 22

    I. Plaintiffs' Fraud Claim Is Well Stated ............................................... 24

        i. NML Is Misrepresenting A Fact – The Amount Of Interest It Receives. ................ 24

        ii. NML Knows, Or Should Know, Its Policy Was Wrong. ........................... 25

    J. Plaintiffs Have Stated A Claim Under Cal. Bus. & Prof. Code § 17200 ................ 26

    K. The Claim For Declaratory Relief Is Proper ......................................... 27

IV. CONCLUSION ............................................................................. 28

14CV1024-BAS-WVG

**PLAINTIFF'S OPPOSITION TO NATIONSTAR MORTGAGE LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, STAY THE ACTION; REQUEST FOR LEAVE TO AMEND**

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>Cases</u>

*Ansley v. Ameriquest Mortg. Co.*,
340 F.3d 858 (9th Cir. 2003).................................................................. 7

*Apple Computer, Inc. v. Podfitness, Inc.*,
2007 WL 1378020 (N.D.Cal. 2007) .......................................................... 18

*Bardin v. DaimlerChrysler Corp.*,
136 Cal.App.4th 1255 (2006) .................................................................. 27

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................ 30

*Boschma v. Home Loan Ctr., Inc.*,
198 Cal.App.4th 230 (2011) .................................................................... 26

*Brennan v. Southwest Airlines, Co.*,
110 F.3d 1200 (5th Cir. 1997).................................................................. 7

*Brillhart v. Excess Ins. Co. of America*,
316 U.S. 491 (1942)................................................................................ 28

*Buchanan v. Dowdy*,
772 F.Supp. 968 (S.D. Tex. 1991) ................................................. 3, 13, 14, 16

*Burda v. M. Ecker Co.*,
1990 WL 17075 (N.D.Ill. 1990) ............................................................... 7

*Camacho v. Automobile Club of Southern California*,
142 Cal.App.4th 1394 (2006) .................................................................. 27

*Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
20 Cal.4th 163 (1999) ............................................................................. 26

*Centerior Energy Corp. v. Mikulski*,
553 U.S. 1031, 128 S.Ct. 2426, 171 L.Ed.2d 229 (2008)....................... 3, 4, 6, 21

*Central Valley Chrysler-Jeep, Inc. v. Witherspoon*,
2005 WL 2709508 (E.D.Cal. 2005) .......................................................... 18

*Cervantes v. United States*, 330 F.3d 1186 (9th Cir. 2003) ......................... 30

*Chamberlain v. Allstate Ins. Co.*,
931 F.2d 1361 (9th Cir. 1991).................................................................. 28

*Clark v. Time Warner Cable*,
523 F.3d 1110 (9th Cir.2008).................................................................. 17

*Clemens v. USV Pharmaceutical, A Div. of Revlon, Inc.*,
838 F.2d 1389 (5th Cir. 1988).......................................................... passim

**PLAINTIFF'S OPPOSITION TO NATIONSTAR MORTGAGE LLC'S MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT, OR IN THE ALTERNATIVE, STAY THE ACTION;
REQUEST FOR LEAVE TO AMEND**

*Commercial Union Assurance Cos. v. Safeway Stores, Inc.,*
   26 Cal.3d 912 (1980) ................................................................................ 23

*Cort v. Ash,* 422 U.S. 66, 78 (1975) ............................................... 13, 15, 16

*County of Santa Clara v. Astra USA, Inc.,*
   588 F.3d 1237, 1252 (9th Cir.2009) ........................................................ 17

*Crescent Woodworking Co., Ltd. v. Accent Furniture, Inc.,*
   2005 WL 5925586 at * 3-4 (C.D.Cal. 2005) ............................................ 23

*Crouch v. Guardian Angel Nursing, Inc.,*
   2009 WL 3738095 (M.D.Tenn. 2009) ......................................................... 7

*Daniels-Hall v. National Educ. Ass'n,*
   2008 WL 2179530 (W.D.Wash. 2008) ...................................................... 18

*Deputy v. DuPont,*
   308 U.S. 488 (1940) ................................................................................. 10

*EnviroNMLental Technology Council v. Sierra Club,*
   98 F.3d 774 (4th Cir. 1996) ..................................................................... 18

*Federal Maritime Bd. v. Isbrandtsen Co.,*
   356 U.S. 481 (1958) ................................................................................. 18

*First Pacific Bancorp, Inc. v. Helfer,*
   2000 WL 1099791 (9th Cir. 2000) ........................................................... 14

*Foley v. Interactive Data Corp.,*
   47 Cal.3d 654 (1988) ............................................................................... 20

*Fredrickson v. Starbucks Corp.,*
   2013 WL 5819104 (D. Or. 2013) ................................................................ 7

*Gierbolini Rosa v. Banco Popular de Puerto Rico,*
   930 F.Supp. 712 (D.Puerto Rico 1996) .................................................... 14

*Goodrich & Pennington Mortg. Fund, Inc. v. Chase Home Finance, LLC,*
   2008 WL 698464 *7 (S.D.Cal. 2008) ....................................................... 20

*Great Northern Ry. Co. v. Merchants' Elevator Co.,*
   259 U.S. 285, (1922) ............................................................................... 17

*Gregory v. Helvering,*
   293 U.S. 465 (1935) ................................................................................. 10

*Grubb v. Ranger Ins.* Co.,
   77 Cal.App.3d 526 (1978) ....................................................................... 20

*Guz v. Bechtel Nat., Inc.,*
   24 Cal.4th 317 ......................................................................................... 22

*Haggarty v. Wells Fargo Bank, N.A.,*
   2011 WL 445183 at *3 (N.D.Cal. 2011) ................................................... 22

**PLAINTIFF'S OPPOSITION TO NATIONSTAR MORTGAGE LLC'S MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT, OR IN THE ALTERNATIVE, STAY THE ACTION;
REQUEST FOR LEAVE TO AMEND**

*Hall v. Santa Barbara,*
  833 F.2d 1270 (9th Cir. 1986)..................................................................... 29

*Hernandez v. Hilltop Financial Mortg., Inc.,*
  622 F.Supp.2d 842, (N.D.Cal. 2007) ........................................................... 21

*Horn v. Bank of America, N.A.,*
  2014 WL 1455917 (S.D.Cal. 2014) ....................................................... 11, 18

*Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.,*
  4 Cal.App.4th 1538, (1992) .......................................................................... 22

*I. C. C. v. Big Sky Farmers and Ranchers Marketing Co-op. of Mont.,*
  451 F.2d 511 (9th Cir. 1971)......................................................................... 18

*In re Farm Raised Salmon Cases,*
  42 Cal.4th 1077 (2008) ................................................................................ 26

*In re Pico,*
  2011 WL 3501009 at *3 (Bkrtcy.S.D.Cal. 2011) ........................................ 21

*Jefferson v. Chase Home Finance LLC,*
  2007 WL 1302984, at *3 (N.D.Cal. 2007).................................................... 21

*Ladd v. County of San Mateo,*
  12 Cal.4th 913 (1996) .................................................................................. 19

*Lazar v Hertz Corp.,*
  143 Cal.App.3d 128 (1983)........................................................................... 22

*Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles*
  (1993) 17 Cal.App.4th 432 .......................................................................... 23

*Love v. Fire Ins. Exchange,*
  221 Cal.App.3d 1136 (1990)......................................................................... 22

*Marsu, B.V. v. Walt Disney Co.,*
  185 F.3d 932 ................................................................................................. 22

*Mikulski v. Centerior Energy Corp.,*
  501 F.3d 555 (6th Cir. 2007).................................................................. passim

*Morales v. Cate,*
  757 F.Supp.2d 961 (N.D.Cal. 2010) ............................................................ 29

*Motel Corporation v. Commissioner of Internal Revenue,* 54 T.C. 1433 (1970) ....................... passim

*National Basketball Ass'n v. SDC Basketball Club, Inc.,*
  815 F.2d 562 (9th Cir.1987)......................................................................... 21

*Old Colony R. Co. v. Commissioner of Internal Revenue,*
  284 U.S. 552 (1932)....................................................................................... 2

*Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.,*
  69 Cal.2d 33 (1968) ...................................................................................... 21

**PLAINTIFF'S OPPOSITION TO NATIONSTAR MORTGAGE LLC'S MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT, OR IN THE ALTERNATIVE, STAY THE ACTION;
REQUEST FOR LEAVE TO AMEND**

*Perdue v. Crocker National Bank*,
  38 Cal.3d 913 (1985) ................................................................................................ 23

*Scott v. Pacific Gas & Electric Co.*,
  11 Cal.4th 454 (1995) ................................................................................................ 20

*Smoker v. C.I.R.*,
  2013 WL 645265 ................................................................................................ passim

*Solid Host, NL v. Namecheap, Inc.*,
  652 F.Supp.2d 1092 (C.D.Cal. 2009) ........................................................................ 20

*State of Washington, Dept. of Revenue v. WWW.Dirtcheapcig.com, Inc.*,
  260 F.Supp.2d 1048 (W.D.Wash. 2003) ........................................................ 14, 15, 16

*Tierney v. Schweiker*,
  718 F.2d 449, 456 (D.C.Cir.1983) .............................................................................. 28

*U.S. v. 43.47 Acres of Land*,
  45 F.Supp.2d 187 (D.Conn. 1999) .............................................................................. 18

*Umland v. PLANCO Financial Services, Inc.*
  542 F.3d 59 (3d Cir. 2008) ........................................................................................... 7

*United States v. Redwood City*,
  640 F.2d 963 (9th Cir. 1981) ...................................................................................... 29

*Victoria v. Superior Court*,
  40 Cal. 3d 734 (1985) ................................................................................................ 21

*Wilshire Holding Corporation v. Commissioner*,
  262 F.2d 51 (C.A. 9, 1958) ........................................................................................ 10

## Statutes

12 U.S.C. 1821(d)(15) ...................................................................................................... 14

28 U.S.C. § 1715 .............................................................................................................. 18

28 U.S.C. Section 2201(a) ............................................................................................... 27

California Business & Professions Code § 17200 ............................................................ 26

California Civil Code § 1654 ........................................................................................... 21

California Civil Code § 1619 ........................................................................................... 20

Internal Revenue Code § 6050H ............................................................................... passim

Internal Revenue Code § 7422 ................................................................................. passim

Internal Revenue Code § 7422(a) .................................................................................. 6, 7

**PLAINTIFF'S OPPOSITION TO NATIONSTAR MORTGAGE LLC'S MOTION TO DISMISS THE FIRST
AMENDED COMPLAINT, OR IN THE ALTERNATIVE, STAY THE ACTION;
REQUEST FOR LEAVE TO AMEND**

1 **Other Authorities**

2 Restatement of Torts, 2nd § 545.................................................................................... 24

3 Revenue Ruling 77-135................................................................... 9, 11, 19, 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S OPPOSITION TO NATIONSTAR MORTGAGE LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, STAY THE ACTION; REQUEST FOR LEAVE TO AMEND**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

For almost all owners of real property, the mortgage interest deduction is their largest single tax deduction. The way consumers, their tax preparers and the Internal Revenue Service ("IRS") determine how much mortgage interest has been paid in a given year is through the lender-issued Form 1098. This is both because the law places the responsibility for calculating the amount of interest paid during a given year on the lender and because it is difficult to independently figure out what portion of a year's mortgage payments constitute interest because the amounts of interest versus principal paid change every month – even if the monthly mortgage payment remains constant.

Section 6050H[1] is the statute that requires lenders like Flagstar to issue Forms 1098. Its terms are very simple and straightforward. It requires lenders to report to the IRS and to their borrowers the amount of "mortgage interest" **"received"** from the borrower during a calendar year if that amount is over $600.[2] Plaintiffs' contention in this lawsuit is that NML knowingly, intentionally and wrongfully under-reported the amount of mortgage interest NML received from plaintiffs in tax-year 2013 because NML excluded from its reporting plaintiffs' repayment of interest in 2013 that they had deferred paying in prior tax-years under the terms of their Option Arm loan. [3] Plaintiffs further allege that NML's policy of not reporting on Forms 1098 repayments

---

[1] All statutory references are to the Internal Revenue Code unless otherwise stated.

[2] Section 6050H provides that "Any person—

    (1) who is engaged in a trade or business, and
    (2) who, in the course of such trade or business, receives from any individual interest aggregating $600 or more for any calendar year on any mortgage, shall make the return described in subsection (b) with respect to each individual from whom such interest was received at such time as the Secretary may by regulations prescribe.

[3] "Option Arm" loans provide four different payment "options" in a given month: (1) principal and interest due under the note; (2) interest only; (3) a "Minimum Payment," which often is less than the interest due, creating negative amortization; or (4) principal and interest on a 15-year amortization schedule.

of interest accrued in prior tax-years on Forms 1098 has been applied across a class of persons similarly situated to plaintiffs. In other words, NML had a policy of under-reporting deferred, but paid, interest, for all its borrowers. This resulted in the loss by class members of tens of millions of dollars in allowable mortgage interest deductions.

## II.  SUMMARY OF ARGUMENT

The reason NML fails to cite any authority supporting the correctness of its 1098 reporting policy is because there is none. Just as alchemists could not transform lead into gold, tax law does not allow banks to transform interest into principal.

For tax purposes: "'interest' means what is usually called interest," i.e. "the amount which one has contracted to pay for the use of borrowed money." *Old Colony R. Co. v. Commissioner of Internal Revenue*, 284 U.S. 552, 560 and 561 (1932). Plaintiffs' "Option Arm" loan explicitly provides that they could defer paying some of the interest they owed in a given month until months, or even years later. But, as stated in *Motel Corporation v. Commissioner of Internal Revenue*, 54 T.C. 1433 (1970), interest, "no matter when paid, is clearly compensation for the use of money, and its character as such does not change merely because it is not timely paid. The fact that a payment is not called 'interest' is not controlling for tax purposes if, in substance, it is such." *Id.* at 54 T.C. 1440. See also *Smoker v. C.I.R.*, 2013 WL 645265 at *4 (Tax Ct. 2013) (deferred interest under an Option Arm loan retains its character as "mortgage interest" and can be deducted in the year of repayment).

Because NML knows it cannot defend the correctness of its interest reporting policy, its motion relies entirely on garden variety procedural arguments – such as plaintiffs allegedly lack standing, that their claims are preempted and that this Court should send this single individual case to the IRS. In short, even though NML essentially concedes that what it is doing is wrong -- and even though it's wrong is costing its borrowers tens, or even hundreds of millions of dollars in lost tax deductions *year after year* – it wants plaintiffs (and the entire universe of its

borrowers) to have no remedy. NML's motion should be denied; not only do its procedural arguments lack merit, but the result it seeks would be manifestly unjust.

In making all of its procedural arguments, NML's motion conveniently fails to even acknowledge several cases where it has been squarely held that people in plaintiffs' position *can* maintain claims under state law for damages against the issuer of an incorrect informational return such as a Form 1098. *Clemens v. USV Pharmaceutical, A Div. of Revlon, Inc.*, 838 F.2d 1389 (5th Cir. 1988) and *Buchanan v. Dowdy*, 772 F.Supp. 968 (S.D. Tex. 1991) both hold that where the recipient of an informational return (such as a Form 1098) complains to the issuer about an inaccuracy in the return, and the issuer refuses to correct the error, the recipient has suffered an injury and can sue the issuer under state law to force it to correct the error and for any resulting damages. And, where it is too late to correct the error because the three-year statute of limitations for amending tax returns (§ 6511(a)) has expired, *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555 (6th Cir. 2007) (en banc), cert. denied, *Centerior Energy Corp. v. Mikulski*, 553 U.S. 1031, 128 S.Ct. 2426, 171 L.Ed.2d 229 (2008) holds that the party injured by the wrongful informational return can seek from the issuer the amount of his/her overpaid taxes as damages under state law. Indeed, because the Sixth Circuit's *en banc* opinion in *Mikulski* refutes virtually every argument raised by NML, it is a logical place to begin.

## III.  ARGUMENT

### A.  The Sixth Circuits *En Banc* Decision in *Mikulski* Refutes All Of NML's Arguments

#### i.  The Facts And Legal Theories Alleged In *Mikulski*

*Mikulski* involved a class action complaint originally filed in Ohio state court on behalf of all shareholders of Centerior Energy Corporation ("CEC"). The gravamen of the plaintiffs' claim was that that because CEC failed to deduct certain expenses from its earnings – due to an allegedly erroneous interpretation of an IRS deductibility provision – its earnings were artificially increased. And, because CEC

calculated dividends as a function of its earnings, plaintiffs alleged that CEC issued 1099–DIV forms that were overstated – which plaintiffs claimed wrongfully increased their tax liability. (Significantly, plaintiffs' prayer was for the amount of the extra taxes they paid and not just an amount necessary to pay for accountancy fees to amend their returns). As in the present case, plaintiffs' complaint stated only state law theories for recovery (breach of contract and fraud). Indeed, the charging allegations in *Mikulski* are remarkably similar to this case.[4]

### ii. The District Court Initially Dismisses The Plaintiffs' Complaint

CEC removed the complaint alleging there was federal question jurisdiction because all of plaintiffs' state law claims depended on the federal law question of whether the expenses were in fact deductible, and/or because plaintiffs' state law claims were completely preempted by federal law. CEC concurrently moved for judgment on the pleadings on the basis of federal preemption. In agreeing with CEC, the district court found that because the fulcrum issue turned on the interpretation of

---

[4] Specifically, the plaintiffs in *Mikulski* alleged as follows:

23. A shareholder's stock certificate constitutes a written contract…
24. Pursuant to relevant provisions of the Internal Revenue Code…, a corporation paying dividends to its shareholders is obligated to issue an accurate [IRS] Form 1099-DIV (or a substitute form) to its shareholders.
28. Thus, by virtue of its written contract with its shareholders, Centerior was contractually required to accurately report dividends and returns of capital to every shareholder. To the extent such contractual obligations may not be specifically stated in the written contract, such contractual terms are implied by operation of law.
29. Centerior breached its written contract with the Plaintiff class [ ] by misreporting to class members [ ] the portion of the 1986 distributions which constituted taxable dividends and the portion which constituted a return of capital.
30. Furthermore, in order for Centerior to fulfill its contractual obligation accurately to report shareholder dividends and returns of capital, Centerior had the additional obligation accurately to calculate its earnings and profits and the E&P of its subsidiaries.
31. Centerior also breached its written contract with the Plaintiff class [ ] when it inaccurately calculated earnings and profits for purposes of determining the portion of 1986 distributions which constituted taxable dividends, and thereby understated that portion of the distributions which constituted a return of capital.
32. Centerior's misreporting caused the members of the Plaintiff class [ ] to overpay their respective income taxes for 1986 and all other relevant periods.
33. As a direct and proximate result of such overpayment, the members of the Plaintiff class [ ] have been damaged in the amount of such overpayment, which damages can be calculated for each class member [ ] on a class-wide basis.
*Id.* at 562.

the Internal Revenue Code, jurisdiction was proper under either complete federal preemption or because the case raised substantial questions of federal law. The district court also rendered judgment on the pleadings based on: (1) the plaintiffs' failure to exhaust their remedies with the IRS and (2) on the ground that § 7422 – which provides for a private right of action against fraudulent filers of only certain types of informational returns – preempted any state law claims based on other types of incorrect, or even fraudulent informational returns. Plaintiffs appealed.

### iii. The Sixth Circuit Reverses The District Court

A three judge Sixth Circuit panel reversed all of the district court's findings. The entire panel agreed that the district court had erred in finding the plaintiffs' claims preempted by § 7422, and the majority held that the mere fact that plaintiffs' claims depended on the interpretation of a federal tax code provision was not sufficient to present a substantial federal question. CEC then petitioned for *en banc* review.

### iv. The Sixth Circuit's *En Banc* Opinion

The *Mikulski en banc* opinion makes several holdings that are directly contrary to the arguments NML has raised in this case:

- NML argues plaintiffs' claims are preempted because Internal Revenue Code § 7434 provides the exclusive remedy for persons who receive wrongful informational returns. And, because Forms 1098 are not included in the types of returns referenced in subdivision (f) of that statute, plaintiffs' cannot state a claim under that statute, or under state law. See Motion at p. 8. *Mikulski*, however, explicitly holds that Congress did not intend Internal Revenue Code § 7434 to be an exclusive remedy – "Even 26 U.S.C. § 7434, which creates a private right of action against a company submitting a fraudulent information return, does not purport to be **exclusive**." (Emphasis original). *Id. at* 501 F.3d 564. *Mikulski* thus holds that state law claims for damages resulting from overpayment of taxes due to wrongful informational returns can be pursued –

14CV1024-BAS-WVG

*whether or not the type of return at issue is covered by subdivision 7434*. As stated by the Court: "neither this section of the statute [§ 7434] nor the [Taxpayer Bill of Rights 2] contains any indication that Congress intended it to be the exclusive remedy for a fraudulent overstatement of taxable dividend distributions, so the plaintiffs' claims do not necessarily state a federal claim." *Id.* at 501 F.3d 563. The Court then concludes: "We find no indication that Congress intended this tax refund procedure to be a security holder's exclusive remedy for a company's misreporting of dividends." *Id.* at 501 F.3d 564.

- NML also argues plaintiffs' claims are preempted by § 7422(a) because they are supposedly seeking "a tax refund" from NML. Motion at p. 10:26-27. Not so. Section 7422(a) provides that no private action "shall be maintained in any court for the *recovery of any internal revenue tax alleged to have been erroneously or illegally <u>assessed or collected</u>*, or ... of any sum alleged to have been excessive or in any manner <u>*wrongfully collected*</u>, until a claim for refund or credit has been duly filed with the Secretary." (Emphasis added). But, NML did not assess or collect any tax. Rather, plaintiffs' claim is that it wrongfully *reported* the amount of mortgage interest it received. *Mikulski* squarely holds that § 7422(a) does not preempt state law claims against issuers of informational returns where the issuer is not "acting as a collection agent for or on behalf of the IRS." *Id.* at 501 F.3d 565. Expanding on the point, *Mikulski* states: "the mere fact that the plaintiffs' damages are calculated in terms of overpaid income taxes does not necessitate the conclusion that the plaintiffs' claim is one for a federal income tax refund." *Id.* at 501 F.3d 565. *Mikulski* concludes: "[P]laintiffs are not seeking a tax refund inasmuch as they are not accusing the IRS of any wrongdoing. Under the plaintiffs' theory, the IRS was an innocent third-party, who, like the plaintiffs themselves, merely relied on the 1099–DIVs issued by Centerior, while Centerior was the active (i.e., liable)

tortfeasor." *Id.* The same is true here. Plaintiffs are not seeking any relief from the IRS, or against any entity that has collected or assessed any tax on behalf of the IRS. As such, plaintiffs' claims are not preempted under § 7422(a).[5]

- NML argues that even if plaintiffs' claims are not expressly preempted under either §§ 7422 or 7434, this Court should still dismiss plaintiffs' claims under the doctrine of "complete preemption" because the IRS has exclusive jurisdiction to resolve their claims. See Motion at p. 12. As *Mikulski* points out, however, "complete preemption" is a limited rule." *Id.* at 501 F. 3d at 564. Where the language of the statutes shows no congressional intent to occupy the field exclusively, there will be no finding of complete preemption. *Id.*[6] Indeed,

---

[5] The cases cited by NML on this point actually support plaintiffs' position, and several cite Mikulski with approval. In *Brennan v. Southwest Airlines, Co.*, 110 F.3d 1200 (5th Cir. 1997) the defendant airline erroneously *collected an excise tax* that the law did not provide for. The Fifth Circuit found the claim preempted under § 7422(a), but made it clear that such preemption applies only when the suit alleges "someone wrongfully collects money as a tax." *Id.* at 134 F.3d 1410. In *Burda v. M. Ecker Co.*, 1990 WL 17075 (N.D.Ill. 1990) § 7422(a) preemption was found to preclude a client's suit against an insurance company for *withholding taxes on the attorney's fee portion of the settlement* – "The case law is unanimous in its conclusion that the remedy the Internal Revenue Code provides for wrongfully withheld money is exclusive and lies only against the United States. *Id.* at *6. The same rule was applied in *Umland v. PLANCO Financial Services, Inc.* 542 F.3d 59 (3d Cir. 2008) and *Crouch v. Guardian Angel Nursing, Inc.*, 2009 WL 3738095 (M.D.Tenn. 2009). Both involved suits to force employers to return money *wrongfully collected* in FICA taxes and both courts dismissed the claims because they found the employers were "collectors" of employment taxes. In doing so, the *PLANCO* court specifically distinguished its situation from *Mikulski*, stating: "the employer [in *Mikulski*] 'did not collect or withhold any taxes' and 'was not acting as a collection agent for or on behalf of the IRS.'" *Id.* at 542 F.3d 68 at fn. 10. Similarly, in *Fredrickson v. Starbucks Corp.*, 2013 WL 5819104 (D. Or. 2013), Starbucks was sued for wrongfully *assessing, collecting and withholding tip income* for taxes. The court also distinguished *Mikulski* and then threw out the pending claim, stating "The entire basis for the plaintiffs' claims against Starbucks is the company's estimation of employees' tip income, on the basis of which the company then calculates, withholds, and remits taxes." *Id.* at * 16. Here, unlike all of the cases cited by NML, *plaintiffs are not alleging that NML wrongfully assessed or collected any taxes*. Rather, just as in *Mikulski*, all plaintiffs are alleging is that they (as well as all others similarly situated) suffered damages because NML reported on Form 1098 the wrong amount of mortgage interest that they paid to NML.

[6] Ninth Circuit law is the same. *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858 (9th Cir. 2003) ("Complete preemption, however, arises only in 'extraordinary' situations… "The test is whether Congress clearly manifested an intent to convert state law claims into federal-question claims." *Id.* at 340 F.3d 862. As pointed out in

-7-                                                    14CV1024-BAS-WVG

precisely because the *Mikulski* court found plaintiffs' state law claims were not completely preempted, its ultimate holding was to remand the plaintiffs' state law claims back to state court.

- NML argues plaintiffs' claims should be dismissed because plaintiffs failed to exhaust all of their administrative remedies with the IRS. Motion at p. 7. *Mikulski*, however, holds that there is no such IRS exhaustion prerequisite to maintaining an action under state law against the issuer of an erroneous informational return because, as explained above, while the claim may be related to tax, it is not a tax claim. *Id.* at 501 F.3d 565.

- NML argues plaintiffs' claims should be dismissed under the doctrine of primary jurisdiction because the IRS has a paramount interest in the subject of this litigation. Motion at pp. 24-25. *Mikulski*, however, holds exactly the opposite. It says the IRS does *not* have a "substantial" interest in cases for damages arising from the issuance of incorrect informational returns by a private defendant. As put by the Court: "While the federal government may have an interest in the uniform application of regulations that relate to the collection of taxes, it has only a limited interest in private tort or contract litigation over the private duties involved in that collection. [Citation omitted]. The government's ability to collect taxes from an individual shareholder or a corporation is not affected by the resolution of the dispute between these two parties." *Id.* at 501 F.3d 570. The same is true here. This case does not involve NML assessing or collecting taxes on behalf of the government. As such, this is not a matter affecting taxes in which the IRS would have a paramount interest.

*Mikulski*, Congress knows how to draft statutes to provide exclusive jurisdiction and did not do so with either § 7422 or § 7434. Thus, complete preemption does not apply.

- NML argues plaintiffs' state law breach of contract and/or breach of the covenant of good faith and fair dealing claims should be dismissed because the duty to issue 1098 forms is not a specific term of NML's mortgage contracts. *Mikulski*, however, holds that it is sufficient for a complaint to allege that providing informational returns is an implied-in-law contractual term, which is exactly what plaintiffs have done here. *Id.* at 501 F.3d 562-563.

- Finally, *Mikulski* points out that even assuming plaintiffs' claims were preempted under § 7422 or § 7434, this would not affect plaintiffs' claims relating to any damages they suffered for overpayment of *state* taxes caused by the erroneous informational returns. *Id.* at 501 F.3d 565.

**B.    NML Improperly Calculates Mortgage Interest**

NML claims that it does not have to report deferred interest payments on Form 1098 because Plaintiffs' note says that such interest is "added" to principal.  Motion at 1:8-9.  But how plaintiffs' note describes such payments is irrelevant.  What matters is whether such payments are payments of "mortgage interest" *under tax law*.  *Motel Corporation, Smoker* and Revenue Ruling 77-135 all establish that they are.

In *Motel Corporation*, Motel Corporation ("MC") issued a mortgage to Barrett as part of Barrett's purchase of a motel owned by MC.  In 1962, Barrett's interest obligation under the note was $15,240.19, but Barrett only paid MC $12,000.  In short, Barrett deferred paying $3,240.19 in interest.  In 1963, Barrett made payments totaling $19,200.  This amount not only covered the $12,893.26 due in interest for 1963, but also more than covered the $3,240.19 interest shortfall from 1962.

In its tax return for 1963, MC relied on the same argument NML is making here, claiming that the $3,240.19 shortfall from 1962 was "added to the principal" of Barrett's loan, such that when that amount was finally repaid in 1963, it was not income to MC, but a repayment of principal.  The IRS rejected MC's position.  In siding with the IRS, the Tax Court made clear that interest does not change its

character from interest to principal simply because the borrower elects to defer payment of it past the date it was originally due. As the Tax Court put it:

> [W]e start from two basic premises. The first is that interest is compensation for the use of money. *Deputy v. DuPont*, 308 U.S. 488 (1940). The second is the fundamental proposition of tax law that in determining the tax treatment of a transaction, substance governs form. *Gregory v. Helvering*, 293 U.S. 465 (1935). Viewed substantively, we can perceive no reason why defaulted interest should be transformed into principal for purposes of tax law. Such interest, **no matter when paid**, is clearly compensation for the use of money, **and its character as such does not change merely because it is not timely paid**. The fact that a payment is not called 'interest' is not controlling for tax purposes if, in substance, it is such. See *Wilshire Holding Corporation v. Commissioner*, 262 F.2d 51 (C.A. 9, 1958).

*Id*. at 54 T.C. 1440. The Court further stated:

> Having concluded that defaulted interest does not become principal for tax purposes, we must next consider when such interest is treated as paid. Partial payments on a note are generally treated as first applying to interest and then to reduce principal. [Citations omitted]. This rule was expressly included in the Barrett note. Since each payment made in 1962 was less than the interest accrued and unpaid to the date of the payment, the entire amount of the payments made in that year were allocable to the payment of interest and taxable as such. Since $16,133.45 of the amounts paid in 1963 is applicable to interest accrued and unpaid at the date of the payments, that amount is allocable to the payment of interest in that year and taxable as such.

*Id*. In the Pembertons' case, there is no question that the amounts they elected to defer paying in earlier years were "interest" as defined above, i.e. money charged in compensation for the use of borrowed funds. Indeed, not even NML contests that if the Pembertons had timely paid the amounts they instead elected to defer, those amounts would have been included on the Form 1098's they received for those years. NML simply cannot magically "transform" the character of the Pembertons' obligation from interest to principal based exclusively on the time of repayment.

The recent *Smoker* case drives home the point. A consumer with an Option Arm loan tried to deduct the interest he had deferred, *but not paid*, during a calendar year. The Tax Court found in the IRS's favor that deferred interest is not deductible in the year it is accrued, but is only deductible in the year in which it is paid.

14CV1024-BAS-WVG

> Because the loan agreement at issue allowed petitioner to do just that, [defer interest], he may not deduct any accrued but unpaid interest until he actually discharges his obligation to pay the accrued interest by a cash or cash-equivalent payment.

*Id.* at *11-12. The Pembertons clearly made "a cash or cash-equivalent payment" to NML in 2013 which discharged a portion of the accrued interest they had incurred in prior years. Under *Motel Corporation* and *Smoker*, that payment was a payment of "mortgage interest" and thus should have been reported by NML on Form 1098.

Also supporting plaintiffs' position is Revenue Ruling 77-135, governing the deductibility of deferred interest paid on GPM's. GPMs are negative amortization loans like Option Arm loans, but instead of offering the customer an "option" to pay less than the interest due in any given month, GPMs provide a fixed schedule of payments which in the early years of the mortgage are less than the interest actually due, but "graduate" to higher amounts in order to recapture the interest previously deferred. For cash-basis taxpayers like plaintiffs, Revenue Ruling 77-135 holds:

> "…when the amount of the payments has increased to the extent that it now exceeds the current interest charge owed, the excess… will be treated as discharging first that part of the unpaid balance of the loan that represents accumulated interest carried over from prior years *and will be included in income by the mortgagee and deducted by the mortgagor as interest at that time*." (Emphasis added).

There is simply no logical distinction that can be made between payments of previously deferred interest under a GPM and under an Option ARM loan. Thus, while Judge Curiel statement in *Horn v. Bank of America, N.A.*, 2014 WL 1455917 (S.D.Cal. 2014) that the IRS has not issued a revenue ruling explicitly discussing the proper tax treatment for payments of deferred interest under Option Arm loans is true as far as it goes, it does not take NML anywhere close to victory. Revenue Ruling 77-135 provides the answer that NML's failure to include plaintiffs' payments of previously deferred interest on their 2013 Form 1098 was wrong.[7]

---

[7] Glossed over by NML is that Judge Curiel's statement came in the context of finally approving a class action settlement where *NML's predecessor to the loan at issue in this very case* agreed to change its Form 1098 reporting practices to include payments of deferred interest. Thus, as things now stand, plaintiffs' deferred interest payments

-11-

## C.    Plaintiffs' State Law Claims Are Not Preempted

Even before *Mikulski's* exhaustive treatment, (or the enactment of the Taxpayers Bill of Rights 2 (discussed infra)), the 5th Circuit in *Clemens* had already rejected the notion that recipients of informational returns such as Forms 1098 were precluded from suing the issuers to correct errors on the return (and for resulting accountancy fees) where, as here: (1) the recipient contacted the issuer prior to the lawsuit and pointed out the error; and (2) the issuer refused to correct the error.

In *Clemens*, the plaintiff sued his employer for accountancy fees and damages he incurred as the result his employer's incorrect information return (Form W-2) and his employer's failure to correct it after being requested to do so. The 5th Circuit rejected the employer's preemption defense and held that plaintiffs' claim boiled down to a private duty/breach analysis:

> The duty of those who file information returns does not end, however, when a form is filed, correct or incorrect. It extends to correction of any errors made, at least when the employee detects the error and calls on the form filer to correct the erroneous report.

*Id.* at 1394. Here, prior to filing their lawsuit, plaintiffs also requested that NML issue them a corrected Form 1098 and were refused. Complaint at ¶ 22.

> We hold, therefore, that persons who undertake the duty of filing information returns concerning their employees and ex-employees have a duty to act with reasonable promptness to correct erroneous information they have sent to the IRS when such errors come to their attention in order to prevent precisely the kind of injury Clemens suffered in this case: being subjected to an IRS audit and wrongfully assessed back taxes, penalties, and interest, then having to undergo the inconvenience and expense involved in straightening things out after the passage of time and intervening events have compounded the initial error. This duty must rest upon the person who files the return, because the person who is shown to have received income is powerless to correct the mistake by himself.

made in 2012 to Bank of America have been properly reported on Forms 1098, while their payments of deferred interest to NML in 2013 have not. Needless to say, it makes no sense that plaintiffs' interest payments on the same loan should be reported in two different ways by two different lenders. Also, Judge Curiel's statement was not an expression of opinion on the proper method for reporting repayments of deferred interest, as NML implies; Judge Curiel was merely pointing out that among the many reasons the settlement should be approved was because there was at least some level of risk from this issue if the case were litigated to conclusion.

**PLAINTIFF'S OPPOSITION TO NATIONSTAR MORTGAGE LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, STAY THE ACTION; REQUEST FOR LEAVE TO AMEND**

*Id.* at 1395.

*Buchanan v. Dowdy*, 772 F. Supp. 968 (S.D. Tex. 1991) follows the same rationale. It involved disputes arising out of the purchase of a travel agency. One of the disputes involved the issuance of a Form 1099 reporting the plaintiff had received more than $55,000 of income. After receiving the erroneous Form 1099, plaintiff's accountant wrote several letters requesting a correction. These requests were refused. The plaintiff retained an accountant to fix the problem. Relying on *Clemens*, the district court likewise held that issuers of informational returns have a duty to correct erroneous information sent to the IRS. When this issuer does not do so, it can be held liable for the damages caused by the error. Simply put, because the informational return does not directly involve taxes, but only the duty to report information, preemption never comes into play. As such, NML can be sued under state law theories for the wrong it committed.

### D. This Court Should Also Find There Exists An Implied Right Of Action Under § 6050H

The United States Supreme Court created a four-factor test for whether an implied private right of action exists "in a statute not expressly providing one." *Cort v. Ash*, 422 U.S. 66, 78 (1975). Courts must consider: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted—that is, [whether] the statute create[s] a federal right in favor of the plaintiff"; (2) whether "there [is] any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether the cause of action is "consistent with the underlying purposes of the legislative scheme"; and (4) whether "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." *Id.*

NML argues that there can be no implied right of action under § 6050H because the statute's purpose is exclusively to benefit the IRS. NML's reading is contrary to

the plain language of the statute, which not only requires issuers of Forms 1098 to provide copies of their filing to the government, *but also to the taxpayer*. The statute also requires issuers to include on the form "the name, address, and phone number of the information contact of the person required to make such return."

These reporting requirements to the taxpayer were added as part of the Taxpayer Bill of Rights 2. See H.R. REP. 104-506 at *76. These amendments were enacted precisely because "Taxpayers may encounter difficulties when a payor issues an erroneous information return and refuses to correct the information and report the change to the IRS…" *Id.* at *36. Since Congress's purpose in enacting this part of the Taxpayer Bill of Rights was to give taxpayers the right to challenge the issuers of erroneous informational returns, it is certainly implicit that if the issuer refuses to correct the error, taxpayers should be able to enforce the "rights" Congress gave to them in Court. After all, without that ability, there is no "right" at all. [8]

*First Pacific Bancorp, Inc. v. Helfer*, 2000 WL 1099791 (9th Cir. 2000) and *State of Washington, Dept. of Revenue v. WWW.Dirtcheapcig.com, Inc.*, 260 F.Supp.2d 1048 (W.D.Wash. 2003) should guide this Court's analysis. In *Helfer*, the Ninth Circuit found an implied right of action existed under 12 U.S.C. 1821(d)(15) because "The statute creates in shareholders the right to receive annual reports on the financial activities of the institution in receivership. That the FDIC is required to submit reports to the Secretary of the Treasury, the Comptroller General, and the appointing agency provides no basis for distinguishing the standing of those entities from the standing of shareholders." *Id.* at *13.

---

[8] NML cites *Gierbolini Rosa v. Banco Popular de Puerto Rico*, 930 F.Supp. 712 (D.Puerto Rico 1996) for its argument that § 6050H imposes no duty running from NML to plaintiffs. Aside from the fact that NML clearly has a legal duty to *accurately* report mortgage interest on Form 1098, *Gierbolini* is neither on point, nor is it inconsistent with *Mikulski, Clemens*, or *Buchanan*. Plaintiffs' case before this Court is not about whether plaintiffs' interest payments are in fact deductible; it is about requiring NML to <u>correctly</u> report the amount of interest it received from its borrowers. Plaintiffs agree that once NML correctly reports the amounts of mortgage interest paid to it, the issue of whether those amounts are deductible is between the taxpayer and the IRS to work out, which is the holding in *Gierbolini*.

-14-

14CV1024-BAS-WVG

Section 6050H similarly requires NML to provide reports both to the IRS *and* to taxpayers. The *Helfer* Court found a private right of action to be implied in such cases because, in the absence of allowing an accounting action, shareholders would be deprived of any means of enforcing the right to inspect corporation records. *Id*. at *3, 8 ("Congress would not create a right in the shareholders to access the financial reports without a concomitant expectation that the information itself would be available to examine.") The same is true here. Congress would not create a "right" to receive copies of Forms 1098 as part of the Taxpayer Bill of Rights without an expectation that the taxpayer could force the issuer to correct a mistake, especially after bringing the mistake to the attention of the issuer and been refused relief.

In *State of Washington*, the district court similarly found a private right of action existed under The Jenkins Act because it required internet sellers of cigarettes to report such sales to the tobacco tax administrators of the states in which the consumers resided and, like § 6050H, it also required the report to include the name and address of the seller. The district court found a private right of action existed because these "provisions reveal congressional intent to 'especially' benefit the states to whom the registration and reports are provided." *Id*. at 260 F.Supp.2d 1054. The same is again true here. Congress requires accurate 1098s to be filed, and it requires them to be sent to both the IRS and to the taxpayer.

These cases and the House Report show the first *Cort* factor is met – taxpayers are "especially" benefitted by § 6050H.

As to the second *Cort* factor, legislative intent, the argument is the same; the requirement that the taxpayer be sent a copy of the 1098 was imposed as part of the "Taxpayers' Bill of Rights II" which was intended to "promote and protect taxpayer rights." S. Rept. 100–309, at 1 (1988). Contrast this with the situation in *Cort*, where the "the protection of ordinary stockholders was "at best a secondary concern." *Cort*, *supra*, at 422 U.S. 81. Congress must have intended that taxpayers could enforce the

"rights" they were being given. Thus, finding an implied private right of action to correct erroneous returns that the issuer refuses to correct is not inconsistent with the legislative history of § 6050H. The second *Cort* factor is met.

Finding an implied right of action under § 6050H is also "consistent with the underlying purpose of § 6050H," namely allowing taxpayers and the government to arrive at the correct amount of taxes and deductions. Absent relief here, thousands of individual taxpayers will be forced to fight the government *to correct NML's error, year after year*, thus wasting the time and resources of both. While NML asserts that no private right of action should be found because the IRS has the power under § 6721(a) to impose penalties against NML for issuing incorrect informational returns, the fact that the IRS can levy penalties is no reason not to find that taxpayers, who are the other parties benefited by the amended reporting requirements of § 6050H should not also be allowed to pursue their rights under the Taxpayer Bill of Rights. This logic is especially compelling where a large institution like NML is repeating its wrongful reporting hundreds of thousands, or perhaps even millions, of times *year after year*. NML's position that each affected taxpayer should have to bear the burden of straightening out NML's error year in and year out makes no sense. Thus, the third Cort factor is met.

Finally, as recognized in *State of Washington*, the reporting of tax information is not an area "traditionally relegated to state law.'" *Id.* As such, the fourth *Cort* factor is met.

Once NML refused plaintiffs requests to correct the erroneous 1098s they received, they gained standing to sue NML – whether under state law, as held by *Mikulski, Clemens,* and *Buchanan*, or by virtue of an implied right of action under § 6050H and the Taxpayer Bill of Rights II because: (1) they were among the class the statute is intended to protect; (2) they are powerless to correct the error themselves; and (3) reporting of a different interest amount on their tax returns than what NML reports on Form 1098s would, as *Clemens* explicitly recognizes, raise a "red flag" for

the IRS to conduct an audit that would likely result in plaintiffs (and the government) having to incur substantial "inconvenience and expense." *Clemens* at 1393. But, even if this Court somehow finds that all of plaintiffs' state law claims are preempted, which they are not, the Court should nonetheless allow plaintiffs to proceed on an implied private cause of action under § 6050H.

### E. NML'S Primary Jurisdiction Argument Fails

"The primary jurisdiction doctrine allows courts to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir.2008). "[T]he doctrine is a 'prudential' one, under which a court determines that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry, rather than by the judicial branch." *Id.* Where, as here, the doctrine is invoked at the motion to dismiss stage, the question is 'whether the complaint plausibly asserts a claim that would not implicate the doctrine.' *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1252 (9th Cir.2009), rev'd on other grounds, —— U.S. ——, 131 S.Ct. 1342, 179 L.Ed.2d 457 (2011).

*Clark v. Time Warner Cable*, 523 F.3d 1110, 1114-1115 (9th Cir. 2010) holds that the doctrine applies only "in a limited set of circumstances… [and] is to be used only if a claim 'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" While NML claims this case meets this standard, this Court should not be so easily led astray.

First of all, where the material issues being litigated are primarily legal and not factual, the doctrine does not apply. This rule was first established by the Supreme Court in *Great Northern Ry. Co. v. Merchants' Elevator Co.*, 259 U.S. 285, (1922). There, the issue was whether certain types of "disposition orders" fell within an exemption provision of a tariff. If so, the shipper would not have to pay a $5.00 per

car reconsignment fee; if not, the fee would have to be paid. Justice Brandeis held that "(e)very question of the construction of a tariff is deemed a question of law . . ." and that questions of law, unlike questions of fact, are originally cognizable in the courts without preliminary resort to any agency." *Id.* at 259 U.S. 289-90. See also *Federal Maritime Bd. v. Isbrandtsen Co.*, 356 U.S. 481, 521 (1958) ("where a decision of a case depends on determination of a question of law…, the doctrine of primary jurisdiction has no function."[9]

This case also presents a narrow and binary legal question, namely does deferred mortgage interest plaintiffs paid to NML in 2013 qualify as "mortgage interest" reportable under § 6050H. If it does, then the amount of such interest should have been reflected on plaintiffs' Form 1098; if not, then no such reporting was required. No factual question needs to be addressed. Indeed, when the *Horn* plaintiffs presented their complaint to the IRS, it refused to act because it was a "legal matter":

> In reviewing your submission, we determined it is not an issue under the purview of the Systemic Advocacy Program. The issue does not fall within the structure of a systemic problem, but rather <u>involves interpretation of legal matters</u>. (Emphasis added).

See Plaintiffs' Request for Judicial Notice. It is also worth noting that although the Justice Department received notice of the *Horn* settlement pursuant to CAFA (28 U.S.C. § 1715), the IRS chose not to intervene. *Horn, supra,* 2014 WL 1455917 at *4. It is thus a fair inference from the IRS's decision (twice) not to involve itself in

---

[9] Lower federal courts follow this rule routinely. *See, e.g. I. C. C. v. Big Sky Farmers and Ranchers Marketing Co-op. of Mont.*, 451 F.2d 511, 515 (9th Cir. 1971) ("The doctrine of primary jurisdiction is inapplicable to this case; the material issues being essentially legal, not factual, they are not peculiarly within the field of the Commission's special expertise, but are the sort properly referred in the first instance to judicial consideration and decision"); *EnviroNMLental Technology Council v. Sierra Club*, 98 F.3d 774, 789 (4th Cir. 1996) ("The EPA's special expertise is not needed to decide a question of law"); *Apple Computer, Inc. v. Podfitness, Inc.*, 2007 WL 1378020 (N.D.Cal. 2007) (Primary jurisdiction limited to factual issues); *Central Valley Chrysler-Jeep, Inc. v. Witherspoon*, 2005 WL 2709508 (E.D.Cal. 2005) (Primary jurisdiction does not apply to issues of statutory construction because "[t]here is no principle of administrative law requiring a court to await an agency's interpretation of the law before the court interprets the law"; *U.S. v. 43.47 Acres of Land*, 45 F.Supp.2d 187 (D.Conn. 1999) ("the doctrine's usefulness decreases in proportion as legal issues predominate over factual.") *Daniels-Hall v. National Educ. Ass'n*, 2008 WL 2179530 (W.D.Wash. 2008) (declining to invoke primary jurisdiction since issue in dispute was purely legal).

what was an essentially identical case, that it does not view such suits as stepping on its jurisdictional toes.

NML's primary jurisdiction argument also fails because the issue presented by this case is not a matter of first impression; the IRS has already found (in Revenue Ruling 77-135) that previously deferred interest that is then repaid is "mortgage interest" and so have the courts in *Motel Corporation* and *Smoker.* The parallel between the tax treatment of payments of deferred interest in GPMs and Option ARM loans is exact. Since the IRS has already found that previously deferred interest is still "mortgage interest" when it is repaid, there is no reason why this Court would need to refer this (purely legal) issue to the IRS for an echo of its earlier ruling.

### F. <u>Plaintiffs' Negligence Claims Is Well Stated</u>

NML claims that plaintiffs cannot state a negligence claim because "Nationstar's only duty in issuing Forms 1098 was owed to the IRS." Motion at p. 20:10-11. NML does not challenge any of the other elements required for a negligence claim other than the existence of a duty. But plaintiffs have already shown in prior sections of this brief that NML did in fact owe a duty to plaintiffs to accurately report their payments of mortgage interest and that on exactly this theory, the Fifth Circuit in *Clemens* allowed the plaintiff to proceed on his negligence claim. So should the Court here. Though that case was decided under Louisiana law, the elements required to establish a cause of action for negligence in that state are the same as in California – that the defendant negligently breached a duty owed to the plaintiff and that as a proximate result of that breach the plaintiff suffered damages. *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917–918 (1996). Plaintiffs have properly alleged all of these elements.

### G. <u>Plaintiffs Have Stated A Breach of Contract Claim</u>

NML's primary argument that it has not breached its contract with the plaintiffs is again premised on the contention that the contract provides that deferred interest is

**PLAINTIFF'S OPPOSITION TO NATIONSTAR MORTGAGE LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, STAY THE ACTION; REQUEST FOR LEAVE TO AMEND**

"added" to the principal balance of the loan. But this does not excuse the contractual term implied by law, that NML will accurately report "mortgage interest" payments as defined by § 6050H.

A contract is either express or implied. Cal. *Civil Code* § 1619. The terms of an express contract are stated in words. *Id*. at § 1620. But this is not the limit of the express terms of a contract. "[A]ll applicable laws in existence when an agreement is made necessarily enter into the contract and form a part of it, without any stipulation to that effect, as fully as if they were expressly referred to and incorporated in its terms." *Grubb v. Ranger Ins*. Co., 77 Cal.App.3d 526, 529 (1978). (This would of course include § 6050H's duty to *accurately* reporting mortgage interest payments). Thus, NML's argument that the language of its contract does not incorporate the requirements of § 6050H – Motion at 15 – is simply incorrect.

The existence and terms of a contract can also be implied and manifested by conduct. *Id*. at § 1621. A contract implied in fact "consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." *Silva v. Providence Hospital of Oakland*, 14 Cal.2d 762, 773 (1939). Even when a written contract exists, "[e]vidence derived from experience and practice can now trigger the incorporation of additional, implied terms." *Scott v. Pacific Gas & Electric Co.*, 11 Cal.4th 454, 463 (1995), quoting *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 679 (1988).[10] Whether the parties' conduct creates such implied agreements is generally "a question of fact." *and hence inappropriate for resolution on a motion to dismiss. Solid Host, NL v. Namecheap, Inc.*, 652 F.Supp.2d 1092, 1119 (C.D.Cal. 2009); *Goodrich & Pennington Mortg. Fund, Inc. v. Chase Home Finance, LLC*, 2008 WL 698464 *7 (S.D.Cal. 2008)

---

[10] *Foley* also makes clear that contract terms can be imposed by law – "numerous legislative provisions have imposed obligations on parties to contracts which vindicate significant social policies extraneous to the contract itself." *Id*. at 700. Section 6050H requiring lenders to report to the IRS the amount of interest the borrower has paid is clearly exactly the sort of provision *Foley* is talking about.

14CV1024-BAS-WVG

("Whether or not an implied contract has been created is determined by the acts and conduct of the parties and all the surrounding circumstances involved and is a question of fact.")

California's courts have explicitly held that "loan transactions between a mortgage finance company and the plaintiff involve 'more than the provision of a loan; they also include [the] financial services [of managing the loan].'") *Hernandez v. Hilltop Financial Mortg., Inc.*, 622 F.Supp.2d 842, (N.D.Cal. 2007), quoting *Jefferson v. Chase Home Finance LLC*, 2007 WL 1302984, at *3 (N.D.Cal. 2007). Plaintiffs submit there is at least a question of fact as to whether part of managing plaintiffs' loans -- and implicit in their contract – is the duty to provide *accurate* Forms 1098, which NML failed to do. *Mikulski* agrees with this theory. "Under the plaintiffs' theory, the IRS was an innocent third-party, who, like the plaintiffs themselves, merely relied on the 1099–DIVs issued by Centerior, while Centerior was the active (i.e., liable) tortfeasor… The same reasoning applies to the plaintiffs' breach of contract claim." *Id.* at 501 F.3d 565.

California law has also long held that "[i]t is appropriate to consider extrinsic evidence for the purpose of determining whether an ambiguity exists." *Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co.*, 69 Cal.2d 33, 37 (1968). That two banks are reporting in two different ways under the same contract is strong evidence that the contract is at least ambiguous. In *National Basketball Ass'n v. SDC Basketball Club, Inc.*, 815 F.2d 562, 569 (9th Cir.1987) (past practice evidence is admissible in the face of an ambiguous contract). "In cases of uncertainty . . . the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654. In this case, that party is NML. *Victoria v. Superior Court*, 40 Cal. 3d 734, 745 (1985). *In re Pico*, 2011 WL 3501009 at *3 (Bkrtcy.S.D.Cal. 2011) (successor corporation held bound to its predecessor's ambiguity).

Additional extrinsic evidence exists as to the custom and practice in the industry of how to report payments of deferred interest. Plaintiffs are prepared to allege that Wells Fargo, JPMorgan Chase and IndyMac Bank all report on Forms 1098 payments of deferred mortgage interest. *Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.*, 4 Cal.App.4th 1538, (1992) (extrinsic evidence admissible to prove parties' intention as to the term "based on.") Plaintiffs must be allowed to take discovery on all these issues.

### H. NML Breached The Covenant of Good Faith

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Rest.2d Contracts, § 205. "The essence of the good faith covenant is objectively reasonable conduct." *Lazar v Hertz Corp.*, 143 Cal.App.3d 128, 141 (1983). "The issue of whether the implied covenant of good faith and fair dealing has been breached is ordinarily a question of fact unless only one inference [can] be drawn from the evidence." *Haggarty v. Wells Fargo Bank, N.A.*, 2011 WL 445183 at *3 (N.D.Cal. 2011).

The covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract. *Love v. Fire Ins. Exchange*, 221 Cal.App.3d 1136, 1153 (1990). NML cites *Guz v. Bechtel Nat., Inc.*, 24 Cal.4th 317, 349-350 for the proposition that plaintiffs cannot state a claim for breaching the implied covenant because plaintiffs are trying to impose substantive duties beyond the contract's terms. Not so. The Ninth Circuit has held that a breach of a specific contractual provision is not a necessary prerequisite to a claim for breach of the implied covenant of good faith and fair dealing. *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 937-938. "'The covenant is implied . . . to prevent a contracting party from engaging in conduct which (while technically not transgressing the express covenant) frustrates the other party's rights

**PLAINTIFF'S OPPOSITION TO NATIONSTAR MORTGAGE LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT, OR IN THE ALTERNATIVE, STAY THE ACTION; REQUEST FOR LEAVE TO AMEND**

of the benefit of the contract.' *Los Angeles Equestrian Ctr., Inc. v. City of Los Angeles* (1993) 17 Cal.App.4th 432, 447." As stated, NML has an express, or at least an implied contractual duty to report plaintiffs' mortgage interest payments. Plaintiffs are not straying from that duty when they allege NML breached the implied covenant by failing to *accurately* report their 2013 mortgage interest payments on Form 1098.

"Where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing." *Perdue v. Crocker National Bank*, 38 Cal.3d 913, 923 (1985). Thus, if a party exercises its discretionary authority in bad faith for the purpose of frustrating the other party's legitimate expectations, it has breached the implied covenant of good faith and fair dealing. *Commercial Union Assurance Cos. v. Safeway Stores, Inc.*, 26 Cal.3d 912, 918 (1980).

The holding in *Crescent Woodworking Co., Ltd. v. Accent Furniture, Inc.*, 2005 WL 5925586 at * 3-4 (C.D.Cal. 2005) applies the *Perdue* principles in a context similar to this one. Counter-claimant, Accent, entered into a contract to sell Chinese furniture to the counter-defendant, Crescent. In January 2004, the U.S. International Trade Commission found that the United States furniture industry was threatened by Chinese imports and increased the import duty from 10.98% to 198.08% after a given date. Importing firms like Crescent could avoid the new duty, however, by answering a confidential questionnaire. Accent alleged that it asked Crescent to complete the questionnaire, but that Crescent never did so. When part of the goods arrived after the newly imposed duty went into effect, Accent refused to pick them up because of the new duty rate. Crescent sued Accent and Accent counterclaimed based, *inter alia*, on Crescent's breach of the implied covenant. Crescent moved to dismiss Accent's counter-claim.

In denying Crescent's motion, the district court held that even though there was no obligation in the contract to fill out the questionnaire, Accent properly stated a

claim for breach of the covenant of good faith and fair dealing. "Whether or not Crescent completed a questionnaire would not have affected the timeliness of the goods. However, a completed questionnaire would have at least reduced the level of duties imposed and would have allowed the parties to come closer to fulfillment of contract purposes. A 10.98% duty has different implications than the 198.08% duty that was ultimately imposed. This is the sort of conduct that the covenant of good faith and fair dealing was meant to protect against." *Id.* 2005 WL 5925586 at *4.

The situation is the same here. Even if NML had the discretion to choose to exclude payments of deferred interest (which it did not under well-recognized tax law principles), the fact is that doing so without giving notice to its borrowers about the significant detriment the policy would cause is just the sort of activity that the covenant is "meant to protect against."

## I.  Plaintiffs' Fraud Claim Is Well Stated

NML first argues that plaintiffs' fraud claim should be dismissed because its under-reporting of mortgage is not a representation of fact, but rather is an opinion of federal law. Motion at 18:8-11. It then argues plaintiffs have not alleged any facts showing that NML intended to deceive them. *Id.* at 18:15-23. Both arguments fail.

### i.  NML Is Misrepresenting A Fact – The Amount Of Interest It Receives.

Plaintiffs have alleged exclusively factual misrepresentations, i.e. the amount of interest that plaintiffs paid. See Complaint, Paragraphs 7-12. To the extent that NML argues that it had to resolve a matter of law in order to make the factual representation, and therefore the representation was essentially a representation of the law, Restatement of Torts, 2nd § 545 refutes NML's position.

§ 545. Misrepresentation Of Law

(1) If a misrepresentation as to a matter of law includes, expressly or by implication, a misrepresentation of fact, the recipient is justified in relying upon the misrepresentation of fact to the same extent as though it were any other misrepresentation of fact.

(2) If a misrepresentation as to a matter of law is only one of opinion as to the legal consequences of facts, the recipient is justified in

-24-

relying upon it to the same extent as though it were a representation of any other opinion.

NML, after carefully calculating the number it wanted to report on the 1098 forms it issued, has been intentionally telling all of its borrowers, including plaintiffs, that NML received a lesser amount of mortgage interest than they in fact did receive. These hundreds of thousands, if not millions, of misrepresentations were factual, not legal. And they were facts solely within the knowledge of NML.

### ii.   NML Knows, Or Should Know, Its Policy Was Wrong.

NML argues that it cannot be held liable for any intentional misrepresentation because it thought it was acting correctly. This strains credulity. Even now, NML cannot cite a single authority supporting its policy. *Motel Corporation* came out in 1970. In 1977, Revenue Ruling 77-135 was published. Detracting further from NML's position that it is acting in good faith is that even now it is persisting in its refusal to change its policy and correct its misrepresentations -- even after BANA, its predecessor in interest, changed its policy to correctly report the amounts of interest plaintiffs paid to it.

Given the wealth of legal authority existing prior to the NML's issuance of its Form 1098 to plaintiffs, and the fact that there has been no recent change in the tax laws or court rulings that would support NML's position, it is certainly reasonable to allege that NML knew its actions were wrong and that it intentionally went forward and issued erroneous 1098s without regard to the harmful effects its action would have on its borrowers.

Plaintiffs have further alleged a motive for Nationstar's fraud in Paragraphs 18 and 19 of their complaint, namely:

18.      Plaintiff alleges on information and belief that the reason Nationstar is wrongfully reporting plaintiffs' interest payments and those of other class members is for its own financial benefit. It is alleged that Nationstar knowingly started to purchase Option Arm Mortgages that had a separately reportable income component to the seller (i.e. the unpaid deferred interest) which would be reportable by the seller (in the case of plaintiffs' loan BANA) as income, with the

intent to convert it into an asset note only such that there was no separately reportable income component.

19. Through its purchase Nationstar effectively transformed interest to principal without notice to borrowers, in direct violation of IRS regulations, and for its own pecuniary benefit to the direct harm and detriment of the borrowers.

These allegations are sufficient to state a claim for intentional fraud under California law. NML's protestation is nothing more than an alleged affirmative defense to be proven at trial.

**J.      Plaintiffs Have Stated A Claim Under Cal. Bus. & Prof. Code § 17200**

California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 et seq.), prohibits business acts or practices that are "unlawful," "unfair," or "fraudulent."  Each of these prongs constitutes a separate and independent cause of action.  *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999).  NML has violated the first two of these prongs.

The UCL's "unlawful" prong is essentially an incorporation-by-reference of all other state, federal, and even local laws. *Cel–Tech* at 20 Cal.4th 539–40.  Plaintiffs have already explained how NML is improperly reporting mortgage interest in violation of § 6050H.  Even if this Court determines that there is no private right of action under § 6050H, NML's violation of that statute can still serve as the predicate for a UCL violation.  *In re Farm Raised Salmon Cases*, 42 Cal.4th 1077, 1095-1096 (2008) (claims can be based on California laws incorporating federal statutes even if the federal statute itself does not provide for a private right of action.)

As to the "unfair" prong, California law holds that a practice may be deemed unfair even if not specifically proscribed by law.  *Boschma v. Home Loan Ctr., Inc.*, 198 Cal.App.4th 230, 252 (2011).   To determine whether a business practice is "unfair," the California Supreme Court has not yet established a firm test. *Cel–Tech*, *supra*, 20 Cal.4th at p. 187, fn. 12.  The most common approach applies the three factors constituting unfairness in the Federal Trade Commission Act: (1) the injury

must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) the injury must be one that the consumer could not reasonably have avoided. *Camacho v. Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1402-1403 (2006). Other courts, however, have found business practices to be unfair under the UCL when they violate public policy as declared by "specific constitutional, statutory or regulatory provisions," or when a practice is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Bardin v. DaimlerChrysler Corp.*, 136 Cal.App.4th 1255, 1260–61 (2006). Under any of these tests, plaintiffs' complaint states a cause of action.

First, it is obvious that the injury to consumers is substantial. Potentially billions of dollars in lawful tax deductions are being denied to borrowers as a result of NML's wrongful practice. Second, *Motel Corporation* and the other authorities cited herein demonstrate there is no legal justification for NML's revised method for calculating reportable mortgage interest. Third, as demonstrated by the IRS' rejection of other tax-payers' attempts to resolve the situation themselves, consumers are helpless to avoid the damaging effects of NML's practice. Finally, NML does not offer any valid justification to defend its practice. Rather, it appears to have been a decision borne solely out of expediency after NML took over plaintiffs' loan from BANA. These facts establish a violation of the UCL's "unfair" prong.

### K.    The Claim For Declaratory Relief Is Proper

NML claims that 28 U.S.C. Section 2201(a) divests this Court of jurisdiction to enter declaratory relief because plaintiffs' is supposedly a suit "with respect to federal taxes." Motion at 23:16-7. *Mikulski* shows why it is not. Plaintiffs' case has nothing to do with NML assessing or collecting taxes. Plaintiffs' claims have nothing to do with whether mortgage interest paid by Plaintiffs' or class members is tax deductible. NML's secondary argument is that declaratory judgment relief is discretionary and

that the facts of this case do not warrant the exercise of that discretion because "resolution of the Pemberton's claims would not eliminate any controversy". Motion at 24:9-10. This statement is both untrue and misstates the standard for declaratory judgment.

Although declaratory relief is discretionary, courts liberally grant such relief when it will "serve a useful purpose in clarifying the legal relations in issue or terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Tierney v. Schweiker*, 718 F.2d 449, 456 (D.C.Cir.1983). The seminal case on federal declaratory relief is *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) where the Supreme Court identified three factors governing the proper exercise of discretion. First, declaratory judgment should not be utilized to needlessly determine complex state law issues. *Id.* at 316 U.S. 497. Here, there are no complex issues of state law presented. Second, the declaratory judgment statute should not be used as a forum shopping device to avoid state court. *Id.* at 495. Here, there are independent grounds for federal jurisdiction. (Indeed, when claims for which there is federal jurisdiction are joined with an action for declaratory judgment, district courts should not, as a general rule, decline to entertain the claim for declaratory relief. *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991)). The final *Brillhart* factor is the avoidance of duplicative litigation. Here, plaintiffs still have their loan with Nationstar and they will be receiving Forms 1098 along with other class members year after year. Declaratory judgment will thus promote judicial efficiency by avoiding multiplicity of actions between not only the named parties in this complaint, but also the thousands of class members who may still be unaware of NML's wrongful conduct. *Id.*

## IV.  **CONCLUSION**

What is galling about NML's motion is its claim that the burden of correcting what is indisputably *its* wrong should fall, not on NML, but upon its tens of thousands

of negatively-affected borrowers. Cutting a malignant vine at the root is clearly preferable to picking off individual diseased leaves as other branches continue to grow. Plaintiffs allege in their complaint that the IRS accepts at face value the amounts appearing on the lender-issued Forms 1098 that it receives and that it has a policy of automatically rejecting any tax returns that claim a different amount of mortgage interest than appears on the tax-payer's Form 1098. See Complaint, ¶ 13. NML's argument, that the only avenue of redress available to each of the thousands of borrowers affected by NML's wrongful reporting is to individually challenge the IRS while NML not only sits on the sidelines, but compounds the problem *year after year* by issuing more and more erroneous 1098s, is not only ludicrous but also outrageous.

Making matters worse, because of the difficulty in calculating the proper allocation between the payment of interest and principal on mortgages since the amounts literally change every month, most borrowers (and their tax professionals) do not cross check their lender's computations; they simply accept the amounts reported on the lender issued Forms 1098. Complaint at ¶ 13. Thus, absent this case being allowed to proceed, the vast majority of NML's borrowers will never even discover NML's wrongful reporting, and will simply lose forever the hundreds if not thousands of dollars in interest deductions to which they are absolutely entitled. This is especially so because of the three-year statute of limitations for filing amended tax returns imposed by § 6511(a). Fortunately, this Court is not bound by NML's callous disregard of its borrowers' financial interests and has the power to correct the problem, which is NML's reporting policy, at the source.

"Motion[s] to dismiss for failure to state a claim [are] viewed with disfavor and [are] rarely granted." *Morales v. Cate*, 757 F.Supp.2d 961, 964 (N.D.Cal. 2010), quoting *Hall v. Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986). "[I]t is only the extraordinary case in which dismissal is proper." *United States v. Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981). To survive this motion, plaintiffs only need to have

alleged facts sufficient "to raise a right to relief above the speculative level" and/or "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Accepting all of the complaint's allegations as true and construing them in the light most favorable to plaintiffs (*Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003), plaintiffs submit that their Complaint clearly states claims that are "plausible." Should the Court, however, find pleading deficiencies in their Complaint, plaintiffs respectfully ask this Court for leave to amend.

Date: July 14, 2014                    MORRIS POLICH & PURDY LLP


                                       By: _____*s/ David J. Vendler*_____
                                              David J. Vendler
                                              E-mail: dvendler@mpplaw.com

                                       MICHAEL R. BROWN, APC
                                       Michael R. Brown, Esq. (SBN 65324)
                                       Email:   mbrown@mrbapclaw.com
                                       18101 Von Karman Avenue, Suite 1900
                                       Irvine, California 92612
                                       Tel.:  (949) 435-3888
                                       Fax:  (949) 435 3801

                                       Attorneys for Plaintiffs MICHAEL
                                       PEMBERTON and SANDRA COLLINS-
                                       PEMBERTON and all others similarly situated