1  MORRIS POLICH & PURDY LLP
   David J. Vendler, Esq. (SBN 146528)
2  Email:      dvendler@mpplaw.com
   1055 West Seventh Street, Suite 2400
3  Los Angeles, California 90017
   Tel.:   (213) 417-5100
4  Fax:   (213) 488-1178

5  MICHAEL R. BROWN, APC
   Michael R. Brown, Esq. (SBN 65324)
6  Email:      mbrown@mrbapclaw.com
   18101 Von Karman Avenue, Suite 1900
7  Irvine, California 92612
   Tel.:   (949) 435-3888
8  Fax:   (949) 435 3801

9  Attorneys for Plaintiffs, MICHAEL PEMBERTON
   and SANDRA COLLINS-PEMBERTON
10 and all others similarly situated

11

12                **UNITED STATES DISTRICT COURT**

13              **SOUTHERN DISTRICT OF CALIFORNIA**

14

15 MICHAEL PEMBERTON and              Case No.:  14CV1024-BAS-WVG
   SANDRA COLLINS-PEMBERTON,
16 individually, and on behalf of the class   **FIRST AMENDED CLASS ACTION**
   of all others similarly situated,         **COMPLAINT FOR:**
17

18              Plaintiffs,            1. **BREACH OF CONTRACT**
                                       2. **BREACH OF THE COVENANT**
19                                        **OF GOOD FAITH AND FAIR**
   vs.                                    **DEALING**
20                                     3. **VIOLATION OF 26 U.S.C.**
                                          **§ 6050H**
21 NATIONSTAR MORTGAGE LLC, a         4. **VIOLATION OF UNFAIR**
   Federal Savings Bank,                 **COMPETITION LAW**
22                                     5. **DECLARATORY RELIEF**
                                       6. **INJUNCTIVE RELIEF**
23              Defendant.             7. **FRAUD**
                                       8. **NEGLIGENCE**
24

25                                        **DEMAND FOR JURY TRIAL**

26

27

28

                              -1-
         **FIRST AMENDED CLASS ACTION COMPLAINT**

NOW COME Plaintiffs Michael Pemberton and Sandra Collins-Pemberton ("Plaintiffs"), who, on behalf of themselves and all others similarly situated (collectively "Class Members"), complain as follows against Defendant Nationstar Mortgage LLC ("Nationstar" or "Defendant").

## I.

## SUMMARY OF THE ACTION

1.     For almost all owners of real property, the mortgage interest deduction is their largest single tax deduction and can amount to hundreds, thousands, or even tens of thousands of dollars per year in tax savings.  The Internal Revenue Service ("IRS"), tax-payer-borrowers, and accounting professionals all rely on lender-issued IRS Forms 1098 to determine the amount of mortgage interest the tax-payer-borrower(s) have paid during a given year so as to know how much can be deducted from his/her/their gross income pursuant to 26 U.S.C. Section 163(a).  The statute that requires lenders to issue Forms 1098 is 26 U.S.C. § 6050H.  It states that lenders must report on Forms 1098 the amount of mortgage interest they "receive" if the amount is over $600.

2.     This case arises from Nationstar's systematic violation of 26 U.S.C. § 6050H.  More specifically, Plaintiffs contend that Nationstar has been failing to report millions of dollars in mortgage interest that it has actually received from consumers holding negative amortization "Option Arm" loans.[1]  Nationstar's

---

[1] An "Option Arm" loan provides borrowers with four (4) different payment "options" in any given month.  The first "option" is to make a full payment of the principal and interest due under the note.  The second "option" is to pay "Interest Only."  A third "option" is to pay the "Minimum Payment," which may be, and often is, less than the interest then due on the note.  A fourth "option" is to make accelerated payments on a 15-year amortization schedule.  The marketing objective of the "Option ARM loan" was to allow consumers to minimize their monthly payment so that they could "afford" to purchase a home based upon their available cash flow.  Thus, consumers with these loans overwhelmingly chose the "Minimum Payment" option.

1    intentional concealment of its improper and illegal reporting practice has not only
2    caused tens of thousands of tax-payers to unknowingly file erroneous tax returns --
3    which will have to be unwound at substantial cost -- but may have also caused some
4    Class Members the damage of *permanently* losing valuable tax deductions by virtue of
5    the passage of the 3-year statute of limitations for amending tax returns imposed by 26
6    U.S.C. § 6511.

7

8    **II.**

9    **HOW NEGATIVE AMORTIZATION LOANS WORK**

10        3.    Nationstar is one of the nation's leading mortgage servicing companies.
11   As part of its business, it has originated and/or acquired thousands of "negative
12   amortization" loans, both in California and nationally.  Negative amortization loans
13   generally provide the borrower the option in any given month to pay a "Minimum
14   Payment," which is generally, but not always, less than the interest due for the month.
15   This is why loans with negative amortization features are often referred to as "Option
16   ARM" loans.  In Plaintiffs' case, Nationstar acquired Plaintiffs' loan from Bank of
17   America, N.A. ("BANA") pursuant to an agreement with Nationstar which Plaintiffs
18   allege on information and belief became effective January 31st, 2013.  BANA had in
19   turn    acquired    Plaintiffs'    loan    from    Countrywide    Financial    Corporation
20   ("Countrywide") in or about 2008.  Plaintiffs allege on information and belief that
21   Countrywide acquired Plaintiffs' loan from First Magnus Financial Corporation
22   ("Magnus"), the originating lender, sometime in 2005-2006.

23        4.    Because negative amortization loans were primarily marketed to
24   consumers who wanted to minimize their monthly payment so they could "afford" a
25   home that would otherwise be too expensive for them based upon their available cash
26   flow,    borrowers    with    negative    amortization    loans,    including    Plaintiffs,
27   overwhelmingly chose the "Minimum Payment" option when selecting which
28   "option" to pay in any given month.  This way, they could lower their monthly

**FIRST AMENDED CLASS ACTION COMPLAINT**

payment to an amount they could manage by "deferring" (for months or even years) some interest that would otherwise have been due in the month of their payment. The interest that was "deferred" would then be added to the loan balance to be paid back later, (with additional interest at the same rate as the principal). Many people thus took these loans with the express idea that they would be deferring tax deductible interest until a later time, when the deduction would be available to them.

5.     Choosing the "Minimum Payment" option would usually, but not always, result in negative amortization, meaning that as interest was deferred, the overall loan balance would increase rather than decrease. (However, in or about 2009, interest rates and the mortgage indexes plummeted and this caused a situation where the interest rate on some consumers' loans may have "adjusted" to a rate where the monthly interest obligation fell below the level of the "Minimum Payment." If this happened, the positive difference between the "Minimum Payment" and the monthly interest due would be allocated first to paying back any previously deferred interest, and then to principal).

6.     Generally, a limit of 115% of the original principal amount was placed on the amount of negative amortization consumers were allowed to incur. It is not known exactly in which tax-year Nationstar first began offering or servicing negative amortization loans, but such loans first began to flood the consumer market in or about 2004.

## III.

## PLAINTIFFS' INDIVIDUAL FACTUAL ALLEGATIONS

**A.     Plaintiffs' Negative Amortization Note**

7.     Plaintiffs together own a single family home located at 13152 Ooti Ct., Grass Valley, California, which was their primary residence. On or about November 30, 2005, Plaintiffs obtained a negative amortization loan from Magnus in the amount of $461,500. That note was subsequently sold to Countrywide Financial Corporation,

and then to BANA, and then in or about July 1, 2013 to Nationstar.  The original note for Plaintiffs' loan is attached hereto as Exhibit "A" hereto and incorporated in full by this reference.

8.    Plaintiffs' 40-year negative amortization adjustable rate mortgage ("ARM) loan with Magnus provided Plaintiffs with a "Minimum Payment" option previously described.  Plaintiffs took advantage of the "Minimum Payment" option which resulted in negative amortization during the loan's pendency with Magnus, Countrywide and/or BANA.

9.    At the time Nationstar took over Plaintiffs' loan, and because of the negative amortization from earlier years, Plaintiffs' loan-balance was $469,075.41, or approximately $7,575.41 *above* the original principal amount of the loan.  *The entirety of this $7,575.41 was charged as interest for the use of the original principal*.  This interest was incurred, but not paid, by the Plaintiffs in earlier years of their loan.

10.    Since Nationstar took over Plaintiffs' loan, Plaintiffs have made all payments required under their note to Nationstar.  During tax year 2013, Plaintiffs' payments to Nationstar totaled $14,390.46.  This amount included $2,292.66 in taxes owed separately from the interest and principal due under the note.

11.    In or about February 2014, Plaintiffs received a Form 1098 from Nationstar supposedly reflecting the amount of mortgage interest that it had received from Plaintiffs during tax-year 2013.  But even though Plaintiffs had paid $12,097.80 (excluding the $2,292.66 paid to Nationstar in taxes) on their note during 2013, the Form 1098 they received reflected only $7,302.06 in mortgage interest paid.  The Form 1098 also reflected that Plaintiffs had paid $4,197.66 in supposed "principal."

12.    Nationstar's method for calculating mortgage interest is wrong because it assumes that the entire loan balance constitutes principal and fails to recognize that interest that was previously deferred does not lose its character as interest simply because it is paid back at a later time.  Thus, because Plaintiffs still owed previously deferred interest on their note as of the date that Nationstar took over their loan,

Nationstar should have credited all of Plaintiffs' payment – except for that which was impounded to pay taxes – toward retiring Plaintiffs' deferred interest balance before crediting any payments to principal.  In short, until all of the Plaintiffs' previously deferred interest was paid off, none of Plaintiffs' payments should have been credited to repayment of principal.   For tax year 2013 described above, and others as well, Plaintiffs relied upon the incorrect information contained in the Form 1098 that was sent to them by Nationstar, and as a result they both: (1) filed an erroneous tax return in at least that year, and perhaps others (insofar as their return claimed only the amount of mortgage interest that had been stated on their Form 1098 for 2013) and (2) received a smaller tax deduction in that year and perhaps others than they would have received had the proper information been provided to them on their Form 1098 issued to them by Nationstar.

**B.      Borrowers, Tax Professionals And The IRS Rely Upon The Mortgage Interest Stated In Lender Form 1098s.**

13.     Plaintiffs allege that reliance on 1098 forms by consumers and their tax-preparers without cross-checking is the norm among consumers and their tax preparers since: (1) mortgage lenders/servicers like Nationstar have the legal duty under 26 U.S.C. § 6050H to calculate and report those amounts accurately; (2) the IRS relies exclusively on the amounts contained in the 1098 forms it receives from lenders; and (3) the IRS maintains a policy whereby it will reject any attempt by tax-payers to claim different amounts of interest from those appearing on the tax-payer's Form 1098 issued by their lender.

14.     Examples of the IRS's policy are evidenced by Exhibits "B" and "C" hereto, which are redacted IRS letters sent to tax-payers other than plaintiffs who, like Plaintiffs, had negative amortization mortgages and who tried to independently calculate and submit to the IRS the correct amount of deferred interest that they had paid.  The IRS rejected those tax-payers' returns stating, for instance, in Exhibit "B"

that "we [the IRS] cannot adjust the amount claimed on schedule A for mortgage interest, without a corrected Form 1098…"

15.    Plaintiffs, however, did notice the discrepancy in their interest reporting and complained to Nationstar in February and March 2014.  In or about March 11, Nationstar wrote to the Pembertons acknowledging the Pembertons' complaint and explaining that their complaint had been referred to Nationstar's "Research Department" for review.  A true and correct copy of this letter is attached hereto as Exhibit "D" and incorporated herein by this reference.

16.    On March 27, 2014, Nationstar wrote again to the Pembertons formally rejecting their claim stating:

> "Thank you for contacting Nationstar Mortgage. This is in response to your request received March 3, 2014 regarding the 2013 Mortgage Interest Statement (Form 1098).
>
> There was no deferred amounts (sic) or negative amortization on your loan for the period of time that Nationstar has been the servicer.  we (sic) were not provided with any previously deferred interest amounts from the prior servicer nor is there any way for us to calculate amounts prior to when we acquired your loan."

A true and correct copy of Nationstar's March 27 correspondence is attached hereto as Exhibit "E" and incorporated herein by this reference.

17.    This response by Nationstar -- that it somehow impossible for Nationstar to calculate amounts paid by Plaintiffs prior to the date Nationstar acquired their loan from BANA -- is absurd.  Plaintiffs contacted BANA and were easily able to obtain their payment history from that entity.

18.    Plaintiff alleges on information and belief that the reason Nationstar is wrongfully reporting plaintiffs' interest payments and those of other class members is for its own financial benefit.  It is alleged that Nationstar knowingly started to purchase Option Arm Mortgages that had a separately reportable income component

**FIRST AMENDED CLASS ACTION COMPLAINT**

to the seller (i.e. the unpaid deferred interest) which would be reportable by the seller (in the case of plaintiffs' loan BANA) as income, with the intent to convert it into an asset note only such that there was no separately reportable income component.

19.    Through its purchase Nationstar effectively transformed interest to principal without notice to borrowers, in direct violation of IRS regulations, and for its own pecuniary benefit to the direct harm and detriment of the borrowers.

20.    Because Nationstar only took over Plaintiffs' loan in 2013, Plaintiffs are currently unaware of how long (how many tax-years) Nationstar has been misreporting mortgage interest.  Plaintiffs are also unaware of how many individual Forms 1098 issued by Nationstar have been issued using this incorrect method of calculation.  Plaintiffs, however, allege on information and belief that the number of class members in the same situation as Plaintiffs is well over 10,000 and may be more than 100,000.  This estimate is based on an article from the Los Angeles Times dated May 14, 2013, that Nationstar's January 2013 purchase from BANA constituted over 2 million individual loans.  (It is not known what percentage of these loans had a negative amortization feature or carried balances of deferred interest at the time of the purchase.)  Plaintiffs also allege on information and belief that Nationstar earlier acquired the portfolio of Greenlight Financial Services which underwrites approximately $7 billion in loans annually, and which, at least in the years 2005 to 2009, originated a substantial number of negative amortization loans.

## C.    Plaintiffs Have Been Harmed By Nationstar's Wrongful Conduct

21.    Plaintiffs have been damaged by Nationstar's wrongful 1098 reporting in several ways.  First, as shown above, the amount of interest that Plaintiffs actually paid in 2013 is greater than the amount of interest that was reported by Nationstar.  As a result, Plaintiffs have not been able to correctly state their taxes or obtain the full mortgage interest deduction they are entitled to under 26 U.S.C. Section 163.

22.    And, since Nationstar refused to provide a correct Form 1098 to Plaintiffs for tax-year 2013, they have no other recourse -- other than through this action -- to force Nationstar to issue them a corrected Form 1098 for tax-year 2013 and to have Nationstar issue proper Forms 1098 in all future years that reflect the actual amount of mortgage interest paid by Plaintiffs in those years. The same is true for all Class Members.

23.    Plaintiffs and Class Members have also suffered damages consisting of, at least: (1) the accountancy fees that will be necessary to prepare and file amended tax returns (where such returns can still be filed) after Nationstar issues corrected Form 1098s accurately accounting for the amounts of mortgage interest paid during those years, (2) for all years in which the statute of limitations for amending tax returns may have expired, the differential between the value of the Class Members' mortgage interest deductions (both state and federal) when taken and what the value of the deduction would have been if the correct amount of mortgage interest had been reported timely by Nationstar (plus interest); (3) for all years in which the statute of limitations for amending tax returns may have expired, the accountancy fees necessary to determine the difference in value of the deduction when taken and what it should have been if Nationstar had reported the correct amount timely.  (All of this relief can properly be awarded on equitable grounds as well.)

24.    Thus, Plaintiffs, on behalf of themselves and the Class Members, seek injunctive and equitable relief and damages as alleged above from Nationstar for intentionally and/or negligently under-reporting to them and to the IRS the "mortgage interest" payments they have made.  They also seek declaratory relief asking the Court to declare that Nationstar's accounting and reporting practices are wrongful and that Nationstar be required to issue corrected Form 1098s to Plaintiff, Class Members and the IRS for all tax years where Nationstar wrongfully reported mortgage interest payments.

**FIRST AMENDED CLASS ACTION COMPLAINT**

1

## IV.

2

## THE PARTIES

3       25.    Plaintiffs are individuals who, during all times relevant herein, resided in

4    Grass Valley, Nevada County, California.   Plaintiffs had a mortgage loan owned

5    and/or serviced by Nationstar.  Plaintiffs paid Nationstar more than $600 in mortgage

6    interest in tax-year 2013, but did not receive an IRS Form 1098 from Nationstar for

7    that tax-year correctly reporting all of the interest they paid because of Nationstar's

8    wrongful accounting practice previously described.

9       26.    Class Members reside in and are located throughout the United States

10   and in foreign jurisdictions.  Each Class Member either owns a main home, second

11   home, residential rental home, or combinations thereof in the United States, or in one

12   of its possessions or territories, with a Nationstar negative amortization loan and paid

13   previously deferred interest to Nationstar which Nationstar failed to include in the

14   Class Member's Form 1098 for the year when the payment was made.

15      27.    Nationstar is, and at all times mentioned herein was, a limited liability

16   corporation and one of the nation's leading mortgage servicers.  It is headquartered in

17   Lewisville, Texas.

18

19

## V.

20

## JURISDICTION AND VENUE

21      28.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331,[2]

22   2201, 2202.  Subject matter jurisdiction also exists under the Class Action Fairness

23   Act of 2005 -- 28 U.S.C. §§ 1332(a) and 1332(d) -- because the matter in controversy

24   _____
     [2] Plaintiffs assert federal question jurisdiction exists based on their contention that a
25   good faith argument supports the finding that an implied private right of action exists
     under 26 U.S.C. Section 6050H as that Section was enacted as part of the Taxpayer's
26   Bill of Rights II.  See, e.g. *Doane v. Metal Bluing Products, Inc.*, 568 F.Supp. 744,
     745-746 (D.C.N.Y. 1983) (where a good faith argument can be made that a federal
27   statute provides for an implied right of action, then federal question jurisdiction
     exists).
28

FIRST AMENDED CLASS ACTION COMPLAINT

exceeds $5.0 million exclusive of interest and costs and the Named Plaintiffs are citizens of California and Nationstar is not.  Further, Class Members reside, on information and belief, in every state in America.  There is therefore minimal diversity between the Class Members and the Defendant.  Further, more than two-thirds of the members of the putative Class Members are citizens of states different from that of the Defendant and this case does not present a local controversy.

29.   This Court has personal jurisdiction over Nationstar because, among other things, Nationstar does business in the State of California and in this Judicial District, and because Nationstar has established minimum contacts with California such that the exercise of jurisdiction over it will not offend traditional notions of fair play and substantial justice.  Indeed, Nationstar has voluntarily conducted business and solicited customers in the State of California for its loans, including in this judicial district and continues to commit the wrongful acts alleged herein against California residents within this judicial district.

30.   Venue is proper in this judicial district under 18 U.S.C. §1391 and 1965. Nationstar can be found in, has one or more agents in, and/or transacts or has transacted business in this judicial district.

## VI.
## CLASS ALLEGATIONS

31.   Paragraphs 1 through 30 above are incorporated herein by reference.

32.   Plaintiffs bring this action on their own behalf and on behalf of the classes of persons similarly situated to them pursuant to Rule 23(a) and 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

33.   Plaintiffs seek to represent a damage class of:

> All mortgagors of Nationstar or any of its predecessors-in-interest who made payments mortgage interest payment to Nationstar on loans secured by real property in the United States (or in its territories and

protectorates) which Nationstar did not report on the mortgagors' IRS 1098 form in the year in which the payment was made.

Plaintiffs also seek to represent an injunctive class consisting of:

All mortgagors of Nationstar or any of its predecessors-in-interest who made payments mortgage interest payment to Nationstar on loans secured by real property in the United States (or in its territories and protectorates) which Nationstar did not report on the mortgagors' IRS 1098 form in the year in which the payment was made.

Plaintiffs reserve the right to amend the definition of these classes, or to amend their complaint to state appropriate sub-classes following discovery.

34.    Plaintiffs do not know the exact size of the classes or the identities of the Class Members since such information is in the exclusive control of Nationstar.  They believe, however, that the classes encompass tens of thousands of individuals who are geographically dispersed throughout the United States and in foreign nations.  The number of members in the classes are so numerous that joinder of all Class Members is impracticable.

35.    There are numerous questions of law and fact common to the classes that will predominate over any questions affecting only individuals.   Among these common questions are:

a.   Whether "deferred interest" paid by Class Members to Nationstar is "mortgage interest" that should have been reported in the year in which it was paid;

b.   Whether Nationstar had the right to unilaterally, and without notice to its borrowers, (or to the IRS) fail to report mortgage interest in the year in which it is paid;

c.   Whether Nationstar maintains written and/or unwritten policies, procedures and/or practices concerning the accounting and reporting of mortgage interest payments received by Nationstar

FIRST AMENDED CLASS ACTION COMPLAINT

from Class Members, and whether those policies have changed over time;

d.   Whether Nationstar acted intentionally in committing its wrongs against the Class Members;

e.   Whether Nationstar's disclosures to consumers were adequate as to how it would treat payments of deferred mortgage interest;

f.   What injunctive relief would be appropriate to prevent further wrongful conduct by Nationstar;

g.   What remedial measures would be appropriate to remedy the wrongs that have been done by Nationstar to the Class; and

h.   Whether punitive damages should be awarded against Nationstar.

36.   The claims of the Plaintiffs are typical of the claims of the classes and do not conflict with the interests of any other Class Members in that both the Plaintiffs and the other Class Members were subjected to the same wrongful policies, practices and procedures of Nationstar and all have an interest (and legal duty) to assure that their taxes are properly stated.

37.   The Plaintiffs will fairly and adequately represent the interests of the other Class Members.  The Plaintiffs have retained skilled and experienced counsel to represent the classes in this class action litigation.

38.   Prosecution of separate actions will create the risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interests of Class Members who are not parties to those adjudications and would/could substantially impair or impede their ability to protect their interests.

39.   In adopting and implementing the policies, practices and procedures hereinafter alleged, Nationstar has acted, failed, or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or declaratory relief with respect to the class as a whole.

FIRST AMENDED CLASS ACTION COMPLAINT

40.     The class action is superior to other available methods for fairly and efficiently adjudicating the issues concerning whether Nationstar's policies, practices and procedures in accounting for and reporting the payment of "deferred mortgage interest" received by Nationstar have class-wide impact and effect are in violation of IRS requirements.

## COUNT I

## BREACH OF CONTRACT

41.     Plaintiffs re-allege and hereby incorporate each and every allegation contained in Paragraphs 1 through 40 of this Complaint as though fully set forth herein.

42.     With the origination of each of its loans, Nationstar provided Plaintiffs and Class Members with promissory notes which serve as the contract between the Class Members and Nationstar.

43.     Although these notes do not contain any provision specifically governing the manner in which Nationstar would report mortgage interest to Plaintiffs and Class Members, doing so is nonetheless a term of each such contract because Nationstar has a legal duty to provide accurate Forms 1098 as required by 26 U.S.C. § 6050H.  This contractual term is material to borrowers because of the tax deductibility of mortgage interest and so they can carry out their legal obligation to file their taxes accurately.

44.     Nationstar has continually breached this contractual term from at least 2013 forward to the present by failing to accurately report interest payments "received" by it as required by § 6050H and the definition of interest under 26 U.S.C. § 163(a).

45.     Plaintiffs are not in default on their loan and have complied with all terms and conditions of their contract.  But even as to Class Members who might have defaulted, Nationstar's obligation to provide Forms 1098 is an independent duty.

FIRST AMENDED CLASS ACTION COMPLAINT

46.     As a result of Nationstar's breach of the contract, Plaintiffs and the Class Members have been damaged as set forth above.

## COUNT II

### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

47.     Plaintiffs re-allege and hereby incorporate each and every allegation contained in Paragraphs 1 through 46 of this Complaint as though fully set forth herein.

48.     In every contract, parties have a duty to act in good faith and deal with each other fairly.  Nationstar had such a duty to act in good faith with respect to Plaintiffs and the Class Members.  This included the duty to not to conceal and/or fully and unambiguously disclose to Plaintiffs and Class Members that the way it was treating "deferred interest" payments was against Class Members' interests and contrary to established tax law.

49.     After receiving Plaintiffs' and the Class Members' mortgage interest payments, Nationstar breached the implied covenant of good faith and fair dealing by failing to report to the IRS payments of "deferred interest" it received from Plaintiffs and Class Members consistent with IRS regulations and guidelines.  This inaccurate reporting caused Class Members to receive inaccurate Form 1098s thereby depriving them of significant tax deductions.  Further, when Plaintiffs notified Nationstar of its failure to accurately report their interest payments, Nationstar had an obligation under RESPA and the covenant of good faith to research their contention.  Had it done so, it would have determined that its policy was wrong.  Thus, the extent Nationstar did not, upon receipt of plaintiffs' complaint, reverse its course and issue revised Forms 1098 for all years in which it issued inaccurate Forms 1098, such was a further breach of the covenant of good faith and fair dealing.

50.     As a result of Nationstar's breaches of the implied covenant of good faith and fair dealing, Plaintiffs and the Class Members have been damaged as set forth

**FIRST AMENDED CLASS ACTION COMPLAINT**

above and will be damaged in the future to the extent that they are precluded by the statute of limitations from amending any of their affected tax returns.

51.   It is further alleged that Nationstar acted intentionally and with knowledge that its reporting policies were in violation of law and took its actions notwithstanding that knowledge so as to maximize its own profits and avoid conflict with its borrowers and the IRS.

52.   Nationstar committed its wrongful acts intentionally and with knowledge of the harm it was doing to consumers and in a manner shocking to the conscience so punitive damages should be assessed against Nationstar.

## COUNT III
### VIOLATION OF 26 U.S.C. 6050H

53.   Plaintiffs re-allege and hereby incorporate each and every allegation contained in Paragraphs 1 through 52 of this Complaint as though fully set forth herein.

54.   Plaintiffs assert that there exists an implied private right of action to enforce the terms of 26 U.S.C. § 6050H under the test established in *Cort v. Ash*, 422 U.S. 66, 78 (1975).

55.   To the extent an implied private right of action is found to exist on behalf of a borrower to enforce the terms of 26 U.S.C. § 6050H against a lender, Plaintiffs allege as follows:

56.   Nationstar had a duty to accurately report to the IRS the amount of mortgage interest Plaintiffs and Class Members paid to it under 26 U.S.C. § 6050H. Nationstar breached this duty by failing to report payments of deferred interest on the Form 1098s it issued to its borrowers, including Plaintiffs and the Class Members.

57.   As a proximate result of Nationstar's breach of its statutory duty as herein alleged, Plaintiffs and Class Members have been harmed by receiving inaccurate Form 1098s and have suffered damages as a result thereof as specified

**FIRST AMENDED CLASS ACTION COMPLAINT**

above.  Further, Plaintiffs and the Class Members have been deprived of the ability to accurately report to the IRS the full amount of their mortgage interest deduction and are entitled to equitable relief to remedy their situation.

## COUNT IV

### UNFAIR/DECEPTIVE BUSINESS PRACTICES

58.     Plaintiffs re-allege and hereby incorporate each and every allegation contained in Paragraphs 1 through 57 of this Complaint as though fully set forth herein.

59.     California Business & Professions Code § 17200 et seq. ("UCL") prohibits acts of unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

60.     As alleged above, Nationstar has been violating the terms of 26 U.S.C. § 6050H by failing to include payments of mortgage interest that were actually made by Plaintiffs and Class Members.  Nationstar's practice constitutes an unlawful, unfair and fraudulent business practices under the UCL and would also constitute violations of similar consumer protection laws in applicable in the several United states.

61.     However, in the event that the Court determines that the UCL either cannot be applied in these circumstances outside of California, or that the differences between the laws of the several states and California's UCL as so substantial as to make the administration of a class action unmanageable, then Plaintiffs assert that a separate subclass of California borrowers should be certified for all of Plaintiffs' claims, including Plaintiffs' UCL claim.  This sub-class would be defined in the same manner as the main class, but would be limited to Class Members with loans secured by real property in California.

62.     Plaintiffs have suffered losses of money or property as a result of Defendants' unlawful, deceptive and unfair business practices and will incur future losses as a result of having to amend their tax return.  As a result of Defendant's

1 violations of the UCL, Plaintiffs and Class Members are entitled to bring this claim
2 for injunctive and other equitable relief.  And, as a part of that relief, Plaintiffs request
3 the Court act in equity to order Nationstar to issue corrected Forms 1098 and payment
4 of accountancy fees Plaintiffs and the members of the class will have to incur to
5 correct Nationstar's wrongful prior reporting.

6
7                                      **COUNT V**
8                             **DECLARATORY RELIEF**

9         63.    Plaintiffs re-allege and hereby incorporate each and every allegation
10 contained in Paragraphs 1 through 62 of this Complaint as though fully set forth
11 herein.

12        64.    An actual controversy has arisen and now exists between Plaintiffs and
13 Nationstar regarding the manner in which Nationstar accounts for payments of
14 "deferred interest" as alleged above.

15        65.    Plaintiffs and Class Members contend that Nationstar has maintained a
16 policy whereby it has wrongfully under-reported to the IRS and Class Members the
17 amount of "mortgage interest" paid by them and has refused to correct these errors.

18        66.    A declaratory judgment is necessary to immediately resolve the issue as
19 to whether Nationstar is correctly reporting Class Members' mortgage interest
20 payments on Form 1098s and whether Nationstar should be required to provide
21 corrected 1098 forms to the Class Members for all years in which its policies did not
22 conform to law.

23        67.    Without such a declaratory judgment, Plaintiffs and the Class Members
24 will have no way of complying with their legal obligation of properly reporting their
25 payments of mortgage interest to the IRS in their tax returns and cannot correct
26 previous errors caused by Nationstar.

27        68.    Wherefore, declaratory relief is necessary and proper in this matter.

28

## COUNT VI

### PRELIMINARY AND PERMANENT INJUNCTION

69.     Plaintiffs re-allege and hereby incorporate each and every allegation contained in Paragraphs 1 through 68 of this Complaint as though fully set forth herein.

70.     Plaintiffs are informed and believe, and thereon alleges, that Defendant's wrongful actions and omissions as alleged above, if permitted to continue and occur, will cause great and irreparable harm to Plaintiffs and Class Members, including the inability to properly file their tax returns, which is their legal obligation.

71.     Wherefore, Plaintiffs, on behalf of themselves and all Class Members seek:  1) to enjoin Nationstar from issuing any IRS Form 1098s that do not account for its receipt of "deferred interest" received from Plaintiffs and Class Members, 2) that Nationstar be compelled to issue corrected 1098 forms to all Class Members for all years in which it has done so wrongfully, and 3) that as part of its equitable powers, the Court order Nationstar to pay for the accounting fees necessary for all Class Members to amend their tax returns to correct Nationstar's error.

## COUNT VII

### FRAUD

72.     Plaintiffs re-allege and hereby incorporate each and every allegation contained in Paragraphs 1 through 71 of this Complaint as though fully set forth herein.

73.     As alleged previously, Nationstar knowingly and intentionally misrepresented the correct amount of interest that plaintiffs paid to it in 2013.  It also intentionally concealed from Plaintiffs and the other Class Members that it had wrongfully reported incorrect amounts of mortgage interest on the Forms 1098 that it had issued and for the sole purpose of benefitting Nationstar.

74.   Nationstar was under a legal duty pursuant to 26 U.S.C. §6050H to report accurately only the interest Nationstar "received" during each calendar year and it was further under a duty to correct any mistakes on Forms 1098 as soon as possible after determining that a wrong amount had been reported.

75.   Nationstar knew that its concealment of the facts relating to its wrongful interest reporting would be relied upon by Plaintiffs and the Class Members (and the IRS).

76.   Plaintiffs and the Class Members did not (and Class Members still do not) know about Nationstar's improper and illegal scheme, and, even if some tiny percentage may have figured it out, like Plaintiffs, they were still powerless to avoid being damaged by Nationstar's fraud because of the IRS' aforementioned policy of rejecting any returns where the amount of interest claimed did not match the amount of the lender-issued Form 1098.

77.   Nationstar knew and intended that Plaintiffs' and the Class Members' reliance on the incorrect Forms 1098 would cause detriment to the Plaintiffs and the Class Members.

78.   Nationstar knew that Plaintiffs and the Class Members would be damaged by Nationstar's under-reporting of mortgage interest as Nationstar was intentionally not reporting amounts of interest that were paid and concealing from its borrowers that it was doing so.

79.   As a direct and proximate result of Nationstar's multiple concealments, Plaintiffs and the Class Members have been damaged in an amount according to proof.

80.   Nationstar's fraudulent concealment was undertaken with a conscious disregard of its effect on Plaintiffs and the Class Members and in a manner shocking to the conscience such that punitive damages should be awarded.

1

2

### COUNT VIII

### NEGLIGENCE

3    81.    Plaintiffs re-allege and hereby incorporate each and every allegation

4 contained in Paragraphs 1 through 80 of this Complaint as though fully set forth

5 herein.

6    82.    As alleged previously, Nationstar was under a legal duty pursuant to 26

7 U.S.C. §6050H to report accurately only the interest Nationstar "received" during

8 each calendar year and it was further under a duty to correct any mistakes on Forms

9 1098 as soon as possible after determining that a wrong amount had been reported.

10    83.    Assuming that Nationstar did not intentionally report incorrect amounts

11 of mortgage interest on the Forms 1098 that it sent to plaintiffs and Class Members, it

12 negligently breached its legal duty to Plaintiffs and the Class Members to accurately

13 report the amounts of mortgage interest to Plaintiffs and the Class Members.

14    84.    As a result of Nationstar's negligence Plaintiffs and the Class Members

15 have been damaged in an amount according to proof.  Plaintiffs and Class Members

16 did not know about Nationstar's improper and illegal reporting, and, even if some tiny

17 percentage may have figured it out, they were still powerless to avoid being damaged

18 by Nationstar's negligence because of the IRS' aforementioned policy of rejecting any

19 returns where the amount of interest claimed did not match the amount of the lender-

20 issued Form 1098.

21

22

### PRAYER FOR RELIEF

23    WHEREFORE, Plaintiffs on behalf of themselves and all Class Members, pray

24 for judgment and injunctive and equitable relief against Nationstar as follows:

25    (a)    Certification of the classes pursuant to Rule 23(b)(2) and (b)(3) of the

26          Federal Rules of Civil Procedure, certifying Plaintiffs as the

27          representatives of the classes (and for the California sub-class (if

28

**FIRST AMENDED CLASS ACTION COMPLAINT**

necessary)), and designating Plaintiffs' counsel as counsel for the class (and subclass if necessary);

(b)    A judicial declaration that Nationstar has committed the violations alleged herein;

(c)    An Order requiring Nationstar to issue corrected Form 1098s to Plaintiffs and to all Class Members for all years where Nationstar did not report the correct amount of mortgage interest paid on such forms;

(d)    For general and special damages in an amount to be proven at time of trial, including, but not limited to, accountancy fees necessary to amend Class Member tax returns and/or to determine the value of any lost deductions, and the value of those lost deductions;

(e)    For punitive or exemplary damages on all causes of action where appropriate;

(f)    An Order in equity (if no damages are awarded) requiring Defendant to pay for the Class Members' reasonable expenses in filing amended tax returns for those years where Nationstar did not report "deferred interest" on each Class Members' IRS Form 1098s;

(g)    An order in equity (if no damages are awarded) requiring Defendant to pay any accountancy expenses necessary to determining if they lost money as a result of Nationstar's mis-reporting of mortgage interest on their Forms 1098;

(h)    An Order precluding Nationstar from issuing any Form 1098s which do not accurately reflect the interest paid during any given year;

(i)    Prejudgment interest at the legal rate on any sum of damages awarded;

(j)    Attorney's fees according to proof at time of trial;

(k)    Costs of suit, including expert witness fees and costs, herein incurred;

(l)    For such other and further relief as this Court may deem proper and just; and

# JURY TRIAL DEMAND

Plaintiffs and all those similarly situated hereby demand a trial by jury for all issues so triable and if any arbitration clause is asserted by Defendant, on the issue of whether a valid arbitration agreement exists.

Date: April 26, 2017                    MORRIS POLICH & PURDY LLP


By: _____ *s/ David J. Vendler* _____
        David J. Vendler
        E-mail: dvendler@mpplaw.com

MICHAEL R. BROWN, APC
Michael R. Brown, Esq. (SBN 65324)
Email:    mbrown@mrbapclaw.com
18101 Von Karman Avenue, Suite 1900
Irvine, California 92612
Tel.:   (949) 435-3888
Fax:   (949) 435 3801

Attorneys for Plaintiffs MICHAEL PEMBERTON and SANDRA COLLINS-PEMBERTON and all others similarly situated

**FIRST AMENDED CLASS ACTION COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

Exhibit A ...................................................................................................... 1

Exhibit B ...................................................................................................... 7

Exhibit C ...................................................................................................... 8

Exhibit D .................................................................................................... 12

Exhibit E .................................................................................................... 13

# Exhibit "A"

SEE "PREPAYMENT PENALTY ADDENDUM TO NOTE" ATTACHED HERETO AND MADE A PART HEREOF.

CERTIFIED TO BE A TRUE AND
CORRECT COPY OF THE ORIGINAL
ALLIANCE TITLE COMPANY

LOAN NO.: 8975002657

MIN: 100039288750028878
Phone: 1-888-679-6377

## ADJUSTABLE RATE NOTE
(MTA - Twelve Month Average Index / Payment Caps)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.

| NOVEMBER 30, 2005 | FOLSOM | CALIFORNIA |
|---|---|---|
| [Date] | [City] | [State] |

13152 OOTI COURT, GRASS VALLEY, CA  95949
[Property Address]

### 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $       461,500.00       (this amount is called "Principal"), plus interest, to the order of Lender.  The Principal amount may increase as provided under the terms of this Note but will never exceed  ONE HUNDRED FIFTEEN  AND 000/1000THS    percent (115.000 %) of the Principal amount I originally borrowed.  This is called the "Maximum Limit."  Lender is
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note.  Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2.  INTEREST

(A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of       1.750       %.  The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

(B) Interest Rate Change Dates

The interest rate I will pay may change on the       1st       day of       JANUARY, 2006       , and on that day every month thereafter.  Each date on which my interest rate could change is called an "Interest Rate Change Date."  The new rate of interest will become effective on each Interest Rate Change Date.  The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

(C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index.  The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields").  The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.  The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information.  The Note Holder will give me notice of this choice.

(D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 950/1000THS       percentage point(s) (       2.950       %) ("Margin") to the Current Index.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  This rounded amount will be my new interest rate until the next Interest Rate Change Date.  My interest rate will never be greater than 9.950    %.  Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

Initials: ___

PayOption ARM Note - MTA Index - Multistate
FE-5312 (0412)

Page 1 of 6

LENDER SUPPORT SYSTEMS INC. FE5312XX.COU (01/05)

10/04

3.  PAYMENTS

(A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the   1st   day of each month beginning on   JANUARY, 2006.
I will make these payments every month until I have paid all the Principal and Interest and any other charges described
below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied
to interest before Principal. If, on   DECEMBER 01, 2045   , I still owe amounts under this Note, I will pay those
amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION
603 North Wilmot Road, TUCSON, AZ  85711
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $   1,337.58
unless adjusted under Section 3 (F).

(C) Payment Change Dates

My monthly payment may change as required by Section 3(D) below beginning on the first day of   JANUARY, 2007   ,
and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment
also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum
Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment
Change Date or as provided in Section 3(F) or 3(G) below.  If the Minimum Payment is not sufficient to cover the amount of
the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided
in Section 3(F) or 3(G) below.

(D) Calculation of Monthly Payment Changes

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that
would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity
date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date.  The
result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly
payment effective on a Payment Change Date, will not increase by more than 7.5% of any prior monthly payment. This 7.5%
limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply
to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by
taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the
number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me
to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also
have the option to pay the Full Payment for my monthly payment.

(E) Additions to My Unpaid Principal

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject
to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of
the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment
date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the
interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and
will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate
required by Section 2.  For each month that the monthly payment is greater than the interest portion, the Note Holder will apply
the payment as provided in Section 3(A).

(F) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed the Maximum Limit equal to   ONE HUNDRED FIFTEEN  AND 000/1000THS   percent
(115.000 %) of the Principal amount I originally borrowed.  My unpaid principal could exceed that Maximum Limit due to

PayOption ARM Note - MTA Index - Multistate
FE-5312 (0412)                               Page 2 of 5                                      10/04

Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

(G) Required Full Payment

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

(H) Payment Options

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

(i) Interest Only Payment: the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) Fully Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.

(iii) 15 Year Amortized Payment: the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

4.   NOTICE OF CHANGES

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        FIFTEEN      ( 15 ) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000   % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

PayOption ARM Note - MTA Index - Multistate
F6-5312 (0412)                                              Page 3 of 5                                                                        10/04

Initials

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

**10.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.   SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option

PayOption ARM Note - MTA Index - Multistate
FE-6312 (0412)                                         Page 4 of 5                                         Initials: _____     10/04

shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption.  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)    _____ (Seal)
MICHAEL PEMBERTON        Borrower   SANDRA COLLINS          Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                          Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                          -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                          -Borrower

PayOption ARM Note - MTA Index - Multistate
FE-5312 (0412)                     Page 4 of 5                      10/04

Amended Complaint, Exh A-005

DATE: NOVEMBER 30, 2005
BORROWER: MICHAEL PEMBERTON, SANDRA COLLINS

LOAN #: 5975002657
PROPERTY ADDRESS: 13152 OOTI COURT, GRASS VALLEY, CA  95949

## PREPAYMENT PENALTY ADDENDUM

THIS PREPAYMENT PENALTY ADDENDUM is dated      NOVEMBER 30, 2005      , and is
incorporated into and amends and supplements the Note of the same date (the "Note") given by
FIRST MAGNUS FINANCIAL CORPORATION, AN ARIZONA CORPORATION

(the "Lender"). The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the
"Security Instrument") covering the property (the "Property") identified in the Security Instrument.

The section of the Note entitled "Borrower's Right to Prepay" is replaced with the following new section:

BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due.  A prepayment
of all of the unpaid Principal is known as a "Full Prepayment."  A prepayment of only part of the
unpaid Principal is known as a "Partial Prepayment."  When I make a Partial or Full Prepayment, I
will tell the Note Holder in writing that I am doing so.

Subject to the Prepayment Penalty specified below, I may make a Full Prepayment or Partial
Prepayments of my obligation.  The Note Holder will use all of my prepayments to reduce the amount
of Principal that I owe under the Note.  If I make a Partial Prepayment, there will be no changes in the
due date or in the amount of my monthly payment.

If within the first      THIRTY SIX      (  36  ) months after the execution of this
Note, I make prepayment(s), the total of which exceeds twenty (20) percent of the original
Principal amount of this Note, I agree to pay a Prepayment Penalty in an amount equal to the
payment of six (6) months' advance interest on the amount by which the total of my
prepayment(s) during the twelve (12) month period immediately preceding the date of the
prepayment exceeds twenty (20) percent of the original Principal amount of this Note.  Interest
will be calculated using the rate in effect at the time of prepayment.  I will pay this Prepayment
Penalty regardless of whether I sell the Property or refinance the loan with the same Lender or
Note Holder.

All other terms and conditions of the above referenced Note remain in full force and effect.

| | | |
|---|---|---|
| _Michael Pemberton_ | Borrower | 11-30-05 ___ Date |
| _Sandra Collins_ | Borrower | 11-30-05 ___ Date |
| MICHAEL PEMBERTON | | |
| SANDRA COLLINS | | |
| _____ | Borrower | _____ Date |
| _____ | Borrower | _____ Date |

Multistate Prepayment Penalty Addendum - (ALPPP)
FE4201 (0412)

LENDER SUPPORT SYSTEMS, INC. FE4201XX.COU (09/05)

Exhibit "B"

 **IRS** Department of the Treasury
Internal Revenue Service

In reply refer to: ▮▮▮▮▮
Nov. 05, 2012  LTR ▮▮▮▮▮   A1
▮▮▮▮▮▮
Input Op: ▮▮▮▮▮▮
BODC: ▮▮▮▮▮



Taxpayer Identification Number:
Tax Period: Dec. 31, 2010
Tax Form: 1040

Dear ▮▮▮▮▮▮▮▮▮▮▮▮:

Thank you for your response of July 11, 2012.

We cannot accept your Form 1040X Amended U.S. Individual Income Tax
Return as filed. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.
▮▮▮▮▮▮▮▮▮▮▮ We also cannot adjust the amount
claimed on Schedule A for home mortgage interest, without a corrected
Form 1098 from ▮▮▮▮▮▮▮▮ verify that you paid the additional
mortgage interest.



If you have any questions about this letter, you may call
Office of ▮▮▮▮▮▮ between 7:00 AM and 8:00 PM EDT at ▮▮▮▮▮▮
▮▮▮▮▮ for assistance.  You may also fax us at ▮▮▮▮▮▮▮

Whenever you write to us, or wish us to respond to you by phone,
please give us your telephone number, including an area code, the
hours we can reach you, a person to contact, and a copy of this

# Exhibit "C"



Department of the Treasury
Internal Revenue Service
AUSTIN, TX 73301-0021

000066

Letter Number:
Letter Date:
November 21, 2011
Taxpayer Identification Number:

Tax Form: 1040

Tax Year Ended and Deficiency
December 31, 2009   $ 4,137
Contact Person:
                              (Toll Free)
                              (FAX)
Contact Telephone Number:

Hours to Call:
7:00 AM to 8:00 PM
Last Date to Petition Tax Court:
February 21, 2012
Penalties/Additions to Tax

Dear Taxpayer:

We have determined that there is a deficiency (increase) in your income tax as shown above. This letter is your NOTICE OF DEFICIENCY, as required by law. The enclosed statement shows how we figured the deficiency.

If you want to contest this determination in court before making any payment, you have until the **Last Date to Petition Tax Court** (90 days from the date of this letter or 150 days if the letter is addressed to you outside the United States) to file a petition with the United States Tax Court for a redetermination of the amount of your tax. You can get a petition form and the rules for filing a petition from the Tax Court. You should file the petition with the **United States Tax Court, 400 Second Street NW, Washington D.C. 20217.** Attach a copy of this letter to the petition.

The time in which you must file a petition with the court (90 days or 150 days as the case may be) is fixed by law and the Court cannot consider your case if the petition is filed late. As required by law, separate notices are sent to spouses. If this letter is addressed to both a husband and wife, and both want to petition the Tax Court, both must sign the petition or each must file a separate, signed petition.

The Tax Court has a simplified procedure for small tax cases when the amount in dispute is $50,000 or less for any one tax year. You can also get information about this procedure, as well as a petition form you can use, by writing to the Clerk of the United States Tax Court at 400 Second Street NW, Washington, D.C. 20217. You should write promptly if you intend to file a petition with the Tax Court.

If you decide not to file a petition with the Tax Court, please sign and return the enclosed waiver form to us. This will permit us to assess the deficiency quickly and will limit the accumulation of interest. We've enclosed an envelope you can use. If you decide not to sign and return the waiver and you do not petition the Tax Court, the law requires us to assess and bill you for the deficiency after 90 days from the date of this letter (150 days if this letter is addressed to you outside the United States).

S2(3219)

When you send information we requested or if you write to us about this letter, please provide a telephone number and the best time to call you if we need more information.  Please attach this letter to your correspondence to help us identify your case.  Keep the copy for your records.

The person whose name and telephone number are shown in the heading of this letter can access your tax information and help get you answers.  You also have the right to contact the Taxpayer Advocate.  You can call 1-877-777-4778 and ask for Taxpayer Advocate Assistance.  Or you can contact the Taxpayer Advocate for the IRS Office that issued this Notice of Deficiency by calling 1-512-460-8300 or writing to:

TAXPAYER ADVOCATE
AUSTIN IRS CENTER
STOP 1005 AUIRSC
PO BOX 934
AUSTIN, TX  78767

Taxpayer Advocate assistance is not a substitute for established IRS procedures such as the formal appeals process.  The Taxpayer Advocate is not able to reverse legally correct tax determinations, nor extend the time fixed by law that you have to file a petition in the United States Tax Court.  The Taxpayer Advocate can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling.

Thank you for your cooperation.

                                        Sincerely yours,

                                        Commissioner
                                        By

                                        *Nancy A. Session*

                                        James P Clifford
                                        Director, Field Compliance Service
                                        Austin

Enclosures:
Copy of this letter
Statement
Waiver
Envelope
Publication 3498
Form 9465

                    Cat. No. 27500P            Letter 3219(SC/CG) (02-2001)

Amended Complaint, Exh C-009



## 2. Reasons for the Changes

This section provides explanations to help you understand the proposed changes to your tax return.

The paragraphs that follow provide explanations for:

- the items listed in Section 1. *Information Reported to IRS*
- the changes to your tax computation listed in Section 3. *Changes to Your Return*
- the penalty and interest charges listed in Section 3. *Changes to Your Return*
- *Payment Instructions*
- *Additional Information* that will help you understand this notice and what action you need to take to resolve the tax discrepancy

Within each subsection below, the paragraphs are organized by topic to help you review them.

---

These paragraphs explain the items listed in Section 1. Information Reported to IRS.

| Deductions |
|---|

| Itemized Deductions - Schedule A |
|---|



| Tax & Credits |
|---|

| Tax Computation |
|---|





Amended Complaint, Exh C-010

AUSTIN IRS CENTER                    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          HUAN  A013  07/18/2011
                                     70042-2883



**Explanation Section**

How to Review    1. Compare your records with the records we received under  Information
This Section         Reported to IRS.
                 2. Review the Reasons for the Changes to see why we changed your
                    return.
                 3. Proceed to Changes to Your Return to see how your new tax was
                    calculated.
                 4. Once you have fully reviewed the Explanation Section, please
                    complete and return the Response Form in the envelope provided.

**1. Information Reported to IRS that differs from the amounts shown on your return.**

This section tells you specifically what income information IRS has received about you from
others (including your employers, banks, mortgage holders, etc.).  The information listed below
does not match the information you listed on your tax return.  Use this table to compare the data
IRS has received from others to the information you listed on your tax return to understand
where the discrepancy, or difference, occurred. To assist you in reviewing your income amounts,
the table may include both reported and unreported amounts from the same payer.

If this information is correct, your tax increase is  $ 4,137      plus all applicable penalties,
interest and payment adjustments such as federal tax withholding, excess social security
tax withheld, etc.  If you pay in full by  August 17, 2011  , you'll owe       $ 4,352 .

| MORTGAGE INTEREST DEDUCTION<br>Account Information | Amount<br>Reported to<br>IRS by Others | Amount<br>Included on<br>Your Return | Difference |
|---|---|---|---|
| ██████ SSN: ██████ Form 1098<br>ACCT: ████<br>████████████ | $        16,762 | $     29,491 | $    -12,729 |
| *MORTGAGE INTEREST DEDUCTION Total | $        16,762 | $       - | $     - |

* This notice includes other proposed changes, not reflected in the information
shown above, that are included in the net balance due amount shown on page 1 of
this notice.  For detailed information on these items, please refer to the
Changes to Your Return Section located at the end of this notice.

(EX05)                          Page   5           CP2000 (REV. 11/2004)

Amended Complaint, Exh C-011

Exhibit "D"

 P.O. Box 630348
Irving, TX 75063

 March 11, 2014
9-692-88772-0000551-001-01-000-000-000-000

Michael Pemberton
13150 Ooti Ct
Grass Valley, CA 95949

RE: Research Reference #RR-70180

Dear Michael Pemberton:

We are in receipt of your request dated March 3, 2014 regarding the loan serviced by Nationstar Mortgage.

In accordance with the Real Estate Settlement Procedures Act (RESPA), a response will be provided within 30 business days, except when otherwise required by state law. However, responses are generally provided in less than ten days from receipt of the correspondence.

If you have already received a resolution to your request you may disregard this notice with our apologies.

We appreciate you bringing this matter to our attention. Should you have any additional questions regarding your account or to view details about your loan summary and recent account activity, visit us online at www.mynationstar.com. To get started, click 'Sign Up' and see how easy it is to manage your mortgage online. You will have immediate access to:

- Frequently asked questions
- A full payment history
- Escrow information
- Automatic payment enrollment
- Monthly and year-end statements

At Nationstar, our customers' business and total satisfaction are very important. If we can be of further assistance, you can contact us directly at research.department@nationstarmail.com or you can call our main Customer Service Center at 1-888-480-2432.

Sincerely,

Research and Response Department
Nationstar Mortgage

*This is an attempt to collect a debt and any information obtained will be used for that purpose. However, if this debt is involved in a bankruptcy or has been discharged in a bankruptcy proceeding, this communication is not an attempt to collect a debt against you and any information obtained or given will be for informational purposes only*

ACK002

Exhibit "E"

Nationstar Mortgage Secure Email Message View                                      Page 1 of 2



mikensandi@peoplepc.com

| | |
|---|---|
| Received: | Mar 27, 2014 5:55 AM |
| Expires: | Apr 26, 2014 5:55 AM |
| From: | research.department@nationstarmail.com |
| To: | mikensandi@peoplepc.com |
| Cc: | |
| Subject: | Research Resolution |
| Attachments: | pic01699.gif, pic00053.gif, pic04734.gif |

(Embedded image moved to file: pic04734.gif)
Michael Pemberton
Sandra Collins
13152 Ooti Court
Grass Valley, CA  95949

RE: Research Reference #RR-70180

Dear Michael Pemberton and Sandra Collins:

Thank you for contacting Nationstar Mortgage. This is in response to your
request received March 3, 2014 regarding the 2013 Mortgage Interest
Statement (Form 1098).

There was no deferred amounts or negative amortization on your loan for the
period of time that Nationstar has been the servicer. We were not provided
with any previously deferred interest amounts from the prior servicer nor
is there any way for us to calculate amounts prior to when we acquired your
loan. For additional information regarding this issue please contact your
tax professional.

As a valued borrower, your satisfaction is our top priority. If we can be
of further assistance, you can contact us directly at
research.department@nationstarmail.com or you can call our Customer Service
Department at 1-888-480-2432.

Sincerely,

Research and Response Department
Nationstar Mortgage LLC

Simply CLICK HERE to sign in to your account

(Embedded image moved to file: pic00053.gif)

Privileged and Confidential: The material in this e-mail may contain
confidential information and is transmitted only for the use of the
intended recipient. Any review, re-transmission, conversion to hard copy,
copying, reproduction, circulation, publication, dissemination or other use
of, or taking of any action or omission to take action, in reliance upon
this information by persons other than the intended recipient is
prohibited. If you have received this message in error, please notify the
sender and delete the material from any computer, disk drive, diskette, or
other storage device or media.

Nationstar is a debt collector. This is an attempt to collect a debt and
any information obtained will be used for that purpose. However, if you are
currently in bankruptcy or have received a discharge in bankruptcy, this
communication is not an attempt to collect a debt from you personally to
the extent that it is included in your bankruptcy or has been discharged,
        but is provided for informational purposes only.

Amended Complaint, Exh E-013

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) years and am not a party to the within action.

On April 26, 2017, pursuant to the Court's Electronic Filing System, I submitted an electronic version of the following document(s) via file transfer protocol to ECF (Electronic Case Filing):

**FIRST AMENDED CLASS ACTION COMPLAINT FOR: 1. BREACH OF CONTRACT; 2. BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING; 3. VIOLATION OF 26 U.S.C. § 6050H; 4. VIOLATION OF UNFAIR COMPETITION LAW; 5. DECLARATORY RELIEF; 6. INJUNCTIVE RELIEF; 7. FRAUD; 8. NEGLIGENCE; DEMAND FOR JURY TRIAL**

and true copies of these documents were served electronically upon all counsel of record by the Court's CM/ECF System, or if such service is not authorized, by first class mail, in accordance with Rule 5 of the Federal Rules of Civil Procedure.

John B. Sullivan, Esq.
Erik Kemp, Esq.
Mary Kate Kamka, Esq.
SEVERSON & WERSON
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Tel.:        (415) 398-3344
Fax:        (415) 956-0439
E-Mail:   jbs@severson.com
              ek@severson.com
              mkk@severson.com

*Attorneys for Defendant NATIONSTAR MORTGAGE, LLC*

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 26, 2017, at Los Angeles, California.

Mineeh P. Lapid