1  JOHN B. SULLIVAN (State Bar No. 96742)
   jbs@severson.com
2  ERIK KEMP (State Bar No. 246196)
   ek@severson.com
3  MARY KATE KAMKA (State Bar No. 282911)
   mkk@severson.com
4  SEVERSON & WERSON
   A Professional Corporation
5  One Embarcadero Center, Suite 2600
   San Francisco, California 94111
6  Telephone: (415) 398-3344
   Facsimile: (415) 956-0439
7
   Attorneys for Defendant
8  NATIONSTAR MORTGAGE LLC

9

10                  UNITED STATES DISTRICT COURT

11            SOUTHERN DISTRICT OF CALIFORNIA

12

| 13 | MICHAEL PEMBERTON and SANDRA COLLINS-PEMBERTON, individually, and on behalf of the class of all others similarly situated, | Case No. 3:14-cv-01024 BAS WVG |
|----|----|----|
| 14 | | **NATIONSTAR'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION** |
| 15 | Plaintiffs, | |
| 16 | vs. | |
| 17 | NATIONSTAR MORTGAGE LLC, a Federal Savings Bank, | |
| 18 | | Date:    June 26, 2017 |
| 19 | Defendant. | Time:    n/a |
| 20 | | Crtrm.: 4B |
| 21 | | Judge:  Hon. Cynthia Bashant |
| 22 | | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |
| 23 | | Action Filed:   April 23, 2014 |

24

25

26

27

28

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................... 1

II. STATEMENT OF FACTS ........................................................................ 2

    A.    The Pembertons' Loan ................................................................. 2

    B.    The Pembertons' Loan Is Transferred to Nationstar ............................. 4

III. THE COMPLAINT SHOULD BE DISMISSED AS  THE PEMBERTONS LACK STANDING ................................................. 5

    A.    Subject Matter Jurisdiction Standards ........................................ 5

    B.    The Pembertons Do Not Allege That They Suffered an  Injury In Fact Fairly Traceable to Nationstar's Conduct ....................................... 6

    C.    The Pembertons Fail to Allege Their Injury  Is Redressable By This Court ....................................................... 8

IV. CONCLUSION ...................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

CASES

*Allen v. Wright*,
   468 U.S. 737 (1984) ...................................................................................6

*Bennett v. United States*,
   361 F. Supp. 2d 510 (W.D. Va. 2005) ........................................................8

*Bernhardt v. Cty. of Los Angeles*,
   279 F.3d 862 (9th Cir. 2002).......................................................................8

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010).....................................................................5

*Ewing v. SQM US, Inc.*,
   211 F. Supp. 3d 1289 (S.D. Cal. 2016) ......................................................6

*Gierbolini Rosa v. Banco Popular de Puerto Rico*,
   930 F. Supp. 712 (D.P.R. 1996) .................................................................7

*Gierbolini-Rosa v. Banco Popular De Puerto Rico*,
   121 F.3d 695 (1st Cir. 1997) ......................................................................7

*Grupo Dataflux v. Atlas Global Group*,
   541 U.S. 567 (2004) ...................................................................................5

*Hollingsworth v. Perry*,
   133 S. Ct. 2652 (2013) ...............................................................................5

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   134 S. Ct. 1377 (2014) ...............................................................................6

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ............................................................................6, 8, 9

*Nei Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*,
   No. 12-CV-01685-BAS(JLB), 2016 WL 4886933 (S.D. Cal. Sept. 15, 2016) ..........................6

*Prescott v. County of Del Dorado*,
   298 F.3d 844 (9th Cir. 2002).......................................................................7

*Pritikin v. Dep't of Energy*,
   254 F.3d 791 (9th Cir. 2001).......................................................................9

*Simon v. E. Kentucky Welfare Rights Org.*,
    426 U.S. 26 (1976) ...................................................................................7, 8

*Smith v. Bank of America, N.A.*,
    — F. App'x —, 2017 WL 631696 (9th Cir. Feb. 16, 2017) .....................1, 7

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ...........................................................................5, 6

*Ward v. Am. Family Life Assur. Co. of Columbus (AFLAC)*,
    444 F. Supp. 2d 540 (D.S.C. 2006) ..........................................................9

*Watson v. Johnny O's, Inc.*,
    2012 WL 2505949 (N.D. Ohio June 28, 2012) ..........................................8

**RULES**

Federal Rules of Civil Procedure
    Rule 12 .....................................................................................................5

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Article III, § 2, cl. 1 ........................................................................5

**OTHER AUTHORITIES**

IRS Pub. 936 at 9 (2015)...................................................................................7

# I.  INTRODUCTION

Defendant Nationstar Mortgage LLC moves to dismiss for lack of subject matter jurisdiction as plaintiffs Michael Pemberton and Sandra Collins-Pemberton lack standing.  The Pembertons allege that their loan servicer, Nationstar, issued a Form 1098 underreporting the amount of interest paid on their home loan.  This Court has stayed the action pending the Pembertons' submission of their claims to the Internal Revenue Service.  *See* Dkt. no. 11.

Recently, the Ninth Circuit issued its decision in *Smith v. Bank of America, N.A.*, — F. App'x —, 2017 WL 631696, at *1 (9th Cir. Feb. 16, 2017), a similar tax reporting case filed by the Pembertons' counsel.  The Ninth Circuit held that plaintiffs had not sufficiently alleged Article III standing to challenge the defendant's allegedly erroneous reporting of interest.  Based on the *Smith* decision, this Court dismissed plaintiffs' original complaint, granting leave to amend for plaintiffs to allege facts sufficient to demonstrate Article III standing.  *See* Dkt. no. 42.  Plaintiffs have now filed an amended complaint.

The amended complaint still does not allege facts showing that plaintiffs have standing.  The amended complaint's only new allegation is that the Pembertons relied on the amount of interest reported in Nationstar's Form 1098 in filing their tax returns and received a smaller deduction as a result.[1]

---

[1] As the Court permitted plaintiffs to amend only to allege standing, *see* Dkt. no. 42, this motion to dismiss also addresses only the argument that plaintiffs lack standing. Nationstar contends the amended complaint fails to state a claim for relief for several reasons that were set forth in its motion to dismiss the original complaint. The Court did not address most of those arguments when it granted Nationstar's motion to dismiss in part and stayed the case under the primary jurisdiction doctrine. *See* Dkt. no. 11.  Before filing this motion to dismiss, Nationstar met and conferred with plaintiffs' counsel and reached an agreement that the motion to dismiss would address only standing and that all arguments previously asserted challenging the original complaint are preserved.  Nationstar thus reserves the right to argue the amended complaint fails to state a claim for relief at a later date.

1  But the Pembertons fail to allege that supposed injury is fairly traceable to
2  Nationstar's conduct.  The amount reported on a Form 1098 does not determine the
3  amount of deduction to which the Pembertons are entitled.  IRS publications
4  expressly advise taxpayers they may claim deductions in amounts greater than what
5  is reported in Forms 1098.  The IRS reminded the Pembertons of this option in this
6  litigation.  The Pembertons nonetheless chose not to file amended returns.  As the
7  Pembertons were not denied the greater deductions they seek, they fail to allege they
8  suffered any injury that is fairly traceable to Nationstar's conduct.

9  The Pembertons also fail to allege facts showing their injury is redressable by
10  this court.  Only the IRS has the authority to determine whether the Pembertons are
11  entitled to the additional deduction they seek.  This Court already recognized as
12  much in staying the action pending the IRS's resolution of the tax reporting issues
13  underlying the Pembertons' claims.  As the Pembertons' supposed injury can only
14  be redressed by the IRS, the Pembertons lack standing for that reason as well.

15  For these reasons and others detailed below, the Court should dismiss the
16  complaint for lack of subject matter jurisdiction as the Pembertons lack standing.

## II.  STATEMENT OF FACTS

### A.   The Pembertons' Loan

19  In November 2005, the Pembertons obtained an Option ARM loan secured by
20  their Grass Valley home.  *See* FAC, ¶ 7.  The loan was evidenced by a promissory
21  note.  That note begins with a boldfaced, capitalized warning about the note's
22  unique features:

**THE PRINCIPAL AMOUNT TO REPAY COULD BE
GREATER THAN THE AMOUNT ORIGINALLY
BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMITED STATED IN THIS NOTE.**

26  *Id.*, Ex. A.

27  The Pembertons promised to repay principal plus interest.  *Id.*, Ex. A, § 1.
28  Though the original principal amount was $461,500, the note provides that "[t]he

1  *Principal amount may increase as provided under the terms of this Note* but will

2  never exceed … 115.000% of the Principal amount I original borrowed.  This is

3  called 'the Maximum Limit.' " *Id.*, Ex. A, §§ 1, 4(F) (emphasis added).

4         The loan provided the Pembertons' four monthly payment options.  *Id.*, ¶ 2 &

5  n. 1; Ex. A, §§ 3(C), (H).  For an initial period of up to five years, the Pembertons

6  could choose to make low minimum monthly payments at a rate tied to the

7  discounted interest rate charged during the period before the first interest rate

8  adjustment,[2] to pay interest only based on the fully indexed rate, to pay an amount

9  sufficient to amortize the loan during its 40-year term, or to pay an amount

10  sufficient to amortize the loan over 15 years.  *Id.*, Ex. A, §§ 3(C), (H).

11        The note provides that "[i]f the Minimum Payment is not sufficient to cover

12  the amount the interest due then negative amortization will occur."  *Id.*, Ex. A, §

13  3(C).  As the Pembertons acknowledge, "[c]hoosing the 'Minimum Payment' option

14  would usually, but not always, result in negative amortization, meaning that as

15  interest was deferred, the overall loan balance would increase rather than decrease."

16  *Id.*, ¶ 5.  When negative amortization occurs, the deferred interest is added to the

17  unpaid principal and interest then accrues on the capitalized amount.

18                    (E) Additions to My Unpaid Principal

19              Since my monthly payment changes less frequently than
               the interest rate, and since the monthly payment is subject
20             to the payment limitations described in Section 3(D), my
               Minimum Payment could be less than or greater than the
21             amount of the interest portion of the monthly payment that
               would be sufficient to repay the unpaid Principal I owed at
22             the monthly payment date in full on the Maturity Date in
               substantially equal payments.  *For each month that my*

24  [2] The Pembertons' promissory note provided for a low, discounted interest rate until

25  the first payment fell due.  FAC, Ex. A, §2.  On the first payment date, the interest

rate readjusted to a fully indexed rate.  *Id.*, §2(A)-(C).  The interest rate thereafter

26  readjusted monthly.  *Id*., §2(A), (D).  The Pembertons' payment amount adjusted

27  annually, not monthly like the interest rate (*see id*., §3(C)), and was subject to an

annual readjustment ceiling during the first five years of the loan.  *Id.*, §4(F).

28

1

2

3

4

*monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2.*

5   *Id.*, Ex. A, § 3(E).

6   **B.      The Pembertons' Loan Is Transferred to Nationstar**

7          During the loan's initial five-year term, the Pembertons' loan was serviced by

8   Magnus, Countrywide Financial Corporation, and Bank of America, N.A.  *Id.*, ¶ 3.

9   The Pembertons "took advantage of the 'Minimum Payment' option which resulted

10  in negative amortization during the loan's pendency with Magnus, Countrywide,

11  and/or BANA."  *Id.*, ¶ 8.

12         In July 2013, the loan's servicing rights were transferred to Nationstar.  *Id.*,

13  ¶¶ 3, 7, 9.  At that time, "because of the negative amortization from earlier years,

14  Plaintiffs' loan balance was $469,075.41, or approximately $7,575.41 above the

15  original principal amount of the loan."  *Id.*, ¶ 9.

16         In 2013, the Pembertons made payments to Nationstar in the aggregate

17  amount of $12,097.80, exclusive of taxes owed separately from principal and

18  interest.  *Id.*, ¶¶ 10, 11.  None of these payments resulted in negative amortization as

19  the five-year period during which negative amortization was permitted had expired.

20  *Id.*, Ex. A, §4(F) & (G); *see also id.*, ¶ 16, Ex. E.

21         Nationstar issued a Form 1098 for the 2013 tax year reflecting that it had

22  received $7,302.06 in mortgage interest and $4,197.66 in principal.  *Id.*, ¶¶ 11.

23  According to the Pembertons, however, the entire $12,097.80 paid in 2013 should

24  have been reported as interest on the Form 1098 because "interest that was

25  previously deferred does not lose its character as interest simply because it is paid

26  back at a later time."  *Id.*, ¶¶ 12, 21.

27         The Pembertons allege that they used the figure reported in the Form 1098 in

28  claiming a mortgage interest deduction and thus "received a smaller tax deduction in

that year and perhaps others than they would have received had the proper information been provided to them on their Form 1098 issued to them by Nationstar." *Id.*, ¶ 12.  The Pembertons do not allege, however, that they ever tried to claim a deduction in an amount greater than the amount shown on the Form 1098.

### III.  THE COMPLAINT SHOULD BE DISMISSED AS THE PEMBERTONS LACK STANDING

**A.    Subject Matter Jurisdiction Standards**

A defendant may move to dismiss where the Court lacks subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Challenges to subject-matter jurisdiction can of course be raised at any time prior to final judgment." *Grupo Dataflux v. Atlas Global Group,* 541 U.S. 567, 571 (2004) (citation omitted).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

"Article III of the Constitution confines the judicial power of federal courts to deciding actual 'Cases' or 'Controversies.'  One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013) (citing U.S. Const. art. III, § 2, cl. 1).

"The party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010).  To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted).  "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence

1  required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504

2  U.S. 555, 561 (1992).

3  **B.    The Pembertons Do Not Allege That They Suffered an Injury In Fact Fairly Traceable to Nationstar's Conduct**

4

5       As the Supreme Court recently reemphasized, a plaintiff may not "allege a

6  bare procedural violation, divorced from any concrete harm, and satisfy the injury-

7  in-fact requirement of Article III." *Spokeo, Inc.*, 136 S. Ct. at 1549.  Rather, "[t]o

8  establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of

9  a legally protected interest' that is 'concrete and particularized' and 'actual or

10 imminent, not conjectural or hypothetical.' " *Id.* at 1548 (citation omitted).  "A

11 'concrete' injury must be 'de facto,' that is, it must actually exist." *Id.* (citation

12 omitted).  "It must be real and not abstract." *Nei Contracting & Eng'g, Inc. v.*

13 *Hanson Aggregates Pac. Sw., Inc.*, No. 12-CV-01685-BAS(JLB), 2016 WL

14 4886933, at *4 (S.D. Cal. Sept. 15, 2016) (Bashant, J.).

15      It is not enough to allege an injury in fact exists. The Pembertons must also

16 allege that their "personal injury [is] fairly traceable to [Nationstar's] allegedly

17 unlawful conduct." *Allen v. Wright*, 468 U.S. 737, 751 (1984), abrogated on a

18 different ground by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S.

19 Ct. 1377 (2014).

20      To be fairly traceable, the plaintiff's injury must be caused by the unlawful

21 conduct she challenges.  *See, e.g., Nei Contracting & Eng'g, Inc. v. Hanson*

22 *Aggregates Pac. Sw., Inc.*, No. 12-CV-01685-BAS(JLB), 2016 WL 4886933, at *5

23 (S.D. Cal. Sept. 15, 2016) (holding plaintiff did not allege standing arising out of

24 belated disclosure that call would be recorded) (Bashant, J.); *Ewing v. SQM US,*

25 *Inc.*, 211 F. Supp. 3d 1289, 1293 (S.D. Cal. 2016) (plaintiff did not suffer any injury

26 fairly traceable to defendant's use of autodialer).  When the asserted injury is

27 "indirect and 'results from the independent action of some third party not before the

28 court,' " it is too attenuated to be "fairly traceable" to the challenged conduct. *Allen*,

1   468 U.S. at 758 (quoting *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 42

2   (1976)); *see also Prescott v. County of Del Dorado*, 298 F.3d 844, 846 (9th Cir.

3   2002).

4        The Pembertons fail to allege that they suffered any concrete injury that is

5   fairly traceable to Nationstar's conduct.  The Pembertons allege that they filed

6   erroneous tax returns in reliance on Nationstar's Form 1098 in 2013 and "received a

7   smaller tax deduction in that year and perhaps others than they would have

8   received" had Nationstar included deferred interest in the amount of interest paid.

9   FAC, ¶ 12. *Smith* suggested without expressly deciding that such an allegation

10  might provide the injury-in-fact wanting in plaintiffs' original complaint. *Smith*,

11  2017 WL 631696, at *1.

12       But even had the Pembertons alleged injury in fact, they still lack standing as

13  their alleged injury—paying a greater amount of taxes—is not fairly traceable to the

14  conduct they challenge—Nationstar's issuance of a Form 1098.  The amount of

15  interest reported in a Form 1098 does not determine the amount of deduction the

16  Pembertons may claim, and thus could not have caused the injury of which the

17  Pembertons complain.  An "information return creates no tax obligations on the part

18  of the taxpayer beyond what the taxpayer's particular tax status in a given year

19  requires him to pay." *Gierbolini Rosa v. Banco Popular de Puerto Rico*, 930 F.

20  Supp. 712, 716 (D.P.R. 1996), *aff'd sub nom. Gierbolini-Rosa v. Banco Popular De*

21  *Puerto Rico*, 121 F.3d 695 (1st Cir. 1997).  A taxpayer is free to claim a greater

22  deduction than the amount of interest shown on a Form 1098.

23       IRS Publication 936 states so expressly, instructing taxpayers that they may

24  claim a greater interest deduction than the amount shown on the Form 1098.  *See,*

25  IRS Pub. 936 at 9 (2015).  The IRS previously reminded the Pembertons' attorneys

26  of this option on June 10, 2015, stating that a taxpayer "can take a mortgage interest

27  deduction for an amount greater than the amount reported in a Form 1098 if the

28  taxpayer paid more deductible interest to the issuer than the amount shown on the

form.  If a taxpayer failed to take a deduction that the taxpayer was entitled to and is within the period of limitations, the taxpayer can file an amended tax return to request a refund." *See* Dkt. 18-1.

The Pembertons do not, and apparently cannot, allege that they tried to claim a greater deduction than the amount reflected in the Form 1098.  They do not allege they filed an amended return.  They do not allege that the IRS denied the greater deduction they seek.  The Pembertons thus suffered no injury fairly traceable to Nationstar's conduct, and they lack standing for that reason.  *See, e.g., Watson v. Johnny O's, Inc*., 2012 WL 2505949, at *2 (N.D. Ohio June 28, 2012) (plaintiff failed to allege injury concerning employer's failure to provide him with a W-2, in part, because plaintiff did not "allege he ever attempted to file a tax return . . . without a W-2 Form," as the IRS instructs taxpayers to do); *Bennett v. United States*, 361 F. Supp. 2d 510, 518 (W.D. Va. 2005) (plaintiff has "not suffered any real injury . . . because he has the opportunity to file his federal income tax return and receive the full amount of any income taxes withheld that are in excess of his ultimate tax liability").

**C.     The Pembertons Fail to Allege Their Injury Is Redressable By This Court**

The Pembertons also fail to allege the third prong of Article III standing—that it is " 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " *Lujan*, 504 U.S. at 561 (citation omitted).  Article III "requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. E. Kentucky Welfare Rights Org*., 426 U.S. 26, 41-42 (1976).  "A claim may be too speculative if it can be redressed only through 'the unfettered choices made by independent actors not before the court.' " *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 869 (9th Cir.

2002) (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130); *see also Pritikin v. Dep't of Energy*, 254 F.3d 791, 799–800 (9th Cir. 2001).

Plaintiffs do not allege how their supposed injury—paying a greater amount of taxes—can be redressed by this court.  As stated above, only the IRS can grant plaintiffs the additional tax deduction plaintiffs seek.  This Court implicitly recognized as much in staying the action under the primary jurisdiction doctrine pending the IRS's resolution of plaintiffs' claims.  As only the IRS, not this Court, has authority to determine whether plaintiffs are entitled to an additional tax deduction, plaintiffs' supposed injury is not redressable.  The complaint should be dismissed for that reason as well.  *See Ward v. Am. Family Life Assur. Co. of Columbus (AFLAC),* 444 F. Supp. 2d 540, 544 n.6 (D.S.C. 2006) (noting that claim challenging the issuance of a Form 1099-MISC following settlement payment was not redressable because "the ultimate decision of taxability rests with the IRS and not the Defendant").

## IV.  CONCLUSION

For the reasons stated above, the Court should dismiss the complaint for lack of subject matter jurisdiction as plaintiffs lack standing.

DATED:  May 22, 2017

SEVERSON & WERSON
A Professional Corporation

By:  */s/ Erik Kemp*
Erik Kemp

Attorneys for Defendant NATIONSTAR MORTGAGE LLC