# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PEMBERTON and SANDRA COLLINS-PEMBERTON, <br><br> Plaintiffs, <br><br> v. <br><br> NATIONSTAR MORTGAGE LLC, <br><br> Defendant. | Case No. 14-cv-1024-BAS-WVG <br><br> **OPINION AND ORDER:** <br><br> **(1) DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION PURSUANT TO RULE 12(b)(1) [ECF No. 47]** <br><br> **AND** <br><br> **(2) DECLINING TO IMPOSE ANOTHER STAY UNDER THE PRIMARY JURISDICITON DOCTRINE** |

    This matter comes before the Court on Defendant Nationstar Mortgage LLC's ("Nationstar") Motion to Dismiss for Lack of Subject Matter Jurisdiction in response to Plaintiffs' First Amended Complaint (the "FAC"). (ECF No. 47-1.) Plaintiffs Michael Pemberton and Sandra Collins-Pemberton (the "Pembertons") have opposed (ECF No. 50), and Nationstar has replied (ECF No. 51).

    For the reasons set forth below, the Court DENIES Nationstar's Motion to Dismiss at this time and sets a Rule 12(b)(6) briefing schedule. The Court further declines to impose another stay on the Pembertons' state law claims under the primary jurisdiction doctrine.

# I. BACKGROUND

### a. Factual Background

The Pembertons obtained a negative amortization home mortgage loan from First Magnus Financial Corporation for their primary California residence on or about November 30, 2005, with a principal amount of $461,500. (FAC ¶7.) The loan was a 40-year negative amortization adjustable rate mortgage (an "Option ARM") loan, a type of loan which generally provides a borrower with a minimum payment option to pay an amount in a given month which is generally but not always less than the interest due for the month. (*Id.* ¶¶3, 8.) Any interest not paid in a given month is deferred and added to the loan's balance to be paid at a later point. (*Id.* ¶4.) The Pembertons took advantage of the minimum payment option in earlier years of their loan, resulting in negative amortization. (*Id.* ¶8.) Their loan passed to other owners and servicers, with Bank of America, N.A. ("BANA") owning their loan prior to its servicing by Defendant Nationstar, a Texas-headquartered company. (*Id.* ¶¶3, 27.) At the time Nationstar began servicing the Pembertons' loan in July 2013, the Pembertons' outstanding loan balance included $7,575.41 of interest they incurred in earlier years but did not pay. (*Id.* ¶¶7, 9.)

In 2013, the Pembertons allege they made payments to Nationstar totaling $12,097.80, excluding taxes. (*Id.* ¶¶10−11.) 26 U.S.C. §6050H requires that a person who receives interest aggregating $600 or more for any calendar year on any mortgage must issue to the individual who paid the interest a statement identifying the amount of interest that individual paid during that year. (*Id.* ¶¶1−2.) Pursuant to this requirement, Nationstar sent the Pembertons a 2013 Form 1098 in February 2014, which reported that the Pembertons paid $7,302.06 in mortgage interest and $4,197.66 in principal. (*Id.* ¶11.) The Pembertons allege that because they still owed previously deferred interest at the time Nationstar took over their loan, Nationstar should have credited all of their payments (exclusive of taxes) toward retiring their deferred interest before crediting any payments to principal. (*Id.* ¶12.) They allege that

deferred interest does not lose its character as interest even when it is paid back at a later point. (*Id.*) The Pembertons' loan provided that their monthly payments "will be applied to interest before Principal." (*Id.* Ex. A §3(A).) Accordingly, they allege that Nationstar's reporting was incorrect. (*Id.* ¶12.)

The Pembertons relied upon the incorrect information contained in the 2013 Form 1098 Nationstar sent them. (*Id.*) As a result, (1) they filed erroneous tax returns in at least tax year 2013 insofar as their return claimed only the amount of mortgage interest stated on the Form 1098, and (2) received a smaller tax deduction in at least 2013 than they would have received if Nationstar had sent a Form 1098 with proper information about their interest payments. (*Id.*)

The Pembertons allege that they noticed the discrepancy in Nationstar's interest reporting and complained to Nationstar in February and March 2014. (*Id.* ¶15.) On March 27, 2014, Nationstar rejected the Pembertons' complaint, indicating that "there was no deferred amounts [sic] or negative amortization on your loan for the period of time that Nationstar has been the servicer. We were not provided with any previously deferred interest amounts from the prior servicer nor is there any way for us to calculate amounts prior to when we acquired your loan." (*Id.* ¶16; Ex. E.) The Pembertons allege, however, that they reached out to BANA and were "easily able to obtain their payment history from that entity." (*Id.* ¶17.) The Pembertons allege that the IRS exclusively relies on the amounts contained in a Form 1098 and rejects any attempts by taxpayers to claim a different amount of interest from that which appears on the taxpayer's Form 1098. (*Id.* ¶13.) The Pembertons allege that due to Nationstar's conduct they have been unable to correctly state their taxes or obtain the full mortgage interest deduction to which they are entitled under applicable tax law. (*Id.* ¶21.)

### b. Procedural Background

On April 23, 2014, the Pembertons brought a prospective class action against Defendant Nationstar alleging a federal cause of action under 26 U.S.C. § 6050H and

– 3 –
14cv1024

several causes of action under state law. (ECF No. 1.) They seek damages as well as injunctive and equitable relief. (*Id*.) Nationstar filed a motion to dismiss these claims and a motion to stay. (ECF No. 11.) In ruling on that motion, this Court found no express or implied private cause of action under 26 U.S.C. §6050H and dismissed Plaintiffs' corresponding federal claim with prejudice. (ECF No. 17.) The Court further dismissed Plaintiffs' claims sixth and seventh causes of action, and *sua sponte* stayed the case as to Plaintiffs' remaining state law claims, pending a determination by the IRS about whether mortgage lenders are required to report deferred interest on the Forms 1098 they issue. (*Id*.)

During the stay, the Ninth Circuit issued a decision in *Smith v. Bank of America, N.A.*, 679 Fed. App'x 549 (9th Cir. 2017), a case also concerning interest reporting under §6050H. The Ninth Circuit determined that *Smith* should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction on the ground that the complaint failed to show an injury-in-fact. *Id*. at 550. After *Smith*, this Court ordered the Plaintiffs to show cause as to why the complaint should not be dismissed for lack of standing. (ECF No. 38.) Plaintiffs conceded that their original complaint failed to satisfy *Smith*, but also argued they could amend their complaint to cure its standing deficiency. (ECF No. 39.) The Court dismissed the original complaint and permitted amendment. (ECF No. 42.) The present dispute concerns whether the FAC (ECF No. 43) now establishes the Pembertons' Article III standing.

**II. LEGAL STANDARD**

**A. Rule 12(b)(1)**

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(1) if it fails to allege facts sufficient to establish subject matter jurisdiction. *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Once a party has moved to dismiss for lack of subject matter jurisdiction, the opposing party bears the burden of establishing the Court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). A Rule 12(b)(1) challenge to jurisdiction may be facial

or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction, whereas in a factual challenge, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke jurisdiction. *Id*.

### B. Article III Standing

Those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement of showing an actual case or controversy under Article III. *L.A. v. Lyons*, 461 U.S. 95, 101 (1983). To do so, a plaintiff must allege the irreducible constitutional minimum of: (1) an injury in fact via "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) causation, *i.e.*, the injury is "fairly traceable to the challenged action of the defendant"; and (3) redressability, *i.e.* it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560−61 (1992) (internal citations and quotations omitted). "Each element of standing must be supported with the manner and degree of evidence required at the successive stage of litigation." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011.) At the pleading stage, a trial court must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party. *Warth* v. *Seldin*, 422 U.S. 490, 501 (1975). General factual allegations of injury resulting from the defendant's conduct may suffice because the trial court presumes that general allegations embrace those specific facts necessary to support the claim. *Lujan*, 504 U.S. at 561. A failure to establish Article III standing results in dismissal of the complaint for lack of subject matter jurisdiction. *Steel Co. v. Citizens for Better Envt.*, 523 U.S. 83, 94 (1998).

## III. DISCUSSION

Defendant Nationstar contends that this Court lacks subject matter jurisdiction to hear this action because Plaintiffs lack Article III standing. Nationstar has not

submitted extrinsic evidence with its motion, rather the motion is based entirely on the allegations in the FAC and its attached documents, as well as documents of which the Court may take judicial notice. Defendant's Rule 12(b)(1) motion is thus a facial challenge and will be evaluated as such. The Court will assume the Pembertons' factual allegations to be true and will draw all reasonable inferences in their favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009).

### A. Injury-in-Fact

Nationstar does not seriously contend that the Pembertons have not alleged an injury-in-fact, but rather argues that although *Smith* suggested certain allegations might suffice to show injury-in-fact, it did not definitively decide the issue. (ECF No. 51 at 2.) In response, the Pembertons argue that "*Smith* sets forth the requirements to allege standing in cases against a bank/mortgage service for under-reporting mortgage interest on Form 1098," and identifies the specific "elements" plaintiffs in such cases "must" plead. (ECF No. 50 at 4−5.) Plaintiffs argue that they have alleged both these elements and therefore have satisfied *Smith*.

In *Smith*, the plaintiffs sued a mortgage lender on state law causes of action based on an alleged violation of §6050H and on an implied federal right of action under §6050H. 679 Fed. App'x at 550. The plaintiffs specifically alleged, like the Pembertons do, that they had received a Form 1098 that did not comply with the requirements of §6050H. *Id*. The Ninth Circuit held that "mere receipt of an erroneous form, without more, is insufficient to establish Article III standing." *Id*. The Ninth Circuit observed that the plaintiffs had failed to allege that they ever filed erroneous tax returns in reliance on the incorrect Form 1098 or that they had received smaller tax deductions as a result. *Id*. The court remanded the case to the district court for dismissal pursuant to Rule 12(b)(1). *Smith*, 679 Fed. App'x at 550.

In the wake of *Smith*, the Pembertons now allege two injuries due to Nationstar's incorrect Form 1098 and its underlying method of calculating interest payments: (1) the Pembertons filed an erroneous tax return in 2013 in reliance on

the form and (2) the Pembertons received a smaller tax deduction in 2013 than they would have because they relied on the form. (FAC ¶12.) The FAC, like the original complaint, also alleges that the Pembertons have suffered damages of the accountancy fees that will be necessary to amend their tax returns. (*Id.* ¶23.) The Court considers whether each alleged injury suffices for Article III standing.

### 1. Tax Deduction Injury

Although simply filing an erroneous tax return is likely not a "concrete" injury if no further harm is alleged, the Pembertons allege that they "received a smaller tax deduction in [2013] than they would have received had the proper information been provided to them on their Form 1098 issued to them by Nationstar." (*Id.* ¶12.)

"Economic injury is clearly a sufficient basis for standing." *Maya*, 658 F.3d at 1069 (*quoting San Diego Cty. v. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1130 (9th Cir. 1996)). An alleged injury of economic loss or overpayment has established an injury-in-fact in other contexts. *See, e.g., Opperman v. Path, Inc.*, 87 F. Supp. 3d 1018, 1037 (N.D. Cal. 2014) (plaintiff's alleged overpayment for goods due to defendant's conduct satisfied Article III); *Yount v. Salazar*, No. CV11-8171 PCT-DGC, 2014 WL 4904423, at *7 (D. Ariz. Sept. 30, 2014) (loss of value in existing claims and investments constituted injury-in-fact for Article III). The Court finds that the Pembertons' tax deduction allegations establish an economic injury that also satisfies Article III.

The FAC contains multiple factual allegations substantiating the Pembertons' allegation of economic injury by receiving a smaller tax deduction in 2013:

- The amount of deferred interest outstanding on the Pembertons' loan at the time Nationstar took over their loan was $7,571.41. (FAC ¶9.)
- The Pembertons did not make any payments on their deferred interest prior to the point at which Nationstar took over their loan. (*Id.*)
- Nationstar was required to allocate the Pembertons' payments to interest before principal. (*Id.* Ex. A §3(A).)

- Although the Pembertons allege they paid $12,097.80 (exclusive of taxes) to Nationstar in 2013, Nationstar provided a 2013 Form 1098 reporting $4,197.66 of that amount credited to principal and $7,302.66 credited to mortgage interest. (*Id.* ¶11.)

On the basis of these allegations, it is not an "academic exercise in the conceivable", *Maya*, 658 F.3d at 1068, to understand how the Pembertons' mortgage interest tax deduction in 2013 – a deduction from their overall tax liability – would likely have been higher if even a single payment credited to principal in that year had been credited to deferred interest instead.

The Court next turns to whether the Pembertons' alleged injury is particularized. The Pembertons' allegations concern the Form 1098 Nationstar provided them, the federal tax return they filed by relying on the form, and the smaller federal tax deduction they received. (FAC ¶¶10−12.) The Pembertons also allege that Nationstar was obligated or had a duty to accurately report their deferred interest payments on the 2013 Form 1098 it provided them by virtue of §6050H. (*Id.* ¶¶1, 9, 43, 48, 56, 60, 74, 82.) These allegations satisfy the particularity requirement because they show that the Pembertons suffered the alleged injury "in a personal and individual way." *See Spokeo*, 136 S. Ct. at 1548. For the purposes of Article III standing, the Pembertons' tax deduction injury constitutes an injury-in-fact.

**2. Accountancy Fees Injury**

The third injury the Pembertons allege are "the accountancy fees that will be necessary to prepare and file amended returns." (FAC ¶23.) Accountancy fees incurred to file an amended tax return could be a sufficient injury-in-fact for Article III standing. *See Strugala v. Flagstar Bank*, No. 5:13-cv-05927, 2017 WL 3838439, at *3 (N.D. Cal. Sept. 1, 2017) (finding standing where plaintiff had paid accountancy fees to file an amended tax return). However, the Pembertons do not allege that they have ever incurred such fees in order to file an amended tax return, nor do they allege an intent to file an amended return. Nationstar correctly argues that this injury is too

hypothetical. (ECF No. 51 at 3.) Therefore, the Pembertons have not alleged an injury-in-fact based on accountancy fees related to filing an amended return.

B.  Causation

Nationstar argues that the Pembertons' alleged injury is not fairly traceable to its conduct because "[t]he amount of interest reported in a Form 1098 does not determine the amount of deduction the Pembertons may claim." (ECF No. 47-1 at 7.) Nationstar argues that the Plaintiffs could have claimed a higher deduction when they filed their tax return by following IRS instructions in IRS Publication 936, or by filing an amended return to recover overpaid taxes, but chose not to do so. (*Id*. at 7−8.) The Pembertons contend that this argument is self-defeating because they would inevitably expend time and money to amend their prior return, which would constitute an injury. (ECF No. 50 at 7.)

At the pleading stage, the question is whether the Plaintiffs have alleged that their alleged injury is fairly traceable to the conduct of Nationstar. To survive a motion to dismiss for lack of Article III standing, "plaintiffs must establish a line of causation between defendants' action and their alleged harm that is more than attenuated." *Maya*, 658 F.3d at 1070. A causal chain does not fail simply because there are several links so long as those links are not hypothetical or tenuous, but rather are plausible. *Id*. (citing *Nat'l Audubon Soc., Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002)). Where the independent decision of a third party has a significant effect on the plaintiff's injuries, the causal chain is too weak to support standing at the pleading stage. *Allen*, 468 U.S. at 759.

The Pembertons' allegations establish that their alleged tax deduction injury is fairly traceable to Nationstar's conduct. First, under §6050H, regardless of the merit of the Pembertons' argument about the duty it imposes on Nationstar, Nationstar was the entity responsible for providing them with their Form 1098 because it received payments from them exceeding $600. (FAC ¶¶1, 9−10.) Second, the Pembertons allege that Nationstar provided them with a 2013 Form 1098 that failed to account for

deferred interest payments based on its practice of calculating mortgage interest in violation of §6050H. (*Id*. ¶¶ 12, 44, 49, 54, 60, 75−78, 83.) Third, the Pembertons allege that this deferred interest was incurred but not paid prior to the point at which Nationstar began servicing their loan, thus precluding at the pleading stage the possibility that their prior mortgage loan owners or servicers caused their injury. (*Id*. ¶9.) Fourth, the Pembertons allege that they relied on the Form 1098 Nationstar provided them – like other taxpayers, tax professionals, and the IRS do – when they filed their 2013 tax return. (*Id*. ¶¶1, 12−13.) Assuming the truth of these allegations, as the Court must, the Pembertons have fairly traced their tax deduction injury to Nationstar's conduct.

In reaching this conclusion, the Court finds unpersuasive Nationstar's arguments against causation. Nationstar argues that the Pembertons have not alleged causation because the amount of interest reported on a Form 1098 does not determine the amount of deduction the Pembertons may claim. (ECF No. 47-1 at 7.) This argument "wrongly equates injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation." *Bennett v. Spear*, 520 U.S. 154, 169 (1997). Injury produced by the determinative or coercive effect upon the action of someone else still satisfies the causation requirement of Article III. *Id*; *Maya*, 658 F.3d at 1072 n.8.

Nationstar also argues that the Pembertons had other means to claim a higher tax deduction. Nationstar points to IRS Publication 936 – a publication that does not discuss deferred interest – as instructing taxpayers that they may claim a greater interest deduction than the amount shown on a Form 1098, and *Strugala v. Flagstar Bank*, 2017 WL 3838439, at *3, a case in which the plaintiff filed an amended return and received a higher tax deduction without the defendant providing a new Form 1098. However, the ruling in *Strugala* is based on the facts specific to that case, which included an accountancy fees injury. In this case, the Pembertons explicitly allege that the IRS – like everyone else – exclusively relies on the Form 1098, and will reject

any attempt by a taxpayer to claim an amount of mortgage interest different than the amount reported on that form. (FAC ¶¶13−14.) Whether these allegations are true is a matter for a different stage of the proceedings, not this Motion to Dismiss where the Court assumes the allegations are true.

Additionally, here, the Pembertons' alleged injury was completed when they received a smaller tax deduction. *See, e.g., Maya*, 658 F.3d at 1069 ("[I]f plaintiff would not have purchased their homes absent defendants' misconduct, the injury was created at the moment of the fraudulent purchase. . .").

Lastly, the Court finds the authorities on which Nationstar relies for its causation argument are inapplicable or otherwise unpersuasive. *See Watson v. Johnny O's, Inc.*, No. 5:12 CV 1083, 2012 WL 2505949 (N.D. Ohio June 28, 2012) (finding that *pro se* plaintiff had alleged no injury for which relief could be granted where employer failed to provide a W-2 Form reporting his income); *Bennett v. United States*, 361 F. Supp. 2d 510, 518 (W.D. Va. 2005) (finding no jurisdiction over plaintiff's suit against IRS for income tax refund of withheld income under both 26 U.S.C. §7422 and the Anti-Injunction Act); *Gierbolini Rosa v. Banco Popular de Puerto Rico*, 930 F. Supp. 712 (D.P.R. 1996) (income information return created no tax liability on the part of the taxpayer, rather such liability would be determined between government and taxpayer).

### C. Redressability

Nationstar argues that the Pembertons fail to allege redressability because "only the IRS, not this Court, has the authority to determine whether the Pembertons are entitled to an additional tax deduction." (ECF No. 47-1 at 9.) The Court disagrees.

A plaintiff's burden to show redressability is "relatively modest." *Renee v. Duncan*, 623 F.3d 787, 797 (9th Cir. 2010). The Pembertons must allege that it is likely that the injury resulting from Nationstar's conduct will be redressed by a favorable court decision. *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 869 (9th Cir. 20002). "A claim may be too speculative if it can be redressed only through the

unfettered choices made by independent actors not before the court." *Id.* The question here is whether the Pembertons' tax deduction injury would likely be remedied by a favorable court decision

The Pembertons seek three forms of relief: damages for receiving a smaller 2013 tax deduction, an order requiring Nationstar to provide corrected Forms 1098, and a declaratory judgment that Nationstar's conduct is unlawful. (FAC, Prayer for Relief.) These forms of relief would likely remedy the Pembertons' injury, which was produced by Nationstar's allegedly incorrect method of calculating mortgage interest, Nationstar's allegedly incorrect Form 1098, and the resulting economic harm to Nationstar. It is in this Court's power to provide a damages award. *See Jewel v. NSA*, 673 F.3d 902 (9th Cir. 2011) (noting that "there is no real question about redressability" because the plaintiff "seeks an injunction and damages, either of which is an available remedy. . ."). The requested injunctive relief of corrected Forms 1098 and preclusion of Nationstar from issuing Forms 1098 that do not accurately report mortgage interest payments would also address the injury the Pembertons allege. *See id.* Lastly, a declaratory judgment declaring unlawful Nationstar's method of calculating mortgage interest, for the purpose of its tax deductibility to interest payers, would redress the conduct the Pembertons allege resulted in Nationstar providing an erroneous Form 1098.

Despite the redressability of the Pembertons' claims through a favorable decision, Nationstar argues that "only the IRS can grant plaintiffs the additional tax deductions plaintiffs seek." (ECF No. 47-1 at 9.) Nationstar further argues that "[t]his Court recognized as much in staying the action under the primary jurisdiction doctrine. . ." (*Id.*) Nationstar's argument appears to confuse Article III's redressability requirement, which asks only whether the remedies a court can provide are likely to redress the alleged injury, with this Court's prior determination that the IRS might be better suited to address the question of §6050H's scope as a matter of the primary jurisdiction doctrine. (*See* ECF No. 17.) The question of whether the IRS might be

better suited to resolve an issue does not bear upon whether this Court has subject matter jurisdiction. *See Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002) ("Primary jurisdiction is not a doctrine that implicates the subject matter jurisdiction of the federal courts.").

The Court also rejects as misguided Nationstar's second argument that only the IRS can determine whether the Plaintiffs are entitled to an additional tax deduction. (ECF No. 47-1 at 9.) This dispute is not about the IRS's determinations of the Pembertons' mortgage interest tax deduction in 2013, or about seeking to have the IRS make a determination as to any "additional" tax deduction. The Pembertons are suing Nationstar for its "completely separate actions and omissions, which resulted in negative tax consequences." *Dr. Henry Erle Childers IV v. The New York and Presbyterian Hospital*, 36 F. Supp. 3d 292, 304 (S.D.N.Y. 2014). Thus, Nationstar's reliance on *Ward v. American Family Life Assurance Company*, 444 F. Supp. 2d 540 (D.S.C. 2006), a case in which the plaintiff sought relief specifically to undermine the IRS's prior tax assessment, is misplaced.

\* \* \*

For the foregoing reasons, the Court denies Nationstar's Motion to Dismiss for Lack of Jurisdiction Pursuant to Rule 12(b)(1). Nevertheless, the Court observes that Nationstar's challenge is a facial challenge to subject matter jurisdiction. Nationstar may file a factual Rule 12(b)(1) challenge to the Pembertons' Article III standing at a later point. Moreover, this Court will *sua sponte* revisit at any time the question of the Pembertons' Article III standing should it suspect that they do not in fact possess Article III standing to assert any or all of their state law claims.

In denying Nationstar's current motion to dismiss for lack of subject matter jurisdiction, the Court *sua sponte* provides notice that it is concerned that the Pembertons have not plausibly pleaded any claims upon which relief may be granted. "A trial court may act on its own initiative to note the inadequacy of a complaint and dismiss it for failure to state a claim." *Wong v. Bell*, 642 F.2d 359, 362 (9th Cir. 1981).

Before such dismissal, a court should provide the plaintiff with an opportunity to at least submit a written opposition to such a motion. *Id.* Although the parties previously briefed Defendant's prior motion to dismiss, significant time has passed since that briefing. Therefore, the Court will afford the Plaintiffs the opportunity to file a brief in opposition to a Rule 12(b)(6) dismissal, and sets a briefing schedule at the conclusion of this opinion and order

## IV. THE PROPRIETY OF A STAY UNDER THE PRIMARY JURISDICTION DOCTRINE

Having found that this Court has subject matter jurisdiction to consider the Pembertons' state law claims, the Court now considers the propriety of imposing a stay under the primary jurisdiction doctrine once more.

The primary jurisdiction doctrine "is a prudential doctrine under which courts may, under appropriate circumstances, determine that initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 397 F.3d 775, 780 (9th Cir. 2002). It "is not a doctrine that implicates the subject matter jurisdiction of the federal courts." *Id*. The Ninth Circuit has made clear that the application of the primary jurisdiction doctrine serves two underlying policies: (1) whether application will enhance court decisionmaking and efficiency by allowing the court to take advantage of administrative expertise and (2) whether application will help assure uniform application of regulatory laws. *See Chabner v. United of Omaha Life Ins*., Co, 225 F.3d 1042, 1051 (9th Cir. 2000). The Court does not believe that the first policy will be served at this juncture and that efficiency considerations outweigh the Court's prior concern with uniformity.

### A. Judicial Decisionmaking and Efficiency

First, the Court is not convinced that staying this case a second time will enhance its decisionmaking or serve efficiency purposes. This case is one of four that referred to the IRS the issue of reporting deferred interest under §6050H. *See Neely*

*v. JP Morgan Chase Bank, N.A.*, No. 8:16-cv-01924, ECF No. 30 (C.D. Cal. Feb. 6, 2017); *Strugala v. Flagstar Bank, FSB*, No. 5:13-cv-05927-EJD, 2015 WL 5186493 (N.D. Cal. Sept. 4, 2015); *Rovai v. Select Portfolio Servicing, Inc.*, No. 3:14-cv-01738-BAS-WVG (S.D. Cal. May 11, 2015); *Pemberton v. Nationstar Mortgage LLC*, No. 3:14-cv-01024-BAS-WVG, ECF No. 17 (S.D. Cal. Feb. 5, 2015). The IRS initially accepted the issue into its Industry Issue Resolution ("IIR") program on December 29, 2015. (ECF No. 48 at 2.) The IRS announced on August 25, 2016 that the IRS had added the issue to its Priority Guidance Plan, indicating that it would address the issue in the upcoming year. (*Id.* 2−3.) Based on this development, the Court kept the stay in place.

The IRS subsequently terminated the IIR project, as reflected in a communication to the Pembertons' counsel on October 28, 2016, indicating that it would instead address the issue through a formal guidance process. (ECF No. 32, Ex. A.) Since that communication over a year ago, there has been no indication that the IRS "has taken up or will take up the issues." *Pimental v. Google, Inc.*, No. C-11-02585-YGR, 2012 WL 1458179, at *5 (N.D. Cal. April 26, 2012). The primary jurisdiction doctrine only "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties *reasonable opportunity* to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993) (emphasis added); *Brown v. MCI Worldcom Network Servs., Inc.*, 277 F.3d 1166, 1173 (9th Cir. 2002). The Court believes there has been a reasonable opportunity for the parties to refer the question to the IRS and receive guidance, but this process has not resulted in any efficient resolution of the issue.

Second, it is no longer clear that the expertise of the IRS may be so necessary to adjudicate the Pembertons' state law claims that this Court must impose an additional stay of unknown duration. Although the Court recognizes that the Pembertons' state law claims incorporate or are premised on a duty arising under §6050H, the statute's use of the term "interest" is susceptible to statutory construction.

"A district court is suited to resolve issues of statutory interpretation" of this term. *Pimental*, 2012 WL 1458179, at *3.

Furthermore, the IRS is not particularly well-suited to address the common law principles underlying all but one of the Pembertons' state law claims. An administrative agency's specialization does not offer much assistance in resolving questions of the application of common law principles which are "more competently decided in a judicial forum." *See General Elec. Co. v. Nedlloyd*, 817 F.2d 1022, 1027−28 (2d Cir. 1987); *see also, e.g., N.Y. State Thruway v. Level 3 Communs., LLC*, 734 F. Supp. 2d. 257, 265 (N.D.N.Y, 2010) ("[c]ontract disputes are legal questions within the conventional competence of the courts and thus the doctrine of primary jurisdiction does not normally apply.") Here, resolution of the question about whether §6050H imposes a duty to report deferred interest would not end the Court's inquiry as to whether the Pembertons have successfully shown that common law principles entitle them to relief from Nationstar's allegedly wrongful conduct.

This is not to say that the IRS has no relevant expertise regarding the scope of §6050H that would be helpful. In fact, the Court previously stayed the matter hoping the IRS would provide its expertise or guidance. (ECF No. 17.) But as only a portion of the state law claims falls within the purview of the IRS, further delay in resolving the Pembertons' claims through the imposition of another stay does not aid judicial efficiency

### B. Uniformity in Administration

The Court's prior concerns about uniformity present a closer call in the Court's decision not to impose another stay. The Court's primary concern in staying the case pursuant to the primary jurisdiction doctrine was uniformity. The Court observed that all "the state law causes of action each turn on whether Defendant accurately reported the interest paid in Plaintiff's 1098 Forms." (*Id.* at 5.) Those forms are completed, submitted, and relied upon by the IRS to enforce the nationwide taxation scheme. (*Id.*) The Court further observed that the IRS promulgates rules regarding the scope of

interest payments and the proper administration of Form 1098s. (*Id.* (citing 26 C.F.R. §1.221-1; 26 C.F.R. §1.6050H02).) In light of these circumstances, the Court sought for the IRS to weigh on the issue of reporting deferred interest under §6050H first.

Notwithstanding this earlier determination, the Court finds that the need for judicial efficiency determinatively outweighs its initial concern with uniformity.[1] *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 760 (9th Cir. 2015) ("Under our precedent, 'efficiency' is the 'deciding factor' in whether to invoke primary jurisdiction.") Moreover, the Court's uniformity concerns were solely concerned with §6050H, not with what the common law and state statutory principles underlying the Pembertons' state law claims might require of Nationstar. If it becomes clear at a later point that the Court and the IRS are "on a collision course in rendering different decisions" about the scope of §6050H, the Court can easily revisit the propriety of a stay to avoid a conflict. *See, e.g., N.Y. State Thruway v. Level 3 Communs., LLC*, 734 F. Supp. 2d. 257, 265 (N.D.N.Y, 2010).

## V. CONCLUSION & ORDER

For the foregoing reasons, the Court **ORDERS** as follows:

1. Defendant Nationstar's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Rule 12(b)(1) is **DENIED**.
2. The Court **DECLINES TO STAY** the remaining state law claims.
3. The Court **HEREBY ORDERS** the following Rule 12(b)(6) dismissal briefing schedule:
    a. Plaintiffs shall file a Motion in Opposition to a Rule 12(b)(6) Dismissal of the First Amended Complaint **no later than November 20, 2017**. The motion must not exceed a total of 35 pages in length.
    b. Defendant Nationstar shall file a response to such motion **no later than**

---

[1] The Court also observes that at least one district court considering similar claims has found Article III standing and lifted its stay. *See Neely v. JP Morgan Chase Bank, N.A.*, No. 8:16-cv-01924, ECF No. 39 (C.D. Cal. Apr. 26, 2017).

December 11, 2017.  The response must not exceed a total of 35 pages in length.

c. Plaintiffs may file a reply **no later than December 18, 2017**.  The reply must not exceed a total of 10 pages.

d. It is **ORDERED** that Plaintiffs' Motion in Opposition to a Rule 12(b)(6) Dismissal and Defendant's response should brief the question of the appropriate choice of law to apply for the state law claims

**IT IS SO ORDERED.**

DATED:  October 20, 2017

Hon. Cynthia Bashant
United States District Judge