1
2
3
4
5
6
7
8
**UNITED STATES DISTRICT COURT**

9
**SOUTHERN DISTRICT OF CALIFORNIA**

10

11 MICHAEL PEMBERTON, *et al.*,          Case No. 14-cv-1024-BAS-WVG

12                          Plaintiffs,      **ORDER DISMISSING IN PART AND SUSTAINING IN PART THE FIRST AMENDED COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

13          v.

14 NATIONSTAR MORTGAGE LLC,

15                          Defendant.       **[ECF No. 54]**

16

17

18 BASHANT, J.:

19          This matter is before the Court on notice to Plaintiffs Michael Pemberton and

20 Sandra Collins-Pemberton (the "Pembertons") of a possible Rule 12(b)(6) dismissal

21 of the claims raised in the First Amended Complaint ("FAC").  (ECF No. 53.)  The

22 Pembertons have filed a response (ECF No. 54), Defendant Nationstar Mortgage LLC

23 ("Nationstar") has opposed the response (ECF No. 55), and the Pembertons have

24 replied (ECF No. 60).  The parties appeared before the Court on June 7, 2018 for oral

25 argument and the case was submitted.  (ECF No. 69.)  The  matter is ripe for decision.

26                          **Overview**

27          This case involves pressing questions about the scope of 26 U.S.C. § 6050H, a

28 federal statute which requires an individual who receives at least $600 in home

– 1 –

14cv1024

mortgage interest payments during a calendar year to report the amount of interest received to the IRS and the individual who paid the interest. 26 U.S.C. §§ 6050H(a), (d). The fundamental dispute between the parties is whether Section 6050H requires Nationstar to report deferred interest payments.

In 2005, the Pembertons obtained a home mortgage loan which permitted them to defer mortgage interest for payment at a later date and added that deferred interest to principal. The Pembertons deferred interest during the earlier years of their loan, which caused the outstanding principal on their loan to increase above the original amount. In 2013, Nationstar became the Pembertons' loan servicer and received mortgage payments from them, which Nationstar applied to interest and principal due on the loan. Thereafter, Nationstar respectively provided the IRS and the Pembertons with Forms 1098, which reported the Pembertons' payments on interest and principal for 2013. The amount of interest reported did not reflect deferred interest, which the Pembertons contend violated Section 6050H.

Federal courts have proceeded with caution in addressing challenges to mortgage lender and servicer Section 6050H reporting, like the challenge the Pembertons raise, even when those challenges present familiar state law claims.[1] This is because "[n]either § 6050H nor its implementing regulations provide explicit direction to recipients on how, whether and when to report capitalized interest."

---

[1] Four other Section 6050H-based challenges are currently pending in three district courts in the Ninth Circuit. *See Neely v. JP Morgan Chase Bank, N.A.*, No. 8:16-cv-01924, ECF No. 1 (C.D. Cal. Oct. 21, 2016) (concerning alleged failure to report interest after a short sale of the plaintiff's home); *Smith v. Bank of Am., N.A.*, No. 14-cv-6668-DSF-PLA, ECF No. 1 (C.D. Cal. Aug. 25, 2014) (concerning alleged failure to report unpaid interest capitalized into principal after a loan modification); *Rovai v. Select Portfolio Servicing, Inc.*, No. 14-cv-1738-BAS-WVG, ECF No. 1 (S.D. Cal. July 24, 2014) (concerning alleged failure to report deferred interest payments); *Strugala v. Flagstar Bank, FSB*, No. 5:13-cv-5927-EJD, ECF No. 1 (N.D. Cal. Dec. 23, 2013) (concerning alleged over-reporting of deferred interest not actually paid during a given year and subsequent under-reporting of deferred interest payments).

– 2 –

*Strugala v. Flagstar Bank, FSB*, No. 5:13-cv-5927-EJD, 2015 WL 5186493, at *3 (N.D. Cal. Sept. 4, 2015); *see also Pemberton v. Nationstar Mortgage LLC*, No. 14-cv-1024-BAS-WVG, ECF No. 17 at 5–6 (S.D. Cal. Feb. 5, 2015) (implicitly recognizing lack of clarity under Section 6050H and existing IRS regulations and revenue ruling). State law claims incorporating Section 6050H-based challenges raise "novel" issues that have given federal courts pause, particularly because of the IRS's role in the federal tax scheme.[2] *See Horn v. Bank of Am., N.A.*, No. 3:12 cv–1718–GPC–BLM, 2014 WL 1455917, at *3 (S.D. Cal. Apr. 14, 2014); *see also Strugala*, 2015 WL 5186493, at *5 ("Strugala's claims raising a novel question of taxation policy in the context of th[e] form [1098] are the types on which the agency should have the first word in accordance with Congress' broad mandate."); *Smith v. Bank of Am., N.A.*, No. CV 14-6668 DSF (PLA), 2015 WL 12979198, at *1, 3–5 (C.D. Cal. Feb. 3, 2015) (initially dismissing all claims on the ground that failure to comply with Section 6050H "fall[s] within the Internal Revenue Service's (IRS) exclusive enforcement regime"), *vacated by*, 679 Fed. App'x 549 (9th Cir. 2017). Despite the filing of five class actions in federal courts concerning Section 6050H reporting, with the earliest filed some six years ago, the IRS has not weighed in on Section 6050H's scope.

After careful consideration, this Court has determined that the Pembertons' state law claims generally may be resolved based on each claim's elements. For the

---

[2] Whether the Pembertons may even raise state law claims premised on the violation of Section 6050H, a federal tax reporting statute, might implicate the issue of federal preemption. The Pembertons have argued extensively against preemption of their state law claims in responding to the Court's order to show cause. (ECF No. 54 at 14–21.) Nationstar, however, did not brief preemption and instead focused on the so-called "common law exclusive enforcement doctrine," which the Court rejects. (ECF No. 55 at 5–16.) At oral argument, Nationstar conceded that it does not presently argue that the Pembertons' claims are preempted. Given this concession, the Court declines to undertake a preemption analysis at this time, without prejudice to Nationstar asserting preemption at a later stage.

– 3 –

reasons herein, the Court concludes that (1) the Pembertons' claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, UCL fraudulent and unlawful prong claims, and their declaratory judgment claim (as it is pleaded) must be dismissed with prejudice; (2) the Pembertons' claim for a preliminary and permanent injunction must be dismissed without prejudice; and (3) the Pembertons' UCL unfair prong claim and negligence claim are plausible.

## I.    BACKGROUND

### A.    Relevant Statutory and Regulatory Background

Congress permits taxpayers to claim as a deduction from their taxes all interest paid during a given year. 26 U.S.C. §163(a) ("There shall be allowed as a deduction all interest paid . . . within the taxable year on indebtedness."). This deduction may be claimed for interest payments a homeowner makes on his or her home mortgage loan. 26 U.S.C. §163(h). Generally, this deduction must be claimed within three years of the filing of a tax return. 26 U.S.C. § 6511(a).

Congress enacted Section 6050H, an information reporting statute, to "assist the [IRS] in verifying the accuracy of claimed mortgage interest deductions." Joint Comm. on Taxation, H.R. 4170, 98th Cong. P. L. 98-369, Gen. Explanation of the Revenue Provisions of the Deficit Reduction Act of 1984, at 488 (Dec. 31, 1984). Section 6050H requires any individual who receives interest aggregating over $600 on a mortgage in a given year from another individual to furnish the Internal Revenue Service ("IRS") with an information return identifying the amount of interest received. 26 U.S.C. § 6050H(a); 26 U.S.C. § 6050H(b)(2)(B). The interest recipient must also provide a statement to the individual who provided the interest, which also identifies the amount of interest received during the year. 26 U.S.C. § 6050H(d). By regulation, the interest recipient meets its statutory obligations by providing the IRS and the interest provider with a Form 1098. 26 C.F.R. §§ 1.605H-2(a), (b). Existing regulations provide some guidance on how to calculate the amount of interest received on a mortgage during a calendar year and identify certain payments that do

– 4 –

not qualify as reportable interest.  26 C.F.R. § 1.6050H-1(e).  However, neither the statute, nor the implementing regulations address deferred interest.

By statute and regulation, monetary penalties may be imposed on an interest recipient who intentionally disregards the requirement to provide a Form 1098 or who includes "incorrect information" on a form.  *See* 26 U.S.C. § 6722(a)(2)(B) (imposing penalties for "inclusion of incorrect information" on a "payee statement" required under Section 6050H(d)); 26 U.S.C. § 6721(a)(2)(B) (imposing penalties for "inclusion of incorrect information" on a "payee statement" to IRS required under Section 6050H(a)); 26 U.S.C. §§ 6721(e), 6722(e); *see also* 26 C.F.R. § 1.6050H-2(e)(2)(i)-(iii).

## B.    The Pembertons' Loan and 2013 Form 1098 From Nationstar[3]

The Pembertons are California homeowners who obtained an Option ARM mortgage loan in 2005, the terms of which provided an option to make a monthly interest payment less than the full amount due.  Under this option, the monthly interest the Pembertons did not pay was added to the principal amount of their loan and treated as principal for the purposes of the loan.  When Nationstar began servicing their loan in July 2013, the Pembertons' loan balance was $7,575.41 above the original balance, an amount which the Pembertons allege was charged as interest in the earlier years of their loan but not paid, *i.e.* deferred interest.

Nationstar provided the Pembertons with a Form 1098 showing the amount of mortgage interest it received from them during the 2013 tax year.  According to the Pembertons, the amount reported did not account for deferred interest payments despite the presence of deferred interest.  The Pembertons allege that interest does not lose its character as interest and so Nationstar was required to apply their payments

---

[3] The Court discussed in greater detail the factual allegations underlying the Pembertons' claims against Nationstar in its Article III standing order and thus provides only a brief discussion.  *See Pemberton v. Nationstar Mortgage LLC*, No. 14-cv-1024-BAS-WVG, 2017 WL 4759018, at *1–2 (S.D. Cal. Oct. 20, 2017).

– 5 –

to retirement of deferred interest before ever applying such payments to principal. When the Pembertons realized the interest amount reported in their Form 1098 did not account for deferred interest payments, they brought the issue to Nationstar's attention. Nationstar contended that the Pembertons had not deferred interest while it serviced their loan and that it had not received any previously deferred interest amounts from the Pembertons' prior servicer. Nationstar did not issue the Pembertons a revised Form 1098 that accounted for deferred interest payments.

Because the IRS allegedly maintains a policy of rejecting taxpayer attempts to seek a tax deduction for mortgage interest payments higher than the amount reported on a Form 1098, the Pembertons allege that Nationstar's refusal to provide a revised Form 1098 harmed them. The Pembertons relied on the interest amount stated in their 2013 Form 1098 when they filed their taxes, and received a smaller mortgage interest deduction for 2013 than they would have if Nationstar had reported deferred interest payments. The Pembertons sue to recover the damages allegedly caused by Nationstar and to require Nationstar to report deferred interest payments in the Forms 1098 it issues.

## C. Procedural Posture

The Pembertons initially brought suit against Nationstar for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, negligence, California's unfair competition law, and directly under Section 6050H. (ECF No. 1.) Nationstar moved to dismiss the original complaint under Rule 12(b)(6), which the parties fully briefed. (ECF Nos. 11, 15, 16.) In resolving that motion, the Court dismissed the Pembertons' claim brought directly under Section 6050H on the ground that there is no federal private right of action under the statute. (ECF No. 17.) Without otherwise addressing the merits, the Court imposed a primary jurisdiction stay, reasoning that the Pembertons' claims raised a matter of "first impression" regarding whether Section 6050H requires the reporting of deferred interest. (*Id.*) As a result of the stay, the Court deferred consideration of the Pembertons' state law

– 6 –

claims to permit the IRS to weigh in on the scope of Section 6050H in the first instance. (*Id.*) During the two-year duration of the stay, the Pembertons submitted status reports to advise the Court of any IRS developments. (ECF Nos. 18, 30.) The reports did not reveal any IRS actions that would help resolve the Pembertons' claims in this case.

In April 2017, the Court dismissed the original complaint when the Pembertons conceded that the complaint failed to show Article III standing in view of the Ninth Circuit's decision in *Smith v. Bank of America, N.A.*, 679 Fed. App'x 549 (9th Cir. 2017). (ECF Nos. 39, 42.) The Pembertons subsequently filed the First Amended Complaint ("FAC"). (ECF No. 43.) After Nationstar moved to dismiss for lack of Article III standing (ECF No. 47), the Court held that the Pembertons have standing to assert their state law claims and declined to impose another primary jurisdiction stay. (ECF No. 53.)[4] The Court also provided notice to the Pembertons of a potential Rule 12(b)(6) dismissal of their claims and ordered the parties to brief once more the claims' legal sufficiency. (*Id.*) The matter was submitted for decision after the Court's June 7, 2018 hearing. (ECF No. 69.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting

---

[4] This Court also declined to impose a second primary jurisdiction stay in *Rovai v. Select Portfolio Servicing, Inc.*, after finding that the plaintiff in that case has standing to assert her claims. No. 14-cv-1738-BAS-WVG, 2017 WL 4700080 (S.D. Cal. Oct. 18, 2017). A second court reached the same conclusion in a similar case. *See Neely v. JP Morgan Chase Bank, N.A.*, No. 8:16-cv-01924, ECF No. 39 (C.D. Cal. Apr. 26, 2017). Only one primary jurisdiction stay expressly remains in effect. *See Strugala v. Flagstar Bank, FSB*, No. 5:13-cv-5927-EJD, ECF No. 95 (N.D. Cal. Nov. 27, 2017) (denying request to lift stay).

– 7 –

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A defendant may move to dismiss a complaint on the ground that its allegations fail to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b).

A Rule 12(b)(6) motion tests the sufficiency of a complaint's allegations.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  To survive a Rule 12(b)(6) motion, a plaintiff is required to set forth "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Factual allegations must be enough to raise a right to relief above the speculative level.  *Twombly*, 550 U.S. at 556.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). In assessing the sufficiency of a complaint, a court accepts as true the complaint's factual allegations and construes them in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  Yet, the court need not accept as true legal conclusions pled in the guise of factual allegations.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).  A pleading is insufficient if it offers only "labels and conclusion" or "a formulaic recitation of the elements of a cause of action," without adequate factual allegations.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 676.  Although a court assesses a complaint's sufficiency based on its allegations, a court may consider materials properly submitted as part of the complaint in deciding a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001).

## III.  DISCUSSION

### A.    The Breach of Contract Claim is Dismissed with Prejudice

The Pembertons plead a breach of contract claim under two theories: (1)

– 8 –

Section 6050H establishes a legal duty incorporated as a term into their contract, such that a violation of the statute also constitutes a breach of the contract, and (2) Nationstar breached provisions of the contract which allocate monthly payments between interest and principal. (ECF No. 54 at 28.) Nationstar contends that neither theory provides a plausible basis for the Pembertons' breach of contract claim. (ECF No. 55 at 16–20.) The Court agrees.

To state a claim for breach of contract under California law, plaintiffs must plead four elements: (1) the existence of a contract, (2) plaintiffs' performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to the plaintiffs as a result of that breach. *Misha Consulting Grp., Inc. v. Core Ed. & Consulting Solutions, Inc*., No. C-13-04262-RMW, 2013 WL 6073362, at *1 (N.D. Cal. Nov. 15, 2013) (citing *CDF Firefighters v. Maldonado*, 70 Cal. Rptr. 3d 667, 679 (Cal. Ct. App. 2008)). There is no dispute that a contract existed. The Pembertons allege that Nationstar breached the terms of the "promissory note" which originated with their home mortgage loan. (FAC ¶ 7, 42.) Plaintiffs have submitted that note, titled the "Adjustable Rate Note" (the "Note") with the FAC. (*Id.* ¶ 7, Ex. A.) Defendant relies on the terms of the Note to challenge the plausibility of Plaintiffs' claims (ECF No. 55 at 3–4), and the Court does so as well.[5] *See, e.g., United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (a court may consider documents attached to a complaint to resolve a motion to dismiss).

The parties' primary dispute is whether the Pembertons have adequately pleaded that Nationstar breached a term of the contract. "Under California law, the interpretation of a written contract is a matter of law for the court even though

---

[5] Although the Pembertons' Note originated with First Magnus Financial Corporation (FAC ¶ 7), Nationstar does not dispute that the Note governs its contractual relationship with the Pembertons. Further, the text of the Note specifically provides that "anyone who takes this Note by transfer and who is entitled to receive payments under this Note" is the Note Holder. (FAC Ex. A at 1.) Accordingly, it is the relevant contract between the Pembertons and Nationstar.

– 9 –

questions of fact are involved." *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1159 (E.D. Cal. 2009) (quoting *Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1443 (9th Cir. 1986)). Where the parties have reduced their contract to writing, the parties' mutual intent at the time of the contract is determined from the writing alone if possible. *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 135 Cal. Rptr. 2d 505, 513 (Cal. Ct. App. 2003). When interpreting a contract, "[t]he whole of a contract is to be taken together" with "each clause helping to interpret the other." Cal. Civ. Code § 1641. Unless the contract uses words in a technical manner or defines certain terms, the words of a contract are understood in their ordinary and popular sense. *See Britz Fertilizers, Inc.*, 665 F. Supp. 2d at 1159–60 (citing *Superior Dispatch, Inc. v. Ins. Corp. of N.Y.*, 97 Cal. Rptr. 3d 533, 548 (Cal. Ct. App. 2009); *Newport Beach Country Club, Inc.*, 135 Cal. Rptr. 2d 505 at 513). Although a contract is ambiguous if it is capable of two different reasonable interpretations, a court will not strain to create an ambiguity where none exists. *See Kashmiri v. Regents of the Univ. of Cal.,* 67 Cal. Rptr. 3d 635, 660 (Cal. Ct. App. 2007) ("[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.") (quoting *Waller v. Truck Ins. Exchange, Inc.*, 900 P.2d 619, 627 (Cal. 1995)).

When a dispute centers on the contract's terms, a breach of contract claim may be dismissed for failure to state a claim if the contract's terms are unambiguous. *See Consul, Ltd. v. Solide Enters., Inc.*, 802 F.2d 1143, 1149 (9th Cir. 1986); *Leghorn v. Wells Fargo Bank, N.A.*, 950 F. Supp. 2d 1093, 1117 (N.D. Cal. 2013). However, "[w]here the language leaves doubt as to the parties' intent, the motion to dismiss must be denied." *Monaco v. Bear Stearns Residential Mortg. Corp.*, 554 F. Supp. 2d 1034, 1040 (C.D. Cal. 2008); *see also Trs. of Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 777 (9th Cir. 2009)). With these principles in mind, the Court turns to the Pembertons' breach of contract claim.

– 10 –

**1.     Section 6050H Is Not a Term of the Pembertons' Contract**

The Pembertons allege that Section 6050H is a term of their contract and, therefore, Nationstar's alleged violation of the statute also constitutes a breach of the parties' contract.   (FAC ¶¶ 43–44.)[6]   Nationstar argues that the Pembertons impermissibly seek to "manufacture an implied contractual term" to support their breach of contract claims.  (ECF No. 55 at 17.)  The Court finds that Section 6050H is neither an express, nor implied term of the Pembertons' contract and the Pembertons cannot plausibly assert a breach of contract claim on this basis.

Generally, a party may not rely on a statute or regulation to state a breach of contract claim when the underlying contract does not incorporate the statute or regulation.  *See, e.g., Johnson v. World Alliance Fin. Corp*., 830 F.3d 192, 196 (5th Cir. 2016) ("HUD regulations do not give the borrower a private cause of action unless the regulations are expressly incorporated into the lender-borrower agreement.") (affirming dismissal of breach of contract claim); *Smith v. JPMorgan Chase Bank, N.A.*, 519 Fed. App'x 861, 864 (5th Cir. 2013) ("Federal statutes and regulations can form the basis of a breach-of-contract claim if the parties expressly incorporate them into their contract."); *see also Sybrandy v. U.S. Dep't of Agric., Agric. Stabilization & Conservation Serv*., 937 F.2d 443, 445–46 (9th Cir. 1991) ("This regulatory provision was expressly incorporated into the Termination Program contract signed by the Sybrandys.").

Under California law, the terms of an extrinsic document may be incorporated by reference in a contract if: "(1) the reference is clear and unequivocal, (2) the reference is called to the attention of the other party and he consents thereto, and (3)

---

[6] The Pembertons contend that the "primary theory underlying their breach of contract claim'" is "that Nationstar breached the mortgage deed of trust's allocation provision."  (ECF No. 54 at 28.)  This contention is unsupported by the FAC, which expressly alleges a breach of contract based on the alleged violation of Section 6050H as a term incorporated into the contract.  (FAC ¶¶ 43–44.)  The Court thus analyzes in the first instance the breach of contract claim as it is pleaded.

– 11 –

the terms of the incorporated document are known or easily available to the contracting parties." *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 97 Cal. Rptr. 3d 856, 870 (Cal. Ct. App. 2009). This includes specific statutes or regulations. "When statutory language in included in a contract, it assumes a new legal identity: that of contractual language." *300 DeHaro St. Investors v. Dep't of Hous. & Cmty. Dev.*, 75 Cal. Rptr. 3d 98, 111 (Cal. Ct. App. 2008). The inclusion of such language makes the statute or regulation "enforceable as a term of the contract." *Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092-HSG, 2017 WL 3977385, at *4 (N.D. Cal. Sept. 11, 2017) (citing *Bushell v. JPMorgan Chase Bank, N.A.*, 163 Cal. Rptr. 3d 539, 547–49 & n.9 (Cal. Ct. App. 2013)).

Plaintiffs readily concede in the FAC that their contract "do[es] not contain any provision specifically governing the manner in which Nationstar would report mortgage interest to Plaintiffs[.]" (FAC ¶ 43.) This allegation understates the limitations of the contract because in fact no provision incorporates Section 6050H by reference or through use of any of its language. The absence of such a provision precludes the Pembertons from asserting a breach of contract based on Nationstar's alleged violation of Section 6050H. *Compare Chandler v. Wells Fargo Bank, N.A.*, No. 11-03831 SC, 2014 WL 31315, at *5–6 (N.D. Cal. Jan. 3, 2014), *aff'd* 637 Fed. App'x 413, 414 (9th Cir. 2016) ("To the extent that Chandler relies on HUD regulations to support his breach of contract claim, his argument fails because the HECM does not incorporate them.") *with Fowler*, 2017 WL 3977385, at *4 (finding incorporation of HUD regulations because plaintiff alleged contractual term in note that "Lender shall accept prepayment on other days provided that Borrower pay interest on the amount prepaid for the remainder of the month *to the extent required by Lender and permitted by regulations of the Secretary*." (emphasis in original)); *see also Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 581 (7th Cir. 2012) (plaintiff could pursue breach of contract claim for violation of TPP regulations that were

– 12 –

incorporated by reference into contractual agreements).[7]

Despite the absence of such a contractual provision, the Pembertons allege that Nationstar's reporting of mortgage interest is "nonetheless a term of each contract because Nationstar has a legal duty to provide accurate Forms 1098" under Section 6050H. (FAC ¶¶ 43–44.) The Court is not required to accept this conclusory allegation which contradicts the Note's express terms and will not accept it to defeat dismissal. *Steckman v. Hart Brewing Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998) (a court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint"); *Abbit v. ING United States Annuity & Life Ins. Co.*, 999 F. Supp. 2d 1189, 1197 (S.D. Cal. 2014) (dismissing breach of contract claim based on allegations contradicted by terms of agreement submitted with complaint).

The Pembertons cannot save the claim from dismissal by relying on the principle that a contract is deemed to incorporate all applicable statutes in effect at the time the contract is made. (ECF No. 54 at 29.) The Pembertons point to two California state court cases which applied this principle. (*Id.* (citing *Mercury Cas. Co. v. Scottsdale Indem. Co.*, 68 Cal. Rptr. 3d 123, 132 (Cal. Ct. App. 2007); *Grubb v. Ranger Ins. Co.*, 143 Cal. Rptr. 558, 559 (Cal. Ct. App. 1978)).) However, both cases applied the principle to insurance contracts to define the scope of *substantive* provisions directly regulated by the relevant law. For example, *Grubb* determined that a city ordinance governing insurance coverage requirements entered into an insurance contract to define the scope of insurance coverage. *Grubb*, 143 Cal. Rptr.

---

[7] The Pembertons assert that *Wigod* shows why they can press a breach of contract claim based on a violation of Section 6050H. (ECF No. 54 at 30.) The Pembertons' claim is readily distinguishable from the breach of contract claim at issue in *Wigod* because the claim there was premised on express incorporation into the contract of the federal regulations the defendant allegedly violated. *See Wigod*, 673 F.3d at 565, 579. In contrast, Section 6050H is not expressly incorporated into the Pembertons' Note.

– 13 –

at 559.  Similarly, *Mercury Casualty Company* determined that a California statute establishing an automobile liability insurance requirement "automatically became a part of any new personal automobile liability policies issued in California as a matter of law." *Mercury Cas. Co.*, 68 Cal. Rptr. 3d at 132.  As a reporting statute, Section 6050H simply does not operate in either manner—it says nothing about mortgage loan contracts, nor does it purport to impose substantive limits on them.

California courts have also applied the principle on which the Pembertons rely to ascertain or limit the meaning of terms in a contract.  *See, e.g., Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 330 (Cal. Ct. App. 2012) (applying principle to conclude that plaintiff's interpretation of the term "gallon" in the parties' sales agreement "had a specified meaning that plainly conflicts with plaintiffs' proposed definition of that term") (affirming dismissal of breach of contract claim); *Miracle Auto Ctr. v. Superior Court*, 80 Cal. Rptr. 2d 587, 589 (Cal. Ct. App. 1998) (applying principle to define certain undefined terms in an insurance contract).  But, as the Court has noted, California contract law treats a *defined* contract term according to the definition set forth in the contract.  *See Britz Fertilizers, Inc.*, 665 F. Supp. 2d at 1159–60; *see also Gutowitz v. Transamerica Life Ins. Co.*, 126 F. Supp. 3d 1128, 1143 (C.D. Cal. 2015) (applying the "plain and ordinary meaning" to a term because it "is not defined in the policy").  As the Court discusses herein, the Pembertons' contract expressly defines the terms "interest" and "principal."  Thus, the Court need not and cannot look beyond the contract to ascertain their meaning for the purposes of the Pembertons' breach of contract claim.  Accordingly, the Court rejects the Pembertons' claim that Section 6050H is an implied contractual term.

### 2. The Pembertons Cannot Plausibly Plead a Breach of the Allocation Provisions

The Pembertons also argue that they have stated a breach of contract claim based on the allocation provisions of their contract.  (ECF No. 54 at 8, 28.)  The allocation provisions require that Nationstar apply the Pembertons' payments to

– 14 –

interest before principal.  (FAC Ex. A at 2.)  The specific allegations set forth as part of the Pembertons' breach of contract claim do not allege that Nationstar breached these provisions.  (*See generally* FAC ¶¶ 42–46.)  The Court thus construes the Pembertons' argument as a request for leave to amend the FAC to plead a claim on this basis.  *See, e.g., Lennar Mare Island, LLC v. Steadfast Ins. Co*., 139 F. Supp. 3d 1141, 1162 (E.D. Cal. 2015) (construing argument raised in legal memorandum in response to motion to dismiss as request for leave to amend).  The Court finds that amendment on this basis would be futile.

The starting point for the Court is the allocation provision of the Pembertons' Note and the conduct alleged in the FAC.  Section 3(A) of the Pembertons' Note provides that "[e]ach monthly payment . . . will be applied to interest before Principal."  (FAC Ex. A at 2.)  By its terms, the Note identifies only two categories for payment allocation: interest and principal.  There is no separate category for "deferred interest."  Thus, the Pembertons must be able to plausibly allege that Nationstar's treatment of deferred interest violated the Note's allocation between interest and principal.

The Pembertons attempt to allege a violation of the allocation provision by identifying the deferred interest on their loan.  They allege that $7,575.41 of their "loan balance" was deferred interest at the time Nationstar took over their mortgage loan.  (*Id*. ¶ 9.)  Although they made all payments to Nationstar due under their Note in 2013—an amount of $12,097.80—the 2013 Form 1098 they received from Nationstar reflected $4,197.66 in payments of principal and $7,302.06 in interest.  (*Id*. ¶¶ 10–11.)  The Pembertons contend that these reported amounts reflect a "method" of calculating mortgage interest that is "wrong" because it "assumes that the entire loan balance constitutes principal and fails to recognize that interest that was previously deferred does not lose its character as interest[.]"  (*Id.* ¶ 12; ECF No. 60 at 2.)  Central to the Pembertons' allocation theory is their allegation that interest "does not lose its character as interest."  (FAC ¶ 12.)  Assuming that premise, the

– 15 –

Pembertons allege that Nationstar violated the allocation provision by not crediting payments toward retiring all deferred interest before crediting any payments to principal.  (*Id*.; ECF No. 54 at 9.)

The Pembertons' allocation theory is implausible because multiple provisions of the Note expressly treat deferred interest as principal, which in turn affects how payments are allocated under the contract.  The Note contains multiple admonitions that principal due under the Note may increase over the amount originally borrowed.  The Note begins with a clear warning that "THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED . . ." (*Id*. Ex. A. at 1.)  The first provision of the Pembertons' Note, titled "Borrower's promise to pay," incorporates the substance of this warning into the Pembertons' contractual promise.  Under that provision, the Pembertons specifically agreed that "[t]he Principal amount may increase *as provided under the terms of this Note . . .*" (*Id*. at §1 (emphasis added).)  The Note thus leaves no surprise that principal may increase under its terms.

The Pembertons' Note further specifies precisely *how* the principal amount of the Note would increase: through deferment of interest.  Specifically, through the Pembertons' exercise of their option to make a "minimum payment" "not sufficient to cover the amount of interest due," resulting in negative amortization.  (*Id*. §3(C).)  Section 3(E), titled "Additions to my Unpaid Principal," expressly discusses how exercising this option would affect principal.  The Section provides that "for each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and *will add the difference to my unpaid Principal . . .*" (*Id*. §3(E) (emphasis added).)  Section 3(E) further states that "interest will accrue on the amount of this difference at the interest rate required by Section 2," which in turn, sets the interest rate for "unpaid Principal."  (*Id*. §§2(A); 3(E).)  Section 3(E) thus unambiguously adds deferred interest to unpaid principal to be treated, for the purposes of the payments

– 16 –

due under the Note, as payments on principal.

Based on these unambiguous provisions, the Pembertons cannot plausibly plead that Nationstar breached the Note's "allocation formula" by allocating the Pembertons' payments in the manner reflected on their 2013 Form 1098. (ECF No. 54 at 9.) As the Pembertons concede, they "elected, *pursuant to their note*, to defer payment of some of their interest that was due for a given month," and that such interest "was capitalized." (ECF No. 54 at 2 n.3; (emphasis added); *see also* FAC ¶ 5.) In accordance with the Note's treatment of deferred interest as principal, the principal amount increased in the amount of interest the Pembertons' deferred.[8] Indeed, the Pembertons allege that the amount of their loan balance in excess of the original principal is their deferred interest. (FAC ¶ 9.) When the Pembertons' deferred interest became principal under the Note, it became principal for the purposes of the Note's allocation provision as well. In accordance with the Note's identification of only interest and principal as the relevant categories for payment allocation, Nationstar appropriately treated deferred interest as the latter. Nationstar's Form 1098 reporting in turn merely reflected Nationstar's authorized application of the Pembertons' payments. The Pembertons therefore cannot plausibly allege a breach of the Note's allocation provision.

Ignoring the Note, the Pembertons direct the Court to the allocation provision of their deed of trust instead. (ECF No. 54 at 8–9, 28.) Although they are "not in possession of their deed of trust," the Pembertons "are prepared to allege" that it

---

[8] The Pembertons attempt to elide the Note's treatment of deferred interest as "principal" by using the phrase "overall loan balance," to refer to the addition of deferred interest. (FAC ¶¶ 5, 9.) Elsewhere, however, the Pembertons implicitly recognize the Note's treatment of deferred interest as principal. Specifically, the Pembertons allege that "a limit of 115% of the original principal amount was placed on the amount of negative amortization consumers were allowed to incur." (*Id*. ¶ 6.) That limit only has meaning in view of the Note's multiple provisions treating deferred interest as principal.

– 17 –

contains an allocation provision similar to the one in the *Rovai* case because both loans originated with First Magnus Financial Corporation.[9]  (*Id.* at 9 (citing *Rovai*, No. 14-cv-1738, ECF No. 1-1 at 5).)  The allocation provision in the *Rovai* deed of trust appears under the section "Uniform Covenants" and is titled "Application of Payments or Proceeds."  (*Id.*)  It reads in relevant part:

> Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3 [funds for escrow items].  Such payments shall be applied to each Periodic Payment in the order in which it became due.

(*Rovai*, No. 14-cv-1738, ECF No. 39, Ex. A at 5.)

Even assuming that the terms of the Pembertons' deed of trust are identical or substantially similar to those in the *Rovai* case, the Pembertons' attempt to save their breach of contract claim by shifting to its allocation provision is unavailing.  The Pembertons' breach of contract claim concerns how Nationstar allocated payments with respect to deferred interest.  As the Pembertons concede, the Note permitted them to defer interest otherwise due.  (FAC ¶ 5; ECF No. 54 at 2 n.3.)  It is the Note which specifies the treatment of deferred interest as principal.  (*See also* FAC Ex. A.)  The Pembertons offer no explanation as to how the allocation provision in their deed of trust—a document whose terms do not even identify "deferred interest" or "additions to unpaid Principal" (in the Note's language)—overcomes, controls, or otherwise limits the meaning of the specific provisions in the Note dealing with deferred interest.

Nor can they.  The Note's specific terms necessarily qualify the allocation provision in the deed of trust.  *See Pecarovich v. Allstate Ins. Co.*, 309 F.3d 652, 658

---

[9]  In the *Rovai* case, the plaintiff refers both to the deed of trust and the Adjustable Rate Note as the contract reflecting the negative amortization loan she received and attaches both of these documents to the complaint.  (*See Rovai*, No. 14-cv-1738, ECF No. 39 ¶ 10, Ex. A (S.D. Cal. April 26, 2017).)

(9th Cir. 2002) (quoting *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971 F.2d 272, 278 (9th Cir. 1992) ("It is well settled that '[w]here there is an inconsistency between general provisions and specific provisions [in a contract], the specific provisions ordinarily qualify the meaning of the general provisions.'")); *Quezada v. Loan Ctr. of Cal., Inc.*, No. 08-177 WBS KJM, 2008 WL 5100241, at *7–8 (E.D. Cal. Nov. 26, 2008) (determining that specific provisions of adjustable rate note qualified general terms on which plaintiff's breach of contract claim was premised and required dismissal).

The absence of any textual basis in the Note for the Pembertons' allocation argument underscores to the Court that the Pembertons' true aim is once more to imply a contractual term that does not exist. The Pembertons' argument that Nationstar's "method" of calculating interest is "wrong" because interest "does not loses its character as interest" substantively derives from tax law, not from their contract with Nationstar. (FAC ¶ 12.) In fact, the Pembertons argue that "[e]ven in the absence of an allocation agreement, the law presumes that payments on a note are allocable to retiring interest before retiring principal." (ECF No. 54 at 8–9.) Central to that argument is the notion that the Pembertons' deferred interest is interest *for tax purposes*. For example, the Pembertons rely on *Old Colony Railroad Company v. Commissioner of Internal Revenue*, 284 U.S. 552, 561 (1932), to assert that the term "interest" means "the amount which one has contracted to pay for the use of borrowed money." They argue that their deferred interest satisfies this meaning. They further point to a Tax Court case which determined that although a contract treated "defaulted interest" as principal, such interest "d[id] not become principal for tax purposes." *See Motel Corp. v. Commissioner*, 54 T.C. 1433, 1440 (1970) (citing *Deputy v. DuPont*, 308 U.S. 488 (1940)). Implicit in the Pembertons' argument is that Nationstar's contractual treatment of deferred interest cannot change what counts as interest for tax purposes. (ECF No. 54 at 5 ("Just as the laws of physics prevent alchemists from transforming lead into gold, well-established tax law prevents transforming interest

– 19 –

into principal based on the time of repayment.").

Even if the Pembertons are right that deferred interest qualifies as interest for tax purposes, the claim before the Court is one for breach of contract. The terms of the Pembertons' contract plainly treat deferred interest as principal and authorize Nationstar to allocate the Pembertons' payments accordingly. Concluding otherwise is possible only on the assumption that Section 6050H is a term of the Pembertons' contract—an assumption that finds no support in the contract. Accordingly, the Pembertons cannot allege a claim under the allocation provisions and the breach of contract claim is dismissed with prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend is permissible if amendment would be futile).

**B.  The Breach of the Implied Covenant of Good Faith and Fair Dealing Claim is Dismissed with Prejudice**

The Pembertons' second cause of action is for breach of the implied covenant of good faith and fair dealing. They allege that the covenant imposes duties on Nationstar "not to conceal and/or fully and unambiguously disclose to Plaintiffs . . . that the way it was treating 'deferred interest' payments was against [their] interests and contrary to established tax law." (FAC ¶ 48.) Nationstar allegedly breached the covenant when it failed to report to the IRS deferred interest payments it received from the Pembertons. (*Id.* ¶ 49.) The Pembertons further allege that Nationstar had a duty to research their contentions that it had failed to accurately report their interest payments and further breached the covenant when it failed to issue revised a Form 1098 to the Pembertons after receiving their complaint. (*Id.*) Nationstar argues that the Pembertons have failed to allege any specific contractual provision with which Nationstar interfered, nor can they plausibly do so. (ECF No. 55 at 21.) The Court agrees with Nationstar.

To plead a breach of the implied covenant, a plaintiff must allege: (1) the parties entered into a contract; (2) the plaintiff fulfilled his or her obligations under the contract; (3) the defendant unfairly interfered with the plaintiff's rights to receive the

benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct. *See Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010). Generally, under California law, every contract carries with it an implied covenant of good faith and fair dealing in the contract's performance and enforcement. *Foley v. Interactive Data Corp.*, 765 P.2d 373, 389 (Cal. 1988). The implied covenant "is aimed at making effective the agreement's promises" and requires that neither party do anything which will deprive the other of the benefits of the agreement. *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 2 P.3d 1, 8 (Cal. 2000); *Freeman & Mills, Inc. v. Belcher Oil Co.*, 900 P.2d 669, 672 (Cal. 1995). The implied covenant is inherently limited—it "does *not* extend beyond the terms of the contract at issue." *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1160 (E.D. Cal. 2010) (emphasis in original) (citation omitted); *see also Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (Cal. 2000) ("The covenant . . . cannot be endowed with an existence independent of its contractual underpinnings" or "impose substantive duties or limit . . . beyond those incorporated in the specific terms of the[] agreement.").

The Pembertons' implied covenant claim fails because no provision of the Note or the deed of trust requires Nationstar to disclose its treatment of deferred interest payments in its Form 1098 reporting. In fact, the Pembertons disavow that any provision governing how Nationstar would report mortgage interest existed. (FAC ¶ 43.) The Pembertons do not identify any express contractual provision that required Nationstar to investigate the Plaintiffs' contentions regarding Nationstar's allegedly inaccurate reporting in a Form 1098, or to issue a corrected Form 1098. Nor can the Pembertons identify such provisions because no such provisions exist. The absence of these provisions defeats the Pembertons' claim. *See Waller v. Truck Ins. Exchange, Inc.*, 900 P.2d 619, 639 (Cal. 1995) ("Absent [a] contractual right . . . the implied covenant has nothing upon which to act as a supplement, and should not be endowed with an existence independent of contractual underpinnings.").

The Pembertons nevertheless contend that they can ground their implied

– 21 –

covenant claim on their contract's allocation provisions as well as on the purported incorporation of Section 6050H as a contractual term.[10] (ECF No. 54 at 31–33; ECF No. 60 at 8.) Because the breach of implied covenant claim does not plead this, the Court construes this as a request for leave to amend the FAC to plead their breach of the implied covenant claim on this basis and finds amendment to be futile.

The Court has already concluded that the contract, in unambiguous terms, specifically requires that deferred interest be treated as principal *for the purposes of the Note*. Nationstar in turn had the contractual right to treat deferred interest as principal, which in turn determined the allocation of the Pembertons' payments between principal and interest. The Pembertons "cannot state a claim for breach of the implied covenant of good faith and fair dealing, because 'if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.'" *Song Fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) (quoting *Carma Dev. (Cal.) Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 728 (Cal. 1992)) (dismissing implied covenant claim with prejudice based on defendant's rights under the contract); *Abbate v. Wells Fargo Bank, N.A.*, No. CV 10-6561 DOC (RNBx), 2011 WL 9698215, at *9 (C.D. Cal. Nov. 17, 2011) (same); *Zamora v. Zuni Solar*, No. 2:16-cv-01260-ODW-KS, 2016 WL 3512439, at *4 (C.D. Cal. June 27, 2016) (same). This rule also precludes the Pembertons' claim to the extent it is premised on Nationstar's purported abuse of contractual discretion under the allocation provisions. *See Carma*, 826 P.2d at 728 (the covenant cannot "be read to

---

[10] The Pembertons also argue that their implied covenant claim is adequately pleaded because California courts recognize a "duty" of mortgage finance company that includes "[the] financial services [of managing the loan]." (ECF No. 60 at 8 (citing *Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842, 850 (N.D. Cal. 2007); *Jefferson v. Chase Home Finance LLC*, No. C06-6510 THE, 2007 WL 1302984, at *3 (N.D. Cal. May 3, 2007).) The Court rejects this argument because the implied covenant cannot be used to graft into a contract a free-floating duty untethered to its existing terms. *See Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (Cal. 2000)).

– 22 –

1  prohibit a party from doing that which is expressly permitted by an agreement. On

2  the contrary, as a general matter, implied terms should never be read to vary express

3  terms."). To the extent the Pembertons attempt to imply Section 6050H into their

4  contract through the implied covenant (ECF No. 54 at 33), the Court rejects this. A

5  breach of the implied covenant claim based on the violation of a non-existent

6  contractual term plainly "impose[s] substantive duties or limits on the contracting

7  parties beyond those incorporated in the[se] specific terms." *Plastino v. Wells Fargo*

8  *Bank*, 873 F. Supp. 2d 1179, 1191 (N.D. Cal. 2012). Accordingly, the Court dismisses

9  with prejudice the Pembertons' breach of the implied covenant claim.

10  **C.    The Common Law Fraud Claim is Dismissed with Prejudice**

11  The Pembertons assert a fraud claim against Nationstar based on Nationstar's

12  alleged failure to report deferred interest payments. They allege that "Nationstar

13  knowingly and intentionally misrepresented the correct amount of interest that

14  plaintiffs paid to it in 2013" on their Form 1098, and "intentionally concealed" its

15  wrongful reporting. (FAC ¶ 73.) The basis of the Pembertons' assertion of falsity is

16  that "Nationstar was under a legal duty pursuant to the 26 U.S.C. § 6050H to report

17  accurately only the interest Nationstar 'received' during each calendar year" and "was

18  further under a duty to correct any mistakes on Forms 1098[.]" (*Id.* ¶ 74.)

19  Under California law, "the necessary elements of fraud are: (1)

20  misrepresentations (false representation, concealment, or nondisclosure); (2)

21  knowledge of falsity (*scienter*); (3) intent to defraud (*i.e.*, to induce reliance); (4)

22  justifiable reliance; and (5) resulting damage." *Alliance Mortgage Co. v. Rothwell*,

23  900 P.2d 601, 608 (Cal. 1995). Rule 9(b) in turn requires—even when a claim is

24  raised under state law—that, "[i]n all averments of fraud or mistake, the

25  circumstances constituting fraud . . . shall be stated with particularity." Fed. R. Civ.

26  P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Allegations

27  supporting a fraud claim thus must move beyond Rule 8(a)(2)'s general requirement

28  that a party plead "a short and plead statement of the claim showing that the pleader

– 23 –

1   is entitled to relief." Fed. R. Civ. P. 8(a)(2).

2          To avoid dismissal under Rule 9(b), a "complaint [must] state the time, place,

3   and specific content of the false representations as well as the identities of the parties

4   to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th

5   Cir. 2004) (internal quotations omitted).  These averments give "defendants notice of

6   the particular misconduct . . . so that they can defend against the charge and not just

7   deny that they have done nothing wrong." *Bly-Magee v. California*, 236 F.3d 1014,

8   1019 (9th Cir. 2001) (internal quotations and citation omitted).  Thus, under Rule

9   9(b), "a pleading must identify 'the who, what, when, where, and how of the

10  misconduct charged,' as well as 'what is false or misleading about [the purportedly

11  fraudulent] statement, and why it is false.'" *Cafasso v. Gen. Dynamics C4 Sys.*, 637

12  F.3d 1047, 1055 (9th Cir. 2011) (quoting *Ebeid ex rel. United States v. Lungwitz*, 616

13  F.3d 993, 998 (9th Cir. 2010)).  Applying these principles, the Court concludes that

14  the Pembertons cannot plausibly show a false representation, nor can they plausibly

15  plead Nationstar's knowledge of falsity and intent to defraud.

16          **1.      The Pembertons Cannot Plausibly Plead that Nationstar**

17                   **Made a False Representation**

18          The Court initially rejects Nationstar's argument that the Pembertons cannot

19  allege a misrepresentation simply because their claim concerns interest information

20  provided on a Form 1098.  Nationstar argues that its Form 1098 interest information

21  is merely "an opinion on a question of federal law," suggesting that such information

22  can never be challenged as fraudulent.  (ECF No. 55 at 21.)  Yet, as Nationstar

23  acknowledges, the information on a Form 1098 "reflects what § 6050H and applicable

24  regulations *require* to be reported on a Form 1098." (*Id.* at 23 (emphasis added).)

25  Those requirements do not call for Nationstar's legal opinion on what is and is not

26  reportable mortgage interest, but rather for factual information whose accuracy can

27

28

be assessed.[11]

Congress has authorized the imposition of statutory penalties for the provision of "incorrect information" regarding home mortgage interest received, whether provided to the IRS or individuals like the Pembertons. *Compare* 26 U.S.C. § 6721(a)(2)(B) (imposing penalties for "inclusion of incorrect information" in an "information return") *with* 26 U.S.C. § 6724(d)(1)(B)(v) (defining "information return" to mean "any return required by . . . section 6050H(a)", *i.e.* a return provided to the IRS); *compare* 26 U.S.C. § 6722(a)(2)(B) (imposing penalties for "inclusion of incorrect information" on a "payee statement") *with* 26 U.S.C. § 6724(d)(2)(M) (defining "payee statements" to include statements required by "section 6050H(d)", *i.e.* a statement provided to the individual from whom interest was received). IRS regulations in turn impose penalties for incorrect information in a Form 1098. 26 C.F.R. § 1.6050H-2(e)(2)(iii). Given this scheme, the Court cannot agree with Nationstar that the information it provides in a Form 1098 is a "legal representation" or "opinion" immune from charges of fraud.

Although the Court acknowledges that interest information in a Form 1098 can provide a basis for an actionable misrepresentation, the Pembertons' allegations fail to plausibly establish that Nationstar made representations that were false when made and cannot do so. *See Cafasso*, 637 F.3d at 1055 ("[C]laims of fraud . . . must, in addition to pleading with particularity, also plead plausible allegations."); *Muse Brands, LLC v. Gentil*, No. 15-cv-01744-JSC, 2015 WL 4572975, *4 (N.D. Cal. July 29, 2015) ("[T]o qualify as a misrepresentation, the complaint must allege facts

---

[11] Nationstar's argument is based on the principle that "fraud cannot be predicated upon misrepresentations of law or misrepresentations as to matters of law." *See Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006); *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 621 (9th Cir. 2004). This general principle regards statements of domestic law as expressions of opinion that cannot support fraud liability, even if the opinions are false. *Miller*, 358 F.3d at 621. Because Section 6050H calls for factual information, the principle is inapplicable here.

– 25 –

1   sufficient to plausibly establish that the statement was false when made.") (citing *In*

2   *re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

3       The crux of the Pembertons' allegation of falsity is that (1) Section 6050H's

4   use of the term "interest" includes "deferred interest" and (2) the amount of interest

5   stated in their 2013 Form 1098 was false because it did not account for deferred

6   interest.  (FAC ¶ 73; *see also* ECF No. 54 at 33.)   The Pembertons defend this

7   assertion by pointing the Court to the same cases they rely on to argue that the term

8   "interest" in Section 6050H includes deferred interest as a matter of statutory

9   construction.  (*Compare* ECF No. 54 at 3–6 *with id*. at 33–34.)  In particular, they

10  point to *Old Colony Railroad Company* for the proposition that interest is the price

11  charged for the use of money and assume that their deferred interest satisfies that

12  meaning.  (*Id*. at 33.)

13      Fatal to the Pembertons' statutory construction-based assertion of falsity is

14  Section 6050H's ambiguity and the lack of regulatory guidance at the time Nationstar

15  issued its Form 1098.  While the Pembertons "would characterize the question as a

16  simple undertaking of statutory construction, that is quite frankly not the case."

17  *Strugala*, 2015 WL 5186493, at *4.  "It cannot be said based on a plain reading of §

18  6050H whether or not the statute's use of the term 'interest' encompasses capitalized

19  interest."  *Id*.  As multiple courts have expressly acknowledged, "[n]either § 6050H

20  nor its implementing regulations provide explicit direction to recipients on how,

21  whether and when to report capitalized interest."  *Id.* at *3; *see also Rovai v. Select*

22  *Portfolio Servicing, Inc*., No. 14-cv-1738-BAS-WVG, 2015 WL 3613748, at *3 (S.D.

23  Cal. May 11, 2015) (observing that whether Section 6050H reaches deferred interest

24  and thus requires reporting of deferred interest on a Form 1098 is an "issue of first

25  impression").

26      The Pembertons implicitly recognize that Section 6050H cannot do the work

27  of showing falsity because they do not rely on Section 6050H itself, or cases or

28  revenue rulings interpreting Section 6050H.  They instead direct the Court to several

cases interpreting the term "interest" in *other* provisions of the Internal Revenue Code and on revenue rulings that do not facially address deferred mortgage interest. (ECF No. 54 at 2–7.) The Court cannot conclude that these cases and revenue rulings provide a plausible basis for showing that Nationstar's Form 1098 interest reporting was false when made.

Instructive for the Court is *Brakke v. Economic Concepts, Inc*., 153 Cal. Rptr. 3d 1 (Cal. Ct. App. 2013), a case involving alleged misrepresentations of federal tax information. The *Brakke* plaintiffs sued a defendant corporation which marketed and administered pension plans, and which had made representations to the plaintiff in 2002 that its pension plans were legal, complied with the Internal Revenue Code, and would be tax deductible. *Id.* at 3. The plaintiffs alleged these representations were false because a 2004 IRS audit concluded that the plaintiffs' plan did not comply with relevant Internal Revenue Code provisions and disallowed tax deductions. *Id*. at 4. Relying on *Berry v. Indianapolis Life Insurance Company*, 638 F. Supp. 2d 732 (N.D. Tex. 2009), the *Brakke* court held that the plaintiffs failed to allege that statements by the defendants' agents were false *when made* and, to the extent they were, the plaintiffs could not have reasonably relied on representations regarding the IRS's future treatment of their pension plan. *Id*. at 7. *Berry* in turn involved plaintiffs who asserted claims against four insurance companies and their consultants related to their alleged design of "defined benefit plans" to qualify for federal tax benefits. *Berry*, 638 F. Supp. 2d at 734. The *Berry* plaintiffs asserted fraud based on similar conduct, alleging that defendants' 2001 and 2002 representations were false based on 2004 and 2005 IRS pronouncements. The *Berry* court determined that "as a matter of law, regulations and rulings by the IRS in 2004 and 2005 cannot be used to show that statements . . . purportedly made in 2001 and 2002 were false when made. . ." *Berry*, 638 F. Supp. 2d at 739.

Unlike in the *Brakke* and *Berry* cases, the IRS has not made any pronouncement regarding what Section 6050H requires with respect to reporting of deferred interest.

– 27 –

Nor has any federal court adopted the statutory construction the Pembertons advance here based on non-Section 6050H cases and different revenue rulings. Even if this Court did so now, *Brakke* and *Berry* counsel that it could not be used to show that Nationstar's reporting in 2013 was false *when made* because the law did not unambiguously set forth clear requirements for reporting deferred interest payments. *See Berry*, 638 F. Supp. 2d at 739; *Brakke*, 153 Cal. Rptr. 3d at 7. Stripping away the FAC's assertions of a false representation based on the failure to report deferred interest, there are no other allegations that can sustain the Pembertons' fraud claim. With no factual allegations showing plausible false representations in the 2013 Form 1098 Nationstar provided and the fact that the Pembertons cannot plausibly allege any with respect to Section 6050H, the Court dismisses with prejudice their fraud claim.

>     **2.     The Pembertons Cannot Plausibly Plead Knowledge of Falsity and Intent to Defraud**

Under the allegations specific to their fraud claim, the Pembertons allege that "Nationstar knowingly and intentionally misrepresented the correct amount of interest that plaintiffs paid to it in 2013." (FAC ¶ 73.) The Court finds that the Pembertons' fraud claim fails because the Pembertons cannot plausibly allege that Nationstar knowingly and intentionally defrauded them.

For the purposes of Rule 9(b), "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally" by a plaintiff. Fed. R. Civ. P. 9(b); *see also Odom v. Microsoft Corp.*, 486 F.3d 541, 554 (9th Cir. 2007). Although this general averment of intent and knowledge may be sufficient for Rule 9(b), "*Twombly* and *Iqbal*'s pleading standards must still be applied to test complaints that contain claims of fraud." *Eclectic Props. East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 n.5 (9th Cir. 2014). This means that "[p]laintiffs must still plead facts establishing *scienter* with the plausibility standard required under Rule 8(a)." *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2011 WL 311376, at *8 (N.D. Cal. Jan. 28, 2011) (citing *Iqbal*, 556 U.S. at 686) (conclusory allegations

regarding knowledge of falsity fails to plausibly show *scienter* or knowledge of falsity necessary for fraud claim); *Gilliland v. Chase Home Fin., LLC*, No. 2:13-cv-02042 JAM-AC, 2014 WL 325318, at *6 (E.D. Cal. Jan. 29, 2014) (same); *see also Tabletop Media, LLC v. Citizen Systems of Am. Corp.*, No. CV16-7140 PSG (ASx), 2017 WL 3081690, at *4 (C.D. Cal. June 16, 2017) (same). The Pembertons cannot plausibly satisfy this standard. The Pembertons allege that Nationstar's "method of calculating mortgage interest . . . *assumes* that the entire loan balance constitutes principal and *fails to recognize* that interest that was previously deferred does not lose its character as interest[.]" (FAC ¶ 12 (emphasis added).) Nationstar's alleged "assumption," however, is consistent with the terms of Pembertons' Note. Although the IRS may very well adopt the Pembertons' position on Section 6050H reporting at a later point and even if this Court considers the Pembertons' position to be reasonable, this cannot show Nationstar's knowledge of falsity at the time it issued the 2013 Form 1098.

The Pembertons' allegations regarding Nationstar's intent to defraud fare no better. "Intent to defraud is defined as the intent to induce reliance on a knowing misrepresentation or omission." *Moss v. Kroner*, 129 Cal. Rptr. 3d 220, 226 (Cal. Ct. App. 2011). "[M]ere conclusory allegations" that representations or omissions "were intentional and for the purpose of defrauding and deceiving plaintiffs . . . are insufficient." *Linear Tech. Corp. v. Applied Materials, Inc.*, 61 Cal. Rptr. 3d 221, 234 (Cal. Ct. App. 2007); *see also see also Sukonik v. Wright Med. Tech., Inc.*, No. CV 14-08278 BRO (MRWx), 2015 WL 10682986, at *15 (C.D. Cal. Jan. 26, 2015) ("[A]llegations of intent must still meet Rule 8(a)'s plausibility standard under *Twombly* and *Iqbal*."). The Pembertons allege that Nationstar "knowingly started to purchase Option Arm Mortgages that had a separately reportable income component to the seller (*i.e.* unpaid deferred interest) . . . with the intent to convert it into an asset note" so that there was "no separately reportable income component." (FAC ¶ 18.) In the Pembertons' view, "[t]hrough its purchase Nationstar effectively transformed interest to principal without notice to borrowers[.]" (*Id.* ¶ 18.) However, whatever

– 29 –

Nationstar's alleged motive was for purchasing a portfolio of Option ARM loans, the Pembertons' allegations do not plausibly show an intent to defraud with respect to Nationstar's Section 6050H reporting. The Pembertons' Note, which Nationstar did not create, treats deferred interest as principal and did so before Nationstar ever began to service the Pembertons' loan. As the Court has discussed, the Pembertons' Note also gave them clear and repeated notice that deferred interest would be treated as principal under the contract. Given these facts, the Pembertons cannot plausibly allege that Nationstar intended to defraud them. Accordingly, the Court dismisses the Pembertons' fraud claim with prejudice.

### D.    The UCL Claim is Subject to Partial Dismissal

The Pembertons assert a claim against Nationstar under California's Unfair Competition Law ("UCL"), which prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability" and "an independent basis for relief." *Lozano v. AT&T Wireless Servs., Inc*., 504 F.3d 718, 731 (9th Cir. 2007) (citation omitted); *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 973 P.2d 527, 539 (Cal. 1999). The Pembertons argue that they have stated a UCL claim under any of its prongs. (ECF No. 54 at 25–28.) Nationstar disputes this and further argues that even if a UCL claim is plausible, the Court should abstain from resolving it. (ECF No. 55 at 29–32.) The Court concludes that while the Pembertons have failed to state a claim under the fraudulent and unlawful prongs and cannot plausibly do so, the Pembertons have stated a claim under the unfair prong that does not warrant UCL abstention.

### 1.    The Fraudulent Prong Claim Is Dismissed

"A business practice is fraudulent under the UCL if members of the public are likely to be deceived." *Davis v. HSBC Bank Nevada, N.A*., 691 F.3d 1152, 1169 (9th Cir. 2012) (citation omitted). The fraudulent prong thus requires a plaintiff to "show deception to some members of the public, or harm to the public interest," or to allege

that "members of the public are likely to be deceived," by the defendants' conduct. *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc*., 178 F. Supp. 2d 1099, 1121 (C.D. Cal. 2001); *Schnall v. Hertz Corp*., 93 Cal. Rptr. 2d 439 (Cal. Ct. App. 2000).  A fraudulent prong claim must also satisfy Rule 9(b)'s heightened pleading standard by stating with particularity the circumstances constituting the allegedly fraudulent practice, including the who, what, when, where, and how of the misconduct charged. *Ebeid ex rel. United States*, 616 F.3d at 998; *Kearns*, 567 F.3d at 1125.

The Pembertons defend their fraudulent prong claim by asserting that "Nationstar made misrepresentations to the public" without expressly spelling out what those misrepresentations were.  (ECF No. 54 at 28.)  The Court does not doubt that the misrepresentations to which the Pembertons refer is that the interest amount Nationstar reports in Forms 1098 does not include deferred interest payments.  The Court has already rejected as implausible the Pembertons' allegations that such interest amounts were misrepresentations when made in its analysis of the Pembertons' common law fraud claim.  Although a fraudulent prong claim "is distinct from common law fraud and does not require a plaintiff to plead and prove the elements of a tort," "courts have been unwilling to impose liability under the fraudulent prong of the UCL" when "a defendant lacked knowledge of the facts that rendered its representations misleading at the time it made the representations." *Kowalsky v. Hewlett-Packard Co*., 771 F. Supp. 2d 1156, 1159–60, 1161 (N.D. Cal. 2011); *see also Neu v. Terminix Int'l, Inc*., No. C 07-6472 CW, 2008 WL 2951390, at *3–4 (N.D. Cal. July 24, 2008) (finding UCL fraudulent prong claim implausible when studies relied on by plaintiff to show falsity of representations were published after the defendant's statements at issue in case).  For the reasons set forth in the Court's analysis of the Pembertons' fraud claim, the Court concludes that the Pembertons cannot plausibly allege that Nationstar made a false representation to them when it issued their 2013 Form 1098 and dismisses with prejudice the Pembertons' UCL fraudulent prong claim.

## 2. The Unlawful Prong Claim is Dismissed

The FAC alleges that Nationstar violated the terms of Section 6050H by failing to include on its Forms 1098 mortgage interest payments the Pembertons made. (FAC ¶ 60.) The Pembertons in turn argue that they have stated a UCL claim under the unlawful prong because Nationstar violated Section 6050H by not reporting deferred interest payments, as shown by the Pembertons' construction of Section 6050H. (ECF No. 54 at 25.) Nationstar contends that that "nothing in [S]ection 6050H addresses whether deferred interest must be included in the amounts reported" in a Form 1098. (ECF No. 55 at 8, 29.) Nationstar therefore argues that the Pembertons have failed to satisfy the "unlawful" aspect of an unlawful prong claim because it did not violate Section 6050H. (*Id.* at 29.)

Violations of other laws are treated as "unlawful" business practices that are independently actionable under the UCL. [12] *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000); *see also Cel-Tech Commc'ns, Inc.*, 973 P.2d at 539–40 (same). A practice may be actionable under the unlawful prong if it violates any law "civil or criminal, statutory or judicially made, federal, state or local." *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 242 (Cal. Ct. App. 2006). "[A] UCL claim under the unlawful prong is dependent on an underlying offense." *Robinson v. Hunger Free Am., Inc.*, No. 1:18-cv-00042-LJO-BAM, 2018 WL

---

[12] Plaintiffs also argue that although this Court has determined that 6050H does not create a private right of action, a violation of the statute can serve as the predicate for a UCL violation. (ECF No. 54 at 25.) A party may not bring a UCL claim based on the alleged violation of another statute only if that statute has an express bar to private enforcement, as reflected in the statute's text or legislative history. *Smit v. Charles Scwhab & Co., Inc.*, No. 10-CV-03971-LHK, 2011 WL 846697, at *3 (N.D. Cal. Mar. 8, 2011); *Ferrington v. McAfee, Inc.*, No. 10-cv-01455-LHK, 2010 WL 3910169, at *15 (N.D. Cal. Oct. 5, 2010); *Hartless v. Clorox Co.*, No. 06CV2705 JAH(CAB), 2007 WL 3245260, at *4 (S.D. Cal. Nov. 2, 2007). Nothing in Section 6050H or its legislative history expressly bars private enforcement by any means whatsoever. The Court readily acknowledges that the Pembertons are not barred from asserting an unlawful prong claim, even if the claim is ultimately implausible.

2563809, at *4 (E.D. Cal. June 4, 2018). An unlawful prong claim is not plausible when it is premised on conduct that does not violate the borrowed law. *See Webb v. Smart Documents Solutions*, *LLC*, 499 F.3d 1078, 1082 (9th Cir. 2007) (noting that defendant's conduct "must violate a law . . . in order for [p]laintiffs to state a claim for relief under Section 17200's 'unlawful' prong"); *Garon v. eBay, Inc*., No. C 10-05737 JW, 2011 WL 6329089, at *6 (N.D. Cal. Nov. 30, 2011) ("[W]here the conduct alleged by a plaintiff does not violate any law, the plaintiff has not stated a claim for relief under the unlawful prong of the UCL."); *Ingels v. Westwood One Broad. Servs., Inc*., 28 Cal. Rptr. 3d 933 (Cal. Ct. App. 2005) ("[a] defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law").

The basis of the Pembertons' unlawful prong claim is that Section 6050H requires Nationstar to report deferred interest payments, which Nationstar failed to satisfy when it issued the Pembertons' 2013 Form 1098. (FAC ¶ 60.) As discussed, a plain reading of Section 6050H does not address whether, when, or how to report deferred interest payments, nor do Section 6050H's implementing regulations provide guidance on these issues. *See Strugala*, 2015 WL 5186493, at *4; *Rovai*, 2015 WL 3613748, at *3. The Court is not persuaded that the Pembertons have alleged factual allegations which plausibly satisfy the unlawful prong's requirement that the defendant's conduct "must violate" a borrowed statute or "be forbidden by law." *See Webb*, 499 F.3d at 1082; *McVicar v. Goodman Global, Inc*., 1 F. Supp. 3d 1044, 1053 (C.D. Cal. 2014). If the Pembertons had contended that Nationstar failed to report interest that it is undoubtedly required to report, such as accrued monthly interest the Pembertons paid, the Court would sustain this claim. But this has never been the Pembertons' assertion. Nor do the Pembertons point this Court to any other law to sustain their unlawful prong claim. (*See* ECF No. 54 at 25–27 (solely discussing alleged violation of Section 6050H.) Accordingly, the Court dismisses the Pembertons' UCL unlawful prong claim.

### 3.     The Unfair Prong Claim is Plausible

The UCL does not define the term "unfair" and the proper definition of what qualifies as "unfair" conduct against consumers is currently in flux among California courts. *Davis v. HSBC Bank*, 691 F.3d 1152, 1169 (9th Cir. 2012) (citation omitted). Despite this flux, California courts have used two tests for consumer claims of unfair conduct: the "public policy" test and the "balancing test."[13] *Id.* Federal courts apply both tests to assess the sufficiency of an unfair prong claim. *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007). The Court finds that the FAC plausibly alleges an unfair prong claim under both tests.

### a.     The Public Policy Test and Section 163

Under the public policy test, a plaintiff must show that the defendant's alleged practice violates some public policy. *See Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 813 (N.D. Cal 2011). This test requires that the claim "be tethered to some specific constitutional, statutory, or regulatory provisions." *McVicar*, 1 F. Supp. 3d at 1054 (citing *Scripps Clinic v. Superior Court*, 134 Cal. Rptr. 2d 101 (Cal. Ct. App. 2003) and *Gregory v. Albertson's, Inc.*, 128 Cal. Rptr. 2d 389 (Cal. Ct. App. 2002) (internal quotation marks omitted)). By doing so, some courts have suggested that the public policy test potentially "collaps[es] the 'unfair' prong' into the 'unlawful' prong." *McVicar*, 1 F. Supp. 3d at 1054. This Court sees no such issue because a business practice may be "unfair . . . in violation of the UCL *even if the practice does*

---

[13] A third test used to assess UCL unfairness prong claims "borrows from [S]ection 5 of the Federal Trade Commission Act, finding 'unfair' business practices where (1) the consumer injury is substantial, (2) any countervailing benefits to consumers or competition do not outweigh the injury, and (3) the consumers could not reasonably avoid the injury." *McVicar v. Goodman Global, Inc.*, 1 F. Supp. 3d 1044, 1054 (C.D. Cal. 2014) (citations omitted). The Ninth Circuit has rejected this test in consumer cases, finding that the test applies to anti-competitive conduct. *See Lozano v. AT&T Wireless Servs Inc.*, 504 F.3d 718, 736 (9th Cir. 2007). Accordingly, the Court does not apply it to the Pembertons' unfair prong claim.

– 34 –

*not violate any law*." [14]   *Olszewski v. Scripps Health*, 69 P.3d 927 (Cal. 2003) (emphasis added); *see also Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937 (Cal. 2003) ("[U]nder section 17200, a practice may be deemed unfair even if not specifically proscribed by some other law." (internal quotations and citation omitted)). This means that a plaintiff may be able to plausibly plead that a practice which does not facially violate a law nevertheless "offends an established public policy." *Smith v. State Farm Mut. Automobile Ins. Co.*, 113 Cal. Rptr. 2d 399, 415 (Cal. Ct. App. 2001); *see also In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014) ("Plaintiffs do not need to plead any direct violations of a statute to bring a claim under the UCL's unfair prong.  Instead, Plaintiffs need merely to show that the effects of [a defendant's] conduct 'are comparable to or the same as a violation of the law, or otherwise significantly threaten[] or harm[] competition.'" (quoting *Cel-Tech*, 973 P.2d at 544)).

The Pembertons' allegations are sufficient to state an unfair prong claim under the public policy test.  The Pembertons allege that as a result of Nationstar's conduct, "Plaintiffs have not been able to correctly state their taxes or obtain the full mortgage interest deduction they are entitled to under 26 U.S.C. [§] 163." (FAC ¶ 21.)  Section 163 permits taxpayers to deduct home mortgage interest payments.  26 U.S.C. §§ 163(a), (h).  It undeniably represents an established public policy, which Section

---

[14] Of course, in practice, courts may effectively collapse the unlawful prong and the unfair prong, as understood by the public policy test, when the violation of a law is shown. *See, e.g., Becerra v. GM LLC*, 241 F. Supp. 3d 1094, 1111 (S.D. Cal. 2017) (finding that "unfair" business practice was "tethered to a legislatively declared policy" because the pleadings "alleg[ed] violations of the TREAD Act and a Federal Safety Standard"); *Backus v. General Mills*, 122 F. Supp. 3d 909, 930 (N.D. Cal. 2015) ("For the same reason that Backus sufficiently alleged that the sale of the baking mixes was 'unlawful' under the UCL . . . he has also sufficiently alleged that their sale violated the Sherman Act's public policy of prohibiting the sale of adulterated food.").

– 35 –

6050H reporting facilitates.[15]   The Pembertons also allege that Nationstar's failure and refusal to account for deferred interest has directly harmed them by causing them to take smaller tax deductions.  (*Id.* ¶¶ 12, 16, 21–23.)  These allegations are sufficient to show that Nationstar's conduct offends the public policy reflected in Section 163. The Court need not separately analyze whether Section 6050H reflects a public policy, the violation of which would state a claim under the unfair prong.

### b.      The Balancing Test Shows the Alleged Harm Outweighs Any Justification or Utility Nationstar Advances

Under the balancing test, a business practice is "unfair" "when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *S. Bay Chevrolet v. Gen. Motors Acceptance Corp*., 85 Cal. Rptr. 2d 301, 316 (Cal Ct. App. 1999); *see also Hodsdon v. Mars, Inc*., 162 F. Supp. 3d 1016, 1026 (N.D. Cal. 2016).  This test requires courts to "examine the practice's impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer," and "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim."  *Davis*, 691 F.3d at 1169 (quotations and citation omitted); *McKell*, 49 Cal. Rptr. 3d at 240.  The balancing test should not be a particularly difficult test to satisfy at the motion to dismiss stage.  *See Ellsworth v. U.S. Bank, N.A*., 908 F. Supp. 2d 1063, 1090 (N.D. Cal. 2012) (finding that plaintiff's allegations "satisf[y] the balancing test given the lenient standard on a motion to dismiss").

---

[15] One central policy objective attributed to the home mortgage interest deduction is to encourage home ownership.  *See* Joint Comm. on Taxation, 100th Cong., General Explanation of the Tax Reform Act of 1986, at 263-64 (1987) ("Encouraging home ownership is an important policy goal, achieved in part by providing a deduction for residential mortgage interest."); S. Rep. No. 99-313, at 804 (1986) (same); H.R. Rep. No. 99-426, at 297 (1985) (same); *see also Fid. Int'l Currency Advisor A Fund, LLC v. United States*, 747 F. Supp. 2d 49, 69 (D. Mass. 2010) ("A taxpayer may buy a house with a mortgage in order to take advantage of the deductibility of mortgage interest.").

The Pembertons allege that Nationstar has failed to report millions of dollars in mortgage interest that it has actually received from consumers with Option ARM loans, caused taxpayers to "unknowingly file erroneous tax returns" and "permanently los[e] valuable tax deductions," and caused the Pembertons to take a smaller tax deduction in 2013 and file an incorrect tax return. (FAC ¶¶ 2, 12, 21–22.) They further allege that the IRS rejects attempts by taxpayers to seek a deduction for an interest amount higher than that reported in a Form 1098. (*Id.* ¶¶ 13–14.) Taking these allegations as true, they show that the Pembertons have suffered substantial harm from Nationstar's conduct.

Nationstar, however, contends that its reporting does not pose substantial and unavoidable injury to the Pembertons because the Pembertons "could have avoided injury by attempting to claim a greater deduction than the amount of interest reported on the Forms 1098." (ECF No. 55 at 31.)[16] This argument is one Nationstar has made throughout the litigation, pointing the Court to a statement on Forms 1098 that deductible mortgage interest could be different from what ss reported. (ECF No. 55 at 25 (referring also to Schedule A to Form 1040 and Publication 936 which "all inform the Pembertons that the interest amount reported on Form 1098 may not be the same as the amount a borrower may deduct").) The Pembertons, however, allege that the IRS rejects attempts by a taxpayer to seek an interest deduction different from

---

[16] Nationstar also baldly asserts that its reporting practice is not unfair because "[p]laintiffs could have also made fully amortizing payments on their Option ARM loan, or not entered into an Option ARM in the first place." (ECF No. 55 at 31.) The Pembertons expressly allege that these types of loans "were primarily marketed to consumers who wanted to minimize their monthly payment so they could 'afford' a home that would otherwise be too expensive for them based upon their available cash flow," and thus, "borrowers with negative amortization loans, including Plaintiffs, overwhelmingly" deferred interest under the loans. (FAC ¶ 4.) The Court fails to see how the Pembertons' exercise of a contractual option created by a sophisticated lending institution, which it marketed to a particular type of consumer that would likely use it, could prevent the Pembertons from showing harm.

14cv1024

the amount the loan servicer provides the IRS.  Because the Court must accept as true that allegation at this stage, the Court cannot dismiss the unfair prong claim based on Nationstar's argument.  *See Bias v. Wells Fargo & Co.*, 942 F. Supp. 2d 915, 933 (N.D. Cal. 2013) (noting that "[w]hether this [UCL] claim ultimately prevails in [defendant's] favor is not currently at issue" and that "[t]aking the allegations as a whole and in the light most favorable to Plaintiffs, they have alleged sufficient facts to state a claim under" various unfair tests).

As for the utility of Nationstar's conduct, the Court presently has no basis to find that Nationstar's failure to report deferred interest payments has any utility, let alone utility that outweighs the gravity of the alleged harm to the Pembertons.  *See Fraley*, 830 F. Supp. 2d at 813 (reaching the same conclusion in sustaining UCL unfair prong claim under balancing test).  Nationstar has never argued that reporting deferred interest payments would impose any meaningful burden on it.  At oral argument, it was suggested that reporting deferred interest may be as simple as establishing a computer program that tracks deferred interest and reporting those numbers to the IRS and individuals like the Pembertons.  Accordingly, the Court cannot find a meritorious defense of Nationstar's practice at this stage.  *See, e.g., Backus v. General Mills*, 122 F. Supp. 3d 909, 930 (N.D. Cal. 2015) (sustaining unfair prong claim when plaintiff alleged harms "that could be avoided in a cost-effective way" and "because [the defendant] has not submitted a meritorious argument regarding the utility of the practice").

Nationstar does not expressly assert a justification for not reporting deferred interest, but the Court finds two grounds asserted in Nationstar's briefing, neither of which is compelling or outweighs the harm the Pembertons allege.  First, while Nationstar points to the contract as permitting it to treat deferred interest as principal, no party disputes that the contract does not address Nationstar's reporting of deferred interest for tax purposes.  (FAC ¶ 43; ECF No. 55 at 16–17 ("The note does not mention Forms 1098.  It does not mention the mortgage interest deduction.").)

– 38 –

Respecting the distinction between what is interest and principal for contractual purposes as opposed to tax purposes, the Court is not persuaded that the former makes implausible an unfair prong claim premised on the latter. Second, Nationstar contends that nothing in Section 6050H or its implementing regulations requires reporting of deferred interest. However, this contention carries little weight for the Court because Nationstar does not argue that deferred home mortgage interest is not deductible as a general matter or in the Pembertons' case, or that Nationstar is prohibited from reporting deferred interest. Accordingly, the Court finds that the Pembertons have stated an unfair prong claim based on the balancing test.

### 4. UCL Abstention Is Not Warranted

Nationstar argues that if the Court finds that the Pembertons have stated a UCL claim, the Court should nevertheless abstain from adjudication due to the IRS's administration of the federal tax scheme. (ECF No. 55 at 29.) The Court declines to do so because abstention is not warranted on the unfair prong claim.

Arising from the equitable nature of the injunction and restitution remedies available under the UCL is a court's discretion to abstain from employing these remedies. *Alvarado v. Selma Convalescent Hospital*, 64 Cal. Rptr. 3d 250, 253 (Cal. Ct. App. 2007). California courts have recognized that abstention from deciding a UCL claim may be proper "in the rare instance." *Rex. v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1134 (C.D. Cal. 2012). For example, courts may abstain when a lawsuit involves wholesale policy determinations better suited for a legislature or an administrative agency, rather than a judge. *See Cal. Grocers Ass'n v. Bank of Am.*, 27 Cal. Rptr. 2d 396, 404 (Cal. Ct. App. 1994) (finding court abused discretion by granting injunctive relief under UCL because "this case implicates a question of economic policy: whether service fees charged by banks are too high and should regulated."); *see also Shamsian v. Dep't of Conservation*, 39 Cal. Rptr. 3d 62, 78 (Cal. Ct. App. 2006). Judicial abstention may be appropriate if granting injunctive relief would be unnecessarily burdensome for the trial court to monitor and enforce. *See*

– 39 –

*Diaz v. Kay-Dix Ranch*, 88 Cal. Rptr. 443, 451 (Cal. Ct. App. 1970) (affirming judgment that declined to impose injunctive relief that "would subject farm operators to burdensome, if bearable, regulation, and the courts to burdensome, if bearable, enforcement responsibilities). Beyond these limited circumstances, "it is an abuse of discretion to use the equitable abstention doctrine to deny relief where plaintiffs' claims require the court 'to perform the basic judicial functions of contractual and statutory interpretation,' even where a government agency offers an 'administrative process by which' plaintiffs can seek relief." *Rex*, 905 F. Supp. 2d at 1134–35 (quoting *Shamsian*, 39 Cal. Rptr. 3d at 78).

Any persuasive force that Nationstar's abstention argument may have had is blunted by the Court's dismissal of the Pembertons' fraudulent and unlawful prong claims—the only claims which could possibly raise the specter of policymaking by calling for a definitive interpretation of Section 6050H's treatment of deferred interest and applying that to the Pembertons' circumstances in the absence of IRS guidance. Because the Pembertons cannot plead plausible claims under the fraudulent or unlawful prongs, the Court is not "assum[ing] the functions of an administrative agency." *Alvarado*, 64 Cal. Rptr. 3d at 253; *cf. Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1085 (N.D. Cal. 2011) (finding abstention appropriate to the extent UCL claim was premised on state statute requiring the state agency to adopt regulations setting forth minimum nursing hours at skilled nursing facilities).

As for the Pembertons' unfair prong claim, the specter of making legislative policy determinations is not presented based on the application of the unfair prong tests to the conduct the Pembertons allege. To the extent the Pembertons' claim is premised on Section 163, that provision itself reflects a legislative policy, the soundness of which this Court does not second-guess. To the extent the Pembertons' claim is premised on balancing the harms alleged versus the justifications for and utility of Nationstar's reporting practice, Nationstar has not shown "the analyses required to adjudicate Plaintiff[s]' UCL claim . . . to be overly complex[.]" *Wehlage*

– 40 –

*v. EmPres Healthcare, Inc.*, 791 F. Supp. 2d 774, 786 (N.D. Cal. 2011).

Nationstar has also failed to show how injunctive relief might burden the Court, or require the imposition of burdensome regulation. *See McMillan v. Lowe's Home Ctrs., LLC*, No. 1:15-cv-00695 DAD SMS, 2016 WL 2346941, at *5 (E.D. Cal. May 4, 2016) (case involved injunctive relief against only two parties, as opposed to the "issu[ance of] a network of injunctions across the state or to engage in a long-term monitoring process"). The relief the Pembertons request is simply an order that Nationstar report deferred interest payments and provide corrected forms for prior years. (FAC ¶ 71.) While the Court lacks the power to order Nationstar to specifically report deferred interest payments in Forms 1098, as the Court discusses herein, Nationstar has failed to show that any other injunctive relief this Court could order will upset any administrative scheme.[17] *See, e.g., Matoff v. Brinker Rest. Corp.*, 439 F. Supp. 2d 1035, 1038 (C.D. Cal. 2006). Because the Court is not persuaded that this is the "rare case" in which UCL abstention is appropriate, the Court declines to abstain.

### E.    The Negligence Claim is Plausibly Pleaded

The Pembertons allege a negligence claim against Nationstar in the alternative to their fraud claim. (FAC ¶ 83 ("Assuming that Nationstar did not intentionally report incorrect amounts of mortgage interest on the Forms 1098 that it sent to plaintiffs[.]").) They allege that "Nationstar had a legal duty [under Section 6050H] to report accurately only the interest Nationstar 'received' during each calendar year"

---

[17] Nationstar's reliance on *Loeffler v. Target Corporation*, 324 P.3d 50 (Cal. 2014), to argue for UCL abstention is unavailing. The *Loeffler* plaintiffs were barred from seeking relief under the UCL for state taxes they alleged were wrongfully taxed by the defendant. But the California Supreme Court determined that the California tax code "provide[d] the exclusive means by which the plaintiffs' dispute over the taxability of a retail sale may be resolved" and the lawsuit was "inconsistent with the tax code." *Id.* at 54. The case is distinguishable because Section 6050H is merely a reporting provision; it does not require Nationstar to collect taxes from the Pembertons.

and a further "duty to correct any mistakes on an incorrect Form 1098 as soon as possible after determining that a wrong amount had been reported." (*Id*. ¶ 82.) Nationstar allegedly breached its legal duties to the Pembertons by its respective failures to accurately report their interest payments in their 2013 Form 1098 and to correct the information reported after the Pembertons complained. (*Id*. ¶¶ 11, 15–16, 22, 83.) The Pembertons allege that they have been damaged by Nationstar's negligence because of the IRS's policy of rejecting a return claiming an amount of interest that does not match the amount stated on a servicer-issued Form 1098. (*Id*. ¶ 84.)

To state a negligence claim under California law, a plaintiff must allege: (1) a legal duty of care owed by the defendant to her, (2) a breach of that duty, and (3) proximate causation of that breach to (4) the plaintiff's injury. *Merrill v. Navegar, Inc*., 28 P.3d 116, 123 (Cal. 2001); *see also Steinle v. City & Cty. of San Francisco*, 230 F. Supp. 3d 994, 1019 (N.D. Cal. 2017). "The threshold element of a cause of action for negligence is the existence of a duty to use due care toward an interest of another that enjoys legal protection against an unintentional invasion." *Paz v. State of California*, 994 P.2d 975, 981 (Cal. 2000). The existence of a duty is a question of law to be resolved by a court on a case-by-case basis. *Id*.; *Alvarez v. BAC Home Loans Servicing, L.P*., 176 Cal. Rptr. 3d 304, 306 (Cal. Ct. App. 2014); *see also Flores v. EMC Mortg. Co*., 997 F. Supp. 2d 1088, 1113 (E.D. Cal. 2014) ("The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide."). Both parties dispute extensively whether Nationstar owed any duty to the Pembertons—there is no dispute about whether the Pembertons have adequately alleged a breach or resulting harm if a duty exists. Accordingly, the Court focuses solely on whether a duty of care exists in this case.

In California, "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed

the scope of its conventional role as a mere lender of money."[18] *Paz*, 994 P.2d at 981. This rule applies to loan servicers as well.[19] *Azzini v. Countrywide Home Loans*, No. 09-cv-787-DMS-CAB, 2009 WL 5218042, at *2 (S.D. Cal. Dec. 29, 2009); *Wong v. Am. Servicing Co., Inc.*, No. 2:09-CV-01506 FCD/DAD, 2009 WL 5113516, at *6 (E.D. Cal. Dec. 18, 2009). "Lenders and loan servicers in California do not ordinarily owe borrowers or third parties any duties beyond those expressed in the loan

---

[18] This limit on the imposition of a duty of care on a mortgage provider or loan servicer has particular force in negligence cases involving lending activities, such as offering or modifying a loan. Federal courts have split on whether and when a duty of care may exist in such cases. *See Hernandez v. Select Portfolio Servicing, Inc.*, No. CV 15-01896 MMM (AJWx), 2015 WL 3914741, at *21–22 (C.D. Cal. June 25, 2015) (contrasting cases in which district courts in California have found a duty of care for loan modification under California negligence law with those that have not). But these cases turn on whether there is a *common law* duty regarding these general loan activities. *See Colom v. Wells Home Mortgage, Inc.*, No. C-14-2410 MMC, 2014 WL 5361421, at *3 (N.D. Cal. Oct. 20, 2014) (dismissing loan modification negligence because "[a] lender [does] not have a common law duty of care to offer, consider, or approve a loan modification"). In the cases which find no duty, there is a sound policy reason to do so. *See Casault v. Fannie Mae*, 915 F. Supp. 2d 1113, 1131 (C.D. Cal. 2012) ("[F]inancial institutions would be less likely to assist borrowers with defaulted loans if the financial institution would be held to a higher duty of care for exercising leniency."). This case, however, concerns a *statutory* reporting obligation placed on Nationstar. There is no suggestion that a duty of care pertaining to that statutory obligation would make Nationstar less likely to report interest payments, *i.e.* comply with its obligation, or less likely to engage in the underlying lending and servicing activities.

[19] To challenge this general rule, the Pembertons assert that California law recognizes that "loan transactions between a mortgage finance company and the borrowers like the plaintiff involve 'more than the provision of a loan; they also include [the] financial services [of managing the loan]." (ECF No. 54 at 24 (quoting *Hernandez v. Hilltop Fin. Mortg., Inc.*, 622 F. Supp. 2d 842 (N.D. Cal. 2007)).) The Pembertons' reliance on *Hernandez* is misplaced as the case considered whether the plaintiffs could maintain a claim under the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1770, *et seq*. The scope of statutory liability under the CLRA is not relevant to whether a duty exists with respect to Section 6050H reporting.

– 43 –

agreement." *York v. Bank of Am.*, No. 14-cv-02471-RS, 2015 WL 3561723, at *10 (citing *Castaneda v. Saxon Mortg. Servs.*, 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009)). However, "[w]hen considered in full context, the cases show the question is not subject to black-and-white analysis, and not easily decided on the 'general rule.'" *Jolley v. Chase Home Finance, LLC*, 153 Cal. Rptr. 3d 546, 567 (Cal. Ct. App. 2013).

California courts apply a non-exhaustive six-factor test to determine "whether a financial institution owes a duty of care to a borrower-client" even when the financial institution has not exceeded its role as a mere lender. *See Nymark v. Heart Fed. Savings & Loan Ass'n*, 283 Cal. Rptr. 53, 58 (Cal. Ct. App. 1991). A court "balanc[es] various factors, including: (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm." *Id.* (applying six-factor test set forth in *Biakanja v. Irving*, 320 P.2d 16 (Cal. 1958), to determine whether financial institution owed a duty of care to borrower).[20] Federal courts routinely apply the *Biakanja* factors to determine whether a loan servicer owes a duty to a particular borrower plaintiff under the facts alleged. *See, e.g., Clinton v. Select Portfolio Servicing, Inc.*, 225 F. Supp. 3d 1168, 1173–74 (E.D. Cal. 2016); *Gilmore v. Wells Fargo Bank, N.A.*, 75 F. Supp. 3d 1255, 1266 (N.D. Cal. 2014); *Rockridge*

---

[20] Based on a misreading of this Court's decision in *Ruvalcaba*, which involved parties not in privity, Nationstar contends that the *Biakanja* factors apply "only" when privity is absent. (ECF No. 55 at 26 (citing *Ruvalcaba v. Ocwen Loan Servicing, LLC*, No. 15-CV-00744-BAS(DHB), 2017 WL 2985121 (S.D. Cal. July 13, 2017)).) The *Biakanja* factors, however, apply even when the parties are in privity. *See Nymark*, 283 Cal. Rptr. at 58 (applying *Biakanja* factors to borrower-client relationship); *see also Kemp v. Wells Fargo Bank, N.A.*, No. 17-cv-01259-MEJ, 2017 WL 4805567, at *6 (N.D. Cal. Oct. 25, 2017) ("[C]ourts still apply the *Biakanja* factors to determine whether a financial institution owes a duty of care to a borrower-client, *even where the parties are in privity*." (emphasis added) (citing cases)).

– 44 –

*Trust v. Wells Fargo Bank, N.A.*, 985 F. Supp. 2d 1110, 1160–61 (N.D. Cal. 2013).

To assess whether a duty exists, a court must first "identify[] the specific conduct by [the defendant] which [the plaintiff] claims was negligent so to limit our analysis 'the specific action the plaintiff claims the particular [defendant] had a duty to undertake in the particular case.'" *Jolley*, 153 Cal. Rptr. 3d at 568 (quoting *Vasquez v. Residential Investments, Inc.*, 12 Cal. Rptr. 3d 846 (Cal. Ct. App. 2004)). The allegations show that Nationstar allegedly failed (1) to accurately report the interest it received from the Pembertons during the calendar year in accordance with Section 6050H and, relatedly, (2) to correct any mistakes on the Form 1098 it provided "as soon as possible after determining that a wrong amount had been reported." (FAC ¶¶ 82–83.) The Court addresses both issues.

### 1. Alleged Duty of Care In Reporting

The Pembertons argue that a duty exists because Section 6050H requires an interest recipient to report interest payment information to the interest payor, as opposed to just the IRS. (ECF No. 54 at 22.) They further argue that the *Biakanja* factors support a duty because: (1) the transaction, *i.e.*, provision of a Form 1098 and calculation of the amounts reported therein, was intended to affect them, (2) they have no input whatsoever in how Nationstar reports interest in a Form 1098, (3) borrowers, tax preparers and the IRS all rely on the Forms 1098, (4) there is a "dollar for dollar" connection between the amount of misreported interest and their injury, (5) Nationstar has moral blame as a "sophisticated financial institution whose very business it is to correctly service loans," and (6) the policy of preventing future harm favors them because Nationstar can prevent the harm to the Pembertons by simply changing its reporting policy. (*Id.* at 24–25.) For its part, Nationstar argues that "[a] lender owes its borrower no duty with respect to the borrower's tax obligations" and, in this instance, an information return issuer "owes a duty only to the IRS, not the taxpayer." (ECF No. 55 at 26.) Nationstar makes no other argument regarding the *Biakanja*

– 45 –

factors, but instead asserts that the lack of a federal right of action under Section 6050H forecloses the Pembertons' negligence claim. (*Id*. at 27.)

After completion of the parties' briefing in this case, one district court dismissed with prejudice a negligence claim concerning Section 6050H reporting. Applying the *Biakanja* factors, the court determined that the defendant bank's issuance of a Form 1098 is "for its own benefit, to fulfill its own statutory obligations." *Neely v. JP Morgan Chase Bank, N.A.*, No. 16-cv-01924, ECF No. 72 at 7 (C.D. Cal. April 10, 2018). The court then determined that the foreseeability of harm was "remote" because a taxpayer has an "independent duty to keep records of his interest payments" under IRS Revenue Ruling 70-647, which attenuated the relationship between the plaintiff's injury and the alleged misreporting. *Id*. (citing IRS Rev. Rul. 70-647, 1970-2 C.B. 38, 1970 WL 21200, at *2 (1970).) The court further reasoned that "placing the burden of accurate reporting on Chase would negate Neely's independent duty." *Id*. This Court respectfully departs from this reasoning.

Neither party disputes that Section 6050H imposes a statutory obligation on Nationstar, as an interest recipient, to report interest payments it receives. That obligation does not make Nationstar responsible for the Pembertons' tax obligations, but it plainly requires Nationstar to provide "correct information" in its reporting, even accepting that the Pembertons have their own independent duties in respect of their tax obligations.[21] While Nationstar emphasizes the subsection in Section 6050H

---

[21] The notion that Revenue Ruling 70-647 creates or recognizes an independent duty for a taxpayer to keep track of loan payment records for tax purposes is not entirely accurate. The ruling expressly qualified that "[b]ecause the lender's records do not indicate when and how much interest is actually paid by the individual for purposes of deduction under section 163 of the Code," the taxpayer had to keep his own record of the loan. IRS Rev. Rul. 70-647, 1970-2 C.B. 38, 1970 WL 21200, at *2 (1970). In this case, however, Nationstar does keep records that pertain to deduction of the mortgage interest payments so that it can report those payments to the IRS and to the Pembertons. Moreover, even accepting that a taxpayer has his or her own duties, the allegation that the IRS rejects claims to an interest deduction

– 46 –

which obligates it to report interest payments to the IRS, a different subsection obligates Nationstar to report interest payments to payers, like the Pembertons. *Contrast* 26 U.S.C. § 6050H(a) *with id.* § 6050H(d). That obligation is related to, but not the same as Nationstar's obligation to the IRS—and they are independently subject to statutory penalties for the provision of "incorrect information." 26 U.S.C. § 6722(a)(2)(B) (imposing penalties for "inclusion of incorrect information" on a "payee statement"); 26 U.S.C. § 6724(d)(2)(M) (defining "payee statement" to include statements required by "section 6050H(d)"); 26 U.S.C. § 6721(a)(2)(B) (imposing penalties for "inclusion of incorrect information" on a "payee statement"); 26 U.S.C. § 6724(d)(1)(B)(v).

More fundamentally, Nationstar's statutory obligation to the Pembertons does not foreclose a duty of care in how it discharges that obligation, but rather may properly serve as the basis for a duty.[22] *See J'Aire Corp. v. Gregory*, 598 P.2d 60, 62

---

higher than the amount reported in a servicer-provided Form 1098 prevents the Court from concluding that placing a duty on Nationstar "negates" that of the Pembertons.

[22] Nationstar's reliance on *Giacometti v. Aula, LLC*, 114 Cal. Rptr. 3d 724, 729 (Cal. Ct. App. 2010) to argue against a duty is inapposite. That case concerned whether non-client plaintiffs could sue for professional negligence, a claim which California law treats more restrictively to permit only "intended beneficiaries of a transaction [to] recover." *Giacometti*, 114 Cal. Rptr. 3d at 728 (quoting *Bily v. Arthur Young & Co.*, 834 P.2d 745 (Cal. 1992). The *Giacometti* court dismissed the plaintiffs' professional negligence claims because "in our case the restaurant's intention in hiring the accountants was not to benefit the employees but to fulfill a legal obligation to furnish pay information to the IRS.").

Nationstar relies on two additional cases to argue that no duty of care can exist with respect to its provision of Forms 1098. Neither case supports this. For one, *Rumfelt* did not find that there was no duty of care regarding W-2 reporting, but rather involved a plaintiff who failed to plead any facts which would show a federal claim. *See Rumfelt v. Jazzie Pools, Inc.*, No. 1:11CV217 JCC TCB, 2011 WL 2144553, at *4 (E.D. Va. May 31, 2011). The court expressly declined to address negligence claims under state law. *Id.* at *8. Second, *Arvin* did not concern whether a duty of care exists, but rather whether a private cause of action existed under federal law for

– 47 –

14cv1024

(1979) ("A duty of care *may arise through statute* . . ."); *Greystone Homes, Inc. v. Midtec, Inc.*, 86 Cal. Rptr. 3d 196, 212 (Cal. Ct. App. 2008) ("[a] duty of care may arise through statute . . ."). Indeed "a statute may impose a duty where none existed at common law." *Sierra-Bay Federal Land Bank Ass'n v. Superior Court*, 277 Cal. Rptr. 753, 761 (Cal. Ct. App. 1991) [hereinafter "*Sierra-Bay*"]. Several courts have determined that a duty of care arises from federal statutory obligations to provide or disclose information—even in the context of home mortgage lenders and servicers. *See Watson v. Bank of Am., N.A.*, No. 16-cv-513-GPC-MDD, 2016 WL 3552061, at *14 (S.D. Cal. June 30, 2016) (concluding that "[p]laintiffs have sufficiently alleged that [defendant], as a loan servicer, had a duty to exercise reasonable care in proceeding and reviewing and responding to [Requests for Information] and [Notice of Error]" required under RESPA); *Boessenecker v. JPMorgan Chase Bank*, No. 13-0491-C-MMC, 2014 WL 107063, at *1–2 (N.D. Cal. Jan. 10, 2014) (permitting negligence claim based on defendant's alleged failure to respond to two Qualified Written Requests ("QWRs") mandated by RESPA); *Osei v. Countrywide Home Loans*, 692 F. Supp. 2d 1240, 1250 (S.D. Cal. 2010) (plaintiff alleged a plausible failure by the defendant to make required disclosures under RESPA and determining that "[defendant] had a duty of care with regard to RESPA disclosures"); *Baldain v. Am. Home Mortg. Servicing, Inc.*, No. CIV. S-09-0931-LKK-GGH, 2010 WL 56143, at *6 (E.D. Cal. Jan. 5, 2010) (a defendant's failure to make disclosures required by Truth in Lending Act "support finding a duty of care as to these disclosures"); *Champlie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1061 (E.D. Cal. 2009) (concluding that duty of care existed based on lender's failure to make disclosures as required by the Truth in Lending Act). This Court sees no fundamental

the alleged misreporting there. *Arvin v. Go Go Inv. Club*, No. C 96-3264 FMS, 1996 WL 708589, at *4 (N.D. Cal. Dec. 5, 1996), *aff'd*, 129 F.3d 124 (9th Cir. 1997). The case is inapposite in light of the Court's dismissal of a claim under Section 6050H.

difference between these cases and that of the Pembertons because Section 6050H requires an interest recipient to report interest payments to the Pembertons.

The Pembertons' allegations otherwise support a duty of care under the *Biakanja* factors. Consistent with the Court's determination that the Pembertons have standing to pursue their claims, the allegations show that their injury was foreseeable and sufficiently closely connected to Nationstar's alleged failure to account for deferred interest. *See Pemberton v. Nationstar Mortgage LLC*, No. 14-cv-1024-BAS-WVG, 2017 WL 4759018, at *5–6 (S.D. Cal. Oct. 20, 2017). The Court does not find that Nationstar's conduct is particularly morally blameworthy insofar as it concerns Nationstar's initial provision of Forms 1098. However, the allegations show that the injury the Pembertons allege—which assumes that the IRS rejects attempts by taxpayers to claim a higher deduction than the amount reported on a Form 1098— could easily be prevented by Nationstar merely reporting deferred interest. Accordingly, the Pembertons' allegations are sufficient to show a duty of care at the pleading stage.

As a final issue on the duty alleged to arise from Section 6050H, Nationstar relies on *Sierra-Bay* to argue that California law does not permit the Pembertons to sue in negligence because Section 6050H lacks a private cause of action. (ECF No. 55 at 27.) A close review of *Sierra-Bay* shows it has limited application to the Pembertons' claim. The *Sierra-Bay* defendants had exercised their power of sale in certain deeds of trust after the plaintiff borrower failed to repay loans he obtained through the federal Farm Credit System. *Sierra-Bay*, 277 Cal. Rptr. at 754. The plaintiff attempted to raise a claim under the Farm Credit Act of 1971 and several negligence claims. The plaintiff invoked Section 669 of the California Evidence Code to state a negligence claim, a provision which treats the violation of a statute as negligence *per se*.[23] As *Sierra-Bay* made clear, however, the presumption of Section

---

[23] The Pembertons also assert that "[t]he facts alleged . . . support a negligence

– 49 –

669 does not come into play in *the absence of a duty of care*, something which the plaintiff in that case failed to allege. *Id*. at 762. The court determined that the facts showed nothing more than a traditional borrower-lender relationship in which the latter is not liable for the borrower's success or failures. The Pembertons' negligence claim does not refer to Section 669 and even if it did, the Court has determined that the pleadings otherwise establish a duty of care.

*Sierra-Bay* further determined, even if a duty of care could be implied, a negligence claim in that case would stand as an obstacle to the federal statutory scheme. *Id.* at 763 ("Since we may not recognize a state cause of action if to do so would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, it follows that we may not recognize a private cause of action for damages here."). This reasoning clearly sounds in preemption. *See Wash. Mut. Bank v. Superior Court*, 89 Cal. Rptr. 2d 560, 571 n.16 (Cal. Ct. App. 1999) (noting that *Sierra-Bay* relied on an earlier "implied preemption case" and concluding that "[w]e also read *Sierra-Bay* as an implied preemption case."). The Court has noted that Nationstar concedes it does not raise a preemption argument at this stage and the Court declines to undertake such an analysis now. Thus, *Sierra-Bay* does not foreclose the Pembertons' negligence claim.

### 2.    Alleged Duty to Correct Reporting Mistakes

The Pembertons also allege that Nationstar had "a duty to correct any mistakes on Forms 1098 as soon as possible after determining that a wrong amount had been reported." (FAC ¶ 82.) This duty is related to the duty of care concerning Nationstar's initial Section 6050H reporting, but it separately arises from how Nationstar allegedly

---

*per se* theory." (ECF No. 54 at 22 n.18.) However, the doctrine "does not provide a duty of care, but may establish a relevant *standard* when a duty already exists." *Alvarez v. MTC Fin. Inc.*, No. 3:16-cv-06429-WHO, 2017 WL 1861844, at *4 n.9 (N.D. Cal. May 9, 2017). Thus, the Court does not rely on the negligence *per se* argument in its duty analysis.

– 50 –

investigated and responded to the Pembertons' complaint. Nationstar makes no argument that a duty of care cannot arise from this conduct. (ECF No. 55 at 25–29 (not addressing the issue).)

The Pembertons allege they brought to Nationstar's attention its alleged failure to report deferred interest payments in their 2013 Form 1098 and requested a revised Form 1098. (FAC ¶ 15.) Nationstar acknowledged the Pembertons' complaint and referred it to the "Research Department." (*Id*., Ex. D.) Nationstar subsequently responded to the Pembertons on March 27, 2017—a response which expressly acknowledged that it concerned Form 1098 reporting. (*Id.* ¶ 16, Ex. E ("This is in response to your request received March 3, 2014 regarding the 2013 Mortgage Interest Statement Form (Form 1098).") Nationstar did not contend that deferred interest is not deductible or that it could not report deferred interest amounts in a Form 1098. (*Id.* ¶ 16, Ex. E.) Rather, Nationstar rejected the Pembertons' claim on the grounds that: (1) "[t]here was [sic] no deferred amounts or negative amortization on your loan for the period of time that Nationstar has been the servicer" and (2) "we (sic) were not provided with any previously deferred interest amounts from the prior servicer nor is there any way for us to calculate amounts prior to when we acquired your loan." (*Id.* ¶ 16, Ex. E.) The Pembertons challenge Nationstar's investigation into their complaint by alleging that they were "easily able" to obtain their payment history from their prior loan servicer. (*Id.* ¶ 17.)

Applying the *Biakanja* factors to these allegations, the Court finds that the Pembertons have adequately alleged a separate duty. First, Nationstar's investigation of the Pembertons' complaint and response was intended to affect them because it was expressly directed to the Pembertons and impacted whether they could amend their tax return. *See, e.g., Dougherty v. Bank of Am., N.A.*, 177 F. Supp. 3d 1230, 1258 (E.D. Cal. 2016) (defendant bank's and loan servicer's efforts to assist plaintiff were intended to affect plaintiff because the result of those efforts would affect plaintiff).

Second, although the Pembertons expressly told Nationstar the basis for their complaint, Nationstar refused to provide the Pembertons with a revised Form 1098. The bases of Nationstar's refusal, however, run contrary to how deferred interest works. First, the fact that the Pembertons did not defer interest while Nationstar was their servicer cannot provide a basis for Nationstar's refusal to account for such interest because deferred interest is paid at a later date. (FAC ¶¶ 4, 12.) Second, Nationstar's allegation that it was not provided deferred interest amounts from the prior servicer cannot be squared with the Pembertons' allegations that they were able to obtain such information and that their overall loan balance was greater than the original amount borrowed. (*Id*. ¶¶ 9, 17.) The existence of deferred interest would also have been readily apparent from a comparison of the outstanding principal with the original principal. Due to Nationstar's refusal, the Pembertons allege that they have been unable to correctly state their taxes or seek a higher interest deduction. (FAC ¶ 22.) This alleged conduct shows a high degree of certainty that the Pembertons suffered harm that was foreseeable and closely connected with Nationstar's conduct. *See, e.g., Gerbery v. Wells Fargo Bank, N.A*., No. 13-CV-614-MMA(DHB), 2013 WL 3946065, at *12 (S.D. Cal. July 31, 2013); *see also Powell v. Wells Fargo Home Mortg*., No. 14-cv-04248-MEJ, 2017 WL 840346, at *9 (N.D. Cal. Mar. 3, 2017) (defendant bank had a duty of care based on plaintiff's allegations that defendant mishandled his loan modification); *Robinson v. Bank of Am*., No. 12-CV-00494-RMW, 2012 WL 1932842, at *7 (N.D. Cal. May 29, 2012) (denying motion to dismiss negligence claim when, *inter alia*, plaintiff alleged that defendant bank engaged in contradictory and somewhat misleading communications with plaintiff). Accordingly, the Court concludes that the second through fourth *Biakanja* factors weigh in favor of a duty.

Nationstar's moral blame is also greater with respect to the Pembertons' allegations on this issue given its role. Nationstar purchased the Pembertons' loan from a different servicer, services their loan, undertook an investigation into the

Pembertons' complaint, and, based on the allegations, had the discretion regarding whether to issue a revised Form 1098. *See Gerbery*, 2013 WL 3946065, at *12. The policy of preventing future harm is particularly compelling. The Pembertons' allegations show that borrowers who have deferred interest and whose loans Nationstar services face the risk of future harm, even when they expressly inform Nationstar regarding its lack of reporting deferred interest. Nationstar acknowledges that loan servicers have "divergent practices regarding the reporting of capitalized interest." (ECF No. 55 at 10.) At oral argument, it became clear that some loan servicers and banks do in fact report deferred interest, even in the absence of clear guidance from the IRS about whether and when to do so. In this context, the Pembertons' allegations counsel that the policy of preventing future harm points toward a duty. Accordingly, the Court finds that the *Biakanja* factors support finding a duty of care on this conduct.

## F. The Request for Declaratory Relief Is Subject to Dismissal

The Pembertons' fifth cause of action is for a declaratory judgment to "resolve the issue as to whether Nationstar is correctly reporting Class Members' mortgage interest payments on Form[s] 1098[] and whether Nationstar should be required to provide corrected [Forms 1098] to the Class Members for all years in which its policies did not conform to law." (FAC ¶ 66.) Nationstar contends that the Declaratory Judgment Act and the Anti-Injunction Act bar the Pembertons' claim for declaratory relief. (ECF No. 55 at 32.) The Court agrees that the claim must be dismissed to the extent it seeks a declaration regarding the lawfulness of Nationstar's Form 1098 reporting under Section 6050H and its implementing regulations.

The Declaratory Judgment Act provides that declaratory relief is not available in a case within a court's jurisdiction "*with respect to Federal taxes* other than actions brought under section 7428 of the Internal Revenue Code of 1986 . . ." 28 U.S.C. § 2201(a) (emphasis added). The Anti-Injunction Act in turns provides that subject to certain exceptions, "no suit for the purpose of restraining the assessment or collection

of any tax shall be maintained in any court by an person . . ." 26 U.S.C. § 7421(a).
"The purpose of the federal tax exception to the Declaratory Judgment Act is to
protect the government's ability to assess and collect taxes free from pre-enforcement
judicial interference, and to require that disputes be resolved in a suit for refund."
*California v. Regan*, 641 F.2d 721, 722 (9th Cir. 1981). "The federal tax exception
of [the Declaratory Judgment Act] is 'at least as broad as the Anti-Injunction Act.'"
*Id.* (citing *Bob Jones Univ. v. Simon*, 416 U.S. 725, 732 n.7 (1974)); *Daines v. Alcatel,
S.A.*, 105 F. Supp. 2d 1153, 1158 (E.D. Wash. 2000) ("[A]lthough the Declaratory
Judgment Act exception would appear to prohibit a wider range of court action than
the Anti-Injunction Act, the Declaratory Judgment Act is read to be coextensive with
the Anti-Injunction Act . . . . [T]ogether, [they] prohibit only injunctive relief which
would restrain the assessment or collection of federal taxes."). There are only two
exceptions to the Declaratory Judgment Act's bar on declaratory relief: (1) when the
government could under no circumstances ultimately prevail and where the
prerequisites for equity jurisdiction are met and (2) an aggrieved party has no access
at all to judicial review. *Id.* at 723 (citing, *inter alia*, *Bob Jones Univ.*, 416 U.S. at
742, 746).

The Court acknowledges that unlike the plaintiffs in *Regan* and *Daines*, the
Pembertons do not seek to exempt Nationstar from filing a Form 1098, nor to
withdraw forms already provided to the IRS, but rather focus on the accuracy of
information reported in the forms. *See Regan*, 641 F.2d at 722 (the State of California
sought declaratory and injunctive relief from the requirement that it file an annual
information return with the IRS pursuant to ERISA provision governing employee
pension benefit plans); *Daines*, 105 F. Supp. 2d at 1154 (plaintiff sought a declaratory
judgment that defendants should not have issued certain Form 1099s and an order
directing defendants to rescind the forms).

Yet the possibility that the issuance of a declaratory judgment that Nationstar's
Form 1098 reporting was and is wrongful under Section 6050H, as a matter of law,

– 54 –

may have some impact on the IRS's discretion regarding what an interest recipient must report to comply with Section 6050H and the IRS's implementing regulations. The Pembertons do not assert that any exception to the Declaratory Judgment Act's prohibitions applies. The possibility of interference thus counsels that the relief the Pembertons seek is inappropriate under the Declaratory Judgment Act. *See Daines*, 105 F. Supp. 2d at 1154; *see also Neely v. JP Morgan Chase Bank*, N.A., No. 16-cv-01924, ECF No. 72 at 7–8 (C.D. Cal. April 10, 2018). The Court concludes that, as pleaded, the declaratory relief the Pembertons seek turns on a controversy "with respect to federal taxes within the meaning of the Declaratory Judgment Act." *Regan*, 641 F.2d at 722; *see also Neely v. JP Morgan Chase Bank*, N.A., No. 16-cv-01924, ECF No. 72 at 7–8 (C.D. Cal. April 10, 2018) (dismissing claim for declaratory relief under the Declaratory Judgment Act with respect to relief similar what the Pembertons request). Accordingly, the Court dismisses the Pembertons' claim for declaratory relief with prejudice insofar as it concerns (1) a declaration that Nationstar's Form 1098 reporting is wrongful under Section 6050H and relatedly (2) an order requiring Nationstar to issue revised Forms 1098 that account for deferred interest as part of interest paid in order to comply with Section 6050H.

The Court, however, does not find that the Declaratory Judgment Act or the Anti-Injunction Act otherwise preclude any declaratory or injunctive relief the Court could order in this case.[24] As the Court has previously explained, while this case

_____

[24] Moreover, the Declaratory Judgment Act and the Anti-Injunction Act, which concern the power of a federal court to order certain relief, do not appear to limit what Nationstar can *voluntarily* agree to as a private party. For example, Nationstar could voluntarily agree to report deferred interest payments in the Forms 1098 it provides to the IRS and individuals like the Pembertons. In fact, one district court approved a settlement agreement in which a defendant bank "agreed to issue amended Forms 1098 to individuals for tax years 2010–2013" and "to report deferred-interest payments on Forms 1098 going forward." *Horn v. Bank of Am., N.A.*, No. 3:12 cv-1718-GPC-BLM, 2014 WL 1455917, at *4 (S.D. Cal. April 14, 2014). There has been no suggestion that the IRS rejected these forms or that the inclusion of deferred

undoubtedly is informed by the federal tax scheme, "[t]he Pembertons are suing Nationstar for its completely separate actions and omissions, which resulted in negative tax consequences." *Pemberton v. Nationstar Mortgage LLC*, 2017 WL 4759018, at *7 (citation and internal quotation omitted). Declaratory relief which focuses on Nationstar's conduct and does not interfere with the IRS's tax determinations could properly proceed.

For example, this Court could declare Nationstar's investigation of the Pembertons' complaint regarding deferred interest payments and subsequent refusal to provide supplemental information to have been negligent. Relatedly, the Court could properly order Nationstar to provide the Pembertons and similar individuals with supplemental information regarding deferred interest payments. The Court could also properly order Nationstar to provide information to the IRS regarding deferred interest, identified *separately* from the payments that no one doubts must be reported on a Form 1098 to satisfy Section 6050H and its implementing regulations. The provision of supplemental information on deferred interest would not mandate that such payments must be treated as deductible by the IRS, but it would provide information of which the IRS could take notice to make its own determinations— particularly as it decides how to treat deferred interest payments for the purposes of the home mortgage interest deduction.[25] The FAC, however, does not request these forms of declaratory relief. Because the Pembertons may be able to seek other forms of declaratory relief, the Court grants the Pembertons leave to amend to clarify the declaratory relief they seek.

_____

interest payments was unlawful.

[25] There is an anecdotal basis to believe that the IRS treats deferred interest payments on a home mortgage loan to be deductible in certain circumstances. *See, e.g., Strugala*, 2017 WL 3838439, at *2 (observing that IRS provided refund to a taxpayer who amended her tax return to report a higher amount of deferred interest paid to defendant bank).

– 56 –

### G. The Injunctive Relief Claim Is Improper

Nationstar argues that the Pembertons' sixth cause of action, entitled "preliminary and permanent injunction," should be dismissed because injunctive relief is not a separate cause of action. (ECF No. 55 at 35.) The Court agrees. "Injunctive relief, like damages, is a remedy requested by the parties, not a separate cause of action." *Cox Commc'ns. PCS, L.P. v. City of San Marcos*, 204 F. Supp. 2d 1272, 1282 (S.D. Cal. 2002) (citing BLACK'S LAW DICTIONARY 201 (1979)); *see also Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1167 (N.D. Cal. 2013) (same); *Mehta v. Wells Fargo Bank, N.A.*, 737 F. Supp. 2d 1185, 1205 (S.D. Cal. 2010) (same). Accordingly, the Court dismisses the Pembertons' sixth cause of action for injunctive relief.

### H. The "Common Law Exclusive Enforcement Doctrine" Does Not Exist, Nor Does It Warrant Dismissal

As a final matter, the Court addresses Nationstar's "common law exclusive enforcement doctrine" argument. Nationstar argues that the Pembertons' state law claims are "barred by the common-law doctrine of exclusive enforcement." (ECF No. 55 at 5, 10–16.)[26] According to Nationstar, Congress intended that the IRS would have the "exclusive" power to enforce Section 6050H and permitting the Pembertons' claims to proceed would interfere with that power. (*Id.* at 2.) In response, the Pembertons argue that Nationstar's argument is based on a doctrine that does not exist and confuses the question whether there is a federal private right of action under Section 6050H with whether a violation of the statute can be a predicate for state law

---

[26] Like Nationstar, Defendants in three other actions have sought dismissal of state law claims on the basis of the "exclusive enforcement doctrine." *See Neely v. JP Morgan Chase Bank*, N.A., No. 16-cv-1924-AG (KESx), ECF No. 60 (C.D. Cal. Feb. 12, 2018) (motion for judgment on the pleadings); *Smith v. Bank of America, N.A.*, No. 14-cv-6668-DSF(PLA), ECF No. 60-1 (C.D. Cal. Jan. 17, 2018) (motion to dismiss); *Rovai v. Select Portfolio Servicing, Inc.*, No. 14-cv-1738-BAS-WVG, ECF No. 66 (S.D. Cal. Dec. 11, 2017).

14cv1024

claims. (ECF No. 54 at 11, ECF No. 60 at 3.)

Nationstar's reliance on the "exclusive enforcement doctrine" stems from the district court's decision in *Smith v. Bank of America, N.A.*, No. 14-cv-6668-DSF(PLA), 2015 WL 12979198 (C.D. Cal. Feb. 3, 2015), which was vacated and remanded by the Ninth Circuit, 679 Fed. App'x 549, 550 (9th Cir. 2017). In ruling on Bank of America's initial motion to dismiss, the *Smith* court determined that the plaintiffs sought to enforce a statute that does not create a private right of action and "falls within the IRS's comprehensive enforcement and regulatory scheme." *Id.* at *3. The *Smith* court identified five "factors" as ones that courts have considered to determine whether "an agency possesses exclusive authority to enforce a statute or claim": "(1) whether the statute underlying the plaintiff's claim provides for a private right of action; (2) whether the regulatory scheme includes an administrative enforcement mechanism; (3) whether the plaintiff could obtain administrative relief directly from the agency; (4) whether administrative decisions are judicially reviewable; and (5) whether the agency administers and enforces the law on which the defendant's purported liability is based." *Id.* The *Smith* court found that the plaintiffs failed each of these factors. Nationstar faults the Pembertons for failing to distinguish their case from the vacated *Smith* opinion and its "exclusive enforcement doctrine" analysis. (ECF No. 55 at 15.)

This Court can ascertain no "exclusive enforcement doctrine" which mandates dismissal of the Pembertons' state law claims. What Nationstar dubs as the "common law exclusive enforcement doctrine" is in fact familiar inquiries this Court has already undertaken and determined do not preclude the Pembertons' state law claims. For example, the first factor the *Smith* court identified was "whether the statute underlying the plaintiffs' claims provides for a private cause of action." *Smith*, 2015 WL 12979198, at *3. This purported factor is the familiar question a federal court asks to determine whether a plaintiff may assert a cause of action under a particular federal statute. *See Smith*, 2015 WL 12979198, at *3 (citing *Transmerica Mortg. Advisors,*

– 58 –

*Inc. v. Lewis*, 444 U.S. 11, 23 (1979); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979); *Greene v. Spring Commc'ns Co.*, 340 F.3d 1047, 1050 (9th Cir. 2003)). This Court has already determined that Section 6050H lacks a private cause of action and that the Pembertons may nevertheless be able to assert common law theories of liability. (ECF No. 17.) Although several of the Pembertons' claims are legally insufficient, that is an issue separate from whether the claims may be asserted at all.

The remaining four factors of the "exclusive enforcement doctrine" concern the extent and nature of a federal administrative scheme and do not mandate dismissal. Like Bank of America in the *Smith* case, Nationstar previously asserted that the IRS has "exclusive jurisdiction" over the issues raised in this case. (ECF No. 11 at 12–13.) Although the Court did not explicitly address the argument, the Court suggested that "[i]t is possible that the Form[s] 1098[], if inaccurate, are challengeable with the IRS or under a common law theory[.]" (ECF No. 17 at 4.) That suggestion necessarily rejected Nationstar's exclusive jurisdiction argument. Likewise, this Court's imposition of a primary jurisdiction stay forecloses the argument that the IRS is the "exclusive" authority to address the Pembertons' claims. The primary jurisdiction doctrine "is a prudential doctrine under which courts may, under appropriate circumstances, determine that *initial* decisionmaking responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002) (emphasis added). The doctrine does not "implicate[] the subject matter jurisdiction of the federal courts." *Id.* By its nature, the doctrine recognizes that federal courts and administrative agencies have *concurrent* jurisdiction over an issue for which agency guidance may be appropriate. The Court's decision to implement a primary jurisdiction stay therefore rested on a rejection of Nationstar's exclusive jurisdiction argument for dismissal. Accordingly, the Court rejects Nationstar's "common law exclusive enforcement" argument at this stage as well.

14cv1024

**IV. CONCLUSION & ORDER**

For the foregoing reasons, the Court **HEREBY ORDERS** that:

1. The Court **DISMISSES WITH PREJUDICE** the Pembertons' claims for breach of contract (Count 1); breach of the implied covenant of good faith (Count 2); a UCL claim under the unlawful and fraudulent prongs (Count 4); the declaratory judgment request as pleaded (Count 5); and fraud (Count 7).

2. The Court **DISMISSES WITHOUT PREJUDICE** the Pembertons' claim for a preliminary and permanent injunction (Count 6).

3. The Court **SUSTAINS** the Pembertons' UCL unfair prong (Count 4) and negligence claims (Count 8).

4. The Pembertons are **GRANTED LEAVE TO AMEND** the First Amended Complaint consistent with this Order. The Pembertons may file a Second Amended Complaint **no later than July 23, 2018**. Failure to file an amended complaint by this date will result in this case proceeding only as to those claims not dismissed by this Order. Any amended pleadings should comply with Local Rule 15.1, by providing the Court with a version of the amended pleadings showing how it differs from the previous pleadings. *See* S.D. Cal. Civ. L.R. 15.1. All claims dismissed by this Order and previously dismissed claims (*i.e.*, violation of Section 6050H, Count 3) must **not** be asserted in the Second Amended Complaint.

**IT IS SO ORDERED.**

Hon. Cynthia Bashant
United States District Judge

**DATED: June 26, 2018**