LAW OFFICE OF DAVID J. VENDLER
David J. Vendler, Esq. (SBN 146528)
Email: djvlegal@gmail.com
2700 South Oak Knoll
San Marino, California 91108
Tel.:   (213) 700-5194

MICHAEL R. BROWN, APC
Michael R. Brown, Esq. (SBN 65324)
Email: mbrown@mrbapclaw.com
2030 Main Street Suite 550
Irvine, California 92614
Tel.:   (949) 435-3888
Fax:   (949) 435-3801

Attorneys for Plaintiffs, MICHAEL PEMBERTON
and SANDRA COLLINS-PEMBERTON
and all others similarly situated

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL PEMBERTON and SANDRA-COLLINS PEMBERTON, individually, and on behalf of the class of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> NATIONSTAR MORTGAGE LLC, a Federal Savings Bank, <br><br> Defendant. | Case No.:  14-CV-1024-BAS-MSB <br><br> Judge:    Hon. Cynthia Bashant <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE A SUPPLEMENTED SECOND AMENDED COMPLAINT** <br><br> *[Filed concurrently w/ Declaration of David J. Vendler]* <br><br> Hearing Date:  January 28, 2019 <br> Time:          9:00 a.m. <br><br> Action Filed:  July 24, 2014 <br><br> **[ORAL ARGUMENT REQUESTED]** |

TO DEFENDANT AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on January 28, 2019 at 9:00 a.m., or as soon

1

thereafter as the Court may take up the motion, Plaintiffs Michael and Sandra Pemberton will and hereby do bring the within motion before the Hon. Cynthia Bashant, pursuant to Federal Rule of Civil Procedure 15(d) seeking leave to file a supplemented second amended complaint adding allegations pertaining to facts which arose after the plaintiffs original complaint was filed and/or which were just discovered by plaintiffs.

This motion is based on this notice, the attached memorandum of points and authorities, the attached proposed supplemented second amended complaint,[1] all pleadings and papers filed in this action, and such oral argument and evidence as may be presented at the hearing on the motion.

This motion is made following the conference of counsel that took place on December 21, 2018.

Dated:  December 30, 2018

MICHAEL R. BROWN, APC


By: _____ /s/*Michael R. Brown*_____
        Michael R. Brown


LAW OFFICE OF DAVID J. VENDLER


By: _____ */s/ David J. Vendler*_____
        David J. Vendler

Attorneys for Plaintiffs Michael Pemberton and Sandra-Collins Pemberton, individually, on behalf of the class of all others similarly situated

---

[1] For the Court's convenience, the proposed supplemented second amended complaint identifying the new allegations in "track changes" is attached as Exhibit 1 to the accompanying declaration of David J. Vendler. (Vendler Dec.)  The proposed supplemented second amended complaint (without track changes) is attached as Exhibit 2 to the Vendler Dec.

1

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................... 1

II.    FACTS SUPPORTING MOTION TO FILE SUPPLEMENTAL
       COMPLAINT ............................................................................................ 1

       A.    In 2017, Nationstar Issued And Served On The IRS Corrected
             Forms 1098 Reporting Plaintiffs' Interest In Exactly The Way
             Plaintiffs' Have Always Contended Was Correct. ....................... 1

       B.    Nationstar's Policy Has Always Been to Report Deferred Interest
             in Exactly the Same Way Plaintiffs Contend Is Correct. ............ 2

       C.    Plaintiffs Can Allege a Breach of the Mortgage Note (Contract)
             Based on Nationstar's Own Demonstrated Interpretation of
             the Allocation of Payments Provision in Plaintiffs'
             Mortgage Note ............................................................................ 3

       D.    Plaintiffs Can Now State A Claim As A Third Party Beneficiary
             For A Breach Of The Loan Servicing Contract Between BANA
             and Nationstar. ........................................................................... 4

       E.    Plaintiffs Can State A Fraud Claim Based On The False
             Representations That Were Made To Plaintiffs in 2014 ............. 6

       F.    Nationstar's Concealment and Affirmative Representations
             Supporting a Fraud Claim after the Filing of the Complaint
             Can Be Alleged and Should be Permitted .................................. 8

       G.    Plaintiffs Can Also Establish A Claim For Breach Of The
             Covenant Of Good Faith And Fair Dealing Based On Events
             That Occurred Subsequent To The Filing Of Their Original
             Complaint. ................................................................................ 11

III.   ARGUMENT ............................................................................................ 12

       A.    Supplementation under Fed. R. Civ. Proc. Rule 15(d) is
             Liberally Granted to Set Forth Post-Complaint Facts and New
             Legal Theories Arising Therefrom. ........................................... 12

IV.    CONCLUSION ....................................................................................... 14

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

i

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Burnet v. Sanford & Brooks Co.*, 282 U.S. 359 (1931) ................................. 10

4

*CIR v. Laguna Land & Water Co.*, 118 F.2d 112 (9th Cir. 1941) ................ 11

5

*Estate of Paul M. Bowen v. Comm'r.*, 2 T.C. 1 (1943) .................................. 4

6

7

*Griffin v. County School Board of Prince Edward County*,
     377 U.S. 218 (1964) ........................................................................... 13

8

*In re Raney*, 132 B.R. 63 (Bkrtcy.D.Wyo. 1991) ........................................ 11

9

10

*Keith v. Volpe*, 858 F.2d 467 (9th Cir. 1988) .............................................. 13

11

*LaSalvia v. United Dairymen of Arizona*,
     804 F.2d 1113 (9th Cir. 1986) ........................................................... 13

12

13

*Mason v. U.S.*, 453 F.Supp. 845 (N.D.Cal 1978) ........................................ 4

14

*Motel Corp. v. Commissioner*, 54 T.C. 1433 (1970) ................................... 4

15

*New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20 (4th Cir. 1963) ....... 13

16

17

*Rovai v. Select Portfolio Service, Inc.*,
     14-cv-1738-BAS-MSB (SD CA) ........................................................ 2

18

19

*Smith v. Bank of America*,
     2:14-cv-06668-DSF-PLA CD CA ....................................................... 5

20

*Story v. Livingston*, 38 U.S. (13 Pet.) 359 (1839) ...................................... 4

21

22

*Tucson Herpetological Society v. Kempthorne*,
     2006 WL 2788643 (D. Ariz. 2006) ..................................................... 13

23

<u>Statutes</u>

24

26 U.S.C. section 6050H ......................................................................... 2, 4

25

<u>Treatises</u>

26

27

6A Charles Alan Wright & Arthur R. Miller,
     *Federal Practice & Procedure* § 1504 (3d ed. 2015) ........................ 13

28

1

**<u>Regulations</u>**

26 C.F.R. section 301.6724-1(d)(2)(D) ................................................................ 7

Fed. R. Civ. Proc. 30(b)(6) ................................................................................ 1

Fed. R. Civ. Proc. Rule 15(d) .......................................................................... 12

Fed. R. Civ. Proc. Rule 30(b)(6) ........................................................................ 2

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT
Case No. 14-CV-1738-BAS-WVG

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

As this Court is aware, this case was stayed for a period of three-and-one-half years.   Discovery first opened in September 2018.   Plaintiffs took the Fed. R. Civ. Proc. 30(b)(6) deposition of defendant Nationstar Mortgage LLC, ("Nationstar") in Denver, Colorado on November 27, 2018.   While much was discussed, Nationstar dropped three bombshells at the deposition that have fundamentally altered the scope of this case and which provide cause for supplementation of plaintiff's second amended complaint to include additional claims for: (1) breach of the covenant of good faith and fair dealing; (2) fraud; (3) breach of mortgage contract and (4) breach of loan servicing contract (third party beneficiary theory).

## II.   FACTS SUPPORTING MOTION TO FILE SUPPLEMENTAL COMPLAINT

### A.   In 2017, Nationstar Issued And Served On The IRS Corrected Forms 1098 Reporting Plaintiffs' Interest In Exactly The Way Plaintiffs' Have Always Contended Was Correct.

Although Nationstar had responded to plaintiff's first set of requests for production of documents in early November 2018, on November 26, 2018, literally on the night before the deposition was to take place, Nationstar dropped its first bomb. Nationstar's counsel served a "supplemental production" of documents on plaintiffs' counsel by email.  The supplemental production consisted exclusively of two "corrected" Forms 1098 (for tax years 2013 and 2014) with the Pemberton's name on them, along with other information to be reported to the IRS. *At deposition the following day, Nationstar testified these "corrected" Forms 1098  were prepared by it in 2017.*  **Nationstar testified that** these corrected Forms 1098 were prepared by Nationstar based on its determination that the original Forms 1098 it had issued to plaintiffs for those years were "incorrect," and *that plaintiffs were in fact correct in their second amended complaint as to how their interest payments should have been*

1

1  *applied* and reported on Forms 1098.  Cross deposition, 77:12-19; 85:5-88:7; 89:4-
2  91:17.[2]

3        Stunningly, however, while Nationstar prepared corrected Forms 1098 for 2013
4  and 2014 for plaintiffs in January 2017, and in spite of 26 U.S.C. section 6050H's
5  explicit requirement that Forms 1098 not only be sent to the IRS, but also to the
6  taxpayer, ***Nationstar only sent those corrected Forms 1098 <u>to the IRS</u> in 2017***; it
7  <u>never</u> sent those Forms 1098 to the plaintiffs*.*  Cross, 121:25-125:7.  This was a patent
8  violation of 6050H. And of course, Nationstar concealed this fact through the various
9  filings and said nothing of it at the June 2017 hearing on its Motion to Dismiss.  More
10 to be said later.

**B.      Nationstar's Policy Has Always Been to Report Deferred
11               Interest in Exactly the Same Way Plaintiffs Contend Is Correct.**
12

13       Nationstar's' second bomb, dropped at the deposition, was that ***Nationstar's***
14 ***policy for  interest reporting has ALWAYS been exactly in line with plaintiffs'***
15 ***contention as to how deferred interest should be reported , i.e.*** its regular policy has
16 **ALWAYS** been to apply the "difference" or "excess" of  its borrowers' fully amortized
17 payments to first retiring ***all*** existing mortgage interest (***including deferred interest***)
18 prior to retiring any portion of the original principal and it has then reported on Forms
19 1098 the "aggregate" of the current and deferred amounts paid.  Cross, 94:19-95:19.

20       This fact was, *to say the least*, hidden (conveniently omitted) from the Court by
21 Nationstar in the motion to dismiss proceedings.[3]  Even when the Court specifically
22 questioned the defendants at the joint hearing (with SPS in the companion *Rovai* case)

---

23 [2] Nationstar designated Thea Cross as its FRCP 30(b)(6) witness.  All references to this deposition
24 will be cited as "Cross", pp:, ll.  All excerpts of Cross's deposition testimony that are referenced
herein are attached to the Vendler Dec. as Ex. 3.
25 [3] These facts identified as being withheld from the Court, were also unknown to
26 Plaintiffs or their counsel otherwise they would have been brought to the attention of
the Court by them. This is also true with respect to SPS' similar conduct in 2016 when
it allegedly reported the *Rovai's*, 2011 and 2012 on their 2016 Form 1098. (See: *Rovai*
27 Motion for Leave to File Supplemented Complaint.  *Rovai v. Select Portfolio Service,*
28 *Inc.* 14-cv-1738-BAS-MSB (SD CA)   at *ECF* # 120.

about plaintiffs' allegation that Wells Fargo's policy was to report payments of deferred interest on Forms 1098, neither Nationstar nor SPS disclosed to the Court that their policies were also to credit and track deferred interest separately from the original principal, and to then report on Forms 1098 the amounts of deferred interest paid by borrowers. ECF #93, p. 4, l. 17-p. 5, l. 14.

Nationstar also testified that its computerized program that allocates payments (in exactly the manner that plaintiffs contend is correct) was specifically designed to follow the allocation of payments provision **in its borrowers' notes**.  Cross, 154:8-13. Notably this fact was also hidden from the Court.

### C.    Plaintiffs Can Allege a Breach of the Mortgage Note (Contract) Based on Nationstar's Own Demonstrated Interpretation of the Allocation of Payments Provision in Plaintiffs' Mortgage Note.

Based on the above facts, plaintiff can now allege that *both parties* interpret the interest-before-principal allocation provision in plaintiffs' mortgage note as requiring Nationstar to apply payments to retiring all interest, including deferred interest, prior to "principal" and that the combined amount of current and deferred interest paid constitutes the "aggregate" amount of mortgage interest required to be reported on Form 1098.  "Interest," after all is not defined in the plaintiffs' note and thus must be interpreted in its ordinary sense, i.e. money charged for the use of money.  As to deferred interest being "added to principal," Nationstar's own interpretation has been revealed to be in accord with plaintiffs' – that that interest does not lose its character as "interest" merely by being "added to Principal." By way of example, when one adds oil to vinegar, the oil never merges with the vinegar, but always retains its character as oil and can be separately identified.  This is precisely why at least two definitions are provided for the word "add" in every dictionary; it can either mean to add two disparate things together or it can mean to join them.  And if a word can have multiple

/ / /

/ / /

---

3

1 definitions, that is the definition of an ambiguity. [4]

2 But here, plaintiffs do not even have to rely on this ambiguity since Nationstar's

3 now-revealed policy of tracking deferred interest even after it has been capitalized, i.e.

4 even after it has been "added to principal," supports the conclusion that its

5 interpretation of "added to principal" is the same as the plaintiffs'[5] and therefore that

6 **deferred interest is simply not "converted" into "principal"** according to

7 Nationstar's own policy. See: The Court at ECF #93, p. 16, l. 15-19.

8
9   **D.      Plaintiffs Can Now State A Claim As A Third Party Beneficiary For A Breach Of The Loan Servicing Contract Between BANA and Nationstar.**
10

11 So why didn't Nationstar adhere to its normal policy for interest reporting with

12 respect to plaintiffs?  According to Nationstar, the ***only reason*** for its failing to

13 correctly report plaintiffs' mortgage interest (current plus deferred) according to its

14 normal policy in 2013 and 2014 was because when it acquired plaintiffs' loan from

15 Bank of America, N.A. ("BANA"), BANA had not segregated into a separate data field

16 for Nationstar the amounts of deferred interest that were included on the plaintiffs' and

17 the class members' overall loan balances. Cross, 114:21-115:23.

18 **Nationstar flatly admitted in deposition that if BANA had included a**

19 **deferred interest data field, the plaintiffs' (and, *a fortiori,* the class members)**

20 [4] Plaintiffs also allege in their supplemented second amended complaint that if their deferred interest
21 was intended by the language of their Note to *become* part of the principal, as opposed to merely
being added to it, there would be no need for the last sentence of Paragraph 3(C) of plaintiffs' note,
22 i.e., there would be no need to separately specify that the interest rate on the interest being "added" to
the principal *would be governed* by Section 2 **since Section 2 already specifies the interest rate**
23 **applicable to Principal**. In short, this sentence becomes surplusage under the interpretation that
interest becomes principal, but is not surplusage under the interpretation that such interest continues to
24 be separate from principal even after it is "added" to principal.
[5] Nationstar's normal policy follows not only plaintiffs' interpretation of the provisions of their note,
25 but also follows established tax law.  Section 6050H makes clear that interest is to be reported in the
tax year in which the interest was paid.   Tax law also presumes that payments on a note are allocable
26 to retiring interest before retiring principal. *Motel Corp. v. Commissioner*, 54 T.C. 1433, 1440 (1970)
("[p]artial payments on a note are generally treated as first applying to interest and then to reduce
27 principal"); *Story v. Livingston*, 38 U.S. (13 Pet.) 359, 371 (1839); *Estate of Paul M. Bowen v.
Comm'r.,* 2 T.C. 1, 7 (1943); *Mason v. U.S.*, 453 F.Supp. 845, 848 (N.D.Cal 1978).

28

4

**interest would have been reported exactly as plaintiffs' second amended complaint alleges it should have been**.  Cross, 113:25-114:20.  Nationstar also conceded that at the time the loans were transferred, it was fully aware of the fact that the portfolio of loans being transferred contained Option ARM loans and that BANA had not included deferred interest balances in the computerized information it provided to Nationstar.[6] Armed with this knowledge Nationstar nonetheless did nothing to determine whether the loans being transferred to it had deferred interest balances, or what those balances were.  Cross, 85:5-18; 89:4-17; 168:25-169:11; 233:19-234:9. [7]

In this respect, Nationstar was not only breaching its statutory duty pursuant to 6050H, but it also was breaching its contract with BANA, which contract was meant to benefit plaintiffs.  Specifically, plaintiffs have discovered from the documents Nationstar produced in November 2018 that the contract between Nationstar and BANA under which Nationstar took over the servicing of plaintiffs' and class member loans required Nationstar to assume all loan servicing activities to plaintiffs and class members, including those of tax reporting.

Nationstar and BANA knew at the time they entered that contract that the borrowers, including Plaintiffs, were the primary and direct recipients of the benefits of the services being provided under the loan servicing contract.  This is why, in numerous letters and communications from BANA to the borrowers, including Plaintiffs, borrowers were informed that Nationstar would be taking over all the services previously handled by BANA.  For the same reason, in letters and communications from Nationstar to the borrowers, including Plaintiffs, Nationstar represented that it

---

[6] As a matter of fact, Nationstar provided BANA with a list of fields to complete and BANA rejected Nationstar's request to provide information on deferred interest. It demanded it use its listing of fields for which it would provide information. BANA's list did not include a field for deferred interest.

[7] Even BANA has now come around to plaintiffs' position and issued corrected Forms 1098 to all affected borrowers, including plaintiffs, for the years that **it** wrongfully did not report capitalized interest payments on Forms 1098 for Option ARM loans.  (BANA is still not tracking or reporting capitalized interest in the loan modification context.  This is what the pending Smith v BANA case is about. *Smith v. Bank of America,* 2:14-cv-06668-DSF-PLA CD CA).

5

1   would be providing all of the services related to borrower's loan, and the reason why it
2   was providing contact information in case borrowers needed to contact it for help with
3   their loans.  Plaintiffs' supplemental allegations include these communications as
4   exhibits. Accordingly, plaintiffs should be permitted to allege the existence of a
5   contract for their benefit and a breach of that contract by virtue of the failure to
6   properly report plaintiffs' deferred interest (and the deferred interest of the class
7   members) under a third-party beneficiary theory.

8       **E.      Plaintiffs Can State A Fraud Claim Based On The False
9               Representations That Were Made To Plaintiffs in 2014.**

10      Given that Nationstar's normal policy has ALWAYS been to report payments of
11  deferred interest on Forms 1098 in exactly the manner plaintiffs contend in this case is
12  appropriate, Nationstar clearly knew back in 2014 (when responding to plaintiff's pre-
13  lawsuit inquiry) that the representation it made to plaintiffs that they had not paid any
14  deferred interest in the years after the BANA transfer was false.  After all, by
15  Nationstar's own policy, plaintiffs had paid such interest.

16      Nationstar also represented falsely that it could not calculate the amount of any
17  deferred interest if it in fact was part of the boarded loan. See: Supplemented Second
18  Amended Complaint at Exhibit E.  This representation was also knowingly false.
19  Nationstar was clearly able to calculate the amount of deferred interest on plaintiff's
20  loan in 2014 since in 2016 it did so and created corrected Forms 1098 that correctly
21  included the amount of deferred interest they paid in 2013 and 2014.

22      Moreover, while Nationstar told plaintiffs in 2014 they **DID NOT** pay any
23  deferred interest in 2013 and 2014, in 2017 Nationstar told the IRS *the exact opposite*.
24  On the corrected Forms 1098, Nationstar told the IRS the "aggregate" amount of
25  mortgage interest paid by plaintiffs *included deferred interest."*

26      Nationstar, throughout its continuing servicing of plaintiff's loan, up until the
27  deposition of its corporate designee, concealed from Plaintiffs that it had the method,
28  means and ability to determine if their loan had deferred interest and that it had made

6

no effort to determine whether deferred interest was included in their loan balance. It was just not apparently convenient for Nationstar to have applied its normal policy for reporting deferred interest to plaintiffs and the other class members in 2014, or back when BANA transferred the loans, simply because BANA did not provide a specific data field for Nationstar to track deferred interest; it thus would have taken a file by file review for Nationstar to have calculated that interest. So Nationstar simply decided to lie to the plaintiffs instead. And more importantly, Nationstar's willingness to conceal from plaintiffs and class members that it could, but would not calculate deferred interest on the transferred loans had a natural consequence; Nationstar concealed it would NEVER report plaintiffs and class members payment of deferred interest and plaintiffs and class members would forever lose their mortgage interest deduction.

It was only in 2016, two years after plaintiffs' inquiry, that Nationstar undertook the more comprehensive review of the plaintiffs' loan file, including looking to the terms of their note and their payment history. It was during this more detailed review that Nationstar contends it first discovered that the plaintiffs were in fact correct in their assertion that Nationstar had failed to report their mortgage interest properly on the 2013 and 2014 Forms 1098 Nationstar had issued to them. Cross, 88:18-89:13. But, as plaintiff alleges in the supplemented second amended complaint, Nationstar relied solely on the same information it had received in 2013 from BANA and did not get any further information between 2013 and 2016 to make this determination. In short, the representation that Nationstar made to plaintiffs in 2014 was demonstrably not true based on the information Nationstar possessed at the time it made that representation.

But even if it is assumed that Nationstar only first realized in 2016 that its Form 1098 reporting was wrong for plaintiffs and the class, it indisputably then had the duty under 26 C.F.R. section 301.6724-1(d)(2)(D) and the General Instructions for Certain Information Returns published by the IRS to promptly correct not just plaintiffs' Forms 1098, **but to correct all of the Forms 1098 of identically situated class members**, i.e. for all of those Option ARM BANA borrowers whose loan balances included deferred

1  interest at the time they were transferred to Nationstar, Nationstar had the duty to
2  disclose that it had falsely reported their interest in 2013 and 2014.[8]

3       Rather than explain to plaintiffs and class members what had happened, and
4  telling plaintiffs and class members how Nationstar was going to "fix" the problem,
5  Nationstar concealed what it was going to do.

      **F.**      **Nationstar's Concealment and Affirmative Representations**
                   **Supporting a Fraud Claim after the Filing of the Complaint Can**
                   **Be Alleged and Should be Permitted.**

9       As to plaintiffs, although Nationstar prepared corrected Forms 1098 for tax years
10  2013 and 2014 for plaintiffs in 2017, it concealed the information thereon from the
11  plaintiffs because it never sent those corrected forms to the plaintiffs!  It only sent them
12  to the IRS.  Indeed, until the deposition, plaintiffs were completely unaware of this and
13  certainly never filed amended tax returns using "corrected" Forms 1098.  Plaintiffs
14  have now forever lost their deductions for 2013 and 2014 because of the passage of the
15  statute of limitations for filing amended tax returns.

16       And then the third bomb exploded.  Instead of issuing corrected Forms 1098 for
17  the class members similarly situated to the plaintiffs, Nationstar decided on the advice
18  of its counsel in 2016 to unilaterally and suddenly – without any consultation with the
19  class members, the Court, or the IRS –  "fix" its prior underreporting of class members'
20  payments of deferred  interest by reporting those amounts prospectively, i.e. beginning
21  in tax year 2016, it would start allocating its mortgagors' monthly payments to retiring
22  deferred interest before other "Principal" as defined by their notes. Cross, 235:14-
23  245:12, 272:6-273:14; 285:3-287:24.

---

[8] The IRS instructions for tax year 2013 (and all other relevant years) provide:
"If you filed a return with the IRS and later discover you made an error on it, you must:
- Correct it as soon as possible and file Copy A and Form 1096 with your Internal Revenue Service Center (see part D).
- Furnish statements to recipients showing the correction."
See https://www.irs.gov/pub/irs-prior/i1099gi--2013.pdf

1    In other words, in spite of conceding (through its corrected returns issued to

2    plaintiffs) that plaintiffs are correct in how payments of capitalized interest should be

3    reported, Nationstar nonetheless determined to proceed with its prospective only

4    reporting for the other class members. In doing so, Nationstar affirmatively concealed

5    the fact from other class members (and this Court) that it had discovered in 2016 that

6    other borrowers, similarly situated as the Pembertons, had also paid deferred interest in

7    2013 and 2014.  Nationstar also concealed the fact that it was not going to correct the

8    problem by issuing "corrected" Forms 1098 for these other borrowers, even though the

9    payment of the deferred interest may have happened in prior years.

10    In fact, when it issued the Forms 1098 with the inflated amounts in Box 1 in

11    2016, Nationstar again was affirmatively and falsely representing to the class members

12    that the amount contained therein was the amount of mortgage interest they had paid in

13    that year.  Nationstar also concealed from the class members that although they paid

14    deferred interest in prior years, Nationstar would now allocate the excess amount of

15    their future payments on a first dollar basis to deferred interest until such time as the

16    total existing, separately tracked deferred interest balance was paid.    Cross, 93:11-

17    98:5.

18    Nationstar stated that its reason for only correcting the plaintiffs' Forms 1098 for

19    2013 and 2014, and not the Forms 1098 of other class members, was because the

20    plaintiffs were the only ones who requested corrected forms 1098 from Nationstar. *Id.*

21    This makes no logical sense, and certainly does not comply with section 6050H, which

22    does not allow interest to be reported randomly in any given year, but only allows it to

23    be reported in the year in which it is paid.  Clearly, Nationstar cannot unilaterally

24    decide to report plaintiffs' interest payments one way and not report on identically

25    situated class members in the same way.

26    Simply put, Nationstar's preparation of "corrected" Forms 1098 for the plaintiffs

27    is an admission as to what the correct method of reporting payments of deferred interest

28    is, and thus what it should have been for all other class members.  Nationstar's

9

preparation of the "corrected" Forms 1098 also is an admission as to what a lender should do (in accordance with the IRS's instructions) when discovering a reporting error on an IRS form.

Nationstar's testimony was not exactly clear on whether its prospective-only reporting "fix" was implemented for all class members, or just some of them. Cross, 251:6-253:4. But suffice it to say, it created a "control group" of at least some group of class members for which it has been manually including deferred interest payments on the Forms 1098 being issued to those borrowers from tax year 2016 forward. Cross, 242:2-247:12.

While plaintiffs argue this fix was improper, illegal and inclusive of concealments and misrepresentations, even if it was legal, it fell short of solving Nationstar's reporting problem for borrowers whose loans terminated by sale or refinance prior to its creation of its "control group." By way of example, what happened to the reporting of deferred interest on Forms 1098 to a borrower who paid deferred interest in 2013 and 2014 like the Pembertons, but refinanced or sold the property before Nationstar decided to correct the problem? The answer is simple and clear: They lost their mortgage interest deduction because Nationstar never reported in the first instance, or corrected in 2015 or 2016, their Forms 1098.

While plaintiffs are certainly happy to have achieved the primary goal of their lawsuit, i.e. to force Nationstar to track and report the deferred interest balances of the loans it acquired from BANA, and potentially other lenders who did not provide Nationstar with deferred interest balances as part of the information provided pursuant to the transfer, plaintiffs are contending in their supplemented complaint that Nationstar is now deliberately and falsely reporting those amounts as having been received by it in the wrong tax year.[9]

---

[9] Tax law is clear that each tax-year is separate and distinct from any other. *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359, 363 (1931). Indeed, the Ninth Circuit has specifically held that it is not proper to try to correct mistakes made in one tax-year by

10

Nationstar has deliberately concealed from class members that they were entitled to have corrected Forms 1098 for prior tax years issued to them. Nationstar instead remained silent on this fact and also concealed from them its plan to "fix" its error by intentionally (but falsely) over reporting their interest payments in 2016 forward.

In short, Nationstar's "fix" is no fix at all. It only compounds an existing problem, for it has led inexorably (again) to class members filing incorrect tax returns which, at least theoretically, now need to be fixed.[10]

### G. Plaintiffs Can Also Establish A Claim For Breach Of The Covenant Of Good Faith And Fair Dealing Based On Events That Occurred Subsequent To The Filing Of Their Original Complaint.

Even even if Nationstar had the discretion to report the payment of deferred interest in a different year than in the years when Nationstar first took over the BANA portfolio and first started allocating payments, there can be little question that Nationstar did not have the discretion to unilaterally choose for its borrowers in what

---

trying to make up for them in another tax-year. *CIR v. Laguna Land & Water Co*., 118 F.2d 112, 117 (9th Cir. 1941) ("None of these cases holds that an improper deduction from the gross receipts from a specific piece of property sold in one year may be corrected by refusing a deduction upon the sale of a different piece of property in a different year.") See also *In re Raney*, 132 B.R. 63, 66 (Bkrtcy.D.Wyo. 1991) (debtor could not offset against later tax-year overpayments made in earlier years).

[10] Nationstar likely implemented its policy in an effort to blunt the damages of the class pled in this case. But Nationstar should be estopped from relying upon the interest it reported in those later years to offset class member damages resulting from not receiving a Form 1098 for the deferred interest class members actually paid in 2013-2015. Nationstar was under a legal duty to have disclosed its wrongful reporting by issuing corrected Forms 1098 to class members and did not do so. As a result, the class members' legal position was permanently altered (since the statute of limitations for class members to amend those years' returns has now expired). Since they can now no longer correctly state their taxes for the tax years prior to 2016, and since they were not even offered the option of which year they wanted their deferred interest reported in, Nationstar should not be able to claim credit for "fixing" the problem by (again) misreporting the class's interest payments from 2015 forward. Two wrongs simply don't make a right.

year that deferred interest would be considered "paid" and then reported.  And it certainly did not have the discretion to choose to report plaintiffs' deferred interest payments according to one scheme and the payments of the other class members under an entirely different scheme.

Nationstar's unilateral allocation of payments to particular years, beginning in either 2015 or 2016, after the filing of the complaint, without consulting its borrowers in any way, or giving them the option to choose in what year they want their deferred interest balances reported in, is a classic breach of the covenant of good faith and fair dealing insofar as it deprives the class of the full benefit of their mortgage interest deduction.  After all, the class did not hire Nationstar to do its tax planning.

To the extent accurate reporting on Form 1098 is discretionary and can vary between identically situated groups at the whim of a lender or loan servicer, which plaintiff contends it is not, the exercise of that discretion cannot be arbitrary or taken in a manner which harms the other party to the contract at issue.

Plaintiffs have alleged facts to support how this breach of the covenant of good faith and fair dealing stands alone, independent of any contract breach, and should be permitted to supplement the second amended complaint to include this cause of action based on Nationstar's conduct in 2016-2017.

## III.   ARGUMENT

### A.   Supplementation under Fed. R. Civ. Proc. Rule 15(d) is Liberally Granted to Set Forth Post-Complaint Facts and New Legal Theories Arising Therefrom.

Under Fed. R. Civ. Proc. Rule 15(d), "[T]he court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  While an amendment "relates to matters that occurred prior to the filing of the original pleading," a supplemental complaint "deal[s] with events subsequent to the pleading to be altered." 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1504 (3d

12

1  ed. 2015).

2  Rule 15(d) is a "device, enabling a court to award complete relief, or more nearly

3  complete relief, in one action, and to avoid the cost, delay and waste of separate actions

4  which must be separately tried and prosecuted." *Keith v. Volpe*, 858 F.2d 467, 473 (9th

5  Cir. 1988) (quoting *New Amsterdam Casualty Co. v. Waller*, 323 F.2d 20–28 (4th Cir.

6  1963), cert. denied, 376 U.S. 963 (1964)).  "Its use is therefore favored."  *Keith*, 858

7  F.2d at 473.

8  "An application for leave to file a supplemental pleading is addressed to the

9  discretion of the court and should be freely granted when doing so will promote the

10  economic and speedy disposition of the entire controversy between the parties, will not

11  cause undue delay or trial inconvenience, and will not prejudice the rights of any of the

12  other parties to the action." Wright & Miller, *supra*, § 1504.

13  A supplemental pleading under Rule 15(d) does not require a strict transactional

14  relationship between the facts and law in the original complaint and the supplemental

15  claims.  See *Griffin v. County School Board of Prince Edward County*, 377 U.S. 218

16  (1964) (allowing supplemental complaint filed 10 years after original action, and after

17  judgment entered); to the contrary, the Supreme Court in *Griffin* specifically permitted

18  the filing of a supplemental complaint that included a "new and different cause of

19  action from that presented in the original complaint."  See 377 U.S. at 226.  Likewise,

20  in *Volpe*, the Ninth Circuit held that there must only be "some relationship . . . between

21  the newly alleged matters and the subject of the original action, they need not all arise

22  out of the same transaction."  *Volpe*, 858 F.2d at 474.   See also *LaSalvia v. United*

23  *Dairymen of Arizona*, 804 F.2d 1113 (9th Cir. 1986) (reversing denial of motion to

24  supplement complaint); *Tucson Herpetological Society v. Kempthorne*, 2006 WL

25  2788643 (D. Ariz. 2006) (allowing supplemental pleadings based on "the court's

26  experience with the case").

27  As has been shown, Plaintiffs' proposed supplemented second amended

28  complaint is exactly the type of pleading that Rule 15(d) contemplates.  It sets forth

occurrences "that happened after the date of the pleading to be supplemented" and/or which were learned in discovery which are closely intertwined with the prior litigation in this case involving the reporting of mortgage interest and damages flowing from the wrongful reporting thereof.

To the extent the inclusion herein of facts discovered during discovery that illuminate and highlight the wrongful, deceitful and illegal conduct of Nationstar that may have impacted this Court's "factual" findings in connection with the prior Motion to Dismiss and the Order thereon, plaintiffs urge this Court to review the allegations set forth in the supplemented second amended complaint with an eye to assuring all of the claims that arise from Nationstar's conduct are before this Court, and separate actions are not necessary, nor later requests to amend the pleadings according to proof.

The allowance of the supplemented second amended complaint will not prejudice the defendant as it will allow all of the claims against it to proceed under one action. Further, supplementation will not cause undue delay or trial inconvenience.  As of the present, discovery is in its infancy and the trial date is currently scheduled for **June 16, 2020**. Scheduling Order ECF #90.   Thus, none of the grounds that might militate against the granting of a motion to supplement are present here.  Rather, all that is present is the liberal standard of Rule 15 favoring such supplementation.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant them leave to file their proposed supplemented second amended complaint.

Plaintiffs also requests the Court to permit oral argument.

Dated:  December 30, 2018                  Respectfully submitted,

MICHAEL R. BROWN, APC


By: _____/s/*Michael R. Brown*_____
                Michael R. Brown

/ / /

14

1

2          LAW OFFICE OF DAVID J. VENDLER

3          By: _____ /s/ David J. Vendler _____
                   David J. Vendler
4

5          Attorneys for Plaintiffs Michael Pemberton and
           Sandra-Collins Pemberton, individually, on
6          behalf of the class of all others similarly situated

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28