1   JOHN B. SULLIVAN (State Bar No. 96742)
    ERIK KEMP (State Bar No. 246196)
2   ek@severson.com
    ADAM A. VUKOVIC (State Bar No. 301392)
3   aav@severson.com
    SEVERSON & WERSON
4   A Professional Corporation
    One Embarcadero Center, Suite 2600
5   San Francisco, California 94111
    Telephone: (415) 398-3344
6   Facsimile: (415) 956-0439

7   Attorneys for Defendant
    NATIONSTAR MORTGAGE LLC
8

9               UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11  MICHAEL PEMBERTON and          Case No. 3:14-cv-01024-BAS-MSB
    SANDRA COLLINS-PEMBERTON,
12  individually, and on behalf of the class   **NATIONSTAR MORTGAGE LLC'S**
    of all others similarly situated,          **MEMORANDUM OF POINTS AND**
13                                             **AUTHORITIES IN OPPOSITION TO**
                   Plaintiff,                  **MOTION FOR LEAVE TO FILE**
14                                             **SUPPLEMENTAL COMPLAINT**

15        vs.                                  Date:    January 28, 2019
                                               Time:    9:00 a.m.
16  NATIONSTAR MORTGAGE LLC, a                 Crtrm.:  4B
    Federal Savings Bank,                      Judge: Hon. Cynthia Bashant
17
                   Defendant.                  Action Filed:   April 23, 2014
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................... 1

II.     STATEMENT OF FACTS ......................................................................... 2

        A.      The Pembertons' Loan .................................................................... 2

        B.      The Pembertons' Loan is Transferred to Nationstar .......................... 4

        C.      Recent Developments ..................................................................... 4

III.    STANDARDS GOVERNING THIS MOTION ............................................ 5

IV.     PLAINTIFFS' MOTION FOR LEAVE TO AMEND  SHOULD BE
        DENIED .................................................................................................. 6

        A.      The Breach of Contract, Breach of Implied Covenant of  Good
                Faith, and Third-Party Beneficiary Claims Arose  Before the
                Original Complaint Was Filed ......................................................... 6

        B.      Granting Leave to Amend Would Be Futile ....................................... 7

                1.      The Court Already Rejected the Theory Under Plaintiffs'
                        Supplemental Claims for Breach of Contract and Breach
                        of the Implied Covenant ....................................................... 7

                2.      Plaintiffs' Third-Party Beneficiary Theory Is Not Viable ......... 11

                3.      Plaintiffs' Fraud Claim Is Not Viable ................................... 13

        C.      Granting Leave to Amend Would Result in Undue Delay ................... 16

V.      CONCLUSION ...................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

CASES

*Acri v. Int'l Asso. of Machinists & Aerospace Workers,*
  781 F.2d 1393 (9th Cir. 1986)................................................................ 16

*Berry v. Indianapolis Life Ins. Co.,*
  638 F. Supp. 2d 732 (N.D. Tex. 2009).................................................. 15

*Brakke v. Econ. Concepts, Inc.,*
  213 Cal. App. 4th 761 (2013).................................................................. 15

*Briggs v. Eden Council for Hope & Opportunity,*
  19 Cal. 4th 1106 (1999)........................................................................... 12

*Cabrera v. City of Huntington Park,*
  159 F.3d 374 (9th Cir. 1998)..................................................................... 6

*Cal. Emergency Physicians Med. Grp. v. PacifiCare of Cal.,*
  111 Cal. App. 4th 1127 (2003)............................................................... 12

*Carma Dev. (Cal.) Inc. v. Marathon Dev. Cal., Inc.,*
  826 P.2d 710 (Cal. 1992).......................................................................... 9

*DCD Programs Ltd. v. Leighton,*
  833 F.2d 183 (9th Cir. 1987)................................................................... 16

*Eid v. Alaska Airlines, Inc.,*
  621 F.3d 858 (9th Cir. 2010)................................................................ 5, 6

*Eminence Capital, LLC v. Aspeon, Inc.,*
  316 F.3d 1048 (9th Cir. 2003)................................................................... 5

*Foley v. Interactive Data Corp.,*
  47 Cal. 3d 654 (1988).............................................................................. 11

*Foman v. Davis,*
  371 U.S. 178 (1962).................................................................................. 8

*Gabrielson v. Montgomery Ward & Co.,*
  785 F.2d 762 (9th Cir. 1986)..................................................................... 7

*Guntert v. City of Stockton*,
  55 Cal.App.3d 131 (1976) .................................................................. 10

*Guz v. Bechtel National, Inc.*,
  24 Cal. 4th 317 (2000) ...................................................................... 11

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
  896 F.2d 1542 (9th Cir. 1989) .......................................................... 10

*Jackson v. Bank of Haw.*,
  902 F.2d 1385 (9th Cir. 1990) .......................................................... 16

*Jenkins v. JP Morgan Chase Bank, N.A.*,
  216 Cal. App. 4th 497 (2013) ........................................................... 13

*Johnson v. Buckley*,
  356 F.3d 1067 (9th Cir. 2004) ............................................................ 7

*Jones v. Aetna Cas. & Sur. Co.*,
  26 Cal. App. 4th 1717 (1994) ........................................................... 12

*JRS Prod., Inc. v. Matsushita Elec. Corp. of Am.*,
  115 Cal. App. 4th 168 (2004) ........................................................... 10

*Keith v. Volpe*,
  858 F.2d 467 (9th Cir. 1988) .............................................................. 5

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*,
  701 F.2d 1276 (9th Cir. 1983) ............................................................ 7

*Linear Technology Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115 (2007) ........................................................... 14

*Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas*
  *Antitrust Litig.)*,
  715 F.3d 716 (9th Cir. 2013) ......................................................... 5, 16

*Lockheed Martin Corp. v. Network Sols., Inc.*,
  194 F.3d 980 (9th Cir. 1999) ............................................................ 16

*Lucente v. Int'l Bus. Machines Corp.*,
  310 F.3d 243 (2d Cir. 2002) .............................................................. 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*M/V American Queen v. San Diego Marine Construction Corp.*,
708 F.2d 1483 (9th Cir. 1983)................................................................ 16

*In re Marks*,
No. CC-12-1140-KiDH, 2012 Bankr. LEXIS 5788 (B.A.P. 9th Cir.
Dec. 14, 2012) ....................................................................................... 13

*Martinez v. Socoma Cos.*,
11 Cal. 3d 394 (1974) ............................................................................ 12

*Mission Oaks Ranch v. Cty. of Santa Barbara*,
65 Cal. App. 4th 713 (1998) .................................................................. 12

*Morongo Band of Mission Indians v. Rose*,
893 F.2d 1074 (9th Cir. 1990) ............................................................... 17

*Philipson & Simon v. Gulsvig*,
154 Cal. App. 4th 347 (2007) ................................................................ 15

*Phipps v. Wells Fargo Bank, N.A.*,
No. CV F 10-2025 LJO SKO, 2011 U.S. Dist. LEXIS 10550 (E.D.
Cal. Jan. 27, 2011) ................................................................................. 13

*Royal Ins. Co. of Am. v. Sw. Marine*,
194 F.3d 1009 (9th Cir. 1999) ............................................................... 16

*Shutes v. Cheney*,
123 Cal. App. 2d 256 (1954) ................................................................. 12

*Singh v. Washburn*,
No. 2:14-cv-01477-SB, 2016 U.S. Dist. LEXIS 33855 (D. Or.
Feb. 5, 2016)............................................................................................ 5

*Sofias v. Bank of Am.*,
172 Cal. App. 3d 583 (1985) ................................................................. 12

*Song Fi Inc. v. Google, Inc.*,
108 F. Supp. 3d 876 (N.D. Cal. 2015) .................................................... 9

*Strugala v. Flagstar Bank, FSB*,
No. 5:13-CV-05927-EJD, 2017 WL 3838439 (N.D. Cal. Sept. 1,
2017) ...................................................................................................... 15

*Textron Financial Corp. v. National Union Fire Ins. Co.*,
  118 Cal. App. 4th 1061 (2004) ............................................................... 14

*Turner v. Wells Fargo Bank NA (In re Turner)*,
  859 F.3d 1145 (9th Cir. 2017) ............................................................... 13

*Yvanova v. New Century Mortg. Corp.*,
  62 Cal. 4th 919 (2016) ............................................................................ 13

**STATUTES**

United States Code
  Title 26, § 6050H ....................................................... 8, 11, 14, 16

Cal. Civil Code
  Section 1559 ............................................................................. 12

**RULES**

Federal Rules of Civil Procedure
  Rule 12 .......................................................................... 7, 10
  Rule 15 .......................................................................... 5, 6, 14

# I.  INTRODUCTION

Plaintiffs Michael Pemberton and Sandra Collins-Pemberton's motion for leave to file a supplemental second amended complaint should be denied.  As the Court is well aware, plaintiffs contend that defendant Nationstar Mortgage LLC improperly failed to include payments of previously deferred interest in the Forms 1098 it issued to the IRS.  Nearly five years after the case was filed and after multiple rounds of motions to dismiss, plaintiffs propose to file their fourth complaint against Nationstar.  Leave to amend should be denied.

Three of plaintiffs' four proposed new claims—breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of contract as third-party beneficiaries—arose before the original complaint was filed and thus are not properly included in a supplemental complaint.  Each of these claims is based on the allegation that Nationstar failed to properly apply plaintiffs' payments to interest before principal or failed to account for payments of deferred interest on plaintiffs' Forms 1098.  Plaintiffs alleged the same underlying theories in each of their prior complaints.  Plaintiffs thus cannot attempt to reintroduce those theories into the case under the guise of a supplemental pleading.

Leave to amend should also be denied as it would be futile.  The Court already rejected the theories underlying plaintiffs' three proposed contract claims on its sua sponte motion to dismiss.  The Court held that plaintiffs' note permitted Nationstar to treat previously deferred interest as principal.  None of the facts plaintiffs claim to have recently uncovered in discovery warrants reconsidering the note's unambiguous terms.  It is irrelevant that Nationstar's general policy is to report payments of deferred interest on Forms 1098.  Nothing in the Pembertons' contract obligated Nationstar to treat previously deferred interest as principal, as the Court already held on its own motion to dismiss.

Plaintiffs' proposed fraud claim is equally meritless.  As the Court already held in dismissing the prior iteration of plaintiffs' fraud claim, plaintiffs allege no

1  facts suggesting Nationstar intended to defraud them.  Nothing has changed since.
2  Plaintiffs also still fail to allege the reliance element of the claim.  Nothing
3  prevented plaintiffs from claiming the greater tax deduction to which they claim
4  they were entitled.

5  　　　　Even if the Court is unwilling to decide on this motion that plaintiffs'
6  supplemental claims are futile as a matter of law, leave to amend should still be
7  denied.  Permitting the supplemental claims would delay resolution of the case.  The
8  case has already been pending nearly five years.  If the Court grants leave to amend,
9  Nationstar will immediately move to dismiss the new claims.  In addition to
10 deciding that motion, the Court will have to resolve any discovery disputes that arise
11 under the new claims.

12 　　　　For these reasons and others detailed below, plaintiffs' motion for leave to file
13 a supplemental second amended complaint should be denied.

14 　　　　　　　　　　**II.  STATEMENT OF FACTS**

15 **A.　　The Pembertons' Loan**

16 　　　　In November 2005, the Pembertons obtained an Option ARM loan secured by
17 their Grass Valley home.  *See* FAC, ¶ 7.  The loan was evidenced by a promissory
18 note.  That note begins with a boldfaced, capitalized warning about the note's
19 unique features:

20 　　　　　　**THE PRINCIPAL AMOUNT TO REPAY COULD BE
　　　　　　GREATER THAN THE AMOUNT ORIGINALLY
21 　　　　　　BORROWED, BUT NOT MORE THAN THE
　　　　　　MAXIMUM LIMITED STATED IN THIS NOTE.**

22

23 *Id.*, Ex. A.

24 　　　　The Pembertons promised to repay principal plus interest.  *Id.*, Ex. A, § 1.
25 Though the original principal amount was $461,500, the note provides that "[t]he
26 *Principal amount may increase as provided under the terms of this Note* but will
27 never exceed … 115.000% of the Principal amount I original borrowed.  This is
28 called 'the Maximum Limit.' "  *Id.*, Ex. A, §§ 1, 4(F) (emphasis added).

The loan provided the Pembertons' four monthly payment options. *Id.*, ¶ 2 & n. 1; Ex. A, §§ 3(C), (H). For an initial period of up to five years, the Pembertons could choose to make low minimum monthly payments at a rate tied to the discounted interest rate charged during the period before the first interest rate adjustment,[1] to pay interest only based on the fully indexed rate, to pay an amount sufficient to amortize the loan during its 40-year term, or to pay an amount sufficient to amortize the loan over 15 years. *Id.*, Ex. A, §§ 3(C), (H).

The note provides that "[i]f the Minimum Payment is not sufficient to cover the amount the interest due then negative amortization will occur." *Id.*, Ex. A, § 3(C). As the Pembertons acknowledge, "[c]hoosing the 'Minimum Payment' option would usually, but not always, result in negative amortization, meaning that as interest was deferred, the overall loan balance would increase rather than decrease." *Id.*, ¶ 5. When negative amortization occurs, the deferred interest is added to the unpaid principal and interest then accrues on the capitalized amount.

> (E) Additions to My Unpaid Principal
>
> Since my monthly payment changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owed at the monthly payment date in full on the Maturity Date in substantially equal payments. *For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2.*

---

[1] The Pembertons' promissory note provided for a low, discounted interest rate until the first payment fell due. FAC, Ex. A, §2. On the first payment date, the interest rate readjusted to a fully indexed rate. *Id.*, §2(A)-(C). The interest rate thereafter readjusted monthly. *Id.*, §2(A), (D). The Pembertons' payment amount adjusted annually, not monthly like the interest rate (*see id.*, §3(C)), and was subject to an annual readjustment ceiling during the first five years of the loan. *Id.*, §4(F).

1  *Id.*, Ex. A, § 3(E).

2  **B.   The Pembertons' Loan is Transferred to Nationstar**

3       During the loan's initial five-year term, the Pembertons' loan was serviced by

4  Magnus, Countrywide Financial Corporation, and Bank of America, N.A. *Id.*, ¶ 3.

5  The Pembertons "took advantage of the 'Minimum Payment' option which resulted

6  in negative amortization during the loan's pendency with Magnus, Countrywide,

7  and/or BANA." *Id.*, ¶ 8.

8       In July 2013, the loan's servicing rights were transferred to Nationstar. *Id.*,

9  ¶¶ 3, 7, 9.  At that time, "Plaintiffs' loan balance was $469,075.41, or approximately

10  $7,575.41 above the original principal amount of the loan." *Id.*, ¶ 9.  However,

11  Bank of America did not separately track deferred interest and did not inform

12  Nationstar that the balance was higher because of negative amortization.

13       In 2013, the Pembertons made payments to Nationstar in the aggregate

14  amount of $12,097.80, exclusive of taxes owed separately from principal and

15  interest. *Id.*, ¶¶ 10, 11.  None of these payments resulted in negative amortization as

16  the five-year period during which negative amortization was permitted had expired.

17  *Id.*, Ex. A, §4(F) & (G); *see also id.*, ¶ 16, Ex. E.

18       Nationstar issued a Form 1098 for the 2013 tax year reflecting that it had

19  received $7,302.06 in mortgage interest and $4,197.66 in principal. *Id.*, ¶¶ 11.

20  According to the Pembertons, however, the entire $12,097.80 paid in 2013 should

21  have been reported as interest on the Form 1098 because "interest that was

22  previously deferred does not lose its character as interest simply because it is paid

23  back at a later time." *Id.*, ¶¶ 12, 21.

24  **C.   Recent Developments**

25       After Nationstar answered the second amended complaint, plaintiffs served

26  written discovery and deposed Nationstar's representative, Thea Cross.

27       Ms. Cross confirmed that Nationstar's general policy is to include payments

28  of deferred interest on borrowers' Forms 1098. *See* Vendler Decl., Ex. 3 [Cross

94:19-95:19]. With respect to the Pembertons' loan, however, Nationstar did not receive any data from the prior servicer, Bank of America, N.A., indicating the unpaid principal balance included previously deferred interest. *Id.*, Ex. 3 [Cross 114:21-115:23]. Nationstar was thus not aware the loan included previously deferred interest when it issued the Pembertons' Forms 1098 for tax years 2013 and 2014.

In 2016, Ms. Cross manually reviewed the Pembertons' file and confirmed that the unpaid principal balance did include previously deferred interest. *Id.*, Ex. 3 [Cross 88:18-89:13]. In accord with Nationstar's standard policy, Ms. Cross issued corrected Forms 1098 for the tax years 2013 and 2014.

## III. STANDARDS GOVERNING THIS MOTION

"Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed." *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010). "The factors relevant to a Rule 15(a) motion to amend are considered when addressing a motion to supplement under Rule 15(d)." *Singh v. Washburn*, No. 2:14-cv-01477-SB, 2016 U.S. Dist. LEXIS 33855, at *28 (D. Or. Feb. 5, 2016) (citing cases); *see also Keith v. Volpe*, 858 F.2d 467, 474 (9th Cir. 1988).

A court considers five factors in determining whether to grant leave to amend: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has previously amended his complaint." *Learjet, Inc. v. Oneok, Inc. (In re W. States Wholesale Nat. Gas Antitrust Litig.)*, 715 F.3d 716, 738 (9th Cir. 2013) (quotation omitted); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

As shown below, consideration of these factors demonstrates that plaintiffs' motion should be denied.

## IV.  PLAINTIFFS' MOTION FOR LEAVE TO AMEND SHOULD BE DENIED

**A.    The Breach of Contract, Breach of Implied Covenant of Good Faith, and Third-Party Beneficiary Claims Arose Before the Original Complaint Was Filed**

"Rule 15(d) permits the filing of a supplemental pleading which introduces a cause of action not alleged in the original complaint and not in existence when the original complaint was filed." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998) (citation omitted).  A motion for leave to file a supplemental pleading under Rule 15(d) should be denied where the purportedly new cause of action already existed when the original complaint was filed. *Eid v. Alaska Airlines, Inc.*, 621 F.3d 858, 874 (9th Cir. 2010) (affirming denial of motion for leave to amend where plaintiffs "seek to add defamation claims arising from conduct which happened nearly a year before they filed their first complaint. These claims could not, therefore, be brought as supplemental pleadings under Rule 15(d).").

Here, plaintiffs' proposed supplemental claims for breach of contract and breach of the implied covenant of good faith are based on the allegation that Nationstar improperly applied payments to principal before interest.  (SSAC, ¶¶ 87, 90, 95-97, 116-119.)  These claims arose before the original complaint was filed. Indeed, as explained in further detail below, the Court already rejected this theory in dismissing the breach of contract and breach of implied covenant claims alleged in plaintiffs' first amended complaint.

Plaintiffs' claim for breach of contract under a third-party beneficiary theory is a new cause of action, but it, too, arose before the original complaint was filed. Plaintiffs allege that Nationstar breached its servicing transfer agreement with BANA by not applying their payments to principal before interest.  The facts underlying that theory—Nationstar's alleged misapplication of payments—had already occurred when plaintiffs filed their original complaint.

1     As each of these three claims arose before the original complaint was filed,

2 they are not properly included in any supplemental complaint.  The Court may deny

3 leave to amend as to those three claims for that reason alone.

4 **B.     Granting Leave to Amend Would Be Futile**

5     The Court may also deny the motion as leave to amend would be futile.

6 "Futility alone can justify the denial of a motion to amend." *Johnson v. Buckley*,

7 356 F.3d 1067, 1077 (9th Cir. 2004); *see also Gabrielson v. Montgomery Ward &*

8 *Co.*, 785 F.2d 762, 766-67 (9th Cir. 1986); *Klamath-Lake Pharm. Ass'n v. Klamath*

9 *Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983)  "An amendment to a

10 pleading is futile if the proposed claim could not withstand a motion to dismiss

11 pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machines Corp.*, 310

12 F.3d 243, 258 (2d Cir. 2002).

13     That is the case here.  None of plaintiffs' proposed supplemental claims

14 would survive a motion to dismiss.  The Court should thus deny plaintiffs' motion

15 for leave to file a supplemental amended complaint.[2]

16     **1.     The Court Already Rejected the Theory Under Plaintiffs'**

17 **Supplemental Claims for Breach of Contract and Breach of the Implied Covenant**

18     The theory underlying plaintiffs' supplemental claims for breach of contract

19 and breach of the implied covenant of good faith is that Nationstar improperly

20 applied payments to principal before interest.  SSAC, ¶¶ 87, 90, 95-97, 116-119.

21 According to the Pembertons, "where a borrower takes advantage of the 'minimum

22 payment' option in his/her/their loan and defers paying a portion of his/her/their

23 monthly interest to a later time, that interest does not lose its character as 'interest'

24 even though it is 'added to' Principal." SSAC, ¶ 87.  Plaintiffs thus contend

25

_____

26 [2] Below Nationstar offers only a summary of the defects in plaintiffs' new claims.  If

27 the Court grants leave to amend in any part, Nationstar reserves the right to move to dismiss and explain in greater detail the new claims' flaws.

28

1  Nationstar breached the contract in allegedly not applying their payments to interest

2  before principal.

3      This Court already rejected this argument in granting Nationstar's motion to

4  dismiss the original breach of contract claim.  *See* Dkt. no. 70 at 15-20.  It spent five

5  pages explaining in detail why plaintiffs' theory was wrong in denying them leave

6  to pursue the improper allocation theory.  There is no reason for the Court to reach a

7  different time around.

8      As the Court explained, "the Pembertons cannot plausibly plead that

9  Nationstar breached the Note's 'allocation formula' by allocating the Pembertons'

10  payments in the manner reflected on their 2013 Form 1098."  *See* Dkt. no. 70 at 17.

11  The Pembertons' promissory treats deferred interest as principal once it is

12  capitalized into the note.  *See* Dkt no. 70 at 18-19.  Therefore, the Pembertons'

13  continued insistence that deferred interest remains interest for tax purposes is

14  irrelevant.

15  
16  
17  
18  
19  
20  
21  
22  

> Even if the Pembertons are right that deferred interest qualifies as interest for tax purposes, the claim before the Court is one for breach of contract.  The terms of the Pembertons' contract plainly treat deferred interest as principal and authorize Nationstar to allocate the Pembertons' payments accordingly.  Concluding otherwise is possible only on the assumption that Section 6050H is a term of the Pembertons' contract—an assumption that finds no support in the contract. Accordingly, the Pembertons cannot allege a claim under the allocation provisions and the breach of contract claim is dismissed with prejudice. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial of leave to amend is permissible if amendment would be futile).

23  *See* Dkt. no. 70 at 20.

24      The Court made the same finding in dismissing plaintiffs' implied covenant

25  claim and rejecting their attempt to pursue the improper allocation theory.

26  
27  
28  

> The Court has already concluded that the contract, in unambiguous terms, specifically requires that deferred interest be treated as principal for the purposes of the Note. Nationstar in turn had the contractual right to treat deferred interest as principal, which in turn determined the

allocation of the Pembertons' payments between principal and interest. The Pembertons "cannot state a claim for breach of the implied covenant of good faith and fair dealing, because 'if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.'" *Song Fi Inc. v. Google, Inc.*, 108 F. Supp. 3d 876, 885 (N.D. Cal. 2015) (*quoting Carma Dev. (Cal.) Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710, 728 (Cal. 1992)) (dismissing implied covenant claim with prejudice based on defendant's rights under the contract).

*See* Dkt. no. 70 at 22.

Incredibly, though the Court already held the contract was "unambiguous" in rejecting plaintiffs' argument, plaintiffs continue to insist the Court was wrong. The Pembertons allege no new facts that would warrant the Court reaching a different result on this motion for leave to amend.

The Pembertons emphasize that Nationstar's standard practice is to include payments of deferred interest in its calculation of interest on Forms 1098. *See* Dkt. no. 100 at 2-3. But how Nationstar treats deferred interest on Forms 1098 is irrelevant to the question whether Nationstar properly applied plaintiffs' payments under the contract. The note expressly provides that payments of previously deferred interest are treated as principal. That Nationstar chooses to include payments of previously deferred interest in its calculation of the interest paid on the contract has no bearing on whether the contract was breached.

The Pembertons also assert that Nationstar concealed that it "agrees" with their interpretation of the contract and federal tax law. *See* Dkt. no. 100 at 2-3. This argument is factually incorrect and legally irrelevant.

Nationstar does not agree it is obligated to report payments of deferred interest on Forms 1098. Nationstar is not aware of any authority addressing whether a servicer is obligated to include deferred interest on Option ARM Loans in its calculation of the amount of interest paid on Forms 1098. In the absence of any direct authority addressing the issue, Nationstar has decided as a matter of policy to

1  include deferred interest in its calculation for the amount of interest paid on Forms
2  1098. Nationstar does not concede that plaintiffs' interpretation is correct.

3       Nor did Nationstar conceal anything. In moving to dismiss the prior iteration
4  of plaintiffs' complaints, Nationstar was bound by plaintiffs' allegations. It could
5  not introduce evidence showing that plaintiffs' allegations were factually incorrect.
6  Nationstar therefore argued plaintiffs' allegations failed to state a claim assuming
7  they were factually correct. That is the proper procedure on a motion to dismiss.
8  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th
9  Cir. 1989) ("Generally, a district court may not consider any material beyond the
10  pleadings in ruling on a Rule 12(b)(6) motion.").

11       Regardless, Nationstar's reporting practice was no secret to plaintiffs.
12  Nationstar's counsel told plaintiffs' counsel early in the case that Nationstar's
13  general practice was to report payments of deferred interest on Forms 1098.
14  Nationstar's counsel also explained on multiple occasions that only a limited but
15  unknown group of borrowers would not have had deferred interest payments
16  reported in accord with that policy. *See* Kemp Decl., ¶¶ 2-4. Plaintiffs' claim of
17  surprise is not well taken.

18       Moreover, Nationstar's subjective intent has no bearing on plaintiffs' contract
19  claims. Breach of contract is determined objectively based on the language of the
20  contract, not the intent of the alleged breaching party. *JRS Prod., Inc. v. Matsushita*
21  *Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 182 (2004) ("motive, regardless of how
22  malevolent, remains irrelevant to a breach of contract claim"); *Guntert v. City of*
23  *Stockton*, 55 Cal.App.3d 131, 141 (1976) (same). The Court already held the
24  unambiguous language of the note permitted the conduct of which plaintiffs
25  complain. There is no reason to revisit that conclusion based on plaintiffs'
26  misplaced allegations about Nationstar's subjective intent.

27       Finally, plaintiffs assert that Nationstar breached the implied covenant of
28  good faith by manually correcting Forms 1098 beginning in tax year 2015 and not

1  issuing corrected Forms 1098 for earlier years.  *See* Dkt. no. 100 at 11-12.  But

2  plaintiffs still cannot cite any provision of the contract addressing reporting of

3  deferred interest on Forms 1098.

4       "The covenant of good faith is read into contracts in order to protect the

5  express covenants or promises of the contract, not to protect some general public

6  policy interest not directly tied to the contract's purposes."  *Foley v. Interactive*

7  *Data Corp.*, 47 Cal. 3d 654, 690 (1988).  The implied covenant "cannot impose

8  substantive duties or limits on the contracting parties beyond those incorporated in

9  the specific terms of their agreement."  *Guz v. Bechtel National, Inc.,* 24 Cal. 4th

10  317, 349-50 (2000).  As plaintiffs still cannot plead the existence of any contractual

11  duty to issue Forms 1098, Nationstar's alleged failure to issue correct Forms 1098

12  cannot amount to a breach of the implied covenant.

13      **2.    Plaintiffs' Third-Party Beneficiary Theory Is Not Viable**

14       Plaintiffs also propose to add a claim for breach of contract premised on a

15  third-party beneficiary theory.  (SSAC, ¶¶ 101-110.)  Plaintiffs contend that

16  Nationstar breached the contract by which BANA transferred the servicing rights to

17  their loan to Nationstar by not reporting their payments of previously deferred

18  interest on their Forms 1098.  For at least two reasons, this claim would also be

19  futile.

20       First, plaintiffs do not and (cannot truthfully) plead that the contract obligated

21  Nationstar to report payments of previously deferred interest on Forms 1098.  Like

22  plaintiffs' promissory note and deed of trust, the contract between BANA and

23  Nationstar never addresses the issue.  The servicing transfer agreement does not

24  incorporate 26 U.S.C § 6050H or any other principle of law that plaintiffs contend

25  obligates Nationstar to report payments of deferred interest on Forms 1098.

26  Accordingly, plaintiffs cannot allege any breach of the servicing transfer agreement

27  for that reason alone.

28

1  Second, even if there were any provision in the contract between Nationstar
2  and BANA obligating Nationstar to report payments of capitalized interest as
3  "interest" on Forms 1098, plaintiffs lack standing to sue for its breach. "One who is
4  not a party to a contract has no right to enforce it unless it is an intended third party
5  beneficiary of the contract. Whether a putative third party is an intended beneficiary
6  of the contract depends on whether such intent appears from the written terms of the
7  contract."[3] That a contract may incidentally benefit a third party is insufficient to
8  confer upon it standing to sue for the contract's breach.[4]

9  Because third party beneficiary status is a matter of contract interpretation, a
10 person seeking to enforce a contract as a third party beneficiary " 'must plead a
11 contract which was made expressly for his [or her] benefit and one in which it
12 clearly appears that he [or she] was a beneficiary.' " *Cal. Emergency Physicians
13 Med. Grp. v. PacifiCare of Cal.*, 111 Cal. App. 4th 1127, 1138, 4 Cal. Rptr. 3d 583,
14 595 (2003) (citation omitted). " 'Expressly' means 'in an express manner; in direct
15 or unmistakable terms; explicitly; definitely; directly.' " *Sofias v. Bank of Am.*, 172
16 Cal. App. 3d 583, 587, 218 Cal. Rptr. 388, 390 (1985) (citation omitted).

17 Plaintiffs plead no facts suggesting any intent to confer upon them third-party
18 beneficiary status. They point to no provision in the servicing transfer agreement
19 that makes them express beneficiaries of the contract.

---

[3] *Mission Oaks Ranch v. Cty. of Santa Barbara*, 65 Cal. App. 4th 713, 724, 77 Cal. Rptr. 2d 1, 7-8 (1998) (internal citation omitted), disapproved on other grounds, *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106 (1999); *Martinez v. Socoma Cos.*, 11 Cal. 3d 394, 400, 113 Cal. Rptr. 585, 589, 521 P.2d 841, 845 (1974).

[4] *Martinez*, 11 Cal. 3d at 400; *Jones v. Aetna Cas. & Sur. Co.*, 26 Cal. App. 4th 1717, 1725, 33 Cal. Rptr. 2d 291, 296 (1994); *Shutes v. Cheney*, 123 Cal. App. 2d 256, 262, 266 P.2d 902, 907 (1954); Cal. Civ. Code, § 1559.

1   They could not plausibly do so.  Courts have repeatedly held that borrowers
2   like the Pembertons are not third-party beneficiaries of pooling and servicing
3   agreements or other agreements between servicers and third parties.  *Turner v. Wells*
4   *Fargo Bank NA (In re Turner)*, 859 F.3d 1145, 1149 (9th Cir. 2017) (citing cases);
5   *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 515, 156 Cal. Rptr.
6   3d 912, 927 (2013) ("As an unrelated third party to the alleged securitization, and
7   any other subsequent transfers of the beneficial interest under the promissory note,
8   [the borrower] lacks standing to enforce any agreements, including the investment
9   trust's pooling and servicing agreement, relating to such transactions."), disapproved
10  of on other grounds by *Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919, 932,
11  199 Cal. Rptr. 3d 66, 76, 365 P.3d 845, 854 (2016); *In re Marks*, No. CC-12-1140-
12  KiDH, 2012 Bankr. LEXIS 5788, at *32 (B.A.P. 9th Cir. Dec. 14, 2012) ("we fail to
13  see how Marks has standing to assert breaches of a trust agreement to which she was
14  not a party or even a third-party beneficiary"); *Phipps v. Wells Fargo Bank, N.A.*,
15  No. CV F 10-2025 LJO SKO, 2011 U.S. Dist. LEXIS 10550, at *20 (E.D. Cal. Jan.
16  27, 2011) (borrowers were not third-party beneficiaries of servicer participation
17  agreement under HAMP).

18      The Pembertons do not and cannot allege any facts that would lead to a
19  different result in this case.  Accordingly, leave to pursue the third-party beneficiary
20  should also be denied as futile.

21      **3.    Plaintiffs' Fraud Claim Is Not Viable**

22      Plaintiffs' final new proposed claim is for fraud.  (SSAC, ¶¶ 146-161.)
23  Plaintiffs claim that Nationstar misrepresented its ability to determine whether their
24  unpaid principal balance included previously deferred interest in response to their
25  March 2014 inquiry.  Plaintiffs also allege that Nationstar concealed from them that
26  it issued corrected Forms 1098 for tax years 2013 and 2014.  This claim is also futile
27  for multiple reasons.

28

1    First, to the extent the claim is based on the allegation that Nationstar made a

2    misrepresentation in response to the Pembertons' 2014 inquiry, leave to amend

3    should be denied as the claim arose before the original complaint was filed.  As

4    explained above, Rule 15(d) does not permit the plaintiff to amend to pursue

5    previously existing causes of action.  Hence, to the extent plaintiffs' motion is based

6    on that pre-litigation representation, the motion should be denied.

7    Second, leave to amend should be denied as plaintiffs fail to allege any facts

8    showing Nationstar intended to deceive them.  "An intent to induce reliance on a

9    misrepresentation or non-disclosure by the plaintiff is essential to establish liability

10   for either an intentional misrepresentation or concealment of a material fact."

11   *Textron Financial Corp. v. National Union Fire Ins. Co.*, 118 Cal. App. 4th 1061,

12   1074 (2004).  "[M]ere conclusionary allegations that the [representations or]

13   omissions were intentional and for the purpose of defrauding and deceiving

14   plaintiffs …. are insufficient ..." *Linear Technology Corp. v. Applied Materials,*

15   *Inc.*, 152 Cal. App. 4th 115, 132 (2007).

16   Plaintiffs again allege that Nationstar intended to deceive them by

17   underreporting the amount of interest they paid on a Form 1098.  As the Court held

18   in dismissing the prior iteration of plaintiffs' fraud claim, however, this practice was

19   "is consistent with the terms of Pembertons' Note.  Although the IRS may very well

20   adopt the Pembertons' position on Section 6050H reporting at a later point and even

21   if this Court considers the Pembertons' position to be reasonable, this cannot show

22   Nationstar's knowledge of falsity at the time it issued the 2013 Form 1098." *See*

23   Dkt. no. 70 at 29.

24   Plaintiffs allege no new facts suggesting Nationstar was aware its

25   representations were supposedly false.  Their repeated argument that Nationstar's

26   general reporting practice is an "admission" as to the merit of their legal theory fails

27   for the reasons stated above. *See* Dkt. no. 100 at 9-10.  Accordingly, plaintiffs still

28   cannot allege a fraud claim based on this representation.

1       Plaintiffs also fail to allege a fraud claim arising out of Nationstar's issuance

2 of corrected Forms 1098 in 2017.  As explained above, Nationstar issued the

3 corrected forms to comply with its general policy regarding the reporting of deferred

4 interest.  While the forms were inadvertently not transmitted to the Pembertons,

5 plaintiffs allege no facts suggesting Nationstar intended to defraud them.  Nationstar

6 had no interest in any deduction plaintiffs might claim.

7       Finally, the Pembertons do not allege the actual and reasonable reliance

8 elements of their fraud claim.  "Reliance is 'justifiable' only when 'circumstances

9 were such to make it reasonable for plaintiff to accept defendant's statements

10 without an independent inquiry or investigation.' " *Philipson & Simon v. Gulsvig*,

11 154 Cal. App. 4th 347, 363 (2007) (citations omitted).

12       Plaintiffs contend that they relied on the Forms 1098 to their detriment

13 because they claimed a mortgage interest deduction for only the reported amount.

14 As explained more fully in Nationstar's prior motions to dismiss, however, plaintiffs

15 were free to claim a greater deduction than the amount reported on the Forms 1098.

16 The IRS instructions to taxpayers clearly state that borrowers may claim a greater

17 deduction than the amount of interest shown in a Form 1098.  Indeed, in another

18 Form 1098 case filed by the Pembertons' counsel, the plaintiff followed the IRS's

19 instructions and obtained an additional refund by filing amended returns claiming a

20 greater deduction. *See Strugala v. Flagstar Bank, FSB*, No. 5:13-CV-05927-EJD,

21 2017 WL 3838439, at *2 (N.D. Cal. Sept. 1, 2017).  The Pembertons thus could not

22 have reasonably relied on any statement in the Form 1098 to their detriment.[5]

23 _____

24 [5] *See, e.g., Brakke v. Econ. Concepts, Inc.*, 213 Cal. App. 4th 761, 769 (2013)

25 (*quoting Berry v. Indianapolis Life Ins. Co.*, 638 F. Supp. 2d 732, 819 & n.19 (N.D. Tex. 2009) (" '[i]t is inherently unreasonable for any person to rely on a prediction

26 of future IRS enactment, enforcement, or non-enforcement of the law by someone unaffiliated with the federal government.  As such, the reasonable reliance element

27 of any fraud claim based on these predictions fails as a matter of law.' ").

28

1   **C.      Granting Leave to Amend Would Result in Undue Delay**

2           Even if the Court were not inclined to hold on this motion that amendment

3   would be futile, leave to amend should still be denied.  The Court has broad

4   discretion to deny leave to amend where it would result in undue delay and

5   prejudice to the opposing party.  *DCD Programs Ltd. v. Leighton*, 833 F.2d 183,

6   186 (9th Cir. 1987); *see also Lockheed Martin Corp. v. Network Sols., Inc.*, 194 F.3d

7   980, 986 (9th Cir. 1999); *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387-89 (9th Cir.

8   1990) (holding that prejudice and undue delay are sufficient to deny leave to

9   amend).

10          "[A] 'district court's discretion [whether to grant leave to amend] is

11  'particularly broad' in deciding subsequent motions to amend where the court

12  previously granted leave to amend.' " *Learjet, Inc. v. Oneok, Inc. (In re W. States*

13  *Wholesale Nat. Gas Antitrust Litig.)*, 715 F.3d 716, 738 (9th Cir. 2013) (citation

14  omitted); *see also Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1017 (9th

15  Cir. 1999).  Also, "late amendments to assert new theories are not reviewed

16  favorably when the facts and the theory have been known to the party seeking

17  amendment since the inception of the cause of action." *Acri v. Int'l Asso. of*

18  *Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986); *see also*

19  *M/V American Queen v. San Diego Marine Construction Corp.*, 708 F.2d 1483,

20  1492 (9th Cir. 1983).

21          Here, consideration of these factors warrants denial of leave to amend.  The

22  case has been pending for nearly five years.  Plaintiffs have already amended their

23  complaint three times.  If the Court grants leave to amend, Nationstar will move to

24  dismiss again, thus delaying the case from being at issue.

25          Contrary to plaintiffs' argument, *see* Dkt. no. 100 at 1, the recent discovery

26  they took revealed no "bombshells" that warrant further amendment.  As explained

27  above, while plaintiffs did uncover new some new facts, their underlying claims are

28  still largely the same.  Plaintiffs still contend 26 U.S.C. § 6050H obligates

Nationstar to report payments of deferred interest on Forms 1098. They still contend Nationstar was obligated to apply payments to deferred interest before principal. These claims have been known to plaintiffs since the inception of the action.

Finally, insofar as the new proposed claims are based on developments that occurred after the complaint was filed, the new allegations would expand the scope of discovery, thus resulting in further delay. Leave to amend should be denied for that reason as well. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

## V. CONCLUSION

For the reasons stated above, plaintiffs' motion for leave to file a second amended supplemental complaint should be denied.

DATED: January 14, 2019

SEVERSON & WERSON
A Professional Corporation

By: _____/s/ Erik Kemp_____
Erik Kemp

Attorneys for Defendant NATIONSTAR MORTGAGE LLC