LAW OFFICE OF DAVID J. VENDLER
David J. Vendler, Esq. (SBN 146528)
Email:   djvlegal@gmail.com
2700 South Oak Knoll
San Marino, California 91108
Tel.:  (213) 700-5194

MICHAEL R. BROWN, APC
Michael R. Brown, Esq. (SBN 65324)
Email:   mbrown@mrbapclaw.com
2030 Main Street, Suite 550
Irvine, California 92614
Tel.:  (949) 435-3888
Fax:   (949) 435 3801

Attorneys for Plaintiffs MICHAEL PEMBERTON
and SANDRA COLLINS-PEMBERTON
and all others similarly situated

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PEMBERTON and SANDRA COLLINS-PEMBERTON, individually and on behalf of the class of all others similarly situated,<br><br>    Plaintiffs,<br><br>vs.<br><br>NATIONSTAR MORTGAGE LLC, a Federal Savings Bank,<br><br>    Defendant. | Case No.:  14-CV-1024-BAS-MSB<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO FILE THEIR SUPPLEMENTED SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**Date: Jan. 28, 2019**<br>**Time: 9:00**<br>**Court: 4B** |

NOW COME Plaintiffs Michael Pemberton and Sandra Collins-Pemberton ("Plaintiffs") who, on behalf of themselves and all others similarly situated (collectively "Class Members"), submit the following reply memorandum in support of their motion to file a Supplemented Second Amended Class Action Complaint against Defendant Nationstar Mortgage LLC ("Nationstar" or "Defendant").

-1-

1

Date: January 16, 2019                      MICHAEL R. BROWN, APC

2

By: _____*s/ Michael R. Brown*_____

3

Michael R. Brown

4

LAW OFFICES OF DAVID J. VENDLER

5

6

By: _____*s/ David J. Vendler*_____

David J. Vendler

7

8

Attorneys for Plaintiffs MICHAEL
PEMBERTON and SANDRA COLLINS-
9

PEMBERTON and all others similarly situated.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY ON MOTION TO FILE SUPPLEMENTED SECOND AMENDED COMPLAINT**

**REPLY**

Nationstar argues that plaintiffs' motion should be denied because: (1) although plaintiffs' supplemented complaint presents claims that indisputably arose after the filing of plaintiffs' complaint, it also presents claims based on facts that arose prior thereto – but about which plaintiffs did not know until late 2018; (2) granting the motion would cause undue delay; and (3) allowing plaintiffs' supplemented claims would be futile. The first two of these challenges are so specious as to not to be worthy of much discussion. As to the third, plaintiffs will show here that their amendments are not so "clearly and unambiguously futile" that the present motion should not be granted under the liberal standard of Rule 15, leaving the merits to be tested on a subsequent motion to dismiss. *Bd. Of Trustees of the Automotive Industries Welfare Fund v. Groth Oldsmobile/Chevrolet, Inc.*, 2010 WL 760452 at \*3 (N.D. Cal. 2010).

**A.** <u>**Since The Standards For Amendment And Supplementation Are The Same, It Makes No Difference To The Resolution Of This Motion Whether Certain Claims Are Based On Pre- Or Post-Complaint Facts.**</u>

Nationstar concedes that plaintiffs' supplemental fraud and covenant of good faith and fair dealing claims are based on facts that arose after the filing of plaintiffs' original complaint, including, *inter alia*, Nationstar's sudden, unilateral, and wrongful decision to begin reporting class members' 2013 capitalized interest balances as having been paid in 2015 and forward. Nationstar argues, however, that since plaintiffs' supplemental breach of contract claims are based on facts that existed at the time of the original complaint, even if unknown to plaintiffs – such as the contents of the Loan Servicing Agreement between Bank of America, N.A. ("BANA") and Nationstar – those claims are not properly the subject of a motion to supplement under Rule 15(d).

But Nationstar's argument is no reason to deny the plaintiffs' motion since "[t]he standards for granting a motion for leave to file a supplemental pleading are the same as those for granting a motion to file an amended complaint under Rule 15(a)." *Bona Fide Conglomerate, Inc. v. Sourceamerica*, 2016 WL 67720 at \*3 (S.D. Cal. 2016), quoting *Frederick v. Calif. Dep't of Corr. & Rehab.*, 2012 WL 2077305 at \*2 (N.D. Cal.

2012).  And those standards are to be applied with great liberality. *United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981). Thus, it "makes little difference whether the court treats plaintiff's motion as a motion to supplement rather than a motion to amend because the factors relevant to a Rule 15(d) motion to supplement a complaint are essentially the same as those considered when addressing a motion to amend under Rule 15(a)." *Stallworth v. Stolk,* 2018 WL 3453914 at *7 (D. Nev. 2018); *Mendota Water Authority v. U.S. Dept. of Interior*, 236 F.R.D. 491 (E.D. Cal. 2006) and courts will treat a motion to supplement as one to amend where the proposed supplement alleges pre-complaint facts. *Torrie v. Goodman Law Offices PC*, 2014 WL 5594452 at *6 (D. Ariz. 2014).  Thus, even assuming plaintiffs should have captioned this motion as one to add supplemental and amended claims, their failure to do so is at best just a matter of semantics; it is not a reason to substantively deny the plaintiffs' motion.

### B. Nationstar Has Not Established Any Of The Discretionary Grounds Necessary For The Denial Of The Plaintiffs' Motion.

The discretionary factors for denying a motion to amend or supplement are: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party, or (5) futility of the proposed amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987).

Of these factors, prejudice is the most important. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir.1990); *Zenith Radio Corp. v. Hazeltine Res., Inc.*, 401 U.S. 321, 330–31 (1971).  Here, Nationstar *does not even argue* prejudice, bad faith, dilatory motive, or that plaintiffs have repeatedly failed to cure any deficiencies.  The only two grounds Nationstar actually argues are undue delay and futility.  Neither has merit.

### i.    Granting Plaintiffs' Motion Will Not Result In Undue Delay.

Nationstar claims there would be undue delay solely because: (1) "[t]he case has been pending for nearly five years" (Opp. at 16:22) and that (2) "insofar as the new proposed claims are based on developments that occurred after the complaint was filed,

1   the new allegations would expand the scope of discovery, thus resulting in further

2   delay." Opp. at 17:5-7. First of all, "undue delay by itself is insufficient to justify

3   denying a motion to amend." *DCD Programs, supra,* at 833 F.2d 186. Second, the

4   multi-year delay was not caused by plaintiffs; Nationstar was the party that asked for

5   the stay. Indeed, in all of the plaintiffs' reports filed during stay, they literally begged

6   to have the stay lifted because of the prejudice it was causing to the class!

7          It was only in late 2018 that the stay was finally lifted and plaintiffs were allowed

8   to proceed with discovery. They then obtained documents, interrogatory answers and

9   took Nationstar's deposition which led to the factual revelations more fully described

10  in plaintiffs' supplemental complaint relating to: (1) Nationstar's unilateral decision in

11  2017 to prepare corrected Forms 1098 for plaintiffs (which it only sent to the IRS and

12  never sent to plaintiffs) exactly according to the method plaintiffs contended was

13  correct; (2) the fact that Nationstar's regular policy and practice was always to report

14  payments of capitalized interest in exactly the manner plaintiffs were contending was

15  correct; (3) Nationstar's flat-out admission that plaintiffs were "correct" as to how their

16  interest should have been allocated (Cross 90:24-91:17)[1]; (4) Nationstar's reporting

17  plaintiffs' and class members' payments of capitalized interest in different ways and in

18  different years due to Nationstar's unilateral decision not to issue corrected returns to

19  class members as it did with plaintiffs, but to instead (falsely) report their capitalized

20  interest balances as having been paid in tax years 2015 forward; (5) the fact that the

21  Nationstar/BANA Loan Servicing Agreement specifically placed the duty for Form

22  1098 reporting on Nationstar; and (6) the fact that Nationstar knew that BANA was not

23  providing it with any capitalized interest balances at the time of transfer and Nationstar

24  nonetheless took no steps to determine what those capitalized interest balances were.

25

26  [1] Nationstar denies there was any admission. It is wrong. "Q. So it took you about an hour to
    find out that the Pembertons were right, correct? **A. Yes**. Q**. *And then after you determined***

27  ***that they were right,*** it was decided that there would be a correction of the problem? **A. Yes.**
    Q. And it was -- you understood that the 2013 and 2014 Forms 1098 were prepared

28  incorrectly because they didn't include the deferred interest, correct? **A. Yes.**"

**REPLY ON MOTION TO FILE SUPPLEMENTED SECOND AMENDED COMPLAINT**

To say the least, plaintiffs promptly made their motion. They filed it within 45 days after Nationstar's deposition and before expiry of the time for filing amendments under the Court's scheduling order. Further, the trial date in this case is not until June 16, 2020 and will not have to be delayed. It is simply not the plaintiffs' fault this case was stayed at Nationstar's request and Plaintiffs' should not be prejudiced by this fact.

### ii.    Plaintiffs' Supplemental Claims Are Not Futile.

As stated, the balance of Nationstar's opposition argues that plaintiffs' breach of contract, covenant of good faith and fair dealing and fraud theories will be futile. See Opp. At 7-15. However,

> "[d]enial of leave to amend on this ground is rare. Ordinarily, courts will defer consideration of challenges to the merits of a proposed amendment until after leave to amend is granted and the amended pleading is filed." [Citations omitted]. Deferring ruling on the sufficiency of the allegations is preferred in light of the more liberal standards applicable to motions to amend and the fact that the parties' arguments are better developed through a motion to dismiss.

*Moapa Band of Paiute Indians v. Nevada Power Company*, 2014 WL 12772274 at *1 (D. Nev. 2014).[2] Indeed, the only time "futility" should be used to deny a motion to amend/supplement a complaint is when the claims sought to be alleged are "clearly and unambiguously futile." *Bd. Of Trustees*, *supra*, 2010 WL 760452 at *3. Here, plaintiffs' supplemental claims are certainly not so "clearly and unambiguously futile" that the present motion should be denied. Rather, the claims should be aired out in a motion to dismiss where plaintiffs will have more than the space of a reply to defend the claims.

### iii.   Plaintiffs' Breach Of Contract Claim Is Not Futile.

Central to the Court's conclusion in the last motion to dismiss that plaintiffs could not state a breach of contract claim was its conclusion that "[t]he terms of the

---

[2] See also, *Allred v. Frito-Lay North America, Inc.*, 2018 WL 3608391 at *2 (S.D. Cal. 2018) (noting "the general preference against denying a motion for leave to amend based on futility" and that "[a]rguments concerning the sufficiency of the proposed pleadings, even if meritorious, are better left for briefing on a motion to dismiss"); *Green Valley Corp. v. Caldo Oil Co.*, 2011 WL 1465883 at *6 (N.D. Cal. 2011) (same); *Lillis v. Apria Healthcare*, 2012 WL 4760908 at * 1 (S.D. Cal. 2012) (same); and *Duchemin v. Leidos, Inc.*, 2018 WL 2229368 at *2 (S.D. Cal. 2018) (same).

Pembertons' contract plainly treat deferred interest as principal *and authorize Nationstar to allocate the Pembertons' payments accordingly*" (emphasis added). *Pemberton v. Nationstar Mortg. LLC*, 331 F.Supp.3d 1018, 1041 (S.D. Cal. June 26, 2018). The Court thus found it would be "futile" to allow plaintiffs to assert a breach of the mortgage contract's allocation provision. *Id.* at 331 F.Supp.3d 1038.

But what the Court *did not know* then was that Nationstar *has never* in fact allocated its borrowers' payments that way! [3] How things might have changed if the Court had been apprised prior to its issuance of its last opinion: (1) that Nationstar utilizes a computer program *that its own witness testified was specifically designed to follow the allocation provisions in its customer's mortgage contracts* (Cross, 154:8-20-note typo: "allegations" should be "allocations", Brown dec. ¶17); and (2) that its *contract-based* computer program in fact *allocated its borrowers' payments to retiring monthly interest first, then to retiring capitalized interest which had been "added to" "Principal," and then only to retiring the original "Principal."*

If this information had not been hidden by the defendants from the Court, plaintiffs could have convincingly argued that Nationstar's policy supported their claim that the allocation of payments provision in their mortgage contract was, at the very least, ambiguous. After all, California Supreme Court law is clear that *even if a contractual provision initially appears to a court to be unambiguous*, where the parties' past conduct evidences a different interpretation, that interpretation will be given controlling weight to create an ambiguity even where there otherwise would not be one.

Words frequently mean different things to different people. Here the contracting parties demonstrated by their actions that they knew what the

---

[3] Nationstar (falsely) claims that it (supposedly) told plaintiffs' counsel in 2014 that Nationstar's policy has always been to report borrower payments of capitalized interest on a first dollar basis. See Kemp Dec., para. 3. This is demonstrably untrue. For, if plaintiffs' counsel had known this was Nationstar's standard policy in 2014, they not only would have pled that helpful fact in both their previous amended complaints, but would not have sat idly by while the defendants pulled the proverbial wool over the Court's eyes by hiding the truth about their policies in the face of the Court's specific questioning about Wells Fargo's policy of reporting capitalized interest on Forms 1098. See Brown Dec. paras. 3-6.

words meant and were intended to mean. ***Thus, even if it be assumed that the words standing alone might mean one thing to the members of this court, where the parties have demonstrated by their actions and performance that to them the contract meant something quite different, the meaning and intent of the parties should be enforced***. In such a situation the parties by their actions have created the 'ambiguity' required to bring the rule into operation. If this were not the rule the courts would be enforcing one contract when both parties have demonstrated that they meant and intended the contract to be quite different.

*Crestview Cemetery Assn. v. Dieden*, 54 Cal.2d 744, 754 (1960).[4] Thus, even if this Court still believes in its conclusion that the language of the contract (as opposed to tax law) unambiguously converted capitalized interest into principal, Nationstar's admission that its own allocation of payments practice was to treat capitalized interest as interest after capitalization should be sufficient to get plaintiff over the "futility" hump so that the matter can be more fully briefed in a subsequent motion to dismiss and not in a severely limited reply memorandum. [5]

---

[4] In this respect, Nationstar's citations to *JRS Prod., Inc. v. Matsushida Elec. Corp. of Am.*, 115 Cal. App.4th 168, 182 (2004) and *Guntert v. City of Stockton*, 55 Cal.App.3d 131, 141 (1976) are off point. Those cases hold that malevolent intent is irrelevant to a breach of contract claim. Here, however, Nationstar's intent as to the meaning of its contract can be gleaned from how it actually allocated its borrowers' payments.

[5] This Court, *inter alia*, relied on the language of Section 3(E) of the note to support its conclusion that the mortgage contract unambiguously converted capitalized interest ***into*** principal. *Pemberton, supra*, 331 F.Supp.3d at 1039. Section 3(E) specifies that the interest rate to be charged on capitalized interest will be the same as the interest rate set forth in Section 2 applicable to principal." But if "adding" capitalized interest to principal was really intended to convert that interest into principal, as the Court concluded, then there would be no need for a separate provision specifying a rate of interest for the interest being capitalized since ***Section 2 already specifies the interest rate that is applicable to "Principal."*** Bedrock principles of contract interpretation require that courts "interpret contractual language in a manner which gives force and effect to every provision" (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith*, 68 Cal.App.4th 445, 473 (1998)) and that courts must "avoid constructions which render any provisions or words meaningless or surplusage." *McCarther v. Pacific Telesis Group*, 48 Cal.4th 104, 110 (2010). The only way to do this is to conclude, ***consistent with Nationstar's own practice***, that the interest the plaintiffs deferred paying initially, but then paid later, was never intended to lose its character as "interest" even when it was "added to" the principal. And, as such, it needed its own provision governing the interest rate to be charged on that interest.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### iv.   Plaintiffs' Fraud Claim Is Not Clearly And Unambiguously Futile.

Irrespective of whether the mortgage contract mandates it, the law presumes that payments on a note are allocable to retiring interest before retiring principal. See cases cited in original motion. Thus, when Nationstar took over from BANA in 2013 loans that had capitalized interest balances, the borrowers' payments should have been used to retire that interest first. In 2016, after reaching the conclusion that plaintiffs were in fact "correct" that they had indeed paid capitalized interest in tax years 2013-2014 Nationstar tried to "fix" the problem this case presented. But it did so unilaterally and without providing any notice to its borrowers as to what it was going to do.

As to the plaintiffs, it prepared corrected Forms 1098 that accurately reflected plaintiffs' 2013 and 2014 interest payments. But it concealed that fact from plaintiffs by not sending them the forms. It is simply not a conclusory allegation for the plaintiffs to allege that Nationstar intentionally concealed from them its admission of its mistake since that is exactly what Nationstar did.

As to the class members, upon realizing its error, Nationstar was obligated to have issued corrected Forms 1098 to those borrowers as well. [6] This is especially so since taxpayers rely upon the Forms 1098 they receive.[7] Instead of issuing corrected Forms 1098 reflecting the capitalized interest they paid in prior years, Nationstar wrongfully and falsely represented to its borrowers in Box 1 of the Forms 1098 that it issued in 2016 and 2017 the reported interest as having been paid in those years.

These representations and concealments were knowingly made with the intent that consumers would act based thereon. And it does not eliminate class member damages that Nationstar has now (wrongfully) reported the class members' capitalized

---

[6] See 26 CFR § 301.6724-1(d)(2)(D) and 2011 General Instructions for Certain Information Returns quoted in plaintiffs' motion.

[7] IRS regulations make clear that: "A taxpayer's reliance on erroneous information reported on a Form W–2, Form 1099, or other information return indicates reasonable cause and good faith [for reporting incorrect amounts on their tax returns], provided the taxpayer did not know or have reason to know that the information was incorrect." See 26 C.F.R. § 1.6664–4(b).

interest balances in the wrong years to try to blunt the force of this case.  California law is clear that one cannot gain an advantage by wrongful conduct.  Cal. *Civil Code* section 3517.  As such, Nationstar should be estopped from claiming any damage offset due to its false reporting and should be responsible for any additional damages that have been caused thereby. The class simply did not hire Nationstar as its tax advisor or grant Nationstar the right to pick and choose in what year to report their interest payments. And this leads into plaintiffs' breach of covenant of good faith claim.

### v.   Plaintiffs' Supplemental Covenant Breach Claim Is Not Futile.

Nationstar barely mentions plaintiffs' covenant breach claim in its opposition; it just lumps it in with its discussion of plaintiffs' breach of contract claim.  But it is very different this time.  Plaintiffs' claim is centered on Nationstar's 2016 conduct in unilaterally picking and choosing in what year to report plaintiffs' and the class members' capitalized interest payments.  It asserts that even assuming that Nationstar *legally* can report its borrowers' payments of capitalized interest in any random year, and/or in different years for identically situated borrowers, this does not mean that it has the discretion to simply pick a year of its choosing without notice to its borrowers.

A tax deduction is an important benefit of a mortgage agreement.  Nationstar does not dispute this, but has argued in the past that plaintiffs cannot base a claim for covenant breach on its wrongful reporting of interest on Forms 1098 because there is no provision in the mortgage contract that speaks specifically to that duty.  *Crescent Woodworking Co., Ltd. v. Accent Furniture, Inc.*, 2005 WL 5925586 (C.D. Cal. 2005) refutes this argument and holds that a party cannot exercise its discretion *vis à vis* the other contracting party in a way to frustrate a benefit of the contract.  And this is what Nationstar has done by unilaterally picking the year in which to report plaintiffs' and the class members' interest payments. And this is what Plaintiff now pleads.

### vi.   Plaintiffs' Third-Party Beneficiary Claim Is Not Futile.

There is no merit to Nationstar's contentions that (1) the BANA/Nationstar Servicing Agreement does not obligate it to report payments of capitalized interest on

Forms 1098 or (2) that plaintiffs lack standing to sue for its breach (Opp. at 11:20-13:20). The Servicing Agreement expressly states at Section 7.14 under the heading "Year End Tax Reporting" that: "Purchaser [i.e. Nationstar] shall be responsible for providing the Internal Revenue Service ___and Mortgagors___ with all ___appropriate tax forms and information___ for transactions affecting the Mortgage Loans." (Brown Dec., para. 16) (Emphasis added.) Nationstar's argument that this provision does not specifically obligate it to report capitalized interest is frivolous in light of its post-lawsuit conduct of sending corrected 2013 and 2014 Forms 1098 to plaintiffs in 2017 and its admissions as to how such interest is required to be reported, which is also consistent with Nationstar's normal policy of reporting capitalized interest on Forms 1098.

Nationstar's lack-of-standing argument fares no better. A third-party beneficiary theory is governed by California *Civil Code* section 1559 providing that "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."[8] To state a claim for breach of contract as a third-party beneficiary, all plaintiffs need to establish is that this provision of the Servicing Agreement was made expressly for the benefit of "Mortgagors" including plaintiffs. This is easily satisfied given the content of Section 7.14. Nationstar made an express promise to provide plaintiffs with appropriate information on their tax forms. *Spinks, supra,* 171 Cal.App.4th at 1022. As put in *Spinks*:

> The test for determining whether a contract was made for the benefit of a third person is whether an intent to benefit a third person appears from the terms of the contract. [Citation.] If the terms of the contract necessarily require the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto, contemplate a benefit to the third person…. In other words, 'the doctrine presupposes that the defendant made a promise which, if performed, would have benefited the third party.'

---

[8] "Expressly" in section 1559 "has now come to mean merely the negative of 'incidentally.'" *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal.App.4th 1004, 1022 (2009). In other words, section 1559 only prohibits enforcement of a contract "by persons who are only incidentally or remotely benefited." *Id.*

Nationstar's express contractual obligation is further confirmed by its post-lawsuit conduct. *Spinks, supra,* 171 Cal.App.4th at 1024 ["In determining intent to benefit a third party, the contracting 'parties' practical construction of a contract, as shown by their actions, is important evidence of their intent.'"] [9] None of Nationstar's authorities support a different conclusion.  *Turner v. Wells Fargo Bank,* 859 F.3d 1145 (9th Cir. 2017) and *Jenkins v. JP Morgan Chase Bank,* 216 Cal.App.4th 497 (2013) merely held that borrowers – who defaulted on their loans – could not stop a foreclosure based on allegedly defective and thus voidable assignments of their loans because any defect in the assignments did not affect their obligations under the loan agreements and caused no injury.[10]  Here, Nationstar's failure to perform its tax reporting duty directly injures plaintiffs.  *In re Marks,* 2012 Bankr. LEXIS 5788, dealt with a bank's standing to file a motion to lift automatic stay and its general statement that the debtor lacked standing to challenge a trust agreement to which he was not a party or a third-party beneficiary does not apply to the facts of this case.  *Phipps v. Wells Fargo Bank*, 2011 U.S. Dist. LEXIS 10550, is similarly distinguishable because the Servicer Participation Agreement – a government agreement between Fannie Mae and Wells Fargo – only obligated Wells Fargo to modify eligible loans and plaintiff borrower failed to show that his loan was eligible for modification.

## CONCLUSION

Plaintiffs have established in the limited space of this reply that their new claims are not "unambiguously and clearly futile," but clearly, a motion to dismiss will allow all parties and the Court a full airing.  And that is how it should be. See *Moapa, supra*.

---

[9] *Cal. Emergency Physicians Med. Corp. v. PacifiCare of Cal.*, 111 Cal.App.4th 1127 (2003) is inapposite because it involved health care policies which provided payments to contracting physicians and plaintiffs were not contracting physicians.  *Sofias v. Bank of America*, 172 Cal.App.3d 583 (1985) has no application to this case because it merely held that a contractor was not a third-party beneficiary of a construction loan.

[10] In fact, *Jenkins*'s broad holding has been disapproved by *Yvanova v. New Century Mortgage Corp.*, 62 Cal.4th 919 (2016) [holding that a defaulting borrower had standing to challenge a foreclosure based on a void assignment of her note.]

1  Date: January 18, 2019                    MICHAEL R. BROWN, APC

2                                            By: _____ *s/ Michael R. Brown* _____
3                                                  Michael R. Brown

4                                            LAW OFFICES OF DAVID J. VENDLER

5
                                             By: _____ *s/ David J. Vendler* _____
6                                                  David J. Vendler

7
                                             Attorneys for Plaintiffs MICHAEL
8                                            PEMBERTON and SANDRA COLLINS-
9                                            PEMBERTON and all others similarly situated

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REPLY ON MOTION TO FILE SUPPLEMENTED SECOND AMENDED COMPLAINT**