# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PEMBERTON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC,<br><br>Defendant. | Case No. 14-cv-01024-BAS-MSB<br><br>**ORDER DENYING PLAINTIFFS' MOTION TO SUPPLEMENT THE SECOND AMENDED COMPLAINT**<br><br>**[ECF No. 100]** |

Plaintiffs Michael Pemberton and Sandra Collins-Pemberton (the "Pembertons") request leave to file a "Supplemented Second Amended Complaint" pursuant to Rule 15(d). (ECF Nos. 100, 106.) The Pembertons seek to supplement the SAC with factual allegations and related proposed supplemental claims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and a third-party beneficiary breach of contract claim. (*Id.*) Observing that "while plaintiffs did uncover some new facts [during discovery], their underlying claims are still largely the same," Defendant Nationstar Mortgage LLC ("Nationstar") opposes the Pembertons' motion. (ECF No. 104 at 16.) For the reasons herein, the Court denies the Pembertons' motion.

## RELEVANT BACKGROUND

***Factual Background.*** As the Court has previously recounted, the Pembertons

are California homeowners who obtained an Option ARM mortgage loan in 2005 from First Magnus Financial Corporation. During the first five years of the loan's duration, the Pembertons' loan provided an option that allowed the Pembertons to make a monthly interest payment less than the full amount of interest due. Under this option, the monthly interest the Pembertons did not pay was added to the amount of their loan's unpaid principal with interest accruing on this added amount at the same rate as the original principal. The Pembertons' loan passed to various owners and servicers, with Bank of America, N.A. ("BANA") owning and servicing the Pembertons' loan immediately prior to Nationstar. When Nationstar began servicing the Pembertons' loan in July 2013, the Pembertons' loan balance was $7,575.41 above the original balance, an amount which the Pembertons allege was charged as interest in the earlier years of their loan but which they did not pay, *i.e.* the amount constitutes "deferred interest." The Pembertons made $12,097.80 in mortgage payments to Nationstar in 2013. According to the Pembertons, Nationstar failed to credit any payments to retire outstanding deferred interest before applying the payments to their loan's principal amount.

Although the Pembertons raise various California state law claims against Nationstar, a federal statute is at the core of the Pembertons' contention that Nationstar was legally required to credit and report payments on deferred interest for their home mortgage. The statute, 26 U.S.C. § 6050H, requires any individual who receives interest aggregating over $600 on a home mortgage in a given year from another individual to furnish the Internal Revenue Service ("IRS") with an information return identifying the amount of interest received. 26 U.S.C. § 6050H(a); 26 U.S.C. § 6050H(b)(2)(B). The interest recipient must also furnish a statement to the individual who provided the interest, which also identifies the amount of interest received during the year. 26 U.S.C. § 6050H(d). By regulation, the interest recipient meets its statutory reporting obligations by providing the IRS and the interest provider with a

Form 1098. 26 C.F.R. §§ 1.605H-2(a), (b). The Pembertons contend that Section 6050H reaches deferred interest and, consequently, Nationstar unlawfully failed to credit or properly report their 2013 payments on deferred interest in the corresponding Form 1098 that Nationstar provided to the IRS and the Pembertons.

*Procedural History.* The Pembertons first brought suit against Nationstar in April 2014, alleging claims for breach of contract, breach of the implied covenant, violation of Section 6050H, violation of California's Unfair Competition Law ("UCL"), declaratory and injunctive relief, fraud, and negligence. (ECF No. 1 (the "Original Complaint").) In February 2015, upon Nationstar's Rule 12(b)(6) motion to dismiss (ECF No. 11), the Court dismissed the Pembertons' direct claim under Section 6050H on the ground that there is no express or implied federal private right of action under the statute. (ECF No. 17.) The Court otherwise stayed the case under the primary jurisdiction doctrine to permit the IRS to interpret Section 6050H's application to deferred interest in the first instance. (*Id.*) Over two years after imposing the stay, the Court dismissed the Original Complaint when the Pembertons conceded that they lacked Article III standing in view of the Ninth Circuit's decision in *Smith v. Bank of America, N.A.*, 679 Fed. App'x 549 (9th Cir. 2017). (ECF Nos. 39, 42.) The Pembertons subsequently filed the First Amended Complaint ("FAC"), which raised the same claims as the Original Complaint. (*Compare* ECF No. 1 *with* ECF No. 43 (FAC).)

After denying Nationstar's motion to dismiss the FAC for lack of standing and declining to impose another stay, the Court ordered the Pembertons to show cause why their claims should not be dismissed pursuant to Rule 12(b)(6). (ECF No. 53.) The Pembertons filed a brief and reply brief directly responding to the Court's order, (ECF Nos. 54, 60), Nationstar presented its dismissal arguments, (ECF No. 55), and the Court held oral argument, (ECF No. 69). After over four years, the legal

sufficiency of the Pembertons' concededly novel claims was ripe for adjudication. The Court issued an extensive order that sustained in part and dismissed in part the Pembertons' claims. *Pemberton v. Nationstar Mortgage LLC*, 331 F. Supp. 3d 1018 (S.D. Cal. 2018). The Court dismissed with prejudice the Pembertons' claims for breach of contract, breach of the implied covenant, a UCL claim under the UCL's unlawful and fraudulent prongs, the declaratory judgment request as pleaded in the FAC, and fraud. *Id.* at 1034–49, 1061–62. The Court dismissed without prejudice the Pembertons' claim for a preliminary and permanent injunction. *Id.* at 1063–64. The Court allowed the Pembertons' UCL unfair prong and negligence claims and permitted the Pembertons to file a Second Amended Complaint ("SAC") consistent with the order. *Id.* at 1050–61.

In accordance with the Court's order, the Pembertons filed the SAC in July 2018, alleging claims against Nationstar for violation of the UCL (unfair prong), declaratory relief, and negligence based on Nationstar's alleged failure to report the Pembertons' deferred interest payments. (ECF No. 76.) Nationstar answered the SAC in August 2018, (ECF No. 80), and the case proceeded to discovery. The Pembertons timely filed the present Rule 15(d) motion for leave to file a "supplemented [SAC]" in December 2018. (ECF No. 100.) The Pembertons have submitted a copy of the proposed "Supplement Second Amended Complaint" ("PSSAC"), which reveals some 107 paragraphs of "supplemental" allegations for four additional claims, dwarfing the operative complaint's 54 paragraphs and three claims. (*Compare* SAC ¶¶ 1–54 *with* ECF No. 101-1 PSSAC ¶¶ 55–161.) The Pembertons do not offer any proposed supplemental factual allegations to supplement the claims the Court has already allowed.

## LEGAL STANDARD

"[T]he court may, on just terms, permit a party to serve a supplemental pleading

setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "Rule 15(d) provides a mechanism for parties to file additional causes of action based on facts that didn't exist when the original complaint was filed." *Eid v. Alaska Airlines, Inc*., 621 F.3d 858, 874 (9th Cir. 2010). New claims, parties, and allegations regarding events that occurred after the original complaint are properly raised in a Rule 15(d) motion. *Griffin v. Cty. Sch. Bd.*, 377 U.S. 218, 226 (1964); *Lyon v. United States Immigration & Customs Enforcemen*t, 308 F.R.D. 203, 214 (N.D. Cal. 2015). Yet, "[s]ome relationship must exist between the newly alleged matters and the subject of the original action" in order for a party to rely on Rule 15(d). *Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1988).

A Rule 15(d) motion is otherwise evaluated pursuant to the same standard as a Rule 15(a) motion to amend. *See Glatt v. Chicago Park Dist*., 87 F.3d 190, 193 (7th Cir. 1996); *Yates v. Auto City 76*, 299 F.R.D. 611, 614 (N.D. Cal. 2013). A court may deny leave for: "(1) 'undue delay, bad faith or dilatory motive on part of the movant,' (2) 'repeated failure to cure deficiencies by amendments previously allowed,' (3) 'undue prejudice to the opposing party,' or (4) 'futility.'" *Acosta v. Austin Elec. Servs. LLC*, 325 F.R.D. 325, 330 (D. Ariz. 2018) (quoting *Wash. State Republican Party v. Wash. State Grange*, 676 F.3d 784, 797 (9th Cir. 2012)). A district court has broad discretion over whether to allow supplemental or amended pleadings. *Volpe*, 858 F.2d at 473. A court "examine[s] each case on its facts" to determine the propriety of granting leave to supplement or amend the pleadings. *See SAES Getters S.p.A. v. Aeronex, Inc*., 219 F. Supp. 2d 1081, 1086 (S.D. Cal. 2002) (citation omitted).

**DISCUSSION**

**A.     The Pembertons' Improper Reliance on Rule 15**

The Pembertons improperly rely on Rule 15(d) for many of the claims with

which the Pembertons seek to "supplement" the SAC. "Rule 15(d) permits the filing of a supplemental pleading which introduces a cause of action not alleged in the original complaint and not in existence when the original complaint was filed." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 382 (9th Cir. 1998) (citation omitted). The Original Complaint asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud for Nationstar's alleged failure to report deferred interest on the Pembertons' 2013 Form 1098. (Original Compl. ¶¶ 41–46 (breach of contract); *id.* ¶¶ 47–52 (breach of the implied covenant); *id.* ¶¶ 73–80 (fraud).) Any proposed supplemental claims which seek to reintroduce these original claims are not properly raised in a Rule 15(d) motion.

A review of the underlying supplemental factual allegations also reveals that the proposed supplemental claims are based on facts that existed before the filing of the Original Complaint. For example, the Pembertons' breach of contract and implied covenant claims are based on conduct that occurred before the Original Complaint because the claims are grounded in the Pembertons' home mortgage contract. (PSSAC ¶¶ 83–88, 90, 121.) The Pembertons' proposed supplemental fraud claim is based in part on conduct that occurred before the filing of the Original Complaint because the claim concerns Nationstar's alleged misrepresentations to and concealments from the Pembertons when Nationstar investigated in 2014 the Pembertons' assertions about Nationstar's reporting of deferred interest payments. (*Id.* ¶¶ 147–50.) Although the Pembertons' third-party beneficiary breach of contract claim concerning the BANA-Nationstar loan transfer agreement is a newly raised claim, the claim is necessarily premised on conduct before the Original Complaint because the Pembertons have only challenged Nationstar's conduct after it took over servicing the Pembertons' home mortgage loan. (*Id.* ¶¶ 103–09.) As such, Rule 15(a)—not Rule 15(d)—is the proper vehicle for the Pembertons to alter their pleadings. *See Eid*, 621 F.3d at 87; *Fresno Unified Sch. Dist. v. K.U.*, 980 F. Supp.

2d 1160, 1174 (E.D. Cal. 2013) ("An amended complaint under Rule 15(a) permits the party to add claims or to allege facts that arose before the original complaint was filed.").

The Pembertons' Rule 15 motion is otherwise improper because the Pembertons effectively rely on supplemental factual allegations to seek reconsideration of the Court's prior conclusions regarding the Pembertons' dismissed claims for breach of contract, breach of the implied covenant, and fraud. A motion for reconsideration would have been the proper means for the Pembertons to challenge the Court's prior dismissal order. *See Wright v Old Gringo, Inc.*, No. 17-cv-1966-BAS-MSB, 2018 WL 6778215, at *2 (S.D. Cal. Dec. 26, 2018) ("District courts may entertain a motion for reconsideration of an interlocutory order at any time before entry of final judgment."). The Pembertons, however, have not timely sought reconsideration because the present motion comes six months after the Court's ruling. *See* S.D. Cal. Civ. L.R. 7.1.i.2 (requiring a motion for reconsideration to be filed within 28 days of the order for which reconsideration is sought).

Even if the Court construed the Pembertons' present motion as a motion for reconsideration and further excused the motion's untimeliness, the Pembertons have failed to show reconsideration is warranted. "A motion to reconsider must (1) show some valid reason why the court should reconsider its prior decision, and (2) set forth facts or law of a strongly convincing nature to persuade the court to reverse its prior decision." *Cancino-Castellar v. Nielsen*, 338 F. Supp. 3d 1107, 1110 (S.D. Cal. 2018). The Pembertons' motion identifies no valid reason for reconsideration of a strongly convincing nature because the motion is premised on legal theories the Court has already thoroughly considered and rejected. A motion for reconsideration is not an avenue for the Pembertons to relitigate issues and arguments the Court has already addressed. *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev.

2005). And although the Pembertons disagree with the Court's prior analysis in form and in spirit, the Pembertons' "[m]ere disagreement with a previous order is an insufficient basis for reconsideration." *Haw. Stevedores, Inc. v. HT&T Co.*, 363 F. Supp. 2d 1253, 1269 (D. Haw. 2005). Although the Court evaluates the Pembertons' proposed claims pursuant to the familiar considerations applicable to both a Rule 15(a) and 15(d) motion, the Court's conclusions largely track the reasoning of its prior dismissal order insofar as the Pembertons seek to reintroduce claims dismissed with prejudice.

### B. Futility Warrants Denial of Leave to Amend for Repleaded Claims

"Futility alone can justify the denial of a motion to amend." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004); *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (same). A proposed amendment is futile if it could not withstand a Rule 12(b)(6) motion to dismiss. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) ("Leave to amend need not be given if a complaint, as amended, is subject to dismissal."). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff is required to set forth "enough facts to state a claim for relief that is plausible on its face," which allows "the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court accepts as true factual allegations and construes them in the light most favorable to the plaintiff. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A court does not accept legal conclusions pleaded in the guise of factual allegations, nor does a court accept formulaic recitations of the elements of a cause of action. *Iqbal*, 556 U.S. at 676; *Twombly*, 550 U.S. at 555; *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754–55 (9th Cir. 1994).

Nationstar opposes the Pembertons' Rule 15 motion primarily on the ground

that the proposed claims are futile. (ECF No. 104 at 7–15.) The Pembertons protest that "the claims should be aired out in a motion to dismiss where plaintiffs will have more than the space of a reply to defend the claims." (ECF No. 106 at 6.) This protestation is unavailing. The Pembertons have had ample opportunity to defend the legal sufficiency of their breach of contract, implied covenant, and fraud claims for Nationstar's Form 1098 reporting in response to the Court's previous order to show cause. (ECF No. 54 at 8–10, 25–33; ECF No. 60 at 7–8, 10; ECF No. 69.) The Pembertons clearly recognize that futility is the "hump" they must overcome. (ECF No. 106 at 8.) The PSSAC and the Pembertons' opening brief seek to engage directly with the Court's analysis in its dismissal order. (PSSAC ¶¶ 83–90, 113, 115–16, 118–19, 130–31, 134–35, 140–41; ECF No. 100 at 3–4, 6–8, 11–12.) After consideration of the parties' arguments, the Court rejects the Pembertons' attempt to reintroduce claims the Court previously dismissed with prejudice because the claims are futile.

### 1. Breach of Contract

Since this case's inception, the Pembertons have sought to hold Nationstar liable for allegedly breaching the Pembertons' relevant mortgage contract by failing to report deferred interest payments in the Pembertons' 2013 Form 1098. The relevant contract in this case is the Pembertons' "Adjustable Rate Note" (the "Note"), which the Pembertons have presented with each of their pleadings and the PSSAC. (SAC Ex. A; ECF No. 101-2 Ex. A (PSSAC with exhibits).) The Note is properly considered in the Court's futility analysis. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003) (a court may consider documents attached to a complaint to resolve a motion to dismiss).

"To state a claim for breach of contract under California law, plaintiffs must plead four elements: (1) the existence of a contract, (2) plaintiffs' performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to the plaintiffs

as a result of that breach." *Pemberton*, 331 F. Supp. 3d at 1034 (citations omitted). "[T]he interpretation of a written contract is a matter of law for the court[.]" *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1159 (E.D. Cal. 2009) (quoting *Southland Corp. v. Emerald Oil Co.*, 789 F.2d 1441, 1443 (9th Cir. 1986)). When the parties have a written contract, the parties' mutual intent at the time of the contract is determined from the writing alone if possible. *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 135 Cal. Rptr. 2d 505, 513 (Cal. Ct. App. 2003). "A breach of contract claim may be dismissed for failure to state a claim if the contract's terms are unambiguous." *Pemberton*, 331 F. Supp. 3d at 1035.

The Pembertons previously advanced two breach of contract theories that the Court rejected as implausible. First, the Pembertons asserted that their Note incorporates Section 6050H as a term, thereby rendering compliance with Section 6050H a contractual as well as a statutory obligation. (FAC ¶¶ 43–44.) The Court rejected this assertion because nowhere does their Note refer to Section 6050H. *Pemberton*, 331 F. Supp. 3d at 1035–38. Second, the Pembertons asserted that the Note's provisions allocating payments toward retiring interest before principal contractually required Nationstar to allocate payments toward retiring deferred interest before principal. (ECF No. 54 at 8, 28.) The Court rejected this theory because, even if the Pembertons' position is correct as a matter of taxation principles, the Note unambiguously treats deferred interest as "unpaid Principal" for the purposes of contractual allocation of the Pemberton's mortgage payments. *Pemberton*, 331 F. Supp. 3d at 1038–1041.

The Pembertons now invoke Rule 15 to dispute the Court's analysis. (ECF Nos. 100 at 3–4; ECF No. 106 at 6–8.) The PSSAC contains eight allegations that point to Sections 1, 3(A), 3(C), 3(C) of the Note, which the Pembertons now claim

show that their interpretation of the Note is reasonable. (PSSAC ¶¶ 83–90.) The Court will not retread its prior analysis of the Note's allocation provisions under California contract law. *See Pemberton*, 331 F. Supp. 3d at 1038–1041. The Court denies the Pembertons' motion because a Rule 15 motion to supplement or amend is not a proper basis to seek reconsideration of the Court's previous Rule 12(b)(6) ruling.

Recognizing the futility of relying on the Note's actual language, the Pembertons advance a new and third theory in the event "this Court still believes in its conclusion that the language in the contract . . . unambiguously" forecloses their contract claim. (ECF No. 106 at 8.) Based on a discovery "bombshell," the Pembertons allege that Nationstar's own policy is to allocate payments from its borrowers toward retiring deferred interest before principal, allegedly based on Nationstar's interpretation of the allocation provisions in home mortgage loan contracts like the one the Pembertons hold. (PSSAC ¶¶ 91–98.) The Pembertons therefore contend that the parties' conduct related to the Note creates a contractual ambiguity sufficient to make their breach of contract claim not futile. (ECF No. 100 at 3; ECF No. 106 at 8.)

Bombshell or not, Nationstar's alleged conduct cannot save the latest mutation of the Pembertons' breach of contract claim. "Under California law, the fundamental goal of contract interpretation is to give effect to the mutual intent of the parties *as it existed at the time of contracting.*" *United States Cellular Inv. Co. of L.A., Inc. v. GTE Mobilnet, Inc.*, 281 F.3d 929, 934 (9th Cir. 2002) (citations omitted) (emphasis added). California law recognizes that a contractual ambiguity may be shown to exist "where the parties have demonstrated by their actions and performance that to them the contract meant something quite different" than what "the words standing alone might mean[.]" *Crestview Cemetery Ass'n v. Dieden*, 356 P.2d 171, 178 (Cal. 1960). Nationstar is not the original contracting party. The Pembertons do not allege any

facts which show that the parties mutually agreed to create new contractual obligations or alter the meaning of the Note's terms after Nationstar began servicing the Pembertons' loan. To the contrary, the Pembertons have specifically alleged that Nationstar failed to credit their payments toward retiring outstanding deferred interest in the first Form 1098 that Nationstar ever provided to the Pembertons and the IRS. (SAC ¶¶ 11–12.) These allegations critically undermine the Pembertons' attempt to now rely on Nationstar's conduct to create a contractual ambiguity.

Nationstar's alleged policy of tracking and reporting deferred interest amounts to the IRS and borrowers cannot otherwise sustain the Pembertons' breach of contract claim. Assertions of ambiguity "do[] not require the district court to allow additional opportunities to find or present extrinsic evidence if the court considers the contract language and the evidence the parties have presented and concludes that the language is reasonably susceptible to only one interpretation." *Skilstaf, Inc. v. CVS Caremark Corp*, 669 F. 3d 1005, 1017 (9th Cir. 2012); *Hervey v. Mercury Cas. Co*., 110 Cal. Rptr. 3d 890, 895 (Cal. Ct. App. 2010) (extrinsic evidence "is not admissible if it contradicts a clear and explicit [contract] provision."). Nationstar's alleged policy recognizes "deferred interest" as a payment category and applies payments to retiring deferred interest amounts included in the principal amount before retiring principal for the purposes of tax reporting, specifically Section 6050H. (PSSAC ¶¶ 56–58, 91, 96–97.) As the Court has already explained, however, Section 6050H is not a term of the Pembertons' Note. Even if Nationstar's alleged policy is appropriate so that Nationstar can fulfill any tax reporting obligations it may have under Section 6050H, "the claim before the Court is one for breach of contract." *Pemberton*, 331 F. Supp. 3d at 1041. The Note recognizes only two categories for allocation of the Pembertons' payments—interest and principal—as a contractual matter. (SAC Ex. A at 2); *Pemberton*, 331 F. Supp. 3d at 1038. Therefore, Nationstar's alleged policy cannot be used to contravene the Note's terms. Accordingly, the Court denies leave because

the claim is futile.

### 2. Breach of the Implied Covenant

Accompanying the Pembertons' attempt to replead a breach of contract claim is the Pembertons' related request to reintroduce a breach of the implied covenant claim. Despite the length of the PSSAC's allegations for this claim, (PSSAC ¶¶ 112–45), the claim is futile based on the same fatal defect that warranted dismissal of the claim with prejudice: the Pembertons impermissibly rely on the implied covenant to fashion contractual terms that do not exist

Under California law, every contract carries with it an implied covenant of good faith and fair dealing in the contract's performance and enforcement. *Foley v. Interactive Data Corp.*, 765 P.2d 373, 389 (Cal. 1988). As the Court has previously admonished, "[t]he implied covenant is inherently limited—it 'does not extend beyond the terms of the contract at issue.'" *Pemberton*, 331 F. Supp. 3d at 1042 (quoting *Sipe v. Countrywide Bank*, 690 F. Supp. 2d 1141, 1160 (E.D. Cal. 2010) (emphasis in original). Therefore, a party may not rely on the implied covenant to "impose substantive duties or limits . . . beyond those incorporated in the specific terms of the[] agreement." *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1110 (Cal. 2000).

Although presented with new factual allegations, the Court's prior order largely controls because the Pembertons' proposed implied covenant claim does not break new ground. The Pembertons seek to premise the claim on (1) Nationstar's "unilateral" issuance of corrected 2013 and 2014 Forms after it revisited the issue of reporting deferred interest payments for the Pembertons' loan without sending corrected forms to the Pembertons, (PSSAC ¶¶ 127–129, 134–35, 138), and (2) Nationstar's alleged failure to advise the Pembertons about the issuance of the correct forms, (*id.* ¶¶ 131–32, 140). The Court, however, has already concluded that "no

provision of the Note or the deed of trust requires Nationstar to disclose its treatment of deferred interest payments in its Form 1098 reporting" and "the Pembertons do not identify any express contractual provision that required Nationstar to investigate the Plaintiffs' contentions regarding Nationstar's allegedly inaccurate reporting in a Form 1098, or to issue a corrected Form 1098." *Pemberton*, 331 F. Supp. 3d at 1042. The Pembertons' proposed allegations about Nationstar's post-complaint conduct and related assertions that Nationstar "abused" contractual discretion in the issuance of corrected forms or failed to advise the Pembertons of its reporting conduct are therefore unavailing.

The Pembertons also seek to ground their implied covenant claim in the Note's allocation provisions. (PSSAC ¶¶ 117–18.) The Court has already rejected the Pembertons' claim based on these provisions as implausible because "Nationstar . . . had the contractual right to treat deferred interest as principal *for the purposes of the Note*." *Pemberton*, 331 F. Supp. 3d at 1042 (emphasis added); *Song Fi Inc. v. Google, Inc.*, 108 F.Supp.3d 876, 885 (N.D. Cal. 2015) (a party "cannot state a claim for breach of the implied covenant of good faith and fair dealing, because 'if defendants were given the right to do what they did by the express provisions of the contract there can be no breach.'"). Even accepting as true the Pembertons' new allegations that Nationstar had an internal tracking and reporting policy for deferred interest (PSSAC ¶¶ 120–21), this policy is not tethered to the actual text of the allocation provisions in the Pembertons' Note. Therefore, the policy cannot give rise to a breach of the implied covenant claim.

Ultimately, the Pembertons invoke Rule 15 to reintroduce an implied covenant claim that would "impose substantive duties or limits on the contracting parties beyond those incorporated in the[se] specific terms." *Plastino v. Wells Fargo Bank*, 873 F.Supp.2d 1179, 1191 (N.D. Cal. 2012). And the Pembertons take issue with

Nationstar's conduct following the commencement of this suit on the ground that "tax law is plainly not supposed to work" in the way Nationstar's issuance of corrected Forms 1098 might suggest. (PSAC ¶ 77.) But whatever obligations Nationstar might have under Section 6050H and tax law (PSSAC ¶¶ 126, 130, 140), these are not obligations that the Pembertons can wield against Nationstar through the guise of the implied covenant. Accordingly, the Court denies leave for this claim.

### 3. Fraud

The third claim the Pembertons seek to reintroduce is a common law fraud claim against Nationstar. (PSSAC ¶¶ 146–61.) The elements of fraud under California law are "(1) misrepresentations (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage." *Alliance Mortgage Co. v. Rothwell*, 900 P.2d 601, 608 (Cal. 1995). Although the Pembertons' latest fraud claim contains new factual allegations for post-complaint conduct, the claim falters for the same reasons the Court previously dismissed the Pembertons' original fraud claim with prejudice.

The Pembertons' fraud allegations concerning Nationstar's Form 1098 reporting and post-complaint conduct and the Pembertons' related arguments in their Rule 15 motion ignore the Court's determination that the Pembertons cannot establish falsity insofar as the Pembertons allege that Nationstar acted fraudulently with respect to any reporting obligations for deferred interest that might be deemed to arise under Section 6050H. (PSSAC ¶¶ 148, 152–156; ECF No. 100 at 8–11.) The Court specifically concluded that "[f]atal to the Pembertons' statutory construction-based assertion of falsity is Section 6050H's ambiguity and the lack of regulatory guidance at the time Nationstar issued its Form 1098." *Pemberton*, 331 F. Supp. 3d at 1045. "[N]either § 6050H nor its implementing regulations provide explicit direction to

recipients on how, whether and *when* to report capitalized interest." *Id* (quoting *Strugala v. Flagstar Bank, FSB*, No. 5:13-cv-05927-EJD, 2015 WL 5186493, at *3 (N.D. Cal. Sept. 4, 2015)) (emphasis added); *Rovai v. Select Portfolio Servicing, Inc.*, No. 14-cv-1738-BAS-WVG, 2015 WL 3613748, at *3 (S.D. Cal. May 11, 2015)). The Pembertons identify no statutory and regulatory changes that would render false Nationstar's subsequent Forms 1098, which allegedly account for deferred interest, all of which were allegedly issued before the Court's dismissal order. The Pembertons' continued reliance on federal tax law and Section 6050H simply cannot establish that Nationstar made false representations to the Pembertons in its Forms 1098, whether in the original 2013 Form 1098 that underlies this suit or Nationstar's subsequent Forms 1098.

The Pembertons also seek to premise their fraud claim on Nationstar's alleged policy of tracking and reporting interest, a policy which Nationstar allegedly had before servicing the Pembertons' loan. (PSSAC ¶¶ 147–150.) While the PSSAC contains allegations about Nationstar's alleged misrepresentations to and concealments from the Pembertons in relation to this policy, conspicuously absent from the PSSAC are factual allegations that would plausibly show an intent to defraud. *See Sukonik v. Wright Med. Tech., Inc.*, No. CV 14-08278 BRO (MRWx), 2015 WL 10682986, at *15 (C.D. Cal. Jan. 26, 2015) ("[A]llegations of intent must still meet Rule 8(a)'s plausibility standard under *Twombly* and *Iqbal*."). The Court's previous conclusion regarding the Pembertons' inability to plausibly plead intent to defraud controls here: "[t]he Pembertons' Note, which Nationstar did not create, treats deferred interest as principal and did so before Nationstar ever began to service the Pembertons' loan" and thus "the Pembertons cannot plausibly allege that Nationstar intended to defraud them." *Pemberton*, 331 F. Supp. 3d at 1047. Accordingly, the Court denies leave for this claim.

## C. Third-Party Beneficiary Breach of Contract Claim

In line with the Pembertons' interposition of novel state law claims based on Section 6050H, the Pembertons seek to raise a third-party beneficiary breach of contract claim against Nationstar for the first time. (PSSAC ¶¶ 102–10.) According to the Pembertons, BANA and Nationstar entered into a contract pursuant to which Nationstar "assume[d]" BANA's duties, including that of "prepar[ing] and fil[ing] federal and state informational returns as required by statute, including IRS Form 1098." (*Id.* ¶ 103–04.) The Pembertons allege, as third-party beneficiaries, that Nationstar breached the agreement by "fail[ing] to provide the benefit of properly servicing their loans by not properly reporting their mortgage interest as required" by the agreement, which caused the Pembertons harm from alleged overpayment of taxes and potential loss of a tax refund. (*Id.* ¶¶ 108, 110.)

Under California law, a third party may enforce a contract if the contract is "made expressly for the benefit of a third person. . ." Cal. Civ. Code § 1559. "A third party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident." *Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 821–22 (9th Cir. 1985) (citing *Strauss v. Summerhays*, 204 Cal. Rptr. 227, 233 (Cal. Ct. App. 1984)); *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 345 F. Supp. 3d 1207, 1228 (E.D. Cal. 2018) ("[T]he 'test for determining whether a contract was made for the benefit of a third party is whether an intent to benefit a third person appears from the terms of the contract.'" (citation omitted)). "[A]n intent to make the obligation inure to the benefit of the third party must have been clearly manifested by the contracting parties." *R. J. Cardinal Co. v. Ritchie*, 32 Cal. Rptr. 545, 552 (Cal. Ct. App. 1963).

For reasons the Court has discussed in the concurrently filed *Rovai* order, the Court has doubts about the legal sufficiency of a breach of contract claim based on

the BANA-Nationstar agreement, even assuming that the Pembertons are third-party beneficiaries. However, the allegations in the *Rovai* pleading that render the claim implausible in that case are not pleaded in the Pembertons' complaint and thus the Court cannot similarly conclude that the third-party beneficiary breach of contract claim would be futile here.[1]

The Court, however, does not find necessary a full examination of the legal sufficiency of this claim to conclude that denial of the Pembertons' motion is also warranted for this claim. "Where—as here—an amended complaint asserts new legal theories, leave to amend does not advance Rule 15(a)'s purpose." *Affiliates, Inc. v. Armstrong*, No. 1:09-CV-00149-BLW, 2011 WL 3678938, at *3 (D. Idaho Aug. 23, 2011). This case has been pending for nearly five years, during which the Pembertons have not once raised even a whiff of a third-party beneficiary breach of contract claim despite alleging that BANA transferred their loan to Nationstar. A "radical shift in direction posed by these [proposed] claims, their tenuous nature, and the inordinate delay" weigh against granting leave to amend. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). The Pembertons' assertion of this claim now—only after the Court has rejected the Pembertons' contract theories based on the contract to which they are actually a party—raises the additional concern that the Pembertons seek to evade the Court's previous rulings by seeking to find a new contract for which they can argue Section 6050H is a term. *See Fresno Unified Sch. Dist.*, 980 F. Supp. 2d at 1177–78 ("Courts have been particularly critical of proposed

---

[1] Rovai expressly alleges that BANA only "now properly includes payments of deferred interest on the Forms 1098 it issues." (*Rovai v. Select Portfolio Servicing*, No. 14-cv-1738-BAS-MSB, (S.D. Cal.) ECF No. 1 ¶ 15; ECF No. 39 ¶ 15; ECF No. 86 ¶ 15).) The only reasonable inference that can be drawn is that BANA did not credit and report deferred interest payments in the manner Rovai alleges Section 6050H requires during the time that BANA serviced her home mortgage loan. Although the Pembertons allege that BANA serviced their loan immediately prior to Nationstar, they do not allege that BANA also failed to report deferred interest payments. Thus, the Court cannot conclude that a breach of contract claim based on the transfer agreement would similarly be futile.

amendments that appear to 'game' the system."). Under these circumstances, the Court declines to exercise its broad discretion to permit amendment for this claim.

## CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** the Pembertons' motion to supplement. (ECF No. 100.)

**IT IS SO ORDERED.**

**DATED: April 23, 2019**

Hon. Cynthia Bashant
United States District Judge