LAW OFFICE OF DAVID J. VENDLER
David J. Vendler, Esq. (SBN 146528)
Email: djvlegal@gmail.com
2700 South Oak Knoll Ave.
San Marino, California 91108
Tel.: (213) 700-5194

MICHAEL R. BROWN, APC
Michael R. Brown, Esq. (SBN 65324)
Email: mbrown@mrbapclaw.com
2030 Main Street, Suite 550
Irvine, California 92614
Tel.: (949) 435-3888
Fax: (949) 435 3801

Attorneys for Plaintiffs MICHAEL PEMBERTON
and SANDRA COLLINS-PEMBERTON,
and all others similarly situated

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PEMBERTON and SANDRA COLLINS-PEMBERTON, individually, and on behalf of the class of all others similarly situated,<br><br>       Plaintiff,<br><br>       vs.<br><br>NATIONSTAR MORTGAGE LLC, a Federal Savings Bank,<br><br>       Defendant. | Case No. 3:14-cv-01024-BAS-MSB<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; DECLARATIONS OF DAVID J. VENDLER, MICHAEL R. BROWN (FILED IN SUPPORT OF THE SEPARATE MOTION FOR ATTORNEY'S FEES) DECLARATIONS OF JENNIFER M. KEOUGH AND THEA CROSS RE CLASS NOTICE AND CLASS PARTICIPATION**<br><br>[filed concurrently with plaintiffs' separate motion for attorneys' fees and class representative enhancement awards and the Declarations of David J. Vendler and Michael R. Brown]<br><br>Date:  January 13, 2020<br>Time:  11:00 AM<br>Crtrm.: 4B<br>Judge:  Hon. Cynthia Bashant<br>Action Filed:  April 23, 2014 |

**TO THE COURT, DEFENDANT AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 13, 2019 at 11:00 a.m. or as soon thereafter as the matter may be heard before the Honorable Cynthia Bashant in Courtroom 4B of the United States District Court, Southern District of California, 333 W Broadway, San Diego, CA 92101, plaintiffs Michael and Sandra Collins-Pemberton ("plaintiffs" or "Named Plaintiffs") will and hereby do move, pursuant to Federal Rule of Civil Procedure 23(e), for an order: (a) determining that the Settlement[1] previously preliminarily approved by the Court is fair, reasonable, and adequate and (b) entering the order and judgment finally approving the Settlement submitted herewith.  (A separately filed motion will seek the Court's approval for Class Counsel's attorneys' fees and the approval of an enhancement award to the Named Plaintiffs).

The motion is made on the grounds that: (1) the Class Notice has been effectuated as previously ordered; (2) the Class Notice fairly apprised Class Members of the terms of the Settlement, including the amount that would be requested for attorneys' fees and for the Named Plaintiffs' enhancement award; (3) the time for receiving claims/exclusions has passed[2], as previously ordered in the Court's October 9, 2019 "ORDER: (1) PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT;  (2) CONDITIONALLY APPROVING PROPOSED

---

[1] Capitalized terms, where used herein, have the same meanings as in the parties' full settlement agreement that is attached as Exhibit 1 to the Declaration of David J. Vendler ("Vendler Decl.") filed in support of plaintiffs' motion for preliminary approval. See ECF No. 130-1. That declaration is also incorporated herein insofar as it describes the history of the litigation and its settlement.

[2] The time for objections will not have passed as of the deadline for the filing of this motion.  As of the filing date, there have been no objections filed to the Settlement. A supplemental declaration from the class administrator will be filed after the December 30, 2019 objection deadline but prior to the January 13, 2020 final approval motion hearing date letting the Court know what, if any, objections were filed prior to December 30 as well as final statistics on class participation.

SETTLEMENT CLASS; AND (3) SETTING HEARING OF FINAL APPROVAL OF SETTLEMENT" (ECF No. 131) (hereinafter "Preliminary Approval Order") (ECF No. 131); (4) all requirements for certification of a class action solely for settlement purposes are met (as found in the Court's Preliminary Approval Order); (5) the Settlement is in the best interest of Class Members; and (6) the Named Plaintiffs' attorneys are experienced in complex litigation and have zealously and adequately represented the interests of Class Members in a non-collusive manner.

This motion is based upon: (1) this notice of the motion; (2) the memorandum in support of the motion; (3) the Declarations of: Thea Cross ("Cross Decl."), Jennifer M. Keough (Keough Decl.) as well as those of David J. Vendler ("Vendler Decl.") and Michael R. Brown ("Brown Decl.") which are filed as part of plaintiffs' concurrently filed motion for attorneys' fees and Named Plaintiff enhancement award; (3) the pleading and papers previously filed with the Court; (4) the oral arguments of counsel; and (5) such additional matter as the Court may consider, including any opposition to any objections of class members. Additionally, as noted, a supplemental declaration of Ms. Keough will be filed after the close of the objection period which will provide the final statistics relating to the participation of the class and any objections thereto.

Dated: December 16, 2019             Respectfully submitted,

LAW OFFICE OF DAVID J. VENDLER

*/s/ David J. Vendler*
David J. Vendler, Esq.

MICHAEL R. BROWN, APC

*/s/ Michael R. Brown*
Attorneys for Named Plaintiffs
MICHAEL AND SANDRA COLLINS-PEMBERTON, and all others similarly situated

# **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................. 1

        1.      Summary of the Settlement ....................................................... 4

II.     PROCEDURAL HISTORY OF THE CASE .................................................. 5

III.    ADEQUATE NOTICE WAS PROVIDED TO THE CLASS AND TO
        GOVERNMENTAL AGENCIES IN ACCORDANCE WITH THE
        PRELIMINARY APPROVAL ORDER ........................................................ 6

IV.     THE BENEFITS OF THE SETTLEMENT TO THE CLASS MEMBERS
        ARE SUBSTANTIAL AND JUSTIFY FINAL APPROVAL ........................ 6

V.      ARGUMENT – THE SETTLEMENT IS REASONABLE, ADEQUATE,
        AND SHOULD BE FINALLY APPROVED.................................................. 7

        1.      The Strength Of The Plaintiffs' Case Was Much Vitiated By
                The Court's Prior Rulings And Plaintiffs Still Faced Much
                Uncertainty With Respect To Their Remaining Claims ........................ 9

        2.      The Risk, Expense, Complexity, And Likely Duration Of
                Further Litigation Justifies Final Approval – Any Further
                Delay Would Hurt The Class………………………………………...11

        3.      The Risk Of Maintaining Class Action Status Throughout
                The Trial Supports Final Approval ........................................ 13

        4.      The Amount Offered In Settlement .......................................... 13

        5.      The Extent Of Discovery Completed And The Stage Of The
                Proceedings Favor Approval Of The Settlement. ................................ 15

        6.      The Experience And View Of Counsel .................................... 16

        7.      The Presence Of A Governmental Participant...................................... 16

        8.      The Reaction Of The Class Members To The Proposed
                Settlement Has Been Positive ................................................ 17

VI.     CONCLUSION .................................................................................. 18

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1

## **TABLE OF AUTHORITIES**

2

**Cases**

3

*Barbosa v. Cargill Meat Solutions Corp.*,

4
    297 F.R.D. 431 (E.D. Cal. 2013)............................................................9

5

*Churchill Village, LLC v. Gen. Elec.*,

6
    361 F.3d 566 (9th Cir. 2004)...........................................................17

7

*Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992).......................8, 9

8

*Curtis–Bauer v. Morgan Stanley & Co.*,

9
    2008 WL 4667090 (N.D.Cal. 2008)..................................................9

10

*Deputy v. du Pont*, 308 U.S. 488 (1940)..............................................1

11

*Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010) .................8

12

*Eisen v. Porsche Cars North America, Inc.*,

13
    2014 WL 439006 (C.D.Cal. 2014)....................................................17

14

*Fraley v. Facebook, Inc.*, 966 F.Supp.2d 939 (N.D.Cal. 2013) .................9

15

*Garner v. State Farm Mut. Auto. Ins. Co.*,

16
    2010 WL 1687832 (N.D.Cal. 2010).........................................8, 9, 17

17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988)........................9

18

*Horn v. Bank of America, N.A.*,

19
    2014 WL 1455917 (S.D.Cal. 2014) .........................................3, 7, 14

20

*In Chun-Hoon v. McKee Foods Corp.*,

21
    716 F.Supp.2d 848 (N.D.Cal. 2010) ..............................................18

22

*In re Aremis Soft Corp. Sec. Litig.*,

23
    210 F.R.D. 109 (D.N.J. 2002) ......................................................11

24

*In re M.D.C. Holdings Securities Litigation*,

25
    1990 WL 454747 (S.D.Cal. 1990) ..................................................12

26

*In re Mego Fin. Corp. Sec. Litig.*,

27
    213 F.3d 454 (9th Cir. 2000).......................................................8, 17

28

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir.1998).........8, 15

*Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173 (9th Cir. 1977) ..............................8

*Mikulski v. Centerior Energy Corp.*,
  501 F.3d 555 (6th Cir. 2007)........................................................11

*Molski v. Gleichi*, 318 F.3d 937 (9th Cir. 2003)..........................................8

*Murillo v. Pacific Gas & Elec. Co.*,
  2010 WL 2889728 (E.D.Cal. 2010) ..............................................16

*Nat'l Rural Telecomms.*, 221 F.R.D.523 (C.D.Cal. 2004)........................................17

*Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ..............................................8

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir.1982)........................................................9, 16

*Old Colony R. Co. v. Comm'r. of Internal Revenue*,
  284 U.S. 552 (1932) ..............................................1, 3

*Republic Nat'l Life Ins. Co. v. Beasley*,
  73 F.R.D. 658 (S.D.N.Y. 1977)........................................................9

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..............................................8

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir.1993) ..................................8

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ..................................14

*Wilshire Holding Corporation v. Commissioner*,
  262 F.2d 51 (9th Cir. 1958)........................................................1

**Statutes**

26 U.S.C. § 6050H........................................................1, 10

26 U.S.C. § 6511........................................................12

26 U.S.C. § 6511(a) ........................................................3, 12

26 U.S.C. § 7422........................................................10

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   INTRODUCTION

As this Court is well aware, this case involves allegations that plaintiffs and Class Members suffered damages by virtue of Nationstar's incorrectly under-reporting the amount of mortgage interest they paid on IRS Forms 1098. Forms 1098 are sent to mortgagees by lenders or mortgage servicers (such as defendant Nationstar Mortgage, LLC ("Nationstar" or "defendant")) pursuant to 26 U.S.C. § 6050H ("6050H"). Forms 1098 are relied on by home-owners, their tax preparers, and the IRS to determine the amount of mortgage interest that can be deducted from the mortgagee's income during a given year.

Plaintiffs contended in this suit that 6050H's terms are straightforward and unambiguous; it requires recipients of "interest"[3] on "any mortgage" to report to both the IRS and to the mortgagee on Form 1098 the amount of "interest" the recipient has "received" from the mortgagee during the "calendar year" (if that amount over $600). The statute does not contain any exceptions, exclusions, or other qualifying language that would exclude particular kinds of "interest" or any particular type of mortgage from its reporting requirement.[4]

As noted in the Court's Preliminary Approval Order, Nationstar agrees with

---

[3] The Supreme Court has held that the word "interest" in tax statutes is unambiguous and means "the amount which one has contracted to pay for the use of borrowed money." *Old Colony R. Co. v. Comm'r. of Internal Revenue*, 284 U.S. 552, 560-561 (1932). See also *Deputy v. du Pont*, 308 U.S. 488, 497 (1940)). (The Ninth Circuit also has held that the definition of interest is easy to apply. "Roughly, interest is the rental price of money." *Wilshire Holding Corporation v. Commissioner*, 262 F.2d 51, 53 (9th Cir. 1958)).

[4] The pertinent portion of 6050H provides that "Any person— (1) who is engaged in a trade or business, and (2) who, in the course of such trade or business, receives from any individual interest aggregating $600 or more for any calendar year on any mortgage, shall make the return described in subsection (b) with respect to each individual from whom such interest was received at such time as the Secretary may by regulations prescribe.

1    plaintiffs' main contention that capitalized or deferred interest that is incurred on

2    Pay Option Adjustable Rate Mortgages ("Option ARMS") and which is later paid by

3    the mortgagee is "interest" that *can* be reported by Nationstar on Forms 1098 and

4    which then can deducted by its mortgagees.  Where the parties differed in their

5    contentions is whether 6050H *requires* that such interest be reported on Forms 1098.

6        As also noted in the Court's Preliminary Approval Order, while Nationstar's

7    corporate-wide interest reporting policy *is to report payments of capitalized interest*

8    *on Forms 1098*, it admitted in discovery that it did not do so for plaintiffs and the

9    Class Members.  Nationstar's "reason" for its having not reported plaintiffs' Class

10   Members' capitalized interest payments was that when it took over certain portfolios

11   of loans, the prior owner/servicer of the mortgage did not include deferred interest

12   amounts in the data it transferred to Nationstar.  At the same time, Nationstar

13   admitted that despite its policy for reporting payments of capitalized interest and

14   even though it knew that the portfolios it was acquiring contained Option ARM

15   loans that invariably included such interest, it made absolutely no effort to

16   determine the capitalized interest amounts that were due on those mortgages.  Thus,

17   tens of millions of dollars in deductible mortgage interest went unreported and,

18   hence, the mortgagees lost the deductions they could have taken.

19       This Court ultimately sided with Nationstar on whether 6050H *requires* the

20   reporting of mortgagee payments of capitalized interest when it held that 6050H is

21   ambiguous as to "how, whether, and *when*" such interest must be reported on Forms

22   1098. See ECF No. 114 at p. 16 (emphasis original).  Although the Named Plaintiffs

23   and their counsel continue to believe that the Court is wrong on all of these

24   findings,[5] and while they would have certainly continued to challenge these findings

25

26   _____

     [5] For the record, plaintiffs' contentions on the "how, whether and when" issues are
27   as follows:

28   How – all mortgage interest is to be reported on Forms 1098 (if over $600);

1   in both this Court and in the Court of Appeal if the case had continued, they

2   nonetheless were required to face the Court's rulings realistically.  The Settlement

3   was the result of: (1) that realistic evaluation and (2) Nationstar's revelation in

4   discovery in 2018 that, in 2016, Nationstar had begun reporting the very capitalized

5   interest payments plaintiffs had been complaining about.

6       Indeed, as noted in the Court's Preliminary Approval Order, ***as a direct result***

7   ***of this lawsuit,*** Nationstar undertook to try to correct its failure to report Class

8   Members' deferred interest payments.  See ECF No. 131 at p. 7.  Indisputably, the

9   reasons it did so were: (1) that it thought plaintiffs were right in their theory and (2)

10  Nationstar knew that every year that passed would increase the potential damage

11  award against it because of the 3-year statute of limitations for amending prior

12  returns.  See 26 U.S.C. § 6511(a).  Thus, from 2016 forward, and for some 2,867

13  loans, Nationstar's corrections resulted in an additional $50,663,194.44 in

14  capitalized interest payments being included in corrected Forms 1098 for tax years

15  2015-2018.  See Cross Declaration, ¶ 3.  Assuming the same 20% average marginal

16  tax rate that was used by Judge Curiel in *Horn v. Bank of America, N.A.*, 2014 WL

17  1455917 *6 (S.D.Cal. 2014), the value to the class from plaintiffs' forcing

18  Nationstar to implement its fix by their lawsuit was $10,132,639. This is a concrete

19  benefit that this case indisputably brought to Class Members.  *Id.*

20      This "fix," however, did not moot the plaintiffs' case because it did nothing

21  for Class Members whose loans had been repaid or transferred to another

22  
_____

23  Whether – 6050H requires reporting of "mortgage interest" and contains no

24  language of any kind.  Capitalized interest is "interest" under the Supreme Court's
    definition of "interest," which is money charged for the use of money.  See *Old*

25  *Colony* and *Deputy*, *supra.*

26  When – On its face, 6050H requires mortgage interest be reported in the calendar
    year in which it is paid and no other.

27  Further, plaintiffs contended that since 6050H is unambiguous, there is no need to

28  defer to the IRS at all.

1  lender/servicer before Nationstar implemented its "fix."  Also, Nationstar, has

2  conceded that its process for identifying the number of loans that might have paid

3  deferred interest was not foolproof and so at least some Class Members whose loans

4  remained with Nationstar might not have been addressed in its initial "fix."  Cross

5  Declaration, ¶ 3.  The Settlement thus attempts to provide some relief to those Class

6  Members who were left out of the 2016 "fix."

7        **1.     Summary of the Settlement**

8       In addition to the $10,132,639 benefit that the Class has already obtained by

9  Nationstar's reporting over $50 million in additional interest to the class as a result

10 of the 2016 "fix," the Settlement provides that each Class Member who makes a

11 claim and who received an incorrect Form 1098 from Nationstar during the class

12 period will receive, depending on the tax years in which s/he/they paid capitalized

13 interest, (1) amended Forms 1098 (if the Class Member paid the deferred interest in

14 2016 forward), and/or $50.00 if s/he/they paid capitalized interest prior to 2016.

15 (Class Members can obtain both kinds of relief if s/he/they paid capitalized interest

16 both pre-2016 and post 2016).  It is unknown at present the total number of Class

17 Members that will present valid claims by the claims deadline.  Nationstar will

18 provide a supplemental declaration attesting to the final class participation numbers

19 and the corresponding benefits provided prior to the final approval hearing.

20      The Settlement also provides that Nationstar will pay: (1) Class Counsel's

21 attorneys' fees (up to $700,000); (2) any enhancement award for the Named

22 Plaintiffs awarded that does not exceed $10,000 for each Named Plaintiff.  (Both of

23 these amounts are sought through Class Counsel's separate motion for an award of

24 attorneys' fees).

25      Finally, the Settlement provides that Nationstar will pay all costs of class

26 administration, which are estimated to be approximately $250,000 after the claims

27 have been fully administered.

28      Because the Settlement is reasonable given the risks inherent in litigation, and

is adequate in terms of the relief being afforded to the Class Members, the Named Plaintiffs are seeking through this motion (and their separately filed motion for attorneys' fees): (1) this Court's final approval of the Settlement, (2) that the Court award to Class Counsel fees to be paid by Nationstar in the amount of $700,000 and (3) that the Court approve an enhancement award in the amount of $10,000 to each class representative to be paid by Nationstar.

## II.    PROCEDURAL HISTORY OF THE CASE

Since this Court succinctly set forth the procedural history of this case in its Preliminary Approval Order (ECF No. 131), plaintiffs incorporate here that recitation (and theirs from their motion for preliminary approval of the Settlement) (ECF No. 130).  They do, however, want to reemphasize that the Court's ruling denying plaintiffs' motion to supplement/amend their complaint (ECF No. 114) was especially significant to plaintiffs and their counsels' decision to settle, insofar as the Court's determination that 6050H was ambiguous as to "how, whether and *when*" borrower payments of deferred interest must be reported cast substantial doubt as to the continued viability of all of the plaintiffs' claims against Nationstar. See ECF No. 114 at p. 16 (emphasis original).  Even though the Named Plaintiffs and their counsel believe that the Court's findings are erroneous, they determined that obtaining some benefit for the class was better than the very real risk of obtaining none if the case were litigated further – a bird in the hand is worth two in the bush, as it were. And, based on rulings related to the pleadings, as well as potential rulings on threatened dispositive motions, Counsel recognized the case would eventually be in the Court of Appeal for many years absent a negotiated settlement.  And, as more particularly described below, because of the immovable 3-year statute of limitations for amending tax returns, any further delay in bringing a settlement to the class would inevitably cost Class Members money.

/ / /

/ / /

## III.   ADEQUATE NOTICE WAS PROVIDED TO THE CLASS AND TO GOVERNMENTAL AGENCIES IN ACCORDANCE WITH THE PRELIMINARY APPROVAL ORDER

As is set forth in the Keough Decl., notice was completed to Class Members and to governmental agencies (pursuant to CAFA) in the manner set forth in the Court's Preliminary Approval Order.  Thus, Class Members have received the constitutionally mandated notice required for due process and all affected governmental agencies have had the opportunity to intervene.  None have chosen to do so. See Keough Decl., generally.

## IV.   THE BENEFITS OF THE SETTLEMENT TO THE CLASS MEMBERS ARE SUBSTANTIAL AND JUSTIFY FINAL APPROVAL

The Settlement benefits the following Class:

All persons who, according to Nationstar's reasonably available computerized records, had or have Option ARM Loans serviced by Nationstar and made payments to Nationstar in any tax year from 2010 to 2018.

The Settlement should be approved as reasonable and adequate because the Settlement, when combined with the 2016 "fix" plaintiffs earlier forced out of Nationstar, achieves substantially all of the objectives Named Plaintiffs sought in their complaint and avoids the risks inherent in continued litigation.

Indeed, when plaintiffs filed this suit, their goal was not so much to obtain damages against Nationstar as it was to have Nationstar issue corrected Forms 1098 whereby Class Members could *avoid* being damaged (other than accountancy fees necessary to amending their tax returns) by having the ability to deduct the full amount of the mortgage interest they paid.  The correction of a systemic problem, that retroactively cures an error and prospectively puts a proper procedure in place, benefits all class members.  At the time the lawsuit was filed, the value of correcting this reporting problem was unknown.  However, the 2016 "fix" that Nationstar implemented, (without telling the Court or counsel although it was two years after

this action was filed, and which it admits was as a result of this case), accomplished plaintiffs' primary goal for the overwhelming majority of Class Members. As set forth in the Cross Declaration, the value of this fix undertaken by Nationstar resulted in a tax benefit of over $10 million to Class Members based on the *Horn* formula.

For the balance of Class Members who paid capitalized interest during tax years 2016 forward, and who have made a claim, the Settlement provides them also with the ability to get their full interest deductions for these years by using the corrected Form 1098 that will be issued to them pursuant to the Settlement to amend their prior tax returns for those years.

Indeed, the only goals plaintiffs sought in the original complaint that were not achieved by the Settlement and the 2016 "fix" are as follows: (1) a lack of future injunctive relief against Nationstar – which does not *now* appear was necessary since Nationstar's corporate policy had always been to report capitalized interest payments on Forms 1098); (2) accountancy fees necessary for claimants who were not included in Nationstar's original "fix" and who paid deferred interest in tax years post-2016 to amend their tax return; (3) the ability for claimants who paid deferred interest prior to tax year 2016 to Nationstar who were either (a) not included in Nationstar's "fix" because they paid or transferred their loans prior to the "fix" being implemented or (b) who otherwise somehow fell through the cracks of Nationstar's 2016 search to obtain their full deductions – they will only receive $50. While this amount is generally disappointing to Class Counsel, it was a concession they felt they needed to accept based on (1) the weakened position the Court's rulings placed plaintiffs in and (2) in order to obtain Nationstar's concurrent agreement to provide corrected Forms 1098 to class claimants who paid deferred interest from 2016 forward.

## V.   ARGUMENT – THE SETTLEMENT IS REASONABLE, ADEQUATE, AND SHOULD BE FINALLY APPROVED

The purpose of this second stage of the class action approval process – the

"final approval" hearing – is for the court to finally determine whether the parties should be allowed to settle the class action pursuant to the terms agreed upon. *Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

> The 'universally applied standard' in determining whether a court should grant final approval to a class action settlement is whether the settlement is 'fundamentally fair, adequate, and reasonable.' [Citations omitted]. Id. See also, *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); and *Marshall v. Holiday Magic, Inc.*, 550 F.2d 1173, 1178 (9th Cir. 1977).

*Id.*

The Ninth Circuit has identified the following factors for courts to weigh in determining whether a proposed class action settlement meets this standard:

(1) The strength of the plaintiff's case;

(2) The risk, expense, complexity, and likely duration of further litigation;

(3) The risk of maintaining class action status throughout the trial;

(4) The amount offered in settlement;

(5) The extent of discovery completed and the stage of the proceedings;

(6) The experience and view of counsel;

(7) The presence of a governmental participant; and

(8) The reaction of the Class Members to the proposed settlement.

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.1998); *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 963 (9th Cir. 2009) (quoting *Molski v. Gleichi*, 318 F.3d 937, 953 (9th Cir. 2003) overruled on other grounds by *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010)).

These factors cannot be applied mechanically; even a single factor sufficiently favoring settlement may outweigh all the others. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir.1993).  The over-arching test is whether "the interests of the class are better served by the settlement than by further litigation." *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832 *8 (N.D.Cal. 2010) (quoting Manual for Complex Litig. (Fourth) § 21.61 (2004)).

Thus, "the decision to approve or reject a settlement [under Rule 23(e)] is committed to the sound discretion of the trial Judge." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988). However, this discretion must be exercised bearing in mind the strong policy favoring the compromise and settlement of class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir.1982); *City of Seattle*, 955 F.2d at 1276; *Garner* at *8; *Curtis–Bauer v. Morgan Stanley & Co.*, 2008 WL 4667090 *4 (N.D.Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.")

The fairness of a settlement must be evaluated as a whole, rather than by assessing its individual components. *Hanlon*, 150 F.3d at 1026. Thus, the question is not whether the settlement is perfect, or even whether it could have been better, but is just whether the settlement is within the realm of reasonableness. *Id*. at 1027 and Garner *8; and *Fraley v. Facebook, Inc.*, 966 F.Supp.2d 939, 941 (N.D.Cal. 2013). "Settlements are afforded a presumption of fairness if (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 445 (E.D. Cal. 2013). Put another way, approval should be granted unless the settlement, "taken as a whole, is so unfair on its face as to preclude judicial approval." *Republic Nat'l Life Ins. Co. v. Beasley*, 73 F.R.D. 658, 667 (S.D.N.Y. 1977) (citations omitted).

When the above legal standards are applied to the Settlement presently before the Court, final approval is the only reasonable result.

**1.    The Strength Of The Plaintiffs' Case Was Much Vitiated By The Court's Prior Rulings And Plaintiffs Still Faced Much Uncertainty With Respect To Their Remaining Claims**

This case was hardly a "slam dunk" for the plaintiffs at the time the Settlement was agreed to. Quite the opposite. Their case could be said to have been

1   hanging by a mere thread.  Even at the beginning, their theory for imposing liability

2   against Nationstar was novel and as was ably pointed out in Nationstar's several

3   motions to dismiss, there were many legal hurdles which could have derailed

4   plaintiffs' case.

5         Plaintiffs have already pointed to the significance of the Court's ruling that

6   6050H is ambiguous as to "how, whether and *when*" to report borrower payments of

7   deferred interest. See ECF No. 114 at p. 16 (emphasis original).  But there was also

8   a host of other substantive and procedural arguments plaintiffs were going to have to

9   finally prevail upon, including, but hardly limited to: (1) federal

10  preemption/exclusive IRS enforcement jurisdiction, (2) lack of standing; (3) that

11  plaintiffs' claims should be barred by both 26 U.S.C. § 7422 and the Anti-Injunction

12  Act; and (3) that the Pembertons could not state a claim for damages because,

13  pursuant to IRS publication 936, they could have claimed additional amounts of

14  interest than were stated by Nationstar in their Forms 1098.

15        Apart from these potential problems, there were also potential difficulties

16  specific to plaintiffs' several state law and federal claims.  Plaintiffs' claim under 26

17  U.S.C. § 6050H was dismissed at the outset because the statute, according to the

18  Court, does not provide for a private cause of action.  Plaintiffs' contract-related and

19  fraud claims had also been dismissed.  Plaintiffs were thus left with only a

20  negligence claim for damages and a substantially narrowed California UCL claim.

21        There was also always looming over the case, the possibility that the IRS

22  could intervene and/or that it could assert a position in a revenue ruling or regulation

23  that was directly contrary to the plaintiffs' theory.  While certainly not binding on

24  the Court, an IRS revenue ruling that 6050H does not require the reporting of

25  capitalized interest would certainly have had a negative impact on the case.  This

26  was a real possibility since the IRS has officially put the issue of the reportability of

27  deferred interest on its Priority Guidance List.

28        And then there was also the issue of whether the Court would certify the

class. While this Court has found all of the elements necessary to certify a class for settlement have been met, that determination rests on fewer elements than the determination of a class for purposes of trial.

But even if plaintiffs succeeded on class certification, they were still certainly going to face a summary judgment motion by Nationstar on (at least) all of the issues that were raised by Nationstar in the motions to dismiss that it lost on.

These are just some of the many hazards that could have derailed plaintiffs' action entirely, or left it in litigation limbo for years while the issues were sorted by courts of appeal.  Indeed, as the issues in this case are mostly matters of first impression in the Circuit Courts, with the exception of the *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) case, and since pertinent case law is relatively sparse, this case would likely have ended up in the Ninth Circuit no matter which side won at trial.

In sum, while litigation is never free of uncertainty,[6] plaintiffs' position in the litigation was weak at the time of the Settlement; a number of their claims had already been dismissed outright and the Court's "how, whether and when" determination with respect to the (supposed) ambiguity of 6050H substantially threatened the few claims that remained. See ECF No. 114 at p. 16 (emphasis original).  Indeed, plaintiffs submit that given where the case was, this factor alone could justify the Court in granting final approval to the settlement.

### 2. The Risk, Expense, Complexity, And Likely Duration Of Further Litigation Justifies Final Approval – Any Further Delay Would Hurt The Class

Apart from the relative weakness of plaintiffs' case and the complexity of

---

[6] See *In re Aremis Soft Corp. Sec. Litig.*, 210 F.R.D. 109, 125 (D.N.J. 2002) ("Regardless of the strength of case counsel might present at trial, victory in litigation is never guaranteed."

1   issues the case raises (as set forth above, and in the Court's detailed motion to

2   dismiss orders), there is another factor that strongly favors final approval and which

3   weighed heavily on Class Counsel in their decision to recommend the Settlement.

4   And that is time.

5       While a great many cases hold that early settlements generally benefit all

6   parties and the Court,[7] this is particularly true in the unique circumstances of this

7   case because of the three-year period for filing amended tax returns – 26 U.S.C. §

8   6511; with each passing year, it becomes impossible to amend from three years

9   before.  As it stands, 2016 is the last tax year that still can be amended.  If the

10  litigation continued, that year would soon be lost in terms of any possibility for

11  amendment.

12      Class Counsel also had to consider that the Class Members are comprised

13  primarily of financially distressed homeowners.  After all, this was the reason many

14  people chose an Option Arm loan in the first instance.  The simple fact is that the

15  window of obtaining monetary relief from the IRS through amending prior tax

16  returns was, and is, a vanishing one by statute.  It simply would not have been

17  available if the case had proceeded to a later settlement or trial.

18      By concluding this case now, at least Class Members who paid capitalized

19  interest in 2016 (or after) can obtain the *full amount* of their tax deductions (as

20  opposed to being limited to the mere *potential* of seeing a damage award from

21  Nationstar a long time in the future).

22      Unfortunately, because of the immoveable 3-year statute of limitations for

23  amending tax returns imposed by 26 U.S.C. § 6511(a), it was always a virtual

24  certainty that the longer this case was litigated, the worse the end result would be for

25

26  [7] *In re M.D.C. Holdings Securities Litigation*, 1990 WL 454747 * 7 (S.D.Cal. 1990)

27  "Early settlements benefit everyone involved in the process and everything that can
    be done to encourage such settlements—especially in complex class action cases—

28  should be done."

the class.  Plaintiffs' counsel made this point repeatedly, while the case was stayed, in their semi-annual reports to the Court.  It was always going to be easier to get Nationstar to issue corrected Forms 1098 than it was going to be to have it agree to pay cash from its own pocket in damages for years where tax returns could no longer be amended.

Thus, this factor strongly supports settlement.  For if no settlement approval is given, the ability to amend for tax year 2016 will slip away just as it has for tax years 2010-2015.

### 3. The Risk Of Maintaining Class Action Status Throughout The Trial Supports Final Approval

As noted, this Court has already found most of the elements exist for certification of a class.  And while plaintiffs are confident that they could demonstrate all of the necessary Rule 23 factors to support certification, Nationstar is certainly not going to concede the issue.  Because no class certification motion has yet been filed, plaintiffs do not want to speak for Nationstar as to the arguments it will make in opposing such a motion.  However, based on other cases that Class Counsel have litigated, Nationstar may argue, for instance, that because each Class Member's tax situation is unique to them, a class action would be unmanageable. Plaintiffs do not believe this argument has merit based on: (1) the substantial number of cases that hold that differences in damages should not bar a class from being certified and (2) the legion of cases that hold that manageability should be subordinated where, as here, the Class Members would otherwise likely obtain no relief.  But, the mere existence of this argument and others Nationstar is sure to come up with, undoubtedly poses a future risk to plaintiffs' case.

### 4. The Amount Offered In Settlement

As stated, the value of the agreed upon review and issuance of corrected Forms 1098 for years 2016-2019 will not entirely be known as of the time this motion is filed insofar as the aggregate amount of the Forms 1098 to be issued to

Claimants for tax years 2016-2019 will not be known until Nationstar completes its file by file review of the claims that have been filed.  Cross Decl., ¶ 3.  And, while Nationstar has agreed to undertake this task as quickly as possible, with the intent to deliver corrected Forms 1098 for tax year 2016 immediately upon final approval of the settlement (to allow Class members to timely amend 2016 tax returns), it has no legal obligation to do this until the Settlement becomes effective.  However, we can turn to the 2016 "fix" and the more than $10 million that resulted from this correction as proof that providing corrected Forms 1098 provides real value to the Class Members.  See *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002) (where counsel's performance generates benefits beyond a purely cash settlement, those are entitled to be valued for purposes of a settlement).  In terms of the cash portion of the settlement (made up of the $50 payments to Class Members who paid deferred interest to Nationstar prior to 2016), the amount of the payments will not be known until all claims have been filed and Nationstar has had an opportunity to review each properly filed payment, which will be $_____ based on the number of claims so far.

In its Preliminary Approval Order, this Court asked "the Parties to outline what monetary relief they believe Class Members could possibly have obtained had they been successful after trial and how the Parties came up with the $50.00 figure." Plaintiffs respond here for themselves alone and not for Nationstar.  Were plaintiffs to prevail in the case, their measure of damages would have been the value of the deductions which Class Members lost as a result of Nationstar not having reported her/his/their deferred interest payments. Assuming an average marginal tax rate of 20%, as was done in *Horn*, Class Member damages would average $0.20 for every dollar that was not reported by Nationstar.  As to the Court's second question, the $50 dollar settlement payment amount was not determined as a function of the potential damages to each class member, but was an amount plaintiffs and their counsel agreed to accept: (1) given the significantly weakened litigation position

plaintiffs were in following the Court's ruling on their motion to amend/supplement their complaint vis à vis obtaining additional relief for the Class Members beyond the relief they had already obtained by virtue of Nationstar's 2016 "fix" and (2) in order to secure Nationstar's agreement to issue corrected Forms 1098 for Class Member payments of capitalized interest in tax years 2016 forward.  As stated, Nationstar will provide a more detailed declaration relating to final class participation numbers prior to the final approval hearing.

But the cash amount of the settlement will clearly comprise only a small portion of the overall value to the Class Members from this case. See Cross Declaration, ¶ 5(c).  But the relatively modest amount of the cash portion of the settlement is no reason not to approve the Settlement, especially given the procedural posture of the case at the time the Settlement was entered into as described above.  To the contrary, the value of getting Nationstar to issue corrected Forms 1098 for 2016-2018 (along with the value previously generated from the 2016 "fix") along with the cash payments is more than sufficient justification for why the Settlement should be approved.

### 5.    The Extent Of Discovery Completed And The Stage Of The Proceedings Favor Approval Of The Settlement.

As noted by the Court in its Preliminary Approval Order, this case has been pending for a long time.  Extensive discovery and motion work have been done by both sides and the Settlement was negotiated at arms' length.  All of this, allowed plaintiffs "sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir.1998).   Negotiations began with a private mediator, Hon. Ronald Sabraw (Ret.).  When that mediation did not resolve the case, the parties sought the assistance of a Magistrate Judge, Michael S. Berg.  Judge Berg held an in-person settlement conference, at which time each side submitted substantial settlement briefs.  The parties met in person with Magistrate Berg and after a full day of negotiating, Judge Berg was able to

1  formulate a settlement acceptable to both sides.[8]  Because the Settlement was

2  reached after arms' length negotiations based upon adequate discovery, this factor

3  favors final approval.

4        **6.**    **The Experience And View Of Counsel**

5       "When approving class action settlements, the court must give considerable

6  weight to class counsel's opinions due to counsel's familiarity with the litigation and

7  its previous experience with class action lawsuits." *Murillo v. Pacific Gas & Elec.*

8  *Co.*, 2010 WL 2889728 *10 (E.D.Cal. 2010); *Officers for Justice v. Civil Serv.*

9  *Comm'n of the City & County of S.F.*, 688 F.2d 615, 625 (9th Cir.1982).

10       As noted by the Court in its Preliminary Approval Order, Class Counsel's

11  declarations reveal that they are very experienced in class action litigation generally,

12  and specifically including class actions involving complex issues of tax law.  Class

13  Counsel both recommend final approval of this settlement given the Court's prior

14  rulings.  This factor thus favors settlement.  Vendler Decl., Brown Decl.

15        **7.**    **The Presence Of A Governmental Participant**

16       There is no governmental participant presently in this case.  As such, this

17  factor really does not apply.  However, as noted, there has always been a risk that

18  the IRS *could* intervene in the case or *could* issue a regulation that would negatively

19  affect the case.  In fact, this Court all but asked it to do so.  This uncertainty about

20  the IRS's position on the reportability of capitalized interest on Forms 1098 also

21  favors settlement.

22       Further, pursuant to the Class Action Fairness Act ("CAFA"), Nationstar was

23  obligated to notify the United States Attorney General and certain other federal and

24  state officials as a condition of obtaining Court approval. Despite this notice, no

25  state or federal officials, including the IRS, have raised any objection to the

---

26

27  [8] This is also true as with respect to attorney's fees.  The requested award aligns
with the fee discussion held during the judicially supervised settlement after all

28  terms of the settlement were negotiated.

1  Settlement even though the settlement specifically contemplates corrections to

2  Forms 1098.

3       "Although CAFA does not create an affirmative duty for either the state or

4  federal officials to take any action in response to a class action settlement, CAFA

5  presumes that, once put on notice, state or federal officials will raise any concerns

6  that they may have during the normal course of the class action settlement

7  procedures." *Garner*, 2010 WL 1687832 *14.  This factor favors approval of the

8  Settlement since the IRS would presumably make its views known if it believed that

9  the corrections to the Forms 1098 that are contemplated herein were improper.

10      **8.**    **The Reaction Of The Class Members To The Proposed Settlement**

11              **Has Been Positive**

12       The positive response of the Class Members to the Settlement is best

13  demonstrated by the fact that out of more than 64,000 notice packets that were sent

14  out, not a single objection has been filed as of the date of the filing of this motion.

15  There are 14 days left for the filing of objections.  Keough Decl., ¶ 16.  A

16  supplemental declaration of Ms. Keough will be filed after the objection period has

17  expired setting forth the full class participation statistics.

18       "The absence of a large number of objections to a proposed class action

19  settlement raises a strong presumption that the terms of the settlement are favorable

20  to the Class Members." *Eisen v. Porsche Cars North America, Inc.*, 2014 WL

21  439006 *5 (C.D.Cal. 2014), (quoting *Nat'l Rural Telecomms.*, 221 F.R.D.523, 529

22  (C.D.Cal. 2004). See also *In re Mego Fin. Corp.*, 213 F.3d at 459 (single objection

23  out of a potential class of 5400) and even *Churchill Village, LLC v. Gen. Elec.*, 361

24  F.3d 566 (9th Cir.2004) (500 opt-outs and 45 objections out of approximately

25  90,000 notified Class Members still deemed a positive reaction).  Here, with notice

26  going to over 64,000 addresses, that there have been no objectors strongly favors the

27  presumption that the Settlement is favorable to the class.

28       As to opt-outs, the deadline has already passed.  Here, only 22 persons timely

1  opted out from the 64,000 class notices sent.   Keough, Decl. ¶ 15.  This is a

2  compelling statistic in favoring approval.  *In Chun-Hoon v. McKee Foods Corp.*,

3  716 F.Supp.2d 848, 858 (N.D.Cal. 2010), for instance, even though opt-outs

4  comprised fully 4.86% of the class, the Court still found a positive response by the

5  class warranting the presumption of favorability.

6  **VI.   CONCLUSION**

7        For all the foregoing reasons, this Court should grant this motion and enter

8  Final Approval of the Settlement, Award Class Counsel Attorney's Fees in the

9  amount of $700,000, as requested in the separately filed Motion for Attorney's Fees,

10  Award Named Class Representatives an Enhancement as requested in the separately

11  filed motion and enter judgment thereon.

12  Dated:  December 16, 2019            Respectfully submitted,

13                                      LAW OFFICE OF DAVID J. VENDLER

14                                      */s/ David J. Vendler*

15                                      David J. Vendler, Esq.

16                                      MICHAEL R. BROWN, APC

17                                      */s/ Michael R. Brown*

18                                      Michael R. Brown

                                        Attorneys for Plaintiffs MICHAEL
19                                      PEMBERTON and SANDRA COLLINS-
                                        PEMBERTON, and all others similarly
20                                      situated

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT