1  LAW OFFICE OF DAVID J. VENDLER
2  David J. Vendler, Esq. (SBN 146528)
   Email: djvlegal@gmail.com
3  2700 South Oak Knoll
   San Marino, California 91108
4  Tel.: (213) 700-5194
5
6  MICHAEL R. BROWN, APC
   Michael R. Brown, Esq. (SBN 65324)
7  Email: mbrown@mrbapclaw.com
8  2030 Main Street, Suite 550
   Irvine, California 92614
9  Tel.: (949) 435-3888
   Fax: (949) 435 3801
10
11 Attorneys for Plaintiffs MICHAEL PEMBERTON
   and SANDRA COLLINS-PEMBERTON,
12 and all others similarly situated

13              UNITED STATES DISTRICT COURT

14            SOUTHERN DISTRICT OF CALIFORNIA

15

16 MICHAEL PEMBERTON and              Case No. 3:14-cv-01024-BAS-MSB
   SANDRA COLLINS-PEMBERTON,
17 individually, and on behalf of the class   **DECLARATION OF MICHAEL R.**
   of all others similarly situated,          **BROWN IN SUPPORT OF**
18                                             **PLAINTIFFS MOTION FOR FINAL**
                                               **APPROVAL OF CLASS ACTION**
19            Plaintiff,                       **SETTLEMENT AND AN AWARD**
                                               **OF ATTORNEY'S FEES**
20       vs.

21 NATIONSTAR MORTGAGE LLC, a         Date:   January 13, 2019
   Federal Savings Bank,              Crtrm.: 4B
22                                     Judge:  Hon. Cynthia Bashant
            Defendant.
23                                     Action Filed:   April 23, 2014

24

25

26

27

28
                                    1                    3:14-cv-01024-BAS-MSB

## DECLARATION OF MICHAEL R. BROWN

I, Michael R. Brown, declare as follows:

1.      I am an attorney duly licensed to practice law in the State of California. I have also been admitted to practice in the states of Nevada, New York (ret.) and Florida (ret.).  I am admitted to practice before the United States District Courts for the Southern, Central, Eastern and Northern Districts of California, District of Nevada, Southern District of New York and Eastern District of Florida.  I am admitted before the Ninth Circuit Court of Appeals, as well as the United States Supreme Court.

2.      I am one of the attorneys representing the plaintiffs, Michael Pemberton and Sandra-Collins Pemberton ("Pembertons" or "Plaintiffs") in this class action.  I am submitting this declaration in support of the joint motion of the parties for preliminary approval of a class action settlement.  I have personal knowledge of the facts contained herein and if called to testify, would do so competently.

### I.      Qualification of Counsel

3.      I was first admitted to practice in California in 1975 and have practiced continuously in California since that time.  My practice has been focused primarily in the area of business litigation.  I have practiced exclusively in the field of litigation for 44 years, handling the evaluation of client claims, retention of clients, complete oversight and management of cases from investigation, through all phases of discovery, pre-trial evaluations, trials, arbitrations, mediations and negotiating settlements.

4.      Beginning in 2004, I became involved in class action litigation.  I was a named partner in the firm Kabateck Brown Kellner LLP from 2004-2008.  A majority of the firm's practice was centered on consumer oriented class action litigation. Cases in which I was involved while at the firm include class actions and multi-district litigation against leading pharmaceutical companies such as Eli Lily

and Wyeth, against product manufactures such as Epson, Inc., insurance companies such as Farmers Insurance and other consumer dominated businesses.  I currently conduct my practice through my own firm, Michael R. Brown, A Professional Corporation.

5.     Over the last seven years, I have been lead counsel or co-lead counsel in seven class actions matters, all of which have been settled with the exception of one pending in the Ninth Circuit Court of Appeal).  The defendant in six of these cases were financial institutions, except one which was against the City of Los Angeles.  Each of these cases involved complex matters regarding taxation issues including application of provisions of the Internal Revenue Code and the reporting of interest, as related to the calculation of mortgage interest.  Each of these cases impacts the tax liability of the class members, and the claims asserted therein sought to recover damages, as well as declaratory and injunctive relief.  The size of the classes range from the hundreds, to hundreds of thousands of class members. *Smith v. Bank of America* 2:14-cv-06668-DSF (C.D. Cal.), Neely *v. JPMorgan Chase Bank N.A.* 8:16-cv-01924- AG (C.D. Cal.), Rovai *v. Select Portfolio Systems* 14-cv-1738 BAS (S.D. Cal.), *Strugala v. Flagstar Bank, FSB* 13:05927-EJD (N.D. Cal.). The issues in the cases are often questions of first impression and require the willingness to undertake new and novel arguments, litigate against the largest firms in the country and front the costs for what could be extensive and expensive litigation.

6.     In the cases that have settled on a class basis, I have been appointed class counsel by federal courts and have been involved in the negotiation and settlement of the class action cases.  In *Horn v. Bank of America,* 3:12-cv-1718-GPC (S.D. Cal. 2012), I was appointed class counsel.  The case involved complex issues regarding the calculation of reportable mortgage interest to borrowers that had acquired Option Arm Adjustable Rate Mortgage loans.  It centered on provisions of the Internal Revenue Code and loan contract terms.  Through extensive negotiations

DECLARATION OF MICHAEL R. BROWN ISO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

with Bank of America's counsel, which included the former director of the Internal Revenue Service, I negotiated a settlement for the class. The class included approximately 300,000 class members nationwide. Similar to the relief obtained for the class in the present case, in *Horn* the settlement required the Bank to change its reporting practice on Forms 1098, provide amended forms 1098 and some limited monetary relief. The settlement provided tens of millions of dollars of benefits to the class. The overall settlement, cash payment, amended tax reporting forms and injunctive relief was valued by the Court to be in excess of two hundred million dollars ($200,000,000.00). The Court approved the settlement, appointed me as class counsel along with my colleague David Vendler (who is my co-counsel in this case) and awarded us substantial fees. The Court approved an hourly rate of $950 per hour for both Mr. Vendler and I for years 2012-2014.

7.     In 2015, I was appointed class counsel (again along with David Vendler) in a case entitled *Camberis v. Ocwen Loan Service,* c14-2970-EMC (N. D. Cal.). The case involved similar complex tax reporting issues, as in *Horn,* pertaining to the reportable interest by the lender to the IRS and class member borrowers/taxpayers. I negotiated a settlement for the class, which consisted of 15,888 Class members nationwide that provided benefits to the class valued in excess of twenty million dollars ($20,000,000). The Court approved the settlement and awarded fees to counsel. In awarding fees, the Court approved an hourly rate of $950 per hour for year 2016 for both Mr. Vendler and I.

8.     In 2010, I was retained by a Los Angeles law firm to file a class action against the City of Los Angeles arising out of the City's requirement that reimbursed advanced client expenses be included in the law firm's calculation of gross receipts from taxation purposes. The case was filed in 2011 and a class settlement was approved in 2017, after almost 6 ½ years of litigation. I was the sole attorney representing the class consisting of all lawyers doing business in the City of Los Angeles. In approving the settlement, the Court appointed me counsel and

DECLARATION OF MICHAEL R. BROWN ISO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

1  approved the settlement which was valued in excess of eight million dollars

2  ($8,000,000).  In awarding me fees, the Court approved an hourly rate of $950 per

3  hour.

4       **II.**    **The History of the Present Case**

5      8.    I was retained by plaintiffs Michael Pemberton and Sandra-Collins

6  Pemberton in 2014.  The Pembertons also retained David Vendler of Morris, Polich

7  & Purdy to represent them.  Mr. Vendler and I are lead co-counsel on this case.  I

8  have set forth, truthfully and accurately, the chronology of events as the case

9  progressed.  These are set forth in the Motion for Attorney's Fees ("MFA") Sec. II, I

10  will not repeat them here.  Further, the events can be identified in the time records I

11  am submitting in support of the fee request.

12      9.    Mr. Vendler and I are the only two attorneys that have ever worked on

13  this case, except for 6.2 hours by a partner at Mr. Vendler's firm.  We have

14  conducted the investigation of the facts and the law, we have had all the

15  communications with the client, opposing counsel, witnesses, experts, we have

16  written all the pleadings, drafted all the discovery, responded to all the discovery,

17  reviewed all the produced documents, prepared for and taken all the depositions and

18  have made all court appearances in this case.

19      10.    This case was not staffed with unnecessary paralegals, case assistants,

20  case/firm administrators, messengers, secretaries or other persons that recorded time

21  and who will be included as timekeepers in the final fee application

22      11.    Mr. Vendler and I determined that the Pembertons had a valid case

23  against defendant Nationstar Mortgage, LLC ("Nationstar").  We proceeded to

24  initiate this action.

25      12.    I was involved in all phases of the litigation.  As detailed in the Vendler

26  declaration, the case presented some very unusual and unique questions of law.

27  While some of the facts were known to us at the inception of the case, the actual

28  theories needed to ben researched, refined and developed.  Although Mr. Vendler

DECLARATION OF MICHAEL R. BROWN ISO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

and I vehemently opposed the Court's Order staying this action awaiting some input from the IRS, I continued to do research, speak with experts and compile data and facts to support plaintiffs' claims and to support the certification of a class.

13.     Over several years, while this case was stayed, Mr. Vendler and I communicated with the IRS, worked with our client, discussed the case with experts and were preparing for the eventual lifting of the stay and the advancement of this case in the trial court.

14.     During the years of the stay I also participated in communications with Nationstar's counsel, discussing the possibility of settlement.  While there was limited discussion, nothing materialized.

15.     After many years of reporting to the Court the inaction of the IRS, we were able to convince the Court to lift the stay.  The stay was lifted in 2017.  This now opened the door for the pleading battles that ensued, and I was involved in all of the decisions, research and writing of the opposition to Nationstar's motion to dismiss as well as the Court's sua sponte motion.  The briefing was quite detailed and extensive.  Spearheaded by Mr. Vendler, we each undertook certain tasks for the preparation of the opposition to all of the attacks on the pleadings.  Hundreds of hours were spent researching the issues, because we knew that within our pleadings, theories and case, there were several questions of first impression.  And, recognizing that such questions, particularly when they involve the IRS, are deflected by the trial courts, the research and briefing had to insure that all matters were briefed so that no issues were left out for an eventual appeal, should the Court not adopt plaintiff's arguments.

16.     The Court's numerous orders relating to the pleadings, the causes of actions and the amendments of pleadings, were always detailed.  They were lengthy opinions with many citations, always reflecting consideration and thought by the Court.  However, they also presented a significant challenge because we disagreed with many of the conclusions, references, citations, and comparisons, and our future

1 pleadings and filings had to take into consideration the Court's many findings.

2   17.   Notwithstanding the fact that the Court ultimately allowed a few causes

3 of action to remain, and the case to proceed, all future work had to take in to

4 consideration the limitations of the Court's rulings, and the theories that remained,

5 but also always assuring the record was being properly created for an appeal.

6   18.   Once I was permitted to serve discovery on behalf of plaintiffs, I did so.

7 There were written discovery requests made, as well as the scheduling of

8 depositions.  It was during this discovery period, in the latter part of 2018 that we

9 learned of Nationstar's purported "correction" of the problem in 2016.  Simply put,

10 Nationstar acknowledged plaintiffs were correct in their assertion that the deferred

11 interest should have been reported on Form 1098, and in fact was doing that with all

12 other loans it serviced.  But it did not do it for the Bank of America loans (and

13 potentially others) because Bank of America did not advise Nationstar of the

14 deferred interest.

15   19.   These revelations prompted Mr. Vendler and I to seek to supplement

16 the complaint.  Causes of action now existed for conduct that occurred after the

17 filing of the original complaint, as well as facts now existed to support claims the

18 Court previously dismissed.  Extensive work was undertaken to draft a supplemental

19 complaint and seek leave of the Court to file it.  Unfortunately, the Court was not

20 receptive to our arguments and denied the motion to supplement or amend.  And, the

21 Court's opinion further expanded on some of the Court's earlier comments that the

22 Court had serious concerns about the sustainability of the action on several grounds.

23   20.   Having put hundreds of hours into the investigation, inception and

24 prosecution of this case through many stages of pleadings, hearings and discovery,

25 and aware of the Court's perception of the case, the parties agreed to discuss

26 settlement.  Settlement discussions began with some initial talks between myself and

27 Nationstar's counsel.  This led to an agreement to commence a mediation session.

28 One was conducted in November 2018 with the services of Judge Sabraw (Ret.) in

DECLARATION OF MICHAEL R. BROWN ISO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

San Jose.  This was unsuccessful, but Judge Sabraw kept working at it.  I continually spoke with Judge Sabraw as well as Erik Kemp on the issue of settlement.  Eventually, Judge Sabraw circulated a mediator's proposal in May 2019, shortly before the MSC.  The proposal did not result in settlement of the case.

21.     While the settlement process was ongoing, significant discovery disputes arose between plaintiffs and Nationstar. Plaintiffs were the only party serving discovery as of the end of 2018, and I had received little cooperation from counsel with respect to responses.  The initial responses were inadequate, and the meet and confer process resulted in promises of amended responses.  By mid-January 2019, however, it began apparent that I would have to file a significant motion to compel discovery.  Plaintiffs were prepared to file a very significant motion to compel, which I had prepared.  Coincidentally, around the same time as the motion was being prepared, Magistrate Berg was assigned to the case for discovery purposes.  In a discovery conference call, Magistrate Berg offered his services to help settle the case if the parties thought this would be helpful.  I agreed to participate, and so did Nationstar.  The Mandatory Settlement Conference then on calendar was advanced to a mutually agreeable date.

22.     In preparation for this mandatory settlement conference, Mr. Vendler and I carefully reviewed the case from our perspective, the defense perspective and the Court's perspective.  We drafted a straightforward and candid brief for Judge Berg to assist him in trying to resolve this case.  Our evaluation of the case included the state of the pleadings now, the inferences raised in the Court's opinion on the Motion to Dismiss and the length of time to get this matter to trial, and ultimately to the Court of Appeal.  I had already concluded the case would be on appeal in light of the Order dismissing several of the substantive causes of action.

23.     Mr. Vendler and I attended the mandatory settlement conference. Nationstar had its two outside counsel present as well as a senior lawyer from Nationstar. Magistrate Berg conducted a vigorous negotiating session, constantly

DECLARATION OF MICHAEL R. BROWN ISO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

shuttling proposals, offers, rejections and counter-proposals between the parties.
Eventually, the parties came close to an agreement and Magistrate Berg reunited the
parties and a settlement was reached through the final joint discussion.  After the
final settlement was reached as to class members, Magistrate Berg conducted
discussions for an attorney fee that would be paid by Nationstar, pursuant to CCP
Sec. 1021.5, outside of the settlement.  Since Counsel would make an application to
be paid fees, and the Court would make an award, Nationstar wanted to conclude
that issue also so it had finality on all open issues.  At the time of this MSC, the
lodestar on the case was in excess of $1.1 million.  Mr. Vendler and I discussed a
reduction to the lodestar.  Magistrate Berg held discussions with us.  Nationstar
offered a fee less than the lodestar.  After long and hard thought, Mr. Vendler and I
agreed to accept $700,000, paid directly by Nationstar, as a 1021.5 fee, subject to
this Court's approval.  Nationstar, with the assistance of Magistrate Berg, thereafter
agreed to pay the class representatives an incentive award of $10,000.  Both
Nationstar and Magistrate Berg believed this was a reasonable award.  The
Pembertons agreed to that amount, again, subject to this Court's approval.

       24.     In our opinion, the settlement is reasonable and fair.  The lawsuit was
initiated to get Nationstar to properly report deferred interest on Forms 1098 to its
borrowers.  The lawsuit accomplished that result because Nationstar made the
change, albeit unbeknownst to us, in 2016.  But that "fix" was not complete and it
took the additional years, and additional work, to 1) first learn of the fix and then 2)
assure the correction in policy was implemented in such a way that all class
members, through 2018, would receive the benefit of a corrected Form 1098.  The
settlement now assures that the change in conduct by Nationstar reaches as many
borrowers as feasibly possible, given the constraints of variations in the loans.  As
more fully set forth in the Motion, as well as the Nationstar declarations, thousands
of borrowers have received, or will receive correct Forms 1098 which will allow
them to obtain the full value of their mortgage deduction.  Additionally, a group of

DECLARATION OF MICHAEL R. BROWN ISO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

1  class members will also receive a payment of $50.

2      25.    More importantly, I believe settlement of this action is appropriate on

3  the terms negotiated because there was a great likelihood that the case might not

4  survive the next round of motions attacking the pleadings, the standing of the

5  plaintiffs, preemption, or other grounds for summary judgment.  As evidenced by

6  the Court's rulings on Nationstar's motions to dismiss, as well as its own sua sponte

7  motion, this case was very likely headed for the Court of Appeal.  And, although

8  Mr. Vendler and I remain firm about our beliefs regarding the law, there is no way

9  to know how the Court of Appeal might rule on some of the issues.  There is simply

10  no guarantee.

11      26.    With a trial date in 2020, much more discovery to be conducted, the

12  impending motions to be filed by Nationstar and the prospect of a long appeal

13  dragging this matter on for yet another 5 years, it is our opinion the best result at this

14  time for the class is to settle the case along the terms agreed upon at mediation with

15  Magistrate Berg.

16      27.    Mr. Vendler nor I specifically did not discuss attorney's fees until the

17  entire settlement was agreed upon as to the class.  Additionally, I made sure the fees

18  would be paid outside the settlement so the class was not affected. Although a

19  significant amount of work has been described in summary form above, and in Mr.

20  Vendler's declaration, my time records are attached as **Exhibit A.**  They are

21  contemporaneous records of the work that was performed.  All work was, in my

22  opinion, necessary and done as appropriately and as efficiently as possible.  The

23  total hours recorded in this case, over 5 years, is 1,422.60.  The lodestar is

24  $1,370,470.  The time records show I recorded 644.3 hours.  At the $950 hourly rate

25  I have used, and been awarded since 2014, my portion of the lodestar is $612,085.

26      28.    Additionally, the same is true as to plaintiffs' incentive award.  This

27  was discussed after all settlement terms were agreed upon, and with the input and

28  assistance of Magistrate Berg.

DECLARATION OF MICHAEL R. BROWN ISO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT

29.    Finally, the settlement is also fair because Nationstar is paying, outside of the settlement, all costs of claims administration.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed this 16th day of December at Dana Point, California.

By:    _/s/Michael R. Brown_
Michael R. Brown

DECLARATION OF MICHAEL R. BROWN ISO PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT