LAW OFFICE OF DAVID J. VENDLER
David J. Vendler, Esq. (SBN 146528)
Email: djvlegal@gmail.com
2700 South Oak Knoll Ave.
San Marino, California 91108
Tel.: (213) 700-5194

MICHAEL R. BROWN, APC
Michael R. Brown, Esq. (SBN 65324)
Email: mbrown@mrbapclaw.com
2030 Main Street, Suite 550
Irvine, California 92614
Tel.: (949) 435-3888
Fax: (949) 435 3801

Attorneys for Plaintiffs MICHAEL PEMBERTON
and SANDRA COLLINS-PEMBERTON,
and all others similarly situated

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PEMBERTON and SANDRA COLLINS-PEMBERTON, individually, and on behalf of the class of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>NATIONSTAR MORTGAGE LLC, a Federal Savings Bank,<br><br>Defendant. | Case No. 3:14-cv-01024-BAS-MSB<br><br>**DECLARATION OF DAVID J. VENDLER IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:    January 13, 2020<br>Time:    11:00 AM<br>Crtrm.: 4B<br>Judge:  Hon. Cynthia Bashant<br><br>Action Filed:    April 23, 2014 |

## DECLARATION OF DAVID J. VENDLER

I, David J. Vendler, declare and say as follows:

     1.     I am an attorney duly licensed to practice before all of the federal and state courts in California and Massachusetts as well as the United States Court of Claims, the Court of Appeals for the Federal Circuit and the United States Supreme Court.  I am

1

DECLARATION OF DAVID J. VENDLER IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT.

1   one of the attorneys of record for the plaintiffs, Michael and Sandra Pemberton
2   ("plaintiffs" or "the Pembertons").  I am submitting this declaration in support of the
3   Pembertons' motion for final approval of a class settlement they entered into with
4   Nationstar Mortgage, LLC ("defendant").  I have personal knowledge of the following
5   facts and if called to testify thereto, I could and would do so competently.

6   **Qualifications Of Counsel**

7          2.      I have been practicing law continuously since 1988 and have spent the last
8   20 years doing primarily class action work.   I graduated from Harvard College in 1984
9   with an A.B. degree in government.  I took my *Juris Doctor* degree from the University
10  of San Francisco School of Law in 1988.  I thereafter was admitted to the
11  Massachusetts bar in 1988 and practiced in Massachusetts for approximately two years.
12  I then took and passed the California bar exam and was admitted to practice in
13  California in 1990.  In addition to the California and Massachusetts state courts, I have
14  also been admitted to practice before the United States Supreme Court, the First Circuit
15  Court of Appeals, the Ninth Circuit Court of Appeals, the Court of Appeals for the
16  Federal Circuit, and all of the District Courts in California.  I have also argued several
17  cases before the California Court of Appeals.  I am in good standing with all of the
18  above-listed courts.  (I am currently in "retired" status in Massachusetts).

19         3.      I personally have been almost exclusively practicing class action work for
20  the past 20 years and have been formally approved by a court as lead plaintiffs' class
21  counsel in more than 10 class action cases.  I have also handled numerous (more than
22  10) class action cases from the defense side, several of these all the way to defense
23  judgment.

24         4.      Among the class action cases that I have successfully championed from
25  the plaintiff side in the federal courts include several cases involving the financial
26  services industry, including: *Polacsek v. Debticated Consumer Counseling, Inc., et al*.
27  (see published order granting partial summary judgment at 413 F.Supp.2d 539
28  (D.Md.2005)) and *Zimmermann v. Cambridge Credit Counseling Corp.*  The latter case

**DECLARATION OF DAVID J. VENDLER IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**.

1    generated three published opinions, including two from the First Circuit Court of

2    Appeals.  The first opinion reversed the trial court's granting of the defendants' motion

3    to dismiss (*Zimmerman v. Cambridge Credit Counseling*, 409 F. 3d 473 (1st Cir. 2005)

4    on the ground that the I.R.S.'s determination of tax-exempt status was not dispositive

5    for purposes of CROA liability.  The second opinion granted plaintiffs a $255 million

6    summary judgment.  *Zimmerman v. Cambridge Credit Counseling Corp.*, 529 F. Supp

7    2d 254 (D. Mass 2008)).  The third opinion was the First Circuit's upholding that

8    judgment on appeal.  *Zimmerman v. Puccio*, 613 F.3d 60 (1st Cir. 2010).  My office

9    was lead counsel on both appeals, which I argued for plaintiffs.

10          5.      I was co-lead counsel in the case of *Abat v. Chase Bank, U.S.A., N.A.*

11   (CDCA No. SACV07-1476-CJC (ANx) which resulted in two multi-million-dollar

12   settlements (against co-defendants Chase and Money Management International, Inc.)

13   involving the credit counseling industry.

14          6.      I was also co-lead counsel in the *Horn v. Bank of America, N.A.*, 2014 WL

15   1455917 *6 (S.D.Cal. 2014) case.  That case, like this one, involved the misreporting of

16   mortgage interest by Bank of America and resulted in a settlement worth over

17   $100,000,000 to the class.  I was also co-lead counsel in the case of  *Camberis v.*

18   *Ocwen Fin. Corp*. 3:14-cv-02970 (N.D. Cal.) which was also settled very favorably to

19   the members of the class.

20          7.      I have also been co-counsel in the cases of  *Strugala v. Flagstar Bank*,

21   FSB, No. 5:13-cv-05927 (N.D. Cal.) (to be appealed), *Rovai v. Select Portfolio*

22   *Servicing, Inc.*, No. 3:14-cv-01738-BASWVG (S.D. Cal.) (settled); and *Smith v. Bank*

23   *of America, N.A.* 2:14-cv-06668-DSF-PLA (settled).  All of these cases, in one way or

24   another, involved the same type of claims of misreporting of mortgage interest that this

25   case involves.  To my knowledge, Mr. Brown and I are the only lawyers in the country

26   to have advanced cases of this sort.  In short, taking these cases was risky.  Indeed, the

27   disparity in the conclusions reached by the federal courts that have reviewed the issues

28   is proof that the issues are complex and difficult.

**DECLARATION OF DAVID J. VENDLER IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**.

8.     Other class action cases – not involving the financial services industry – that I have championed include: *In re Pleasant Care*, Bkrptcy CDCA No. LA 07-12312-EC, which was an ERISA case against a bankrupt nursing home chain and the management company retained by the creditors' committee which retroactively canceled the employees' health insurance during a Chapter 11 case -- the case ultimately was converted to a Chapter 7 liquidation wherein I obtained a result of recovering more than 75 percent of the total damage, and which was more than 10% better than any other creditor obtained.  I am confident that no other lawyer in Los Angeles would have taken on that case since the defendant was already in bankruptcy at the time the complaint was brought and because bankruptcy courts are about the least hospitable venue in which to bring a class action case as a plaintiff.

9.     I was also certified as lead class counsel in *Maurius Jeffrey, et al. v. Alert Cellular, L.C.*, Case No.: LACV03-6933 JSL (PJWx) (Central District of California) against a cellular telephone company where a substantial cash recovery for the employees was obtained.

10.     I have also represented defendants in class actions in federal and state courts.  Most recently, I was lead defense counsel in the case of *Demeter v. Taxi Computer Services, Inc.*, where I successfully obtained summary judgment (upheld on appeal) against a class action claim based on the Fee For Talent Services Act.  See *Demeter v. Taxi Computer Services, Inc.*, 21 Cal.App.5th 903 (2018)

11.     Among the other class actions I have defended include *Degelmann v. Advanced Medical Optics, Inc.*, 2010 WL 55874 (N.D.Cal. 2010), where  I also obtained summary judgment (subsequently reversed with a different lead counsel) for a national manufacturer of contact lens solution in a claim that alleged false labeling of the solution.  See also *Watkins v. Vital Pharmaceuticals, INc.,* 720 F.3d 1179 (9th Cir. 2013) in which I prevailed in a CAFA removal appeal.

12.     In the California state Courts, I was certified as lead class counsel in five separate claims against all of the nation's leading rental car companies (Hertz, Avis,

4

Enterprise, etc.) for violating California statutes relating to the sale of collision damage waivers.

13.    I was also certified as class counsel in a claim against a nationally known health club chain for overcharging the public under the Contracts for Health Studio Services Act.

14.    I was also co-lead counsel in the following published opinion involving a CLRA class action involving rebates:  *Kramer v. Intuit, Inc.,* 121 Cal.App.4th 574 (2004).  Although we lost that case, I still maintain that the Court of Appeal's decision was a bad decision not supported by the law.

15.    In the Wage/Hour field I am currently co-lead counsel in the case of *Horvath v. United States* where I am representing all of the Special Agents of the United States Secret Service.  That case is pending after successfully appealing from an initial dismissal order.  See *Horvath v. United States*, 896 F.3d 1317, (Fed. Cir. 2018). I was also lead counsel in two wage and hour class action cases that led to appellate court opinions in the California state courts.  See *Balandran v. Labor Ready, Inc.*, 124 Cal.App.4th 1522 (2004), for the plaintiff, and for the defendant in *Blunt v. Valley Ball Management, LLC,* 2009 WL 1818352 (Cal.Ct.App. 2009).

16.    I was also involved in defending the importer of the allegedly tainted dog food that received national press from over 100 class action cases filed across the nation.

17.    In addition to my consumer rights practice, I have a long history of representing private clients, including Forest City Enterprises, a $7.8-billion company recently rated by Fortune magazine as the top publicly traded real estate company in the United States; Fred Sands Realtors in several sick building/toxic mold claims (see *FSR Brokerage, Inc. v. Superior Court*, 2002 WL 560983 (lead counsel on appeal)) and a number of insurers in complex insurance coverage actions against Fortune 500 companies, including Pfizer for its indemnity and defense costs in the Bjork-Shiley heart valve litigation and Bechtel for its expenses incurred in defending a mass tort

5

**DECLARATION OF DAVID J. VENDLER IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**.

claim involving toxic exposure to workers. See *Bechtel Petroleum Operations, Inc. v. Continental Insurance Company*, 117 Cal. Rptr. 2d 399 (2002) (lead counsel on appeal).

18.     I am AV rated (preeminent) by Martindale Hubbell, have published several articles in leading legal periodicals.  I was a featured speaker on mortgage interest reporting at the 2016 ABA Tax Section convention in Washington, DC, and was a featured speaker at the 2006 National Consumer Law Center's convention in Miami Florida where I spoke the credit counseling fraud.  I also spoke in 2010 on developments in class action litigation at the ABA's Environmental, Mass Torts and Products Liability Litigation Committees' Joint CLE Seminar in Colorado.

**Class Counsel's Lodestar**

19.     In the roughly six years that this case has been pending, I have recorded over 550 hours of time to the case.  Initially, after being contacted by the Pembertons, I conducted factual research into their potential claim.  I worked with Mr. Pemberton in going through his tax returns and his Forms 1098 and generally looking at his loan history to determine if he had a valid claim.  I also conducted research on Nationstar in order to determine what sort of defendant I would be taking on and what its history of litigation was.

20.     When I decided that the Pembertons had a viable claim, I began to draft their complaint, which was very lengthy.  I also had to determine whether or not to relate the Pembertons' case to the Rovai case.  This was eventually done, but it required briefing.

21.     The next major task was to oppose Nationstar's first motion to dismiss. Including the time for reviewing Nationstar's motion, obtaining extra pages for the opposition and drafting the opposition and reviewing Nationstar's reply, nearly 80 hours was spent by me on this task alone.

22.     The next major task was to prepare the Rule 26 report to the Court and the meet and confer with Nationstar that was part of that task.

6

23.     Thereafter, prior to the Court's ruling on the motion to dismiss, the parties engaged in settlement discussions and I wrote status reports to the client about these and the general progress of the case.  I also prepared written discovery during this period.

24.     After the Court's first motion to dismiss ruling finally came down, I initiated contact with the IRS and thereafter prepared numerous reports to the Court relating to the status of communications with the IRS as well as the status of the various other mortgage interest cases that were pending in the various distict courts (and also in the Ninth Circuit).  I would also have to review the defendant's responses to each of these reports.  Between all of the reports to the Court and reviewing Nationstar's responses, at least 35 hours was spent.  All during this time, I was in contact with the defendants relating to potential settlement and was keeping in touch with our client to explain the status of the case and the delay in its progress.

25.     I also, during this time, would continually monitor the IRS website to be able to inform the Court on the latest developments in the Service's plan for responding to the issue the Court inquired about.  I also conducted several telephone calls and met with experts during this time, all in an effort to influence the IRS.  Because I was on the IRS's list of interested parties, I also received and responded to the letter briefs filed by the American Bankers Association and the Mortgage Bankers Association seeking that the IRS take up the issue of the reporting of Capitalized interest through the IRS's IIR ("Industry Issue Resolution") program.  Each of my letter briefs were over 20 pages in length took about 25 hours to prepare.  Eventually, after taking up the issue in its IIR program, the IRS cancelled the issue from that program and has done nothing with the issue since.  But I have tracked the issue continually up to now.

26.     I also attempted to gain traction with politicians about the interest issue.  I wrote lengthy letters to Senators Elizabeth Warren and Barbara Boxer and tried to gain traction with the head of the IRS's Office of the Taxpayer Advocate to try to get the IRS to do something.  Unfortunately, I was not able to secure any political help for the

7

case as the two senators' offices thought the issue was too complicated.  I also got the same reaction when I tried to secure the lobbying help from the National Consumer Law Center.  I also submitted two articles to "Procedurally Taxing" (a tax law blog) hoping to get assistance or a fresh perspective on the issues involved in the case.

27.    Eventually after the IRS had done nothing for literally years, the parties were ordered to attend a status conference that I requested.  In preparing for that status conference I prepared a report, renewed my legal research (to assure no new cases had come down) and generally refamiliarized myself with the facts of the Pembertons' claims and the defenses alleged by Nationstar.

28.    Unfortunately, the Court continued the stay because it seemed as though some sort of IRS action was forthcoming; but it wasn't.  Rather, as stated, the IRS cancelled the IIR project for the issue and still, even now, the IRS has done nothing.

29.    Thereafter, and because of the Ninth Circuit's decision in the *Smith v. Bank of America* case, the Court ordered briefing on whether or not plaintiffs had properly alleged standing.  This required briefing and eventually, after filing an amended complaint, the Court ruled that plaintiffs had met the Ninth Circuit's standing test.  However, the Court then, on its own motion, sought to dismiss plaintiffs' case.

30.    Because the Court did not specify any particular grounds upon which its motion was based, and because the Court granted 35 pages for briefing, the plaintiffs literally had to try to anticipate and cover every potential attack that might be leveled at their complaint.  It was a monumental task and the two briefs that we filed I believe to have been a superior effort.  Over 100 authorities were cited and the defendant's response was of a similar order.  More than 100 hours was spent on these briefs and attending the oral argument that followed.

31.    Eventually, the Court dismissed certain of plaintiffs' claims (related to their contract claims and allowed plaintiffs to amend their complaint again to more particularly state other of their claims.

**DECLARATION OF DAVID J. VENDLER IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**.

32.     Finally, defendant answered plaintiff's complaint and discovery commenced.  A protective order was negotiated, and the parties also prepared for and attended an ENE conference and Rule 26 conference.  This involved travel to San Diego, meetings with the clients and additional briefing.

33.     Plaintiffs propounded extensive written discovery on Nationstar and took Nationstar's deposition in December of 2018.  Much meeting and conferring was spent on the adequacy of Nationstar's responses and the adequacy of its deponent's answers. It was in the deposition that plaintiffs learned that in 2016, Nationstar had implemented its "fix."

34.     Because plaintiffs believed that Nationstar's "fix" was improper under established tenets of tax law which do not allow mistakes in reporting in one tax year to be "fixed" in another, plaintiffs sought to supplement/amend their complaint.  This required briefing and the preparation of a proposed amended complaint, both extensive and time-consuming tasks.

35.     During the same time frame as the motion to supplement/amend was making its way through the Court, the parties were also engaging in continued mediation efforts before Hon. Ron Sabraw with whom they had mediated in 2018. Those efforts did not prove fruitful.

36.     Ultimately, the Court denied the motion and, in doing so, disagreed with the main tenet of plaintiffs' case – that 26 U.S.C. section 6050H does not allow recipients of mortgage interest to report payments of capitalized interest willy-nilly at any time they want, but requires allocation of payments to interest prior to any principal.  And while plaintiffs continue to disagree with the Court that 26 U.S.C section 6050H is ambiguous as to "how, whether and when" interest must be reported, we felt it was our duty at that point to re-value our case in terms of settlement, which we did.  At that point, the parties again attempted to reach a resolution.

37.     After many, many communications with Judge Sabraw, he put forth a mediator's proposal which failed, but just days later, the parties were able to agree (at

9

DECLARATION OF DAVID J. VENDLER IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT.

1   an MSC with Magistrate Judge Berg) to the settlement that is being proposed in the

2   parties motion.  I would estimate that in total, at least 100 hours were spent in

3   settlement-related efforts from the beginning of this case to the end.

4          38.    One of the driving forces for us in agreeing to the settlement was the fact

5   that the vast majority of Class Members had already been achieved.  Indeed, as the

6   claims in this case were state law claims, plaintiffs were likely to obtain a "catalyst" fee

7   award even if the balance of the case were lost.  Plaintiffs determined that further delay

8   was going to be harmful to the class and that given the chances of succeeding on their

9   claims given the Court's past rulings, it was imperative to get amended Forms 1098 for

10  those persons who could still make use of them.  And that is what we did.

11         39.    The next task was of course to reduce the settlement to a written document

12  and to then prepare the within motion.

13         40.    Plaintiffs have spent substantial additional time in responding to questions

14  posed by class members after receiving notice and in preparing their motion for final

15  approval of the settlement.  It is also anticipated that many more hours will be spent

16  answering class member questions even after the case is over.  Even six years later, I

17  still get calls from *Horn* class members.

18         41.    The total hours recorded in this case, over 5 years, is 1,422.60.  The

19  lodestar is $1,370,470.  The time records show I recorded 798.3 hours.  At the $950

20  hourly rate I have used, and been awarded since 2014, my portion of the lodestar is

21  $758,385.  Based on all of the above, the $700,000 in attorneys' fees prayed for will be

22  far less than plaintiffs' overall lodestar and is certainly far less than the Ninth Circuit's

23  25% benchmark for evaluating attorneys fees on a common fund basis since the value

24  plaintiffs brought to the class is already well in excess of $10 million dollars, exclusive

25  of administration costs, as described in the Cross Declaration submitted in support of

26  plaintiffs preliminary approval motion.

27         42.    Copies of my time records for this case are attached as Exhibit "A" hereto.

28  They are contemporaneous records of the work I performed in this case. All work done

**DECLARATION OF DAVID J. VENDLER IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**.

1    was, in my opinion, reasonable and necessary and done as appropriately and efficiently

2    as possible.

3         43.    Finally, as to the administration costs, I am advised by the Claims

4    Administrator Nationstar will pay the administrator approximately $200,000 Claims

5    Administration.

6         I declare under penalty of perjury under the laws of the United States that the

7    foregoing is true and correct and that this declaration was executed at Los Angeles,

8    California, on December 16, 2019.

9

10                                        _____

11                                        David J. Vendler

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATION OF DAVID J. VENDLER IN SUPPORT OF MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT**.