LAW OFFICES OF DAVID J. VENDLER
David J. Vendler, Esq. (SBN 146528)
Email: djvlegal@gmail.com
2700 South Oak Knoll Ave.
San Marino, CA 91108
Tel.:   (213) 700-5194

MICHAEL R. BROWN, APC
Michael R. Brown, Esq. (SBN 65324)
Email:  mbrown@mrbapclaw.com
2030 Main St. Suite 550
Irvine, CA 92614
Tel.:   (949) 435-3888
Fax:   (949) 435 3801

Attorneys for Plaintiffs MICHAEL PEMBERTON,
SANDRA COLLINS-PEMBERTON,
and all others similarly situated

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL PEMBERTON AND SANDRA COLLINS-PEMBERTON, individually and on behalf of the class of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> NATIONSTAR MORTGAGE LLC, a Federal Savings Bank, <br><br> Defendant. | Case No.:  14-CV-1024-BAS-WVG <br> *Hon. Cynthia A. Bashant, Judge* <br> *Hon. Michael S. Berg, Magistrate* <br><br> **NOTICE OF MOTION AND MOTION OF CLASS COUNSEL FOR AN AWARD OF ATTORNEY'S FEES AND AN INCENTIVE AWARD TO NAMED CLASS REPRESENTATIVES, DECLARATIONS OF MICHAEL R. BROWN AND DAVID J. VENDLER, IN SUPPORT THEREOF** <br><br> Hearing:    January 13, 2020 <br> Time:        11:00 a.m. <br> Courtroom:   4B |

-1-

**TO THE COURT, DEFENDANT AND ALL COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 13, 2019 at 11:00 a.m. or as soon thereafter as the matter may be heard before the Honorable Cynthia Bashant in Courtroom 4B of the United States District Court, Southern District of California, 333 W Broadway, San Diego, CA 92101, plaintiffs Michael and Sandra Collins-Pemberton ("plaintiffs" or "Named Plaintiffs") will and hereby do move, pursuant to Federal Rules of Civil Procedure 23(e) and 54(d)(2), for (1) an order awarding Class Counsel attorney's fees in the amount of $700,000 and (2) an order awarding each class representative/plaintiff an incentive award in the amount of $10,000. (A separately filed motion will seek the Court's Final Approval of the Class Action Settlement).

The motion is made on the grounds that the Court has Preliminarily Approved the Class Action Settlement and pending before the Court is the Motion for Final Approval. As part of the Settlement, and outside any class settlement benefits or money, Defendant Nationstar has agreed to pay attorney's fees up to the amount of $700,000. As will be set forth herein, the amount of attorney's fees was negotiated with the assistance of Magistrate Berg and represents an amount less than Class Counsel's lodestar.

This motion is based upon: (1) this notice of the motion; (2) the memorandum in support of the motion; (3) the Declarations of: David J. Vendler ("Vendler Decl.") and Michael R. Brown ("Brown Decl."). These declarations are filed in support of this motion as well as the concurrently filed Motion for Final Approval of Class Settlement. This motion is also based on: (1) the pleading and papers previously filed with the Court;

/ / /

/ / /

/ / /

/ / /

/ / /

MOTION OF CLASS COUNSEL FOR AN AWARD OF ATTORNEY'S FEES AND CLASS
REPRESENTATIVE AWARD

1  (2) the oral arguments of counsel; and (3) such additional matter as the Court may
2  consider, including any opposition to any objections of Class Members (if any there be).
3
4  Date: December 16, 2019                    Respectfully submitted,
5                                             LAW OFFICE OF DAVID J. VENDLER
6
7                                             By:   /s/ David J. Vendler
8                                                   David J. Vendler
9
10                                            MICHAEL R. BROWN, APC
11                                            By:   /s/ Michael R. Brown
12                                                  Michael R. Brown
13                                            Attorneys for Named Plaintiffs MICHAEL
14                                            AND SANDRA COLLINS-
15                                            PEMBERTON, and all others similarly
                                              situated
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION OF CLASS COUNSEL FOR AN AWARD OF ATTORNEY'S FEES AND CLASS
REPRESENTATIVE AWARD

1

# **TABLE OF CONTENTS**

2   I.      INTRODUCTION ................................................................................1

3   II.     STATEMENT OF FACTS ..................................................................1

4   III.    SETTLEMENT .....................................................................................6

5           A.      Approaching Settlement..........................................................6

6           B.      The Settlement..........................................................................9

7   IV.     ATTORNEY'S FEES .........................................................................10

8           A.      Legal Standard........................................................................11

9           B.      Analysis ...................................................................................12

10          C.      The Requested Fee .................................................................15

11  V.      INCENTIVE AWARD FOR CLASS REPRESENTATIVE.............17

12  VI.     CONCLUSION ...................................................................................19

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION OF CLASS COUNSEL FOR AN AWARD OF ATTORNEY'S FEES AND CLASS
REPRESENTATIVE AWARD

## <u>TABLE OF AUTHORTIES</u>

**Cases**

*Abogados v. AT&T,*
    223 F. 3d 932 (9th Cir. 2000) ................................................................. 11

*Graham v. DaimlerChrysler Corp.,*
    34 Cal. 4th 553 (9th Cir. 2004)............................................................... 11

*Hanlon v. Chrysler Corporation,*
    150 F. 3d 1011 (9th Cir. 1998) ............................................................... 16

*Horn v. Bank of America, N.A.*,
    2014 WL 1455917 (S.D. Cal 2014) ................................................... 11, 15

*In Re Bluetooth Headsets Prods. Liab. Litig.,*
    654 F. 3d 935 (9th Cir. 2011) ........................................................... 12, 17

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ................................................................. 16

*In Re Online DVD-Rental Antitrust Litig.,*
    779 F. 3d 934 (9th Cir. 2015) ................................................................. 18

*Mangold v. California Public Utilities Com'n,*
    67 F.3d 1470 (9th Cir. 1995) ................................................................. 11

*Press v. Lucky Stores, Inc.* 34 Cal. 3d 311 (1983)........................................... 12

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ......................................... 12

*Tipton v. Whittingham,* 34 Cal. 4th 604 (2004) ....................................... 12, 16

**Statutes**

26 U.S.C. § 6050H..................................................................................... 2

CA Code of Civ. Proc. § 1021.5 ....................................................... 6, 11, 16

MOTION OF CLASS COUNSEL FOR AN AWARD OF ATTORNEY'S FEES AND CLASS
REPRESENTATIVE AWARD

## I. __INTRODUCTION__

Class Counsel asks this Court to award them $700,000 in attorney's fees and to award $10,000 to each of the Named Plaintiffs.[1]  The amounts requested were only reached after arm's length negotiations in the conference room of the U.S. District Court, San Diego and mediated by Magistrate Michael S. Berg and only after all of the substantive terms of the settlement had been agreed upon and after lengthy negotiations regarding: (1) the value of the benefits obtained for the Class Members, (2) Class Counsels' lodestar, (3) whether an enhancement for the Named Plaintiffs was appropriate, (4)whether there should be any reduction to Class Counsels' lodestar, and (5) the hourly rate Class Counsel should receive for the services they performed.  After these lengthy negotiations, Nationstar agreed to pay, and Class Counsel and the Named Plaintiffs agreed to accept, attorney's fees outside of the class settlement in an amount up to $700,000 and enhancement awards of $10,000 for each of the Named Plaintiffs. As is demonstrated through the time records of Class Counsel and Class Counsels' declarations, the $700,000 they agreed to accept is significantly *less* than Class Counsel's lodestar value.

As of the date of the filing of this Motion, there have been no objections filed to the Settlement or to the amount of fees being requested – which was included in the class notice that was sent to each Class Member.  In short, at least as of its filing date, the present Motion is unopposed.

## II. __STATEMENT OF FACTS__

On April 23, 2014, plaintiffs filed a class action complaint alleging Nationstar had engaged in the practice of improperly reporting Nationstar's receipt of borrower's mortgage interest on Forms 1098.  Plaintiffs' alleged several theories of recovery,

---

[1] Class Counsel also incurred case related costs, such as filing fees, voluminous outside document copying, deposition reporting, travel expenses for out of state deposition, and other incidental expenses.  In this request, Class Counsel do not seek separate reimbursement of expenses.

including violation of 26 U.S.C. § 6050H. (ECF #1).  On June 5, 2014, Nationstar filed a Motion to Dismiss the Complaint, based in part, on no private right of action for the 6050H claim, and failure to state a claim on the remaining state law causes of action. (ECF # 17).  Plaintiffs opposed the motion.  On February 15, 2015, the Court granted the dismissal of the 6050H claim but stayed the remaining state law claims while the matter was directed to the Internal Revenue Service ("IRS") to answer the "administrative" question regarding the propriety of Nationstar's reporting practices.[2] Class Counsel was ordered to report to the Court the status of the pending matter before the IRS every six months.  Plaintiffs indeed initiated contact with the IRS and, over the course of the next two years, filed 5 status reports with the Court.

After the filing of the first report, the Court ordered an OSC on July 7, 2015, as to why the stay should not be lifted. (ECF # 20).  Plaintiffs' briefed the issue, as did Nationstar.  The stay was not lifted.  The stay remained in effect and the IRS did nothing over the next two years.  However, because the Ninth Circuit had issued a ruling in a similar case on the issue of standing, the Court lifted the stay on March 2, 2017 for the purposes of only addressing the issue of standing consistent with the Ninth Circuit's ruling. (ECF # 38).  Recognizing that the Ninth Circuit opinion identified a standing issue in the plaintiffs' complaint, and understanding the deficiency was easily curable, the parties agreed that the then operative complaint could be dismissed with leave to amend.  The Court dismissed the Complaint on April 25, 2017 (ECF # 42).  Plaintiffs filed their First Amended Complaint ("FAC") on April 26, 2017. (ECF # 43).

Nationstar filed another Motion to Dismiss based on lack of jurisdiction and also requested the stay be placed back on the case.  On July 20, 2017, the Court denied the Motion and refused to place another stay on the case.  However, the Court, *sua sponte*, issued a briefing schedule on a 12(b)(6) Motion to Dismiss. (ECF # 53).  The briefing was completed and submitted to the Court near the end of December 2017. (ECF # 53).

---

[2] Plaintiffs opposed the stay and argued that there really was no administrative question and the issue presented was one for the Court, not the IRS, to resolve.

This was now the third briefing motion addressing the pleadings. [3]

On June 26, 2018, the Court entered its Order granting in part, and denying in part, the Court's *sua sponte* Motion to Dismiss. Named Plaintiffs were granted leave to file a Second Amended Complaint ("SAC"). (ECF # 70).  On July 18, 2018, Named Plaintiffs filed their SAC. (ECF # 76). On August 23, 2018, Nationstar filed its Answer, including 24 affirmative defenses. (ECF # 80).

After Nationstar answered, the Magistrate set an Early Neutral Evaluation Conference ("ENE") and a Case Management Conference ("CMC").  Nationstar did not believe it was in a position to evaluate any settlement as of that date and by agreement of the parties the ENE was vacated. (ECF # 85).[4]  The CMC went forwarded and there were discussions regarding the parties' duties and obligations to comply with Fed. R. Civ. P. 26 and to otherwise begin discovery.  A Scheduling Order was entered by Magistrate Gallo that set deadlines for filing motions and concluding the case by trial.  The discovery cutoff was set for May 2019 (six months away).  (ECF # 90).

Subsequently, plaintiffs began to move with great speed as they were facing a very short period of time to initiate and conclude discovery, as well as to prepare their Motion for Class Certification.  Plaintiffs prepared their Rule 26(f)(1) disclosures and began serving written discovery.  Over the next several months, plaintiffs propounded

---

[3] Digressing for a moment, but turning to the substance of this Motion, Class Counsel points out that although the case was "stayed," they continued to try and deal with the IRS outside the context of the case to get the IRS to comply with the Court's "referral," as well as investigating and working on appellate issues that seemed to be surfacing in light of the Court's ruling.  However, as will be demonstrated in Class Counsels' time records, the total number of hours recorded by Counsel, from first meeting and interviewing the client in 2014, responding to 3 Motions to Dismiss discussed above, through the end of 2017 (a period of almost 4 years) is Brown: 137.3 and Vendler _____

[4] Since the inception of the case, Class Counsel continually approached Nationstar to inquire if it wished to discuss settlement at an early stage.  Up to and including the time of the Court ordered exchange of settlement proposals, Nationstar claimed it could not evaluate the case for class settlement purposes.  In fact, it was Nationstar that encouraged the discovery that plaintiffs undertook in order to highlight and illuminate the class and Nationstar's potential liability and damages exposure.

1  interrogatories, requests for admissions and requests for production of documents to

2  Nationstar.  Each request was met with: (1) requests for additional time to respond, (2)

3  incomplete responses and (3) lengthy meet and confer letters and conferences to resolve

4  discovery disputes.

5        On November 9, 2018, the matter was transferred to Magistrate Berg. (ECF #

6  92).  All dates, including an upcoming Magistrate supervised Mandatory Settlement

7  Conference, remained on calendar subject to being rescheduled by the Magistrate.

8        It was during this discovery period, in late November 2018 specifically, that Class

9  Counsel first learned that Nationstar had, allegedly, "fixed" its reporting of Form 1098

10  reporting on Option ARM Loans by manually reviewing loan files and identifying the

11  capitalized interest that was part of the loan balance, and then reporting its receipt of

12  payment of the interest on Forms 1098. Brown Decl., ¶ 18.  This information was not

13  clearly stated, buried in an interrogatory response, and not detailed.  Now that this

14  disclosure had been made, two years after Nationstar did what it did, and 4 years into

15  the litigation, Nationstar suggested the parties attend mediation.  In an effort to acquire

16  as much information as possible for a successful mediation, Class Counsel pressed for

17  discovery responses from Nationstar.  Further, Class Counsel scheduled and took the

18  deposition of Nationstar, in Denver, Colo., on November 27, 2018 (three days before

19  mediation).  The night before the deposition, Nationstar served additional documents

20  that changed the focus of the case and the scope of the deposition.

21        Accordingly, on November 30, 2018, the parties mediated the matter before

22  Judge Ronald Sabraw (Ret.) in San Jose.  Plaintiffs were prepared to discuss the

23  parameters of a settlement, but based on the newly revealed deposition testimony of the

24  30(b)(6) witness, additional information would be needed to fill in the scope of the

25  settlement and how it could be implemented since it was unclear to what extent the "fix"

26  had actually captured all of the Class Members.  However, much to Counsel's surprise,

27  as well as the mediator's surprise, Nationstar stated it was not in a position to discuss

28  settlement and asked that the mediation be continued to a later, unspecified date. (Brown

-4-

1  Decl., ¶ 20).

2      As a result of the failed mediation, an armed with substantial new information

3  supporting claims that related to conduct of Nationstar after the filing of the complaint,

4  plaintiffs sought to supplement their SAC.  This Motion to Supplement was filed

5  December 31, 2018. (ECF # 100).  This Supplemented SAC would add additional

6  claims and require additional discovery.  Vendler Decl., ¶ 34.

7      Notwithstanding the pendency of the Motion to Supplement, Named Plaintiffs

8  continued to press forward with their existing discovery requests, writing meet and

9  confer letters and negotiating additional responses.  This continued through the first half

10  of 2019.  Concurrently, Counsel was working on an extensive Motion to Compel and

11  preparation of the Joint Statement as required by the Local Rules. [5]   The parties

12  continued to engage in discovery, and numerous meet and confer sessions were held

13  throughout the first part of 2019.  As of January 2019, only Plaintiffs had conducted

14  discovery through their written discovery requests and deposition.  With a voluminous

15  Joint Discovery statement being prepared by plaintiffs, the parties sought, and obtained,

16  a discovery conference with Magistrate Berg.  The parties were facing a May 2019 fact

17  discovery cutoff date.   On April 5, 2019, without continuing the discovery cutoff,

18  Magistrate Berg ordered Nationstar to produce additional responses, as well as setting

19  up a dispute resolution method if the responses were incomplete.  More importantly,

20  the parties agreed to attend an MSC before Magistrate Berg. (ECF # 113).  The MSC

21  was set for May 24, 2019.

22      On April 12, 2019, Nationstar served its first discovery requests on plaintiffs.  It

23  also requested dates for Named Plaintiffs' deposition.

24      On April 23, 2019, the Court denied the Motion to Supplement the SAC.  ((ECF

25  # 114).  On April 25, 2019, the Court denied a joint request to continue the discovery

26  cutoff from May 23, 2019. (ECF # 117).  On April 30, 2019, the Court granted the

27
28  [5] Class Counsel was also discussing further mediation with Judge Sabraw, who was in
    contact with counsel for Nationstar. Vendler Decl., ¶ 35.

request continuing the discovery cut off by 90 days. (ECF #119).  The parties continued working on discovery, with Nationstar producing thousands of pages of documents.

On May 24, 2019 the parties participated in the scheduled MSC before Magistrate Berg.  This occurred immediately following the failure of Judge Sabraw's mediator's proposal.  With Magistrate Berg's assistance, terms for a class wide settlement were agreed upon.  Following the class wide agreement, Magistrate Berg proposed, and the parties negotiated, the payment of attorney's fees to Class Counsel, as sought in the SAC under California *Code of Civil Procedure* Section 1021.5.  Magistrate Berg also assisted in the parties reaching an incentive award for the Named Plaintiffs.

Subsequent to May 24, 2019, the parties engaged in the preparation of the written settlement agreement, the Motion for Preliminary Approval, the selection of the Claims Administrator and the preparation of all settlement and claims documents required by the Settlement Agreement and Order Granting Preliminary Approval, administering the settlement, responding to class member inquiries and preparing and filing the Motion for Final Approval.

## III.   SETTLEMENT

### A.   Approaching Settlement

Plaintiffs' primary purpose in bringing this case in 2014, on behalf of a Class, was to force Nationstar to properly report its receipt of mortgage interest on Forms 1098 for the class of defined borrowers for tax years 2013 and 2014.  Plaintiffs wanted Nationstar to correct all Forms 1098 within the period of time that would allow class members to file amended tax returns, and to assure that Nationstar would properly report mortgage interest on Forms 1098 in the future.  As the case became dormant due to the stay, the passage of time added additional years to the class period, but it also caused the statute of limitations for amending tax returns for several affected years to expire. As the statute for filing amended returns expired, plaintiffs were forced instead to seek damages from Nationstar for the incorrect reporting on Forms 1098 for tax years 2010-2015 where amendments were no longer possible.

-6-

1   Early settlement had always been proposed by Class Counsel and Class Counsel
2   repeatedly argued for a lifting of the stay based on the prejudice that the delay was
3   causing to the Class Members.  However, in light of the length of the stay there were
4   no substantive settlement discussions until approximately 5 years into the litigation.
5   Between 2014 and March 2017, a period of almost 3 years, the case was stayed.  Class
6   Counsel continued to work on issues with the IRS, as well as researching and preparing
7   arguments for lifting the stay as well as appeal.  However, during this time, there was
8   no interest on the part of Nationstar to discuss settlement.

9   Once the stay was lifted for a limited purpose, further dispositive motions were
10  heard.  In fact, it was not until August 23, 2018, (four years and four months after the
11  complaint was filed) that Nationstar filed its answer and the doors opened for the Rule
12  26(f) (1) compliance, followed by discovery and additional pleadings.  By this time,
13  plaintiffs' case had suffered numerous adverse rulings issued by the Court.  And, since
14  Nationstar was experiencing favorable rulings from the Court, it appeared to be
15  uninterested in settlement discussions.  It was assumed by each side that discovery
16  would now be necessary to further evaluate settlement positions.  So, plaintiffs initiated
17  extensive discovery.

18  The next opportunity for settlement, with some discovery completed, was at the
19  Early Neutral Evaluation before Magistrate Gallo, scheduled for October 23, 2018.
20  With outstanding discovery responses due from Nationstar on the only discovery
21  propounded to date, it was determined such a conference would not be productive as
22  Nationstar and plaintiffs did not have sufficient information to discuss a settlement. The
23  ENE was vacated with no new date set.[6]

24  Discovery, and discovery disputes continued.  In an attempt to get settlement

_____

[6] Magistrate Gallo's Order required the parties to exchange settlement proposals before
the scheduled ENE. (ECF # 81 at ¶ I (4)).  Class Counsel exchanged two substantive
proposals.  Nationstar exchanged a proposal but admittedly stated it was really not in a
position to submit, or make, a substantive settlement offer. Each side also lodged
confidential ENE statements with the Magistrate.

talks started, Class Counsel proposed, and Nationstar agreed, to mediation. A mediator was selected, and extensive briefs were prepared and filed. Information was also shared informally. On November 30, 2019, fully prepared to discuss settlement of the case, Class Counsel travelled to San Jose to participate in the mediation with the mediator proposed by Nationstar. Class Counsel made at least two settlement proposals to Nationstar through the mediator. Nationstar did not make any settlement proposal to plaintiffs at mediation. Nationstar instead requested additional time to investigate the facts and stated it would communicate with the mediator separately, at a later time. Brown Decl., ¶ 20. Class Counsel were flummoxed.

Having learned of new facts and contemplating the filing of a supplement to the SAC, Class Counsel again approached Nationstar to discuss settlement. There were no discussions. In the meantime, plaintiffs filed their Motion to Supplement on December 31, 2018.

During the first quarter of 2019 much work was being done to meet the May discovery cutoff. Class Counsel kept inquiring about settlement as the discovery disputes became clearer and motions were inevitably going to be filed. Class Counsel suggested that, with the Motion to supplement still pending, it might be a good time to discuss settlement. Nationstar again offered no substantive class wide settlement proposal.

After a lengthy discovery conference call with Magistrate Berg, in which discovery deadlines were set, and it appeared much of the work Nationstar had hoped it would not have to do was going to be ordered, Class Counsel suggested that Magistrate Berg advance the date currently set for a required MSC before the Court. Nationstar did not object to this suggestion. Magistrate Berg agreed, and the MSC was set for May 24, 2019. (ECF # 113). Brown Decl., ¶ 21. During this period, the parties were concurrently negotiating with Judge Sabraw's assistance as well as continuing with the outstanding discovery disputes.

On April 23, 2019, when the Court denied the Motion to Supplement, Class

-8-

1  Counsel had to evaluate plaintiffs' settlement position, in light of all the prior Orders

2  on 12(b)(6) motions and the current denial of the Motion to Supplement. Vendler Decl.,

3  ¶ 36.

4      Notwithstanding the pending MSC on May 24, 2019, the parties consented to

5  have Judge Sabraw prepare a mediator's proposal. The parties received the proposal on

6  May 13, 2019. The proposal did not result in resolution of the case. Brown Decl., ¶ 20.

7      Class Counsel continued to evaluate the case and prepared a settlement

8  conference brief for the MSC with Magistrate Berg. The case ultimately settled on May

9  24, 2019 with a class wide settlement.[7] Brown Decl., ¶¶ 22-23.

10      Against this chronology is the fact that at some point in 2016, while this case was

11  pending, and unbeknownst to Class Counsel, Nationstar went into its loan portfolio for

12  the Named Plaintiffs, and eventually other class members, and attempted to "fix" their

13  Forms 1098 by identifying the capitalized interest that had been included in the

14  transferred balance of their loan, and creating a process to report that interest in the

15  future on Forms 1098. Brown Decl., ¶ 18. Class Counsel first learned of the extent of

16  this "fix" during the November 2018 deposition of Thea Cross, Nationstar's 30(b)(6)

17  witness. This discovery came after hundreds of hours of motion work, written discovery

18  and deposition. This conduct further impacted plaintiffs' settlement analysis and

19  required further investigation in 2019 to evaluate its impact on Nationstar's potential

20  liability and the class's damages. However, as explained below, this significantly

21  impacted the settlement process.

22  **B.   The Settlement**

23      The Settlement provides the relief sought on behalf of the Class. For tax years

24  2016, 2017 and 2018, Nationstar will prepare and file with the IRS amended Forms

---

[7] Counsel had no indication from Nationstar the case would settle on May 24 and continued to move forward with discovery through the date of the mediation.

MOTION OF CLASS COUNSEL FOR AN AWARD OF ATTORNEY'S FEES AND CLASS REPRESENTATIVE AWARD

1098 for affected class members.[8]   Nationstar will, hereafter, properly identify and record capitalized interest payments on Option ARM loans, and thereafter include the amount a borrower pays on the borrower's Form 1098.   Recognizing that Class Members in tax years 2010-2015 have lost the ability to file amended tax returns as a result of the lengthy stay, upon submission of a proper claim, the Class Member will be paid $50. See: Motion for Final Approval ("MFA"), filed concurrently, Section V. and Order Granting Preliminary Approval of Settlement (ECF # 131, Sec. II(B)(2).

Correcting the totality of the problem is **in addition to the *partial*** "fix" or "correction" Nationstar undertook in 2016 *as a direct result* of this lawsuit.  As set forth in the MFA at page 5, and the declaration of Thea Cross, ¶ 3, Nationstar's initial fix placed an additional $50,663,194 onto Class Members Forms 1098, allowing them to amend returns and obtain additional tax refunds, estimated to be in the range of $10,132,639. Brown Decl., ¶¶ 24-26.

The Settlement also provides that Nationstar will pay all the costs of this litigation.  Specifically, Nationstar has agreed to pay reasonable Class Counsel fees which the parties negotiated to be $700,000 and Named Plaintiff incentive awards in the amount of $10,000 each.  This, of course, is subject to Court approval.  Nationstar also will pay all costs of administering the Settlement.

## IV.   ATTORNEY'S FEES

Before discussing the legal standard this Court should apply when determining a reasonable fee that should be awarded to Class Counsel, Class Counsel submit the following facts:

1.     Class Counsel is seeking their fees under the lodestar method.

2.     The entire legal fee is being paid by Nationstar outside of any settlement pool.  In short, this is not a common fund settlement.

---

[8] The exact number is not known since Nationstar is under no obligation to do this unless the Settlement is approved.

3. The lodestar, for the 5 years of the case, through November 2019, consists of 1,442.60 total hours for a total lodestar of $1,370,470.[9]

4. The requested fee of $700,000 is $670,470 less than the lodestar (49%) and was arrived at after lengthy negotiations between Nationstar and Counsel during the MSC in which Magistrate Berg participated in private sessions with each side. Brown Decl., para. 27., Vendler Decl., para. 41.

5. There is no request for any enhancement to the lodestar.

6. There is no request for an award of costs.

**A.   Legal Standard**

This Court currently exercises diversity jurisdiction over this matter. State law governs the right to attorney's fees and the computation of the amount of fees in diversity cases. *Mangold v. California Public Utilities Com'n,* 67 F.3d 1470, 1478 (9th Cir. 1995). Named Plaintiffs sought recovery of attorney's fees under *California Civil Code* §1021.5 and seeks payment by Nationstar under this state statute. (ECF # 76 at p. 18). In negotiating the payment of fees outside of the Settlement, Counsel informed Nationstar that absent an agreement, they would seek fees, as pled, from the Court on a lodestar basis pursuant to this section. *Abogados v. AT&T,* 223 F. 3d 932, 934 (9th Cir. 2000), *Graham v. DaimlerChrysler Corp.,* 34 Cal. 4th 553, 560-561 (9th Cir. 2004) (court awarded fees under Section 1021.5 for settlement of a national class action.) Indeed, Class Counsel informed Nationstar that because plaintiffs' claims were exclusively based on California state law, they were likely going to receive an award of "catalyst fees" even if they ultimately lost the case based on the value to the Class Members of the 2016 "fix" which Nationstar conceded was only done by it because of

---

[9] As will be discussed below, Class Counsel have had fee awards approved at the hourly rate of $950 since 2014 beginning with Judge Curiel in *Horn v. Bank of America*. (For purposes of this award, Class Counsel is using the same 2014 approved rate. (See: Brown Decl., ¶¶ 6-8). Further, Class Counsel estimate that they will incur at least another 25-50 hours responding to Class Member calls after this case concludes (assuming that the Settlement is approved).

the pendency of this case.  To the extent Nationstar "fixed" the reporting problem as a result of Named Plaintiffs' lawsuit, Named Plaintiffs are entitled to recover attorney's fees under the catalyst theory. *Tipton v. Whittingham,* 34 Cal. 4th 604 (2004).

The California Supreme Court has held fees awarded under Section 1021.5 must be calculated using a lodestar basis.  *Press v. Lucky Stores, Inc.* 34 Cal. 3d 311, 321-322 (1983).  This Court must independently ensure that the amounts requested for attorney's fees, as well as any class representative service award, are reasonable.  *In Re Bluetooth Headsets Prods. Liab. Litig.,* 654 F. 3d 935, 941 (9th Cir. 2011).

The "lodestar" method involves "multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonably hourly rate and then, "if circumstances warrant, adjust[ing] the lodestar to account for other factors which are not subsumed within it."  *Staton v. Boeing Co.*, 327 F.3d 938, 969 (9th Cir. 2003), quoting *Ferland v. Conrad Credit Corp*., 244 F.3d 1145, 1149 n. 4 (9th Cir. 2001). Always, "[t]he ultimate goal is to award a reasonable fee."  *Hartless v. Clorox*, 273 F.R.D. 630, 645 (S.D.Cal 2011).

**B.    Analysis**

The two attorneys acting as Counsel for the Class are Michael R. Brown and David J. Vendler.  Mr. Brown has been a practicing attorney for 44 years and Mr. Vendler has been practicing for 31 years.  These are the only two attorneys that worked on the case since its inception in 2014, except for 6.2 hours by similarly qualified lawyers.  The case was not staffed with a legion of associates or paralegals.  Mr. Brown and Mr. Vendler allocated and delegated work between them.

Each Counsel has attached their contemporaneous time records. (Brown Decl., Exhibit A, Vendler Decl., Exhibit A).  From March 2014 through November 2019, Mr. Brown recorded a total of 644.3 hours.  From March 2014 through December 2019, Mr. Vendler recorded a total of 798.3 hours.  The time records describe the tasks performed and recorded in tenths of an hour.

/ / /

Because this case was stayed for a significant period of time, Mr. Brown and Mr. Vendler's time is broken down to identify the periods when the work was performed. (Mr. Vendler's time is broken up into two sets of timesheets as he changed firms during the pendency of the case).

The two year period 2014-2016 consisted primarily of interviewing the client, conducting research as to Nationstar, the potential for a class action lawsuit, drafting the complaint, opposing Nationstar's Motion to Dismiss, addressing and complying with Rule 26's requirements, addressing the Court's imposition of a stay, dealing with the IRS regarding the Court's reference, attempting to have the stay lifted, and researching re appellate issues regarding stay.

In 2017, Mr. Vendler and Mr. Brown were engaged in heavy briefing, including addressing why the stay should not be lifted, and there was significant briefing required to respond to several motions to dismiss, including the Court's own 12(b)(6) Motion. Mr. Vendler had primary responsibility for the drafting of the responses to all of Nationstar's MTD's as well as the Court's *sua sponte* OSC.

For the period January-June 2018, Counsel prepared for the MTD hearing, argued the motion, received and read the Court's lengthy opinion, researched many of the Court cases, and strategized for future handling of the case.

For the period July-December 2018, suffice it to say the stay was lifted and the case went into full litigation mode. There was an amended complaint filed, and eventually a motion to supplement the second amended complaint. There was very extensive briefing as to each. There was discovery propounded by the Named Plaintiffs to Nationstar. There were meet and confer discovery letters and conferences. There was a scheduling conference with Magistrate Gallo. There was a mediation. There was a deposition in Colorado, as well as the usual work involved in preparing the case for a class certification motion. As of December 31, 2018, there was a May discovery cutoff date. This was the most intense period of work on this case as pleadings remained unanswered, motions were filed, and discovery was ongoing.

For the period January – December 2019 the activity continued at a great pace, facing the May discovery cutoff.  Discovery battles continued and Joint Stipulations were prepared.  There was also an adjustment to the approach to the case after the Motion to Supplement was denied.  The parties, however, continued to schedule depositions, engage in meet and confer conferences, respond to attempts by mediators to settle, and otherwise engage in near constant communications with Nationstar necessary to obtain the information promised in discovery and in communications with the mediator and Magistrate Berg.  This eventually led to the settlement of the case in May 2019.

Subsequent to the settlement on the record, there was significant work to prepare the settlement agreement, thereafter, followed by the Motion for Preliminary Approval, along with the preparation of claims documents.  After Preliminary Approval there has been the administration of the settlement and the preparation of the Motion for Final Approval, including dealing with many calls from Class Members.

These general categorizations of the matters being worked on by Counsel are set forth in the detailed time entries.  As set forth in the declarations of Mr. Brown and Mr. Vendler, the time recorded is the actual time spent performing the tasks.

|  | 2014-16 | 2017 | Jan/June 2018 | July/Dec 2018 | Jan/Dec 2019 |
|---|---|---|---|---|---|
| Michael R. Brown | 120 | 17.3 | 19.7 | 301. | 186.3 |
| Brown total 644.3 |  |  |  |  |  |
| David J. Vendler | 153 | 149.9 | 44.3 | 228.9 | 210.2 |
| Vendler total 798.3 |  |  |  |  |  |

The total hours recorded by Mr. Brown and Mr. Vendler are clearly reasonable in light of the substantial amount of work performed. This case was one of first impression, and Nationstar had highly qualified counsel arguing its positions.  In addition, the Court took significant time to render its opinion on novel questions, providing an in-depth analysis requiring Counsel to continually conduct additional

-14-

research and evaluate the approach taken in the case.  This case required significant legal research, creative analysis and focused discovery.  The time recorded accurately reflects the work necessary to bring this case to resolution, whether by settlement or trial.

In order to arrive at the lodestar amount, an hourly rate is applied to the number of hours.  In this case, Counsel is applying the rate of $950 for both Mr. Brown and Mr. Vendler.  As long ago as 2014, this rate was approved for Counsel by Judge Curiel, in the case of *Horn v. Bank of America, N.A.*, 2014 WL 1455917*6 (S.D. Cal 2014).  Since 2014, Counsel has never sought to request a higher hourly rate and has used that rate in other applications for an award of fees.  (Brown Decl. ¶¶ 6-8).  This rate is reasonable in the Los Angeles legal community given that both Class Counsel are highly experienced generally; and have a great deal of specific experience in the field of class actions involving novel questions of tax law.  See Vendler and Brown Decls.

Applying the reasonable hours to the hourly rate, the lodestar is $1,370,470.

As set forth above, Counsel made many attempts to reach an early settlement. (III. A. above).  Indeed, the longer this case dragged on, Class Counsel knew the worse the result would be for the class because of the three-year statute of limitations for amending tax returns.  Counsel pressured Nationstar by arguing that for every year that slipped, Nationstar's exposure would substantially increase.

## C.   **The Requested Fee**

Under the careful guidance of Magistrate Berg, the parties in this case did not even discuss the issue of legal fees until *after* the class relief had been entirely agreed upon.[10]  Brown Decl., ¶ 23.

Further, the recovery for the Class Members is *not* conditioned upon obtaining judicial approval of the agreed-upon fees. See: *Settlement Agreement Section 4.04.*

---

[10] This is also true with respect to settlement discussions at mediation with Hon. Ronald Sabraw (Ret.)

-15-

1    This process for setting legal fees – with the aid of a well-respected mediator (in
2    this case a U. S. Magistrate Judge) and only after the class relief has been fully agreed
3    to – has been specifically approved by the Ninth Circuit.   In *Hanlon v. Chrysler*
4    *Corporation* 150 F. 3d 1011, 1029 (9th Cir. 1998) the court stated that the district court
5    properly "relied on the mediator as independent confirmation that the fee was not the
6    result of collusion or a sacrifice of the interests of the class.")   This protective process
7    eliminates the "adversarial relationship" described in *In re Mercury Interactive Corp.*
8    *Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) in which the attorneys' fee is to come directly
9    out of a "common fund.  And here, such a relationship does not exist because attorney's
10   fees are *not* coming from any common fund but being paid separately by Nationstar.

11       Inherent in any settlement negotiations is the give and take on each side, with the
12   hope to reach an acceptable compromise.   After the class settlement terms were
13   negotiated and agreed upon, the parties knew either they would reach a compromised
14   agreement for the payment of attorney's fees to Counsel under *CCP* §1021.5 or Counsel
15   would petition the Court for an award.  Accordingly, with the assistance of Magistrate
16   Berg, the parties chose to negotiate a reasonable, compromised figure.

17       The parties and Magistrate Berg discussed the hours spent, the hourly rate and
18   whether all time was compensable or not.   Notwithstanding the fact that Nationstar
19   attempted to cure the reporting problem in 2016, and assuming that the fix actually
20   corrected the error, Counsel would have been entitled to fees under the catalyst theory.
21   *Tipton, supra.*   However, because the fix was not disclosed until the end of 2018,
22   significant work was required to determine if the "fix" actually impacted all class
23   members, and whether there was still a damages component for class members not
24   affected by the fix. The discovery revealed the "fix" was not as comprehensive as the
25   relief sought in the SAC requiring discovery to reach the terms of this settlement.  As
26   demonstrated in the time records of Counsel, the latter part of 2018 and the first half of
27   2019, is where the majority of Counsel's time, over the five-year litigation period is
28   concentrated.

-16-

In negotiating the fee, Class Counsel, Nationstar, and the Magistrate considered the work performed, the victories and losses along the way, and the potential of litigating the question of fees through a 1021.5 motion and the force of the "catalyst" theory. Counsel also considered the results achieved for the Class and the benefit of closure on all issues at the time of Final Approval. Accordingly, Counsel compromised and agreed to a 49% reduction in the lodestar and Nationstar compromised and agreed to pay $700,000 in fees.[11]

While normally the hours multiplied by the rate, creating the lodestar, is presumptively reasonable, *In Re Bluetooth,* 654 F. 3 at 949, Counsel's request is, as stated, the product of arm's length negotiations, overseen by Magistrate Berg, resulting in an agreed upon fee 49% lower than the documented lodestar.[12]

As a direct result of this lawsuit, Nationstar corrected prior reporting errors and will forever include deferred interest payments in its Form 1098 calculus. This will benefit not only current Class Members, but future borrowers as well.

## V.      INCENTIVE AWARD FOR CLASS REPRESENTATIVE

Once again, after the terms of the Class Settlement were agreed upon, Magistrate Berg conducted negotiations between the parties for the payment of an incentive award to the Pembertons, to be paid outside of any Class Settlement pool or fund. Incentive awards have been recognized as properly awarded to compensate class representatives

---

[11] If anything, this case would warrant an upward adjustment to the lodestar. The case was very complex, and a case of first impression, covering areas of tax law and contract law, including statutory interpretations. The case required a great deal of expertise, inviting discussion amongst tax experts, tax lawyers and accountants. Class Counsel was also required to deal with the IRS. But, there is no request for any upward adjustment.

[12] This Court's participation in the framing of this lawsuit, and the resultant settlement, should also not be overlooked. This Court received lengthy and complex complaints, motions to dismiss and other pleading related motions. The Court took extraordinary steps to evaluate the arguments and wrote detailed opinions, all of which evidenced the novelty of the issues and the significant work of the lawyers, on both sides, in addressing the law and facts related to the case.

1  for work undertaken on behalf of the class and are fairly typical in class action cases. *In*
2  *Re Online DVD-Rental Antitrust Litig.,* 779 F. 3d 934, 943 (9th Cir. 2015).

3        In this case, the class representatives each participated in the decision-making
4  process from the inception of this case through its conclusion.  As the case developed
5  through the pleading stages, the class representatives made decisions, along with
6  counsel, to continue with the litigation, notwithstanding adverse rulings on the claims
7  asserted.  As evidenced in the time records, Counsel was in constant communication
8  with the class representatives.

9        At many crucial junctures in the case, particularly after the rulings on the motions
10  to dismiss and request to supplement the amended complaint, Mr. & Mrs. Pemberton,
11  who are in their 70's, agreed to continue as the class representative even when it
12  appeared they would not receive amended Forms 1098.[13]  They were concerned that the
13  reporting process be corrected, and were willing to stay with the case through a
14  favorable conclusion.  In that regard, they worked with Counsel to prepare discovery
15  responses and also prepare for their deposition.  During the MSC, they agreed to the
16  class settlement not knowing if there would be any incentive award awarded to them.[14]

17  ─────────────
18  [13]At the time the case was filed in 2014, had there been an early resolution, and had the
19  Pembertons received a corrected Form 1098 for the prior years, there would have been
    ample time to file amended tax returns.  However, as the Court recognized at the initial
20  hearing, the longer the case lingered, class members would lose their right to amend
    their tax returns.  More importantly, when Nationstar tried to "fix" the problem in 2016,
21  Nationstar issued a corrected Form 1098 for the Pembertons and filed it with the IRS
    but failed to provide a copy to the Pembertons. The Pembertons were forever barred
22  from claiming that mortgage interest deduction because the IRS would reject such
    claim since the interest had been reported in an earlier. Their remedy was to seek
23  damages for those lost years. With this settlement, they have given up their damages
24  claim and they are left in the class of members receiving the $50 payment.
25  [14] At the time the settlement negotiations were conducted, the Pembertons had a
    damages claim based on a negligence cause of action.  However, based on earlier
26  comments by the Court, the viability of that claim was tenuous. The Pembertons and
    Class Counsel also believed earlier rulings by the Court would be appealed.  Due to the
27  favorable court rulings, Nationstar was not offering to pay damages to compensate
28  Class Members for the lost value of unreported deductions.  In order to effectuate a

-18-

1      While recognizing that the requested amount is higher than some incentive
2  awards, the fact is that after the settlement terms were agreed upon, the $10,000 to each
3  class representative was arrived at by Magistrate Berg negotiating an amount between
4  private sessions with Counsel during the MSC. Nationstar and the Magistrate believed
5  for the 5 years of participation by the class representatives, the $10,000 was a fair
6  amount.  Accordingly, Counsel and Nationstar request that the Court award Class
7  representative's incentive awards of $10,000.

8  **VI.    <u>CONCLUSION</u>**

9      Class Counsel obtained the vast majority of the relief for the Class they set out to
10 obtain.  Tens of thousands of Class members/borrowers will have received, as a result
11 of this case, the proper information on Forms 1098 issued by Nationstar and will thus
12 have been able to increase their mortgage interest deduction, benefitting them by at least
13 ten million dollars.  In a vigorously contested, adversarial environment, the Parties were
14 able to reach agreement as to a reasonable fee, earned by Counsel for their work, that
15 the defendant is paying separate and apart from any class settlement money.  With the
16 assistance of Magistrate Berg, Class Counsel and Nationstar considered all the factors
17 of a lodestar fee and jointly agreed, subject to this Court's approval, that the appropriate
18 and reasonable fee for the work put in, the risks undertaken and the results obtained was
19 $700,000, representing 51% of Counsel's actual and documented lodestar.  Counsel
20 agreed not to seek reimbursement for costs.  If approved, Nationstar will pay this fee,
21 in addition to administrative costs and enhancements separate from the class recovery.

22
23 / / /
24 / / /
25 / / /
26 / / /
27
_____
28 settlement that was in the best interest of the class, as a whole, the Pembertons agreed
to walk away from the damages claim, as well as the right to appeal.

1    Therefore, Counsel respectfully requests this Court to award Attorney's Fees to
2    Counsel in the amount of $700,000 and to award each class representative $10,000.
3
4    Dated:  December 16, 2019          LAW OFFICE OF DAVID J. VENDLER
5
                                        /s/ David J. Vendler
6                                       David J. Vendler, Esq.
7
                                        MICHAEL R. BROWN, APC
8
9                                       /s/ Michael R. Brown
10                                      Michael R. Brown
                                        Attorneys for Plaintiffs MICHAEL
11                                      PEMBERTON and SANDRA COLLINS-
                                        PEMBERTON, and all others similarly situated
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION OF CLASS COUNSEL FOR AN AWARD OF ATTORNEY'S FEES AND CLASS
REPRESENTATIVE AWARD